**HCDistrictclerk.com**       TANGLEGROVE TH CONDO ASSOCIATION vs.          3/23/2023
                              JOURNEY INSURANCE COMPANY
                    Cause: 202281096       CDI: 7       Court: 061

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 107184595 | PARTIAL DISMISSAL ON DEFENDANT'S MOTION | | 03/21/2023 | 1 |
| 107085712 | Shannon E. Lloyd Vacation Letter | | 03/15/2023 | 2 |
| 106977462 | Defendant Journey Insurance Company's Original Answer | | 03/09/2023 | 3 |
| 106977463 | Notice of Election of Legal Responsibility for Stanley Glenn Culpepper | | 03/09/2023 | 4 |
| -> 106977464 | Proposed Order on Defendant's Notice of Election of Legal Responsibility for Stanley Glenn Culpepper | | 03/09/2023 | 2 |
| 106980917 | Notice of Hearing on Journey Insurance Company's Notice of Election of Legal Responsibility for Stanley Culpepper | | 03/09/2023 | 3 |
| 106991625 | Defendant Journey Insurance Company's Response to Plaintiff's Motion for Default Judgment | | 03/09/2023 | 4 |
| -> 106991627 | Proposed Order Denying Plaintiff's Motion for Default Judgment | | 03/09/2023 | 2 |
| restricted | Certificate of Service | | 03/07/2023 | 2 |
| 106943544 | Notice to Pass Hearing | | 03/07/2023 | 1 |
| 107010103 | Domestic Return Receipt | | 03/06/2023 | 2 |
| 106754505 | Notice of Hearing | | 02/24/2023 | 1 |
| 106725654 | Plaintiff's Motion for Default Judgment | | 02/23/2023 | 228 |
| -> 106725657 | Proposed Order on Plaintiff's Motion for Default Judgment Against Defendant Journey Insurance | | 02/23/2023 | 2 |
| 106725655 | Proposed Judgment Against Defendant Journey Insurance Company | | 02/23/2023 | 2 |
| 106435723 | Domestic Return Receipt | | 02/02/2023 | 2 |
| 106194009 | Domestic Return Receipt | | 01/17/2023 | 2 |
| 106039355 | Certified Mail Receipt | | 01/12/2023 | 1 |
| 105967964 | Certified Mail Tracking # 7019 2970 0001 3507 5455 | | 01/10/2023 | 2 |
| 105905959 | Plaintiff's First Amended Original Petition | | 01/09/2023 | 20 |
| 105905963 | Request for Issuance of Service | | 01/09/2023 | 2 |
| 105953668 | Certified Mail Receipt | | 12/29/2022 | 1 |
| 105724353 | Certified Tracking Number 7019 2970 0001 3507 5547 | | 12/21/2022 | 2 |
| 105654017 | Request for Issuance of Service | | 12/20/2022 | 2 |
| 105853556 | Certified Mail Receipt | | 12/20/2022 | 1 |
| 105680263 | Certified Mail Tracking # 7019 0140 0000 5912 9596 | | 12/16/2022 | 2 |
| 105577400 | Plaintiff's Original Petition | | 12/14/2022 | 18 |
| -> 105577401 | Exhibit A | | 12/14/2022 | 6 |
| -> 105573503 | Request for Issuance of Service | | 12/14/2022 | 1 |

12/14/2022 3:51:08 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 71021177
By: ABRAM, DERRICK A
Filed: 12/14/2022 3:51:08 PM

# Marilyn Burgess
## 2022-81096 / Court: 61
### HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

## Request for Issuance of Service

**CASE NUMBER:** _____  **CURRENT COURT:** _____

**Name(s) of Documents to be served:** Plaintiff's Original Petition

**FILE DATE:** 12/14/2022 _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Stanley Glenn  Culpepper

**Address of Service:** 2005 Camelot Drive

**City, State & Zip:** Grapevine, Texas 76051

**Agent (if applicable)** _____

## TYPE OF SERVICE/PROCESS TO BE ISSUED: (Check the proper Box)

- [ ] **Citation**
- [ ] **Citation by Posting**
- [ ] **Citation by Publication**
- [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**    Newspaper _____
- [ ] **Temporary Restraining Order**
- [ ] **Precept**
- [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**
- [ ] **Capias** (not by E-Issuance)
- [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**
- [ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**
- [ ] **Hague Convention ($16.00)**
- [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)
- [ ] **Injunction**
- [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____
- [ ] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney   at:** _____    **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**
- [x] **CERTIFIED MAIL by District Clerk**

*Note:* The email registered with EfileTexas.gov must be used to retrieve the E-Issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____    Phone: _____

- [ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Shannon E. Loyd    Bar # or ID   24045706

**Mailing Address:** 12703 Spectrum Dr., Suite 201, San Antonio, Texas 78249

**Phone Number:** 210-775-1424



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

| Policy Period | | Term | Policy Inception Date |
|---|---|---|---|

From: 01/24/2021   12:01 am Local Time*   To: 01/24/2022   12:01 am Local Time*   12 months          01/24/2021
*At the Named Insured Mailing Address shown below.

**BROKER**          5434342                    **NAMED INSURED**
AMSUISSE INC                                   TANGLEGROVE TH CONDO ASSOC
830 S  MASON RD                                C/O GARNER PROPERTY MNGMNT
STE  A 1                                        5845 LYNBROOK
KATY, TX 77450                                 HOUSTON, TX 77057
(800) 485-0229

### COMMON POLICY CONDITIONS
In return for the payment of the premium and fees, and subject to all the terms of this Policy,
We agree with You to provide the insurance as stated in this Policy.
**This Policy is comprised of the following Forms and Endorsements:**

| | | | |
|---|---|---|---|
| JR TXNOTICE 07 20 | N 42 TIN 07 20 | JR JACKET 05 20 | JR SCOL 50(b) (05 20) |
| ICAT 50 SOV (10 10) | CP 00 17 10 12 | CP 00 50 10 12 | CP 00 90 07 88 |
| CP 01 47 11 00 | CP 02 02 12 19 | CP 04 05 09 17 | CP 04 31 04 02 |
| CP 10 30 09 17 | CP 10 32 08 08 | CP 12 72 12 98 | CP 14 10 06 95 |
| ICAT SCOL 125 (11 11) | ICAT SCOL 130 (12 11) | ICAT SCOL 136 (05 11) | ICAT SCOL 140 (12 11) |
| ICAT SCOL 141 (12 11) | ICAT SCOL 143 (05 11) | ICAT SCOL 200 (09 15) | ICAT SCOL 220 (07 09) |
| ICAT SCOL 221 (05 20) | ICAT SCOL 230 (07 09) | ICAT SCOL 232 (07 09) | ICAT SCOL 233 (07 09) |
| ICAT SCOL 234 (07 09) | JR SCOL 238 05 20 | ICAT SCOL 241 (10 19) | JR SCOL 242 TX (05 20) |
| ICAT SCOL 425 (09 15) | ICAT SCOL 602(c) (11 20) | ICAT SCOL 603 (04 08) | ICAT NMA2920 (01 20) |
| ICAT TRIA-3 (01 15) | IL 00 03 08 02 | IL 00 17 11 98 | IL 09 35 07 02 |
| IL P 001 01 04 | JR 424 10 18 | JR SOS 05 20 | |

**See Schedule A attached to this Declarations Page for Coverages, Deductibles and Limits of Insurance.**

### TO FILE A CLAIM 24 HOURS/DAY, PLEASE FAX TO 1-800-380-5053 OR CALL 1-888-256-3378
Your Annual Premium and Fees are:

| | | |
|---|---|---|
| Annual Premium | $ | 153,024.00 |
| Premium for Terrorism Coverage as it relates to an otherwise covered cause of loss | | Not Selected |
| Inspection Fee | $ | 450.00 |
| Policy Fee | $ | 265.00 |
| Total | $ | 153,739.00 |

THIS DECLARATIONS PAGE TOGETHER WITH THE SPECIAL CAUSE OF LOSS
COMMERCIAL PROPERTY POLICY FORM CP 10 30 10 12 AND ENDORSEMENTS,
IF ANY, ATTACHED HERETO COMPLETE THIS CONTRACT OF INSURANCE.

Issued on <January 28, 2021>



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

## Schedule A
## Section 1:  Property or Interest Covered

| | |
|---|---|
| Building | Included |
| Business Personal Property | Not Included |
| Business Income with Extra Expense including Rental Value | Not Included |
| Additional Property Coverage | Included |
| Fountain View (Pool) | Included |
| Lynbrook (Pool) | Included |
| Pool Areas & Other – Iron Fencing | Included |
| Brick Fencing | Included |
| Wooden Fencing | Included |
| Vehicle Carports | Included |

**Optional Coverages and Coinsurance**

| | |
|---|---|
| Replacement Cost (Building, Personal Property, "Stock") | Yes, Including "Stock" (if Personal Property is covered) |
| Coinsurance | Waived |

### Optional/Additional Coverages or Causes of Loss

| | |
|---|---|
| Accounts Receivable | $100,000 |
| Blanket Limits | Not Included |
| Claims Preparation Fees (aka Professional Fees) | $50,000 |
| Condo All-In Endorsement | Not Included |
| Debris Removal | 25% of loss within limit, up to additional $50,000 per location in addition to limit. |
| Earthquake | Not Included |
| Electronic Data | $100,000 |
| Equipment Breakdown | Excluded |
| Extended Period of Indemnity | 90 days |
| Extra Expense | $50,000 |
| Fire Department Service Charge | $25,000 |
| Fire Extinguishing Recharge | $10,000 |
| Increased Cost of Construction building | Less of $10,000 or 5% of the Limit of Insurance applicable to that building |
| Limited Coverage for Fungus, Wet Rot, Dry Rot and Bacteria | $25,000 Annual Aggregate, 30 day limit on BI/EE (if applicable). Policy Specifies Limited Causes of |
| Lock Replacement | $7,500 |
| Monthly Limit of Indemnity | N/A |
| Newly Acquired BPP | $100,000 |
| Newly Acquired Building | $250,000 |
| Non-Owned detached trailers | $5,000 |
| Outdoor Property | $25,000 (max $5,000 per tree or shrub) |

| Outdoor Signs (non-scheduled) | $25,000 |
| Ordinance or Law Coverage A | Included |
| Ordinance or Law Coverage B & C | Full A, B & C limited to 5% |
| Personal Effects | $25,000 |
| Pollutant Cleanup and Removal | $25,000 |
| Preservation of Property | Included |
| Property in Transit | $25,000 |
| Property off Premises | $25,000 |
| Sewer Backup | $50,000 |
| Valuable Papers | $100,000 |
| Wind Driven Rain | Not Included |



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

### Section 2: Our Limit of Insurance – Limits of Liability

The Limit of Liability or Amount of Insurance shown in the Declarations, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined.  Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.  This policy will not pay more than the limit of insurance listed below in any one occurrence, whether from a single or multiple covered Cause(s) of Loss.

1.  Limit of Liability, Any One Occurrence:       1.  $32,954,774

### Section 3:  Deductibles

| As respects Named Storm: | 3% | Per Occurrence, By Building |
|---|---|---|

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| Minimum Deductible, as respects Named Storm: | $25,000 | Per Occurrence, By Policy |
|---|---|---|

This policy includes a minimum deductible equal to the amount listed for the peril listed.

| As respects All Other Wind and Hail: | $50,000 | Per Occurrence, By Policy |
|---|---|---|

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| As respects All Other Perils: | $10,000 | Per Occurrence, By Policy |
|---|---|---|

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR NAMED STORM OR WIND/HAIL LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU. THE ENCLOSED EXAMPLE ILLUSTRATES HOW THE DEDUCTIBLE MIGHT AFFECT YOU.**

STATEMENT OF VALUES

| Total Stated Values Under Policy | | | | Lines of Coverage | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Building(s) | Business Personal Property | Tenant Improvement and Betterments | Business Income and Extra Expense | Additional Property Coverage | Total Values | Distance to Coast (mi.) | Flood Zone |
| **Tanglegrove** | | | | 31,333,875 | - | - | - | 1,620,899 | 32,954,774 | | |
| Loc # | Bldg # | # of Bldgs | Description | | | | | | | | |
| 1 | 1 | 1 | 1110 FOUNTAIN VIEW | 1,352,475 | - | - | - | | 1,352,475 | 23.72 | X |
| 1 | 2 | 1 | 1132 FOUNTAIN VIEW | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 3 | 1 | 1134 FOUNTAIN VIWE | 1,224,900 | - | - | - | | 1,224,900 | 23.72 | X |
| 1 | 4 | 1 | 1228 FOUNTAIN VIEW | 684,000 | - | - | - | | 684,000 | 23.72 | X |
| 1 | 5 | 1 | 1238 FOUNTAIN VIEW | 678,075 | - | - | - | | 678,075 | 23.72 | X |
| 1 | 6 | 1 | 1248 FOUNTAIN VIEW | 1,348,950 | - | - | - | | 1,348,950 | 23.72 | X |
| 1 | 7 | 1 | 5912 VALLEY FORGE | 544,575 | - | - | - | | 544,575 | 23.72 | X |
| 1 | 8 | 1 | 5902 VALLEY FORGE | 699,225 | - | - | - | | 699,225 | 23.72 | X |
| 1 | 9 | 1 | 1202 FOUNTAIN VIEW | 1,216,725 | - | - | - | | 1,216,725 | 23.72 | X |
| 1 | 10 | 1 | 1144 FOUNTAIN VIEW | 552,075 | - | - | - | | 552,075 | 23.72 | X |
| 1 | 11 | 1 | 5911 SUGAR HILL | 558,300 | - | - | - | | 558,300 | 23.72 | X |
| 1 | 12 | 1 | 5901 SUGAR HILL | 682,650 | - | - | - | | 682,650 | 23.72 | X |
| 1 | 13 | 1 | 5885 SUGAR HILL | 1,135,875 | - | - | - | | 1,135,875 | 23.72 | X |
| 1 | 14 | 1 | 1115 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 15 | 1 | 5871 SUGAR HILL | 964,425 | - | - | - | | 964,425 | 23.72 | X |
| 1 | 16 | 1 | 5840 LYNBROOK | 1,060,425 | - | - | - | | 1,060,425 | 23.72 | X |
| 1 | 17 | 1 | 5816 LYNBROOK | 796,950 | - | - | - | | 796,950 | 23.72 | X |
| 1 | 18 | 1 | 5833 SUGAR HILL | 878,475 | - | - | - | | 878,475 | 23.72 | X |
| 1 | 19 | 1 | 5857 SUGAR HILL | 971,475 | - | - | - | | 971,475 | 23.72 | X |
| 1 | 20 | 1 | 5845 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 21 | 1 | 5853 SUGAR HILL | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 22 | 1 | 5847 LYNBROOK | 115,350 | - | - | - | | 115,350 | 23.72 | X |
| 1 | 23 | 1 | 5847 LYNBROOK | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 24 | 1 | 1203 FOUNTAIN VIEW | 1,078,425 | - | - | - | | 1,078,425 | 23.72 | X |
| 1 | 25 | 1 | 5815 LYNBROOK | 809,250 | - | - | - | | 809,250 | 23.72 | X |
| 1 | 26 | 1 | 1221 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 27 | 1 | 5862 VALLEY FORGE | 951,900 | - | - | - | | 951,900 | 23.72 | X |
| 1 | 28 | 1 | 5876 VALLEY FORGE | 1,086,375 | - | - | - | | 1,086,375 | 23.72 | X |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 29 | 1 | 5858 VALLEY FORGE | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 30 | 1 | 5848 VALLEY FORGE | 665,550 | - | - | - | | 665,550 | 23.72 | X |
| 1 | 31 | 1 | 5842 VALLEY FORGE | 391,650 | - | - | - | | 391,650 | 23.72 | X |
| 1 | 32 | 1 | 5828 VALLEY FORGE | 932,850 | - | - | - | | 932,850 | 23.72 | X |
| 1 | 33 | 1 | 5802 VALLEY FORGE | 1,099,725 | - | - | - | | 1,099,725 | 23.72 | X |
| 1 | 34 | 1 | 5818 VALLEY FORGE | 669,600 | - | - | - | | 669,600 | 23.72 | X |
| 1 | 35 | 1 | 5801 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 36 | 1 | 5802 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 37 | 1 | 5825 SUGAR HILL | 580,050 | - | - | - | | 580,050 | 23.72 | X |
| 1 | 38 | 1 | 5817 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 39 | 1 | 5801 SUGAR HILL | 1,098,675 | - | - | - | | 1,098,675 | 23.72 | X |
| | | APC1 | Fountain View (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC2 | Lynbrook (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC3 | Pool Areas & Other - Iron Fencing | | | | | 20,000 | 20,000 | | |
| | | APC4 | Brick Fencing | | | | | 160,000 | 160,000 | | |
| | | APC5 | Wooden Fencing | | | | | 50,000 | 50,000 | | |
| | | APC6 | Vehicle Carports | | | | | 1,290,899 | 1,290,899 | | |

12/14/2022 3:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71021177
By: Derrick Abram
Filed: 12/14/2022 3:51 PM

# 2022-81096 / Court: 61

CAUSE NO. _____

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | _____ JUDICIAL DISTRICT |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, TANGLEGROVE TH CONDO ASSOCIATION, files this Original Petition against JOURNEY INSURANCE COMPANY (referred to herein as "UPC") and STANLEY GLENN CULPEPPER (referred to herein as "Culpepper") and in support thereof would show as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

## PARTIES AND SERVICE

2.    Plaintiff is doing business in Harris County, Texas.

3.    UPC is in the business of insurance in the State of Texas. The insurance business done by UPC in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

1

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

4.     Defendant, **Journey Insurance Company**, may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 via certified mail.

5.     Defendant, **Stanley Glenn Culpepper**, is a Texas resident and may be served at his business address at 2005 Camelot Drive, Grapevine, Texas 76051 by certified mail, return receipt requested. **Service is requested at this time.**

## JURISDICTION AND VENUE

6.     Venue is appropriate in Harris County, Texas because all or part of the conduct giving rise to the causes of action were committed in Harris County, Texas and Plaintiff and property which is the subject of this suit are located in Harris County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## BACKGROUND FACTS

7.     Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"), which was issued by UPC. Plaintiff owns the insured Property which is located in Houston, Texas 77057 and listed specifically in Exhibit A (hereinafter collectively referred to as "the Property"). UPC sold the Policy insuring the Property to Plaintiff.

8.     UPC conducted an initial inspection of Plaintiff's Property in connection with promulgating the Policy and charged Plaintiff $450.00 for the inspection. Plaintiff's premium totaled over $150,000.00. The inspection sufficed such that UPC accepted coverage of the Property and Plaintiff's premium payment.

9.     During the terms of said Policy, Plaintiff's Property sustained covered losses

2

when a hail/windstorm damaged the Property, and Plaintiff timely reported same to UPC pursuant to the terms of the Policy. Plaintiff asked that UPC cover the cost of repairs to the Property pursuant to the Policy. UPC engaged Culpepper to adjust the claim and investigate the damages. Culpepper failed to conduct a full, fair and reasonable investigation of Plaintiff's covered damages. In fact, as discussed below, Culpepper prepared an estimate which vastly under-scoped the damage done to Plaintiff's Property. UPC and Culpepper have kept and have in their possession a claim file which details the Plaintiff's claim and their investigation, adjustment and subsequent underpayment of the claim.

10.     After UPC denied any coverage and payment, Plaintiff hired a public adjuster ("PA") in an attempt to get its claim paid and avoid litigation. The PA requested UPC's reports, photos and other information in an effort to determine if the parties could come to an agreement about the damages to Plaintiff's property, but UPC refused to provide all of the requested information and documents, including photos and inspection reports, claiming they are "work product."

11.     Thereafter, UPC hired two engineers from Colorado to "inspect" for hail and wind damage. On information and belief, UPC hired these engineers despite Texas having hundreds of qualified engineers who are experienced with hail/wind damages because it knew they would provide opinions that supported UPC's initial denial of the claim. In fact, that is what they did. UPC's engineer reports were not prepared in good faith, and UPC did not reasonably rely on unbiased experts. Instead, it chose experts it knew would support the denial. These engineers admitted, thus UPC knew, that they did not utilize any weather data to come to their opinions even though the size of hail and speed of wind is always a factor in determining damage to building materials. Furthermore, these engineers admitted, thus UPC knew, that they ignored any other

3

reports of others in coming to their opinions. Thus, they improperly failed to consider all of the evidence in coming to their opinions. This was clearly an outcome-oriented investigation which was wholly unreasonable, and UPC knew it but relied on these experts anyway.

12.     Plaintiff's PA provide UPC a 600+ page report complete with weather data, expert reports, including a Texas engineer's opinions, and photographic evidence proving that Plaintiff's Property had suffered hail and wind damage during the Policy period. However, UPC and Culpepper ignored the documents and photos and refused to consider their veracity. The PA also requested that UPC and Culpepper provide the basis for ignoring the Texas engineer's report, weather data and other information provided to them, but no response was given other than Defendants would rely on their out-of-state engineers.

13.     As detailed in the paragraphs below, UPC and Culpepper failed to fully investigate and adjust all damages associated with the loss, and UPC wrongfully denied Plaintiff's claim for full repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, UPC delayed and continues to delay in the payment for all of the covered damages to the Property.

## COUNT I
## BREACH OF CONTRACT FOR FAILURE TO INVESTIGATE AND AFFORD COVERAGE

14.     Plaintiff was entitled to benefits under the Policy for the losses described herein, and UPC was obligated to pay the Plaintiff's claims for the subject losses. UPC failed to perform its contractual duty to adequately compensate Plaintiff under the terms of its Policy as detailed by numerous violations outlined in paragraphs 7-12. UPC refused to pay the full proceeds of the Policy after delaying and conducting an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by

Plaintiff. All conditions precedent to filing this lawsuit have been carried out and accomplished by Plaintiff or there was insufficient time before limitations would expire.

15.     Plaintiff is covered under the Policy and renewal Policy for all claims asserted against UPC. UPC's failure and/or refusal, as described above, to pay Plaintiff adequate policy benefits as it is obligated to do under the terms of the Policy in question, and under the law, constitutes a breach of the insurance contract with Plaintiff.

16.     As a result of UPC's breach of contract, Plaintiff was damaged financially. Plaintiff has incurred and will continue to incur substantial attorneys' fees, court costs, claim expenses and other expenses in the bringing of this action. UPC is obligated to pay all claims, litigation costs, attorney fees, consequential damages and any judgment or settlement money for Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory, incidental and consequential damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs. For the prosecution and collection of these claims, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

### COUNT II
### VIOLATIONS OF CHAPTER 541.060(a)(7) OF THE TEXAS INSURANCE CODE

17.     Under Section 541.060(a)(7), it is a violation if a carrier refuses to pay a claim without conducting a reasonable investigation with respect to the claim. This provision of the Insurance Code can be violated negligently or intentionally – it is typically within the purview of the jury to decide which. *See* TEX. INS. CODE Sec. 541.152(b) (on a finding by the trier of fact that the defendant knowingly committed the act complained of the trier of fact may award an amount

not to exceed three times the amount of actual damages.) Violations of Chapter 541 follow a "producing" causation burden of proof, not "proximate" causation. Further, if the jury finds that the policy entitles the insured to receive policy benefits and that the insurer's statutory violation resulted in the insured not receiving those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). The Fifth Circuit and lower federal courts have held that adjusters' direct actions are the most relevant factors in determining insurance code liability, and this holds true irrespective of whether such individual is actually employed by the insurer or merely acting as an independent contractor.[1]

18.    As set forth and detailed above in paragraphs 7-12, UPC's conduct constitutes violations of Section 541.060(a)(7) for failure to conduct a reasonable investigaton of Plaintiff's claims. Texas law specifically recognizes that conducting an outcome-oriented investigation and/or relying on biased experts can be evidence of bad faith.[2]

19.    As a result of UPC's violations of Section 541.060(a)(7) of the Texas Insurance Code, Plaintiff has been denied its rightful recovery under the Policy, and Plaintiff has been required to retain the undersigned counsel to prosecute this action in order to recover the proceeds of the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the

---

[1] *See, e.g., Garza v. Geovera*, No. 13-CV-525, 2014 WL 66830, at *2 (S.D. Tex. Jan 18, 2014); *Rocha v. Geovera Specialty Insurance Co.*, No. 13-CV-0589, 2014 WL 68648, at *2 (S.D. Tex. Jan. 8, 2014); see also *Gasch v. Hartford Indem. Co.*, 491 F.3d, 278, 282 (5th Cir. 2007).

[2] *See, e.g., UPC v. Simmons*, 963 S.W.2d 42 (Tex. 1998); *UPC Lloyds v. Nicolau*, 951 S.W.2d 444 (Tex. 1997)

jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT III**
**VIOLATIONS OF CHAPTER 541.060(a)(2) OF THE TEXAS INSURANCE CODE**

20.      Under Section 541.060(a)(2), it is a violation for a carrier to fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when its liability has become reasonably clear. Whether liability was reasonably clear is also typically within the purview of the jury to decide. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).

21.      UPC's conduct as set forth in paragraphs 7-12 above constitutes conduct that also violates Section 541.060(a)(2). Defendant's liability was reasonably clear from its first inspection of the Property. UPC inspected these obvious damages and yet refused to pay any policy benefits. To date, Defendant has still not effectuated a settlement of the claims. Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT IV**
**VIOLATIONS OF CHAPTER 541.060(a)(4)(A) OF THE TEXAS INSURANCE CODE**

22.      Under Section 541.060(a)(4)(A), it is a violation to refuse to affirm or deny coverage within a reasonable time. This provision of the Insurance Code can be violated

7

negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).  As set forth above in paragraphs 7-12, UPC failed to timely accept Plaintiff's claim for coverage under the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages)  for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

COUNT V
VIOLATIONS OF CHAPTER 541.060(a)(3) OF THE TEXAS INSURANCE CODE

23.    Under Section 541.060(a)(3), it is a violation to fail to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims.

24.    As set forth above in paragraphs 7-12, UPC wholly failed to provide Plaintiff with a *reasonable* explanation for its denial of payment. Further, given that Defendant ignored evidence from the PA and manipulated evidence in a manner to support its denial of payment, its explanation for its denial is not reasonable.   Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

COUNT VI
VIOLATIONS OF CHAPTER 541.060(a)(1) OF THE TEXAS INSURANCE CODE

8

26.     Under Section 541.060(a)(1), it is a violation to misrepresent one or more material facts and/or policy provisions relating to coverage. The allegations in paragraphs 7-12 above support Plaintiff's claims under Section 541.060(a)(1). Misrepresentations constitute a knowing/intentional violation of this Section.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT VII
### VIOLATIONS OF CHAPTER 542.055 OF THE TEXAS INSURANCE CODE

27.     As alleged in paragraphs 7-12 above, UPC failed to meet its obligations under the Texas Insurance Code Chapter 542.055 because it failed to timely acknowledge Plaintiff's claims, begin a reasonable investigation of Plaintiff's claims, and request all information reasonably necessary to investigate Plaintiff's claims within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC also failed to timely pay the claim.

28.     Texas' Chapter 542 Prompt Payment of Claims Act is a strict liability standard statute.[3] The statute requires only liability under the policy and a failure to comply with the timing requirements of the Act. There is no question that the Policy covers hail and wind damage; however, after years of delay, no payment has been issued. Defendant clearly failed to comply with the time requirements of the statute.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages

---

[3] *Agredano v. UPC Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020)

9

and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT VIII
### VIOLATIONS OF CHAPTER 542.056 OF THE TEXAS INSURANCE CODE

28.    Under Section 542.056, the insurer must notify the claimant in writing that it accepts or rejects the claim within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC failed to accept or deny Plaintiff's full and entire claims within the statutorily mandated time of receiving all necessary information as alleged above. These actions by UPC alleged in paragraphs 7-12 above constitute violations of Chapter 542.056 of the Texas Insurance Code.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT IX
### VIOLATIONS OF CHAPTER 542.057 OF THE TEXAS INSURANCE CODE

29.    It is a violation of Section 542.057 for a carrier to fail to timely pay a claim. As described above in paragraphs 7-12, UPC did not promptly pay undisputed claim benefits it knew were owed. As well, to date, Defendant has still failed to pay covered benefits as alleged above.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of

10

such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

## COUNT X
### VIOLATIONS OF CHAPTER 542.058 OF THE TEXAS INSURANCE CODE

30.     It is a violation of Section 542.058 if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, a carrier delays payment of the claim for a period exceeding for more than 60 days. UPC has had Plaintiff's determination of the damages caused by hail and windstorm since early 2022. To date, Defendant has payed nothing on Plaintiff's claims. Thus, Defendant has violated Section 542.058 by delaying payment of claims beyond 60 days.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

## COUNT XI
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31.     From and after the time Plaintiff's claim was presented to UPC, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment.

11

32.    UPC's liability was reasonably clear from its first inspection of the Property. Defendant inspected these damages and yet delayed in paying even the policy benefits. To date, Defendant has still not effectuated a settlement of the claims.

33.    Further, UPC's failure, as described in paragraphs 6-8 above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory damages, including all forms of loss resulting from the Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Defendant owed, and exemplary damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with interest and costs.

## CAUSES OF ACTION AGAINST DEFENDANT CULPEPPER

**A.    NONCOMPLIANCE WITH TEXAS INSURANCE CODE**

34.    Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, Culpepper was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Culpepper and his agents constitute one or more violations of the Texas Insurance Code. More specifically, Culpepper has, among other violations, violated the following provisions of the Code:

1.    Insurance Code § 542.003(b)(5).

2.    Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

12

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim;

- refusing to affirm or deny coverage within a reasonable time;

- refusing to conduct a reasonable investigation;

- hiring biased experts;

- ignoring damage known to be covered by the Policy; and/or

- conducting an outcome-oriented investigation in order to provide UPC with a basis to underpay the claim.

35.     The foregoing paragraphs are incorporated herein. UPC assigned the loss and the claim to Culpepper. Culpepper was at all pertinent times the agent of UPC, through both actual and apparent authority. The acts, representations and omissions of Culpepper are also attributed to UPC.

36.     Culpepper was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's loss, including determining the cause of and then quantifying the damage to the exterior and interior of Plaintiff's Property. Culpepper was also tasked with conducting a thorough and reasonable investigation to ensure a proper scope of damages. Rather than conducting such an inspection, Culpepper failed and refused to even look at all of the covered damages to Plaintiff's Property. Culpepper was provided an engineer report, photos, weather data and other evidence of the widespread hail and wind damage to Plaintiff's Property, but he ignored them. On information and belief, Culpepper actually photographed much of the damage identified by Plaintiff's engineer and PA but redacted his actual findings from his photo arrays in an attempt to support the denial of the claim. There is no legitimate basis for Culpepper to hide his findings (and the dates of his photos) unless he is purposefully concealing the obvious damages to

13

Plaintiff's Property.

37.     Further, Culpepper had the underwriting report for Plaintiff's Property completed just about five months before the storm that caused the damages; yet, Culpepper wrongfully reported to UPC that the Plaintiff's roofs were damaged by severe wear and tear and deterioration – neither of which was reported in the underwriting report that UPC used to promulgate the coverage for Plaintiff's Property. On information and belief, Culpepper initially dismissed the claim as finding no hail or wind damage after actually photographing hail and wind damage in October 2021. Culpepper's photo array, even with the redacted descriptions, clearly show hail and wind damage. Then, when confronted with the evidence from the PA, Culpepper wrote an estimate in March of 2022 again reporting to UPC no "storm" damage to Plaintiff's Property.

38.     Thereafter, despite multiple requests for a reinspection and requests for photos, UPC and Culpepper refused. Clearly, Culpepper made misrepresentations to Plaintiff, did not conduct a thorough investigation of the claim, and his "estimate" is a misrepresentation about the damages.

39.     Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, Culpepper failed and refused to properly adjust the claim. Culpepper failed to properly inspect the Property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff and/or their agents, failed to timely evaluate the claim, failed to timely estimate the claim, and failed to timely and properly report to UPC and make recommendations to UPC to address all the covered damages. Culpepper's failure to present all of the covered damages to UPC contributed to Plaintiff's claim being underpaid.

40.     Plaintiff provided information regarding the loss and the claim to Culpepper. Plaintiff allowed him full and complete access to the Property. Plaintiff provided sufficient information when requested by Culpepper so he could fairly and reasonably adjust and evaluate the loss. Plaintiff made inquiries regarding the status of the loss and payment, but Culpepper failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.

41.     As the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about the "prompt, fair, and equitable settlement" of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based. [4] As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Culpepper's conduct caused a failure to effectuate a prompt, reasonable settlement of the claim. Moreover, one or more of the foregoing acts or omissions were committed "knowingly" entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

**CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY**

42.     Plaintiff re-alleges the foregoing paragraphs. The Defendants conspired to underpay Plaintiff's claim. UPC assigned Culpepper to investigate Plaintiff's claim, and the Defendants set out to intentionally conduct an outcome-oriented investigation in order to avoid paying for all of the damages to Plaintiff's Property covered by the Policy. The Defendants' conspiracy was a proximate cause of Plaintiff's damages.

---

[4] *See Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 U.S. Dist. LEXIS 70033, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) ("Adjusters play a role in the investigation, estimation, and settlement of insurance claims.")

15

## KNOWLEDGE

43.     Each of the acts described above paragraphs 34-41, together and singularly, was done "knowingly" by Culpepper as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

44.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

45.     For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claims, together with attorney's fees.

46.     For noncompliance with the Texas Insurance Code Chapter 541, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

47.     For noncompliance with the Texas Insurance Code Chapter 542, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claims, as well as 10% interest calculated per annum, on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

48.     For breach of the Texas common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

49.     For Civil Conspiracy, Defendants are jointly and severally liable for the damages to Plaintiff.

50.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

## ADDITIONAL PLEADINGS

51.     In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

52.     The clear and unambiguous language of the policy provides coverage for damage to the Property caused by losses made the basis of Plaintiff's claims, including the cost of access to fix the damages;

53.     Because of Defendant's material breach of the policy, Plaintiff was excused from performing on the contract following Defendant's breach.

54.     In the alternative, any other construction of the language of the policy is void as against public policy;

55.     Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

56.     Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

57.     In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

58.     In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

59.     In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein. Plaintiff further requests that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court. Pursuant to the statutory requirement, Plaintiff pleads that the damages will be more than $1,000,000. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against UPC, to which Plaintiff may be justly entitled.

Respectfully submitted,

LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone: (210) 775-1424
Electronic Mail: shannon@lp-lawfirm.com

BY: _____
        SHANNON E. LOYD
        State Bar No. 24045706

        ATTORNEY FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

18

7019 0140 0000 5912 9596 - Tracking #

CAUSE NO. 202281096

RECEIPT NO. 950314                    75.00

********                    TR # 7  66

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION                In The   61st
        vs.                                              Judicial Dis    Court
DEFENDANT: JOURNEY INSURANCE COMPANY                     of Harris  , Texas
                                                         61ST DIST     OURT
                                                         Houston

                        CITATION (CERTIFIED)

THE STATE OF TEXAS                                                    P.2
County of Harris

TO: CULPEPPER, STANLEY GLENN

    2005 CAMELOT DRIVE   GRAPEVINE  TX  76051

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 14th day of Decem    2022, in the above cited cause number
and court. The instrument attached describes the    im against you.

    YOU HAVE BEEN SUED, You may employ an att    ey. If you or your attorney do not file a
written answer with the District Clerk who i    d this citation by 10:00 a.m on the Monday
next following the expiration of 20 days af    you were served this citation and petition,
a default judgment may be taken against yo    n addition to filing a written answer with the
clerk, you may be required to make initia    closures to the other parties of this suit. These
disclosures generally must be made no la    han 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.or

TO OFFICER SERVING:
    This citation was issued on 16t    y of December, 2022, under my hand and
seal of said Court.



                                        MARILYN BURGESS, District Clerk
Issued at request of:                   Harris County, Texas
LOYD, SHANNON ELIZABETH                 201 Caroline, Houston, Texas 77002
12703 SPECTRUM DRIVE, SUITE             (P.O. Box 4651, Houston, Texas 77210)
SAN ANTONIO, TX 78249
Tel: (210) 775-1424
Bar No.: 24045706                       Generated By: ABRAM, DERRICK ANDRE
                                        7OH//12173176

                        CLERK'S RETURN BY MAILING

Came to hand the ____ ___ay of _____, _____, and executed by
mailing to Defendant     fied mail, return receipt requested, restricted delivery, a true
copy of this        ion together with an attached copy of
PLAINTIFF'S ORIGI    TITION
to the following      ssee at address:

_____                       ADDRESS
_____                       _____
                                        Service was executed in accordance with Rule 106
_____                       (2) TRCP, upon the Defendant as evidenced by the
(a) ADDRESSE                                return receipt incorporated herein and attached
                                           hereto at

                                        _____
                                        on ____ day of _____, _____
                                        by U.S. Postal delivery to _____
                                        _____

                                        This citation was not executed for the following
                                        reason: _____
                                        _____

                                        MARILYN BURGESS, District Clerk
                                        Harris County, TEXAS

                                        By _____, Deputy

N.INT.CITM.P            *74090266*      RECORDER'S MEMORANDUM
                                        This instrument is of poor quality
                                        at the time of imaging.

7019  0140  0000  5912  9596 - Tracking #

CAUSE NO.   202281096

RECEIPT NO.   950314                    75.00        CTM
**********                              TR # 74090266

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION          In The    61st
          vs.                                        Judicial District Court
DEFENDANT: JOURNEY INSURANCE COMPANY                 of Harris County, Texas
                                                     61ST DISTRICT COURT
                                                     Houston, TX

                        CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris

TO: CULPEPPER, STANLEY GLENN

    2005 CAMELOT DRIVE   GRAPEVINE TX 76051

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 14th day of December, 2022, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
    This citation was issued on 16th day of December, 2022, under my hand and
seal of said Court.



Issued at request of:                    MARILYN BURGESS, District Clerk
LOYD, SHANNON ELIZABETH                  Harris County, Texas
12703  SPECTRUM DRIVE, SUITE 201         201 Caroline, Houston, Texas 77002
SAN ANTONIO, TX  78249                   (P.O. Box 4651, Houston, Texas 77210)
Tel: (210) 775-1424
Bar No.: 24045706
                                         Generated By: ABRAM, DERRICK ANDRE
                                         7OH//12173176

                        CLERK'S RETURN BY MAILING
Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____         ADDRESS

_____         Service was executed in accordance with Rule 106
(a)ADDRESSEE                             (2) TRCP, upon the Defendant as evidenced by the
                                             return receipt incorporated herein and attached
_____             hereto at

                                         on _____ day of _____, _____
                                         by U.S. Postal delivery to _____

                                         This citation was not executed for the following
                                         reason: _____
                                         _____

                                         MARILYN BURGESS, District Clerk
                                         Harris County, TEXAS

                                         By _____, Deputy

N.INT.CITM.P                    *74090266*

2022-81096
2022-81096



12·20·22

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.



12/20/2022 11:17 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71169162
By: Monica Jackson
Filed: 12/20/2022 11:17 AM

# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 202281096　　　　　　　　**CURRENT COURT:** 61st Civil District Court

**Name(s) of Documents to be served:** Plaintiff's Original Petition

**FILE DATE:** 12/14/2022　　　　Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Journey Insurance Company

**Address of Service:** CT Corporation System, 1999 Bryan Street, Suite 900

**City, State & Zip:** Dallas, Texas 75201

**Agent (if applicable)** _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [ ] **Citation**　　[ ] **Citation by Posting**　　[ ] **Citation by Publication**　　[ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**　　**Newspaper** _____
- [ ] **Temporary Restraining Order**　　[ ] **Precept**　　[ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**　　[ ] **Capias** (not by E-Issuance)　　[ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**　　[ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**　　[ ] **Hague Convention ($16.00)**　　[ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)　　[ ] **Injunction**　　[ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____　　[ ] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:** _____　　**(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**　　*Note*: The email registered with EfileTexas.gov must be
- [x] **CERTIFIED MAIL by District Clerk**　　used to retrieve the E-Issuance Service Documents.
　　　　　　　　　　　　　　　　　　　　Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____　Phone: _____

- [ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Shannon E. Loyd　　Bar # or ID　24045706

**Mailing Address:** 12703 Spectrum Dr., Suite 201, San Antonio, Texas 78249

**Phone Number:** 210-775-1424

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Alison Kelly on behalf of Shannon Loyd
Bar No. 24045706
alison@theloydlawfirm.com
Envelope ID: 71169162
Status as of 12/20/2022 11:23 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 12/20/2022 11:17:27 AM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 12/20/2022 11:17:27 AM | SENT |

**7019 2970 0001 3507 5547**

*P.2*

CAUSE NO.  202281096

RECEIPT NO.  971254          75.00      CTM

********               TR # 74091376

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION          In The    61st
                    vs.                              Judicial District Court
DEFENDANT: JOURNEY INSURANCE COMPANY                 of Harris County, Texas
                                                     61ST DISTRICT COURT
                                                     Houston, TX

CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris


TO: JOURNEY INSURANCE COMPANY MAY BE SERVED THROUGH ITS REGISTERED
    AGENT CT CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900   DALLAS  TX  75201

    Attached is a certified copy of PLAINTIFF'S ORIGINAL PETITION


This instrument was filed on the 14th day of December, 2022, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
    This citation was issued on 21st day of December, 2022, under my hand and
seal of said Court.


Issued at request of:
LOYD, SHANNON ELIZABETH                      MARILYN BURGESS, District Clerk
12703  SPECTRUM DRIVE, SUITE 201             Harris County, Texas
SAN ANTONIO, TX  78249                       201 Caroline, Houston, Texas 77002
Tel: (210) 775-1424                          (P.O. Box 4651, Houston, Texas 77210)
Bar No.: 24045706
                                             Generated By: JACKSON, MONICA  I8V//12177177

CLERK'S RETURN BY MAILING
Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy of this citation together with an attached copy of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:


_____      _____
                                       ADDRESS

_____      Service was executed in accordance with Rule 106
(a) ADDRESSEE                             (2) TRCP, upon the Defendant as evidenced by the
                                         return receipt incorporated herein and attached
_____        hereto at

                                       on _____ day of _____, _____
                                       by U.S. Postal delivery to _____

                                       _____

                                       This citation was not executed for the following
                                       reason: _____
                                       _____

                                       MARILYN BURGESS, District Clerk
                                       Harris County, TEXAS

                                       By _____, Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

N.INT.CITM.P                    *74091376*

**7019 2970 0001 3507 5547**

CAUSE NO.  202281096

RECEIPT NO.  971254          75.00    CTM

**********       TR # 74091376

| | |
|---|---|
| PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION<br>vs.<br>DEFENDANT: JOURNEY INSURANCE COMPANY | In The   61st<br>Judicial District Court<br>of Harris County, Texas<br>61ST DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: JOURNEY INSURANCE COMPANY MAY BE SERVED THROUGH ITS REGISTERED
AGENT CT CORPORATION SYSTEM

1999  BRYAN STREET SUITE 900   DALLAS  TX  75201

Attached is a certified copy of PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on the 14th day of December, 2022, in the above cited cause number
and court. The instrument attached describes the claim against you.

YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
This citation was issued on 21st day of December, 2022, under my hand and
seal of said Court.

Issued at request of:
LOYD, SHANNON ELIZABETH
12703  SPECTRUM DRIVE, SUITE 201
SAN ANTONIO, TX  78249
Tel: (210) 775-1424
Bar No.: 24045706

*[signature]* Marilyn Burgess

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: JACKSON, MONICA  I8V//12177177

---

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____   ADDRESS

_____   Service was executed in accordance with Rule 106
(a) ADDRESSEE                 (2) TRCP, upon the Defendant as evidenced by the
                                     return receipt incorporated herein and attached
_____   hereto at

on _____ day of _____, _____
by U.S. Postal delivery to _____

This citation was not executed for the following
reason: _____

MARILYN BURGESS, District Clerk
Harris County, TEXAS

By _____, Deputy

N.INT.CITM.P                        *74091376*



12-29-22

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging.

1/9/2023 1:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71609914
By: Monica Jackson
Filed: 1/9/2023 1:53 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 202281096    **CURRENT COURT:** 61st Civil District Court

**Name(s) of Documents to be served:** Plaintiff's First Amended Original Petition

**FILE DATE:** 1/9/2023     Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Journey Insurance Company

Address of Service: 333 Guadalupe

City, State & Zip: Austin, Texas 78701

Agent (if applicable) Cassie Brown, Commissioner of Insurance Texas Department of Insurance

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- ☐ **Citation**  ☐ **Citation by Posting**  ☐ **Citation by Publication**  ☐ **Citations Rule 106 Service**
- ☐ **Citation Scire Facias**  **Newspaper**_____
- ☐ **Temporary Restraining Order**  ☐ **Precept**  ☐ **Notice**
- ☐ **Protective Order**
- ☐ **Secretary of State Citation ($12.00)**  ☐ **Capias** (not by E-Issuance)  ☐ **Attachment** (not by E-Issuance)
- ☐ **Certiorari**  ☐ **Highway Commission/Texas Department of Transportation ($12.00)**
- ☑ **Commissioner of Insurance ($12.00)**  ☐ **Hague Convention ($16.00)**  ☐ **Garnishment**
- ☐ **Habeas Corpus** (not by E-Issuance)  ☐ **Injunction**  ☐ **Sequestration**
- ☐ **Subpoena**
- ☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- ☐ **ATTORNEY PICK-UP (phone)** _____  ☐ **E-Issuance by District Clerk**
- ☐ **MAIL to attorney at:** _____  **(No Service Copy Fees Charged)**
- ☐ **CONSTABLE**  *Note*: The email registered with EfileTexas.gov must be
- ☑ **CERTIFIED MAIL by District Clerk**  used to retrieve the E-Issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.
- ☐ **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____  Phone: _____
- ☐ **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Shannon E. Loyd   Bar # or ID 24045706

Mailing Address: 12703 Spectrum Dr., Suite 201, San Antonio, Texas 78249

Phone Number: 210-775-1424

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alison Kelly on behalf of Shannon Loyd
Bar No. 24045706
alison@theloydlawfirm.com
Envelope ID: 71609914
Status as of 1/9/2023 1:57 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alison Kelly | | alison@lp-lawfirm.com | 1/9/2023 1:53:24 PM | SENT |
| Shannon Loyd | | shannon@lp-lawfirm.com | 1/9/2023 1:53:24 PM | SENT |

1/9/2023 1:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71609914
By: Monica Jackson
Filed: 1/9/2023 1:53 PM

CAUSE NO. 2022-81096

| | |
|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION§ | IN THE DISTRICT COURT |
| § | |
| V. § | 61st JUDICIAL DISTRICT |
| § | |
| JOURNEY INSURANCE COMPANY AND § | |
| STANLEY GLENN CULPEPPER § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, TANGLEGROVE TH CONDO ASSOCIATION, files this First Amended Original Petition against JOURNEY INSURANCE COMPANY (referred to herein as "UPC") and STANLEY GLENN CULPEPPER (referred to herein as "Culpepper") and in support thereof would show as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

## PARTIES AND SERVICE

2.      Plaintiff is doing business in Harris County, Texas.

3.      UPC is in the business of insurance in the State of Texas. The insurance business done by UPC in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

4.     Defendant, **Journey Insurance Company**, may be served at (CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 (per the Policy)) by serving the Texas Department of Insurance:

> Cassie Brown
> Commissioner of Insurance
> Texas Department of Insurance
> 333 Guadalupe
> Austin, Texas 78701

by certified mail, return receipt requested.  **Service is requested at this time.**

5.     Defendant, **Stanley Glenn Culpepper**, is a Texas resident and may be served at his business address at 2005 Camelot Drive, Grapevine, Texas 76051 by certified mail, return receipt requested.

## JURISDICTION AND VENUE

6.     Venue is appropriate in Harris County, Texas because all or part of the conduct giving rise to the causes of action were committed in Harris County, Texas and Plaintiff and property which is the subject of this suit are located in Harris County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## BACKGROUND FACTS

7.     Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"), which was issued by UPC. Plaintiff owns the insured Property which is located in Houston, Texas 77057 and listed specifically in Exhibit A (hereinafter collectively referred to as "the Property"). UPC sold the Policy insuring the Property to Plaintiff.

8.      UPC conducted an initial inspection of Plaintiff's Property in connection with promulgating the Policy and charged Plaintiff $450.00 for the inspection. Plaintiff's premium totaled over $150,000.00. The inspection sufficed such that UPC accepted coverage of the Property and Plaintiff's premium payment.

9.      During the terms of said Policy, Plaintiff's Property sustained covered losses when a hail/windstorm damaged the Property, and Plaintiff timely reported same to UPC pursuant to the terms of the Policy. Plaintiff asked that UPC cover the cost of repairs to the Property pursuant to the Policy. UPC engaged Culpepper to adjust the claim and investigate the damages. Culpepper failed to conduct a full, fair and reasonable investigation of Plaintiff's covered damages. In fact, as discussed below, Culpepper prepared an estimate which vastly under-scoped the damage done to Plaintiff's Property. UPC and Culpepper have kept and have in their possession a claim file which details the Plaintiff's claim and their investigation, adjustment and subsequent underpayment of the claim.

10.      After UPC denied any coverage and payment, Plaintiff hired a public adjuster ("PA") in an attempt to get its claim paid and avoid litigation. The PA requested UPC's reports, photos and other information in an effort to determine if the parties could come to an agreement about the damages to Plaintiff's property, but UPC refused to provide all of the requested information and documents, including photos and inspection reports, claiming they are "work product."

11.      Thereafter, UPC hired two engineers from Colorado to "inspect" for hail and wind damage. On information and belief, UPC hired these engineers despite Texas having hundreds of qualified engineers who are experienced with hail/wind damages because it knew they would provide opinions that supported UPC's initial denial of the claim. In fact, that is what they did.

UPC's engineer reports were not prepared in good faith, and UPC did not reasonably rely on unbiased experts. Instead, it chose experts it knew would support the denial. These engineers admitted, thus UPC knew, that they did not utilize any weather data to come to their opinions even though the size of hail and speed of wind is always a factor in determining damage to building materials. Furthermore, these engineers admitted, thus UPC knew, that they ignored any other reports of others in coming to their opinions. Thus, they improperly failed to consider all of the evidence in coming to their opinions. This was clearly an outcome-oriented investigation which was wholly unreasonable, and UPC knew it but relied on these experts anyway.

12.    Plaintiff's PA provide UPC a 600+ page report complete with weather data, expert reports, including a Texas engineer's opinions, and photographic evidence proving that Plaintiff's Property had suffered hail and wind damage during the Policy period. However, UPC and Culpepper ignored the documents and photos and refused to consider their veracity. The PA also requested that UPC and Culpepper provide the basis for ignoring the Texas engineer's report, weather data and other information provided to them, but no response was given other than Defendants would rely on their out-of-state engineers.

13.    As detailed in the paragraphs below, UPC and Culpepper failed to fully investigate and adjust all damages associated with the loss, and UPC wrongfully denied Plaintiff's claim for full repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, UPC delayed and continues to delay in the payment for all of the covered damages to the Property.

### COUNT I
### BREACH OF CONTRACT FOR FAILURE TO INVESTIGATE AND AFFORD COVERAGE

14.    Plaintiff was entitled to benefits under the Policy for the losses described herein, and UPC was obligated to pay the Plaintiff's claims for the subject losses. UPC failed to perform

its contractual duty to adequately compensate Plaintiff under the terms of its Policy as detailed by numerous violations outlined in paragraphs 7-12. UPC refused to pay the full proceeds of the Policy after delaying and conducting an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. All conditions precedent to filing this lawsuit have been carried out and accomplished by Plaintiff or there was insufficient time before limitations would expire.

15.     Plaintiff is covered under the Policy and renewal Policy for all claims asserted against UPC. UPC's failure and/or refusal, as described above, to pay Plaintiff adequate policy benefits as it is obligated to do under the terms of the Policy in question, and under the law, constitutes a breach of the insurance contract with Plaintiff.

16.     As a result of UPC's breach of contract, Plaintiff was damaged financially. Plaintiff has incurred and will continue to incur substantial attorneys' fees, court costs, claim expenses and other expenses in the bringing of this action. UPC is obligated to pay all claims, litigation costs, attorney fees, consequential damages and any judgment or settlement money for Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory, incidental and consequential damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs. For the prosecution and collection of these claims, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

### COUNT II
### VIOLATIONS OF CHAPTER 541.060(a)(7) OF THE TEXAS INSURANCE CODE

17.     Under Section 541.060(a)(7), it is a violation if a carrier refuses to pay a claim without conducting a reasonable investigation with respect to the claim. This provision of the Insurance Code can be violated negligently or intentionally – it is typically within the purview of the jury to decide which. *See* TEX. INS. CODE Sec. 541.152(b) (on a finding by the trier of fact that the defendant knowingly committed the act complained of the trier of fact may award an amount not to exceed three times the amount of actual damages.) Violations of Chapter 541 follow a "producing" causation burden of proof, not "proximate" causation. Further, if the jury finds that the policy entitles the insured to receive policy benefits and that the insurer's statutory violation resulted in the insured not receiving those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). The Fifth Circuit and lower federal courts have held that adjusters' direct actions are the most relevant factors in determining insurance code liability, and this holds true irrespective of whether such individual is actually employed by the insurer or merely acting as an independent contractor.[1]

18.     As set forth and detailed above in paragraphs 7-12, UPC's conduct constitutes violations of Section 541.060(a)(7) for failure to conduct a reasonable investigaton of Plaintiff's claims. Texas law specifically recognizes that conducting an outcome-oriented investigation and/or relying on biased experts can be evidence of bad faith.[2]

19.     As a result of UPC's violations of Section 541.060(a)(7) of the Texas Insurance Code, Plaintiff has been denied its rightful recovery under the Policy, and Plaintiff has been

---

[1] *See, e.g., Garza v. Geovera*, No. 13-CV-525, 2014 WL 66830, at *2 (S.D. Tex. Jan 18, 2014); *Rocha v. Geovera Specialty Insurance Co.*, No. 13-CV-0589, 2014 WL 68648, at *2 (S.D. Tex. Jan. 8, 2014); see also *Gasch v. Hartford Indem. Co.*, 491 F.3d, 278, 282 (5th Cir. 2007).
[2] *See, e.g., UPC v. Simmons,* 963 S.W.2d 42 (Tex. 1998); *UPC Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex. 1997)

required to retain the undersigned counsel to prosecute this action in order to recover the proceeds of the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT III**
**VIOLATIONS OF CHAPTER 541.060(a)(2) OF THE TEXAS INSURANCE CODE**

20.    Under Section 541.060(a)(2), it is a violation for a carrier to fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when its liability has become reasonably clear. Whether liability was reasonably clear is also typically within the purview of the jury to decide. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).

21.    UPC's conduct as set forth in paragraphs 7-12 above constitutes conduct that also violates Section 541.060(a)(2). Defendant's liability was reasonably clear from its first inspection of the Property. UPC inspected these obvious damages and yet refused to pay any policy benefits. To date, Defendant has still not effectuated a settlement of the claims. Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT IV**

**VIOLATIONS OF CHAPTER 541.060(a)(4)(A) OF THE TEXAS INSURANCE CODE**

22.    Under Section 541.060(a)(4)(A), it is a violation to refuse to affirm or deny coverage within a reasonable time. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).  As set forth above in paragraphs 7-12, UPC failed to timely accept Plaintiff's claim for coverage under the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages)  for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT V**

**VIOLATIONS OF CHAPTER 541.060(a)(3) OF THE TEXAS INSURANCE CODE**

23.    Under Section 541.060(a)(3), it is a violation to fail to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims.

24.    As set forth above in paragraphs 7-12, UPC wholly failed to provide Plaintiff with a *reasonable* explanation for its denial of payment. Further, given that Defendant ignored evidence from the PA and manipulated evidence in a manner to support its denial of payment, its explanation for its denial is not reasonable.   Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest

and costs.

## COUNT VI
### VIOLATIONS OF CHAPTER 541.060(a)(1) OF THE TEXAS INSURANCE CODE

26.      Under Section 541.060(a)(1), it is a violation to misrepresent one or more material facts and/or policy provisions relating to coverage. The allegations in paragraphs 7-12 above support Plaintiff's claims under Section 541.060(a)(1). Misrepresentations constitute a knowing/intentional violation of this Section.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

## COUNT VII
### VIOLATIONS OF CHAPTER 542.055 OF THE TEXAS INSURANCE CODE

27.      As alleged in paragraphs 7-12 above, UPC failed to meet its obligations under the Texas Insurance Code Chapter 542.055 because it failed to timely acknowledge Plaintiff's claims, begin a reasonable investigation of Plaintiff's claims, and request all information reasonably necessary to investigate Plaintiff's claims within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC also failed to timely pay the claim.

28.      Texas' Chapter 542 Prompt Payment of Claims Act is a strict liability standard statute.[3] The statute requires only liability under the policy and a failure to comply with the timing requirements of the Act. There is no question that the Policy covers hail and wind damage;

---

[3] *Agredano v. UPC Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020)

however, after years of delay, no payment has been issued. Defendant clearly failed to comply with the time requirements of the statute.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT VIII
### VIOLATIONS OF CHAPTER 542.056 OF THE TEXAS INSURANCE CODE

28.    Under Section 542.056, the insurer must notify the claimant in writing that it accepts or rejects the claim within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC failed to accept or deny Plaintiff's full and entire claims within the statutorily mandated time of receiving all necessary information as alleged above. These actions by UPC alleged in paragraphs 7-12 above constitute violations of Chapter 542.056 of the Texas Insurance Code.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT IX
### VIOLATIONS OF CHAPTER 542.057 OF THE TEXAS INSURANCE CODE

29.     It is a violation of Section 542.057 for a carrier to fail to timely pay a claim. As described above in paragraphs 7-12, UPC did not promptly pay undisputed claim benefits it knew were owed. As well, to date, Defendant has still failed to pay covered benefits as alleged above.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT X**
**VIOLATIONS OF CHAPTER 542.058 OF THE TEXAS INSURANCE CODE**

30.     It is a violation of Section 542.058 if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, a carrier delays payment of the claim for a period exceeding for more than 60 days. UPC has had Plaintiff's determination of the damages caused by hail and windstorm since early 2022. To date, Defendant has payed nothing on Plaintiff's claims. Thus, Defendant has violated Section 542.058 by delaying payment of claims beyond 60 days.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT XI**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

31.     From and after the time Plaintiff's claim was presented to UPC, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment.

32.     UPC's liability was reasonably clear from its first inspection of the Property. Defendant inspected these damages and yet delayed in paying even the policy benefits. To date, Defendant has still not effectuated a settlement of the claims.

33.     Further, UPC's failure, as described in paragraphs 6-8 above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory damages, including all forms of loss resulting from the Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Defendant owed, and exemplary damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with interest and costs.

## CAUSES OF ACTION AGAINST DEFENDANT CULPEPPER

**A.    NONCOMPLIANCE WITH TEXAS INSURANCE CODE**

34.     Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, Culpepper was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Culpepper and his agents constitute one or more violations of the Texas Insurance Code. More specifically, Culpepper has, among other violations, violated the following provisions of the Code:

1. Insurance Code § 542.003(b)(5).

2. Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim;

- refusing to affirm or deny coverage within a reasonable time;

- refusing to conduct a reasonable investigation;

- hiring biased experts;

- ignoring damage known to be covered by the Policy; and/or

- conducting an outcome-oriented investigation in order to provide UPC with a basis to underpay the claim.

35.     The foregoing paragraphs are incorporated herein. UPC assigned the loss and the claim to Culpepper. Culpepper was at all pertinent times the agent of UPC, through both actual and apparent authority. The acts, representations and omissions of Culpepper are also attributed to UPC.

36.     Culpepper was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's loss, including determining the cause of and then quantifying the damage to the exterior and interior of Plaintiff's Property. Culpepper was also tasked with conducting a thorough and reasonable investigation to ensure a proper scope of damages. Rather than conducting such an inspection, Culpepper failed and refused to even look at all of the covered damages to Plaintiff's Property. Culpepper was provided an engineer report, photos, weather data and other evidence of the widespread hail and wind damage to Plaintiff's Property, but he ignored

them. On information and belief, Culpepper actually photographed much of the damage identified by Plaintiff's engineer and PA but redacted his actual findings from his photo arrays in an attempt to support the denial of the claim. There is no legitimate basis for Culpepper to hide his findings (and the dates of his photos) unless he is purposefully concealing the obvious damages to Plaintiff's Property.

37.      Further, Culpepper had the underwriting report for Plaintiff's Property completed just about five months before the storm that caused the damages; yet, Culpepper wrongfully reported to UPC that the Plaintiff's roofs were damaged by severe wear and tear and deterioration – neither of which was reported in the underwriting report that UPC used to promulgate the coverage for Plaintiff's Property. On information and belief, Culpepper initially dismissed the claim as finding no hail or wind damage after actually photographing hail and wind damage in October 2021. Culpepper's photo array, even with the redacted descriptions, clearly show hail and wind damage. Then, when confronted with the evidence from the PA, Culpepper wrote an estimate in March of 2022 again reporting to UPC no "storm" damage to Plaintiff's Property.

38.      Thereafter, despite multiple requests for a reinspection and requests for photos, UPC and Culpepper refused. Clearly, Culpepper made misrepresentations to Plaintiff, did not conduct a thorough investigation of the claim, and his "estimate" is a misrepresentation about the damages.

39.      Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, Culpepper failed and refused to properly adjust the claim. Culpepper failed to properly inspect the Property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff and/or their agents, failed to timely evaluate the claim, failed to

timely estimate the claim, and failed to timely and properly report to UPC and make recommendations to UPC to address all the covered damages. Culpepper's failure to present all of the covered damages to UPC contributed to Plaintiff's claim being underpaid.

40.    Plaintiff provided information regarding the loss and the claim to Culpepper. Plaintiff allowed him full and complete access to the Property. Plaintiff provided sufficient information when requested by Culpepper so he could fairly and reasonably adjust and evaluate the loss. Plaintiff made inquiries regarding the status of the loss and payment, but Culpepper failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.

41.    As the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about the "prompt, fair, and equitable settlement" of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based. [4] As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Culpepper's conduct caused a failure to effectuate a prompt, reasonable settlement of the claim. Moreover, one or more of the foregoing acts or omissions were committed "knowingly" entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY

42.    Plaintiff re-alleges the foregoing paragraphs. The Defendants conspired to underpay Plaintiff's claim. UPC assigned Culpepper to investigate Plaintiff's claim, and the Defendants set out to intentionally conduct an outcome-oriented investigation in order to avoid

---

[4] *See Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 U.S. Dist. LEXIS 70033, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) ("Adjusters play a role in the investigation, estimation, and settlement of insurance claims.")

paying for all of the damages to Plaintiff's Property covered by the Policy. The Defendants' conspiracy was a proximate cause of Plaintiff's damages.

## **KNOWLEDGE**

43.    Each of the acts described above paragraphs 34-41, together and singularly, was done "knowingly" by Culpepper as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## **DAMAGES**

44.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

45.    For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claims, together with attorney's fees.

46.    For noncompliance with the Texas Insurance Code Chapter 541, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

47.    For noncompliance with the Texas Insurance Code Chapter 542, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claims, as well as 10% interest calculated per annum, on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

48.    For breach of the Texas common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach

of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

49.     For Civil Conspiracy, Defendants are jointly and severally liable for the damages to Plaintiff.

50.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

### ADDITIONAL PLEADINGS

51.     In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

52.     The clear and unambiguous language of the policy provides coverage for damage to the Property caused by losses made the basis of Plaintiff's claims, including the cost of access to fix the damages;

53.     Because of Defendant's material breach of the policy, Plaintiff was excused from performing on the contract following Defendant's breach.

54.     In the alternative, any other construction of the language of the policy is void as against public policy;

55.     Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

56.     Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

57.     In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

58.     In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

59.     In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein. Plaintiff further requests that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court. Pursuant to the statutory requirement, Plaintiff pleads that the damages will be more than $1,000,000. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against UPC, to which Plaintiff may be justly entitled.

Respectfully submitted,

LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone: (210) 775-1424
Electronic Mail: shannon@lp-lawfirm.com

BY: _____
SHANNON E. LOYD
State Bar No. 24045706

ATTORNEY FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alison Kelly on behalf of Shannon Loyd
Bar No. 24045706
alison@theloydlawfirm.com
Envelope ID: 71609914
Status as of 1/9/2023 1:57 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 1/9/2023 1:53:24 PM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 1/9/2023 1:53:24 PM | SENT |

**7019 2970 0001 3507 5455**

*P-2*

CAUSE NO.  202281096

RECEIPT NO.  986101                    75.00          CTM
**********                    TR # 74097330

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION          In The    61st
                    vs.                              Judicial District Court
DEFENDANT: JOURNEY INSURANCE COMPANY                 of Harris County, Texas
                                                     61ST DISTRICT COURT
                                                     Houston, TX

CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris

TO: JOURNEY INSURANCE COMPANY MAY BE SERVED BY SERVING THE TEXAS
    DEPARTMENT OF INSURANCE COMMISSIONER OF INSURANCE CASSIE BROWN
    333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO CT CORPORATION SYSTEM

    1999 BRYAN STREET SUITE 900   DALLAS TX 75201

    Attached is a certified copy of <u>PLAINTIFFS FIRST AMENDED ORIGINAL PETITION</u>

This instrument was filed on the <u>9th day of January, 2023</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
    This citation was issued on 10th day of January, 2023, under my hand and
seal of said Court.

<u>Issued at request of</u>:                        MARILYN BURGESS, District Clerk
LOYD, SHANNON ELIZABETH                              Harris County, Texas
12703  SPECTRUM DRIVE, SUITE 201                     201 Caroline, Houston, Texas 77002
SAN ANTONIO, TX  78249                               (P.O. Box 4651, Houston, Texas 77210)
Tel: (210) 775-1424
<u>Bar No.</u>: 24045706                             Generated By: JACKSON, MONICA  I8V//12187756

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy    of    this    citation    together    with    an    attached    copy    of
 PLAINTIFFS FIRST AMENDED ORIGINAL PETITION
to the following addressee at address:

_____          ADDRESS
                                  Service was executed in accordance with Rule 106
_____             (2) TRCP, upon the Defendant as evidenced by the
(a)ADDRESSEE                         return receipt incorporated herein and attached
                                     hereto at
_____
                                  on _____ day of _____, _____
                                  by U.S. Postal delivery to _____

                                  This citation was not executed for the following
                                  reason: _____
                                  _____

                                  MARILYN BURGESS, District Clerk
                                  Harris County, TEXAS

                                  By _____, Deputy

N.INT.CITM.P                  *74097330*        RECORDER'S MEMORANDUM
                                                This instrument is of poor quality
                                                   at the time of imaging.
                                                EXHIBIT A - Page 56 of 320

**7019 2970 0001 3507 5455** 

CAUSE NO.  202281096

RECEIPT NO.  986101                              75.00        CTM

\*\*\*\*\*\*\*\*\*\*                              TR # 74097330

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION          In The    61st
          vs.                        Judicial District Court
DEFENDANT: JOURNEY INSURANCE COMPANY                 of Harris County, Texas
                                     61ST DISTRICT COURT
                                     Houston, TX

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: JOURNEY INSURANCE COMPANY MAY BE SERVED BY SERVING THE TEXAS
    DEPARTMENT OF INSURANCE COMMISSIONER OF INSURANCE CASSIE BROWN
    333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO CT CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900    DALLAS  TX  75201

    Attached is a certified copy of <u>PLAINTIFFS FIRST AMENDED ORIGINAL PETITION</u>

This instrument was filed on the <u>9th day of January, 2023</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
    This citation was issued on 10th day of January, 2023, under my hand and
seal of said Court.

<u>Issued at request of:</u>
LOYD, SHANNON ELIZABETH
12703  SPECTRUM DRIVE, SUITE 201
SAN ANTONIO, TX  78249
Tel: (210) 775-1424
<u>Bar No.</u>: 24045706

MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: JACKSON, MONICA  I8V//12187756

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFFS FIRST AMENDED ORIGINAL PETITION
to the following addressee at address:

_____          _____
                        ADDRESS

_____          Service was executed in accordance with Rule 106
(a) ADDRESSEE                                  (2) TRCP, upon the Defendant as evidenced by the
                         return receipt incorporated herein and attached
                         hereto at
_____

                         on _____ day of _____, _____
                         by U.S. Postal delivery to _____

                         This citation was not executed for the following
                         reason: _____

                         MARILYN BURGESS, District Clerk
                         Harris County, TEXAS

                         By _____, Deputy

N.INT.CITM.P                              **\*74097330\***

EXHIBIT A - Page 57 of 320



01-12-23

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOURNEY INSURANCE COMPANY
C/O CT CORPORATION SYSTEM
1999 BRYAN STREET SUITE 900
DALLAS TX 75201
2022-81096 61ST DISTRICT COURT

9590 9402 4264 8121 8165 19

7019 2970 0001 3507 5542

A. Signature
X _Tierica Williams_
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Tierica Williams
C. Date of Delivery
JAN 0 3 2023

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**EXHIBIT A - Page 59 of 320**

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt



9590 9402 4264 8121 8165 19

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2023 JAN 17 AM 8: 57

• Sender: Please print your name, address, and ZIP+4® in this box•

**MARILYN BURGESS**
**HARRIS COUNTY DISTRICT CLERK**
**P.O. BOX 4651**
**HOUSTON, TEXAS 77210–4651**

BY_____
MAIL FROM

**EXHIBIT A - Page 60 of 320**

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

JOURNEY INSURANCE COMPANY
C/O CASSIE BROWN, INSUR. COMMISSION
333 GUADALUPE
AUSTIN TX 78701

2022-81096 61ST DISTRICT COURT

9590 9402 4264 8121 8156 28

7015 2970 0001 3507 5455

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

TEXAS DEPT OF INSURANCE
SERVICE CENTER

JAN 17 2023

RECEIVED

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

**EXHIBIT A – Page 61 of 320**

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt



**USPS TRACKING #**

9590 9402 4264 8121 8156 28

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**



FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2023 FEB -2  AM 8: 13

• Sender: Please print your name, address, and ZIP+4® in this box•

**MARILYN BURGESS**
**HARRIS COUNTY DISTRICT CLERK**
**P.O. BOX 4651**
**HOUSTON, TEXAS 77210-4651**

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

BY_____
MAIL FWD

**EXHIBIT A - Page 62 of 320**

2/23/2023 2:25 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73051329
By: Kathy Givens
Filed: 2/23/2023 2:25 PM

CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 61st JUDICIAL DISTRICT |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

### JUDGMENT AGAINST DEFENDANT JOURNTY INSURANCE COMPANY

On the ____ day of _____, 2023, came on to be heard to the above-entitled and numbered cause Plaintiff Tanglegrove TH Condo Association. After considering the Motion for Default Judgment, the pleadings, the affidavits, and the evidence, the Court found that the motion had merit and granted Plaintiff's Motion for Default Judgment.

IT IS THEREFORE ORDERED that Plaintiff Tanglegrove TH Condo Association, shall recover damages from Defendant Journey Insurance Company in the amount of **$4,135,808.78.** This amount is calculated as follows: actual damages of $3,613,007.80, penalties under Chapter 542 of $491,962.98, attorneys' fees of $30,250.00 and court cost of $588.00 as awarded in the Default Judgment by the Court and pursuant to Texas Rules of Civil Procedure 131.

IT IS FURTHER ORDERED the sum of $20,000.00 is awarded in the event of an appeal to the Court of Appeals is made by Defendant but is unsuccessful. The sum of $20,000.00 is awarded in the event of a petition to the Supreme Court of Texas, and the sum of $10,000.00 is awarded should briefing be necessary in the Supreme Court of Texas.

IT IS FURTHER ORDERED that the judgment here rendered shall bear interest at the rate of 5.00% from the date of judgment until paid.

All writs and processes for the enforcement and collection of this judgment or the costs of court may issue as necessary. The judgment finally disposes of all Plaintiff's claims against

Defendant Journey Insurance Company is appealable.

All other relief not expressly granted in this judgment is denied.

SIGNED this _____ day of _____, 2023.

_____
HONORABLE JUDGE PRESIDING

APPROVED:

_____
Shannon E. Loyd
State Bar No. 24045706
Loyd & Pollom, PLLC
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
(210) 775-1424 Telephone
shannon@lp-lawfirm.com

**ATTORNEY FOR PLAINTIFF**

2/23/2023 2:25 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73051329
By: Kathy Givens
Filed: 2/23/2023 2:25 PM

CAUSE NO. 2022-81096

| | |
|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION§ | IN THE DISTRICT COURT |
| § | |
| V.                                                        § | 61st JUDICIAL DISTRICT |
| § | |
| § | |
| JOURNEY INSURANCE COMPANY AND    § | |
| STANLEY GLENN CULPEPPER               § | HARRIS COUNTY, TEXAS |

## ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOURNEY INSURANCE COMPANY

On this day came to be heard Plaintiff's Motion for Default Judgment against Defendant, Journey Insurance Company. After considering the motion for default judgment, the pleadings, the affidavits, and the evidence, the Court finds that the motion does have merit and should be in all things GRANTED.

SIGNED this _____ day of _____, 2023.

_____
HONORABLE JUDGE PRESIDING

APPROVED:

_____
Shannon E. Loyd
State Bar No. 24045706
Loyd & Pollom
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
(210) 775-1424 Telephone
shannon@lp-lawfirm.com

**ATTORNEY FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Alison Kelly on behalf of Shannon Loyd
Bar No. 24045706
alison@theloydlawfirm.com
Envelope ID: 73051329
Status as of 2/23/2023 2:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Alison Kelly | | alison@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |
| Shannon Loyd | | shannon@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |

2/23/2023 2:25 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73051329
By: Kathy Givens
Filed: 2/23/2023 2:25 PM

CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 61st JUDICIAL DISTRICT |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

## **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, TANGLEGROVE TH CONDO ASSOCIATION, Plaintiff in the above entitled and numbered cause, and files its Motion for Default Judgment and would show as follows:

**I.**

On December 14, 2022, Plaintiff filed its original petition and on January 9, 2023, filed its first amended original petition in this suit. *See* Exhibit A. On January 9, 2023, citation was issued. Defendant Journey Insurance Company was served with citation and a copy of Plaintiff's First Amended Original Petition by Certified Mail on January 17, 2023, the citation and Plaintiff's Petition was accepted by Defendant. *See* Exhibit B.

The citation and proof of service have been on file with the clerk of the court at least ten days, excluding the day of filing and today.

The deadline for Defendant, Journey Insurance Company, to file an answer was February 20, 2023. Defendant, Journey Insurance Company, has not filed an answer or any other pleading constituting an answer.

Defendant's, Journey Insurance Company, last known address is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 (per the Policy) by serving the Texas

Department of Insurance: Cassie Brown, Commissioner of Insurance, Texas Department of Insurance, 333 Guadalupe, Austin, Texas 78701.

## II.

Plaintiff is entitled to a default judgment against Defendant, Journey Insurance Company, on liability and damages.

The damages in Plaintiff's Petition can be proved by a written instrument. Accordingly, Plaintiff has attached to this motion as Exhibit C, affidavits and documents that prove the amount of damages and the causal nexus. The court can award liquidated damages based on affidavits without holding an evidentiary hearing. *Aavid Thermal Techs. v. Irving ISD,* 68 S.W.3d 707, 711 (Tex.App.- Dallas 2001, no pet.); *Novosad v. Brian K Cunningham, P.C.,* 38 S.W.3d 767, 773 (Tex.App.-Houston [14th Dist.] 2001, no pet.)

## PRAYER

For these reasons, Plaintiff asks the court to sign a default judgment granting the relief requested in this motion.

Respectfully submitted,

LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone: (210) 775-1424
Electronic Mail: shannon@lp-lawfirm.com

BY: _____
SHANNON E. LOYD
State Bar No. 24045706

ATTORNEY FOR PLAINTIFF

# Exhibit A

12/14/2022 3:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71021177
By: Derrick Abram
Filed: 12/14/2022 3:51 PM

CAUSE NO. _____

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | _____ JUDICIAL DISTRICT |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, TANGLEGROVE TH CONDO ASSOCIATION, files this Original Petition against JOURNEY INSURANCE COMPANY (referred to herein as "UPC") and STANLEY GLENN CULPEPPER (referred to herein as "Culpepper") and in support thereof would show as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.　　Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive discovery. Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit.

## PARTIES AND SERVICE

2.　　Plaintiff is doing business in Harris County, Texas.

3.　　UPC is in the business of insurance in the State of Texas. The insurance business done by UPC in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

4.      Defendant, **Journey Insurance Company**, may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 via certified mail.

5.      Defendant, **Stanley Glenn Culpepper**, is a Texas resident and may be served at his business address at 2005 Camelot Drive, Grapevine, Texas 76051 by certified mail, return receipt requested. **Service is requested at this time.**

<u>**JURISDICTION AND VENUE**</u>

6.      Venue is appropriate in Harris County, Texas because all or part of the conduct giving rise to the causes of action were committed in Harris County, Texas and Plaintiff and property which is the subject of this suit are located in Harris County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

<u>**BACKGROUND FACTS**</u>

7.      Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"), which was issued by UPC. Plaintiff owns the insured Property which is located in Houston, Texas 77057 and listed specifically in Exhibit A (hereinafter collectively referred to as "the Property"). UPC sold the Policy insuring the Property to Plaintiff.

8.      UPC conducted an initial inspection of Plaintiff's Property in connection with promulgating the Policy and charged Plaintiff $450.00 for the inspection. Plaintiff's premium totaled over $150,000.00. The inspection sufficed such that UPC accepted coverage of the Property and Plaintiff's premium payment.

9.      During the terms of said Policy, Plaintiff's Property sustained covered losses

when a hail/windstorm damaged the Property, and Plaintiff timely reported same to UPC pursuant to the terms of the Policy. Plaintiff asked that UPC cover the cost of repairs to the Property pursuant to the Policy. UPC engaged Culpepper to adjust the claim and investigate the damages. Culpepper failed to conduct a full, fair and reasonable investigation of Plaintiff's covered damages. In fact, as discussed below, Culpepper prepared an estimate which vastly under-scoped the damage done to Plaintiff's Property. UPC and Culpepper have kept and have in their possession a claim file which details the Plaintiff's claim and their investigation, adjustment and subsequent underpayment of the claim.

10.     After UPC denied any coverage and payment, Plaintiff hired a public adjuster ("PA") in an attempt to get its claim paid and avoid litigation. The PA requested UPC's reports, photos and other information in an effort to determine if the parties could come to an agreement about the damages to Plaintiff's property, but UPC refused to provide all of the requested information and documents, including photos and inspection reports, claiming they are "work product."

11.     Thereafter, UPC hired two engineers from Colorado to "inspect" for hail and wind damage. On information and belief, UPC hired these engineers despite Texas having hundreds of qualified engineers who are experienced with hail/wind damages because it knew they would provide opinions that supported UPC's initial denial of the claim. In fact, that is what they did. UPC's engineer reports were not prepared in good faith, and UPC did not reasonably rely on unbiased experts. Instead, it chose experts it knew would support the denial. These engineers admitted, thus UPC knew, that they did not utilize any weather data to come to their opinions even though the size of hail and speed of wind is always a factor in determining damage to building materials. Furthermore, these engineers admitted, thus UPC knew, that they ignored any other

reports of others in coming to their opinions. Thus, they improperly failed to consider all of the evidence in coming to their opinions. This was clearly an outcome-oriented investigation which was wholly unreasonable, and UPC knew it but relied on these experts anyway.

12.     Plaintiff's PA provide UPC a 600+ page report complete with weather data, expert reports, including a Texas engineer's opinions, and photographic evidence proving that Plaintiff's Property had suffered hail and wind damage during the Policy period. However, UPC and Culpepper ignored the documents and photos and refused to consider their veracity. The PA also requested that UPC and Culpepper provide the basis for ignoring the Texas engineer's report, weather data and other information provided to them, but no response was given other than Defendants would rely on their out-of-state engineers.

13.     As detailed in the paragraphs below, UPC and Culpepper failed to fully investigate and adjust all damages associated with the loss, and UPC wrongfully denied Plaintiff's claim for full repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, UPC delayed and continues to delay in the payment for all of the covered damages to the Property.

**COUNT I**
**BREACH OF CONTRACT FOR FAILURE TO INVESTIGATE AND AFFORD COVERAGE**

14.     Plaintiff was entitled to benefits under the Policy for the losses described herein, and UPC was obligated to pay the Plaintiff's claims for the subject losses. UPC failed to perform its contractual duty to adequately compensate Plaintiff under the terms of its Policy as detailed by numerous violations outlined in paragraphs 7-12. UPC refused to pay the full proceeds of the Policy after delaying and conducting an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by

Plaintiff. All conditions precedent to filing this lawsuit have been carried out and accomplished by Plaintiff or there was insufficient time before limitations would expire.

15.     Plaintiff is covered under the Policy and renewal Policy for all claims asserted against UPC. UPC's failure and/or refusal, as described above, to pay Plaintiff adequate policy benefits as it is obligated to do under the terms of the Policy in question, and under the law, constitutes a breach of the insurance contract with Plaintiff.

16.     As a result of UPC's breach of contract, Plaintiff was damaged financially. Plaintiff has incurred and will continue to incur substantial attorneys' fees, court costs, claim expenses and other expenses in the bringing of this action. UPC is obligated to pay all claims, litigation costs, attorney fees, consequential damages and any judgment or settlement money for Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory, incidental and consequential damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs. For the prosecution and collection of these claims, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

**COUNT II**
**VIOLATIONS OF CHAPTER 541.060(a)(7) OF THE TEXAS INSURANCE CODE**

17.     Under Section 541.060(a)(7), it is a violation if a carrier refuses to pay a claim without conducting a reasonable investigation with respect to the claim. This provision of the Insurance Code can be violated negligently or intentionally – it is typically within the purview of the jury to decide which. *See* TEX. INS. CODE Sec. 541.152(b) (on a finding by the trier of fact that the defendant knowingly committed the act complained of the trier of fact may award an amount

not to exceed three times the amount of actual damages.) Violations of Chapter 541 follow a "producing" causation burden of proof, not "proximate" causation. Further, if the jury finds that the policy entitles the insured to receive policy benefits and that the insurer's statutory violation resulted in the insured not receiving those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). The Fifth Circuit and lower federal courts have held that adjusters' direct actions are the most relevant factors in determining insurance code liability, and this holds true irrespective of whether such individual is actually employed by the insurer or merely acting as an independent contractor.[1]

18.     As set forth and detailed above in paragraphs 7-12, UPC's conduct constitutes violations of Section 541.060(a)(7) for failure to conduct a reasonable investigaton of Plaintiff's claims. Texas law specifically recognizes that conducting an outcome-oriented investigation and/or relying on biased experts can be evidence of bad faith.[2]

19.     As a result of UPC's violations of Section 541.060(a)(7) of the Texas Insurance Code, Plaintiff has been denied its rightful recovery under the Policy, and Plaintiff has been required to retain the undersigned counsel to prosecute this action in order to recover the proceeds of the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the

---

[1] *See, e.g., Garza v. Geovera*, No. 13-CV-525, 2014 WL 66830, at *2 (S.D. Tex. Jan 18, 2014); *Rocha v. Geovera Specialty Insurance Co.*, No. 13-CV-0589, 2014 WL 68648, at *2 (S.D. Tex. Jan. 8, 2014); see also *Gasch v. Hartford Indem. Co.*, 491 F.3d, 278, 282 (5th Cir. 2007).
[2] *See, e.g., UPC v. Simmons,* 963 S.W.2d 42 (Tex. 1998); *UPC Lloyds v. Nicolau,*951 S.W.2d 444 (Tex. 1997)

jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT III**
**VIOLATIONS OF CHAPTER 541.060(a)(2) OF THE TEXAS INSURANCE CODE**

20.    Under Section 541.060(a)(2), it is a violation for a carrier to fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when its liability has become reasonably clear. Whether liability was reasonably clear is also typically within the purview of the jury to decide. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).

21.    UPC's conduct as set forth in paragraphs 7-12 above constitutes conduct that also violates Section 541.060(a)(2). Defendant's liability was reasonably clear from its first inspection of the Property. UPC inspected these obvious damages and yet refused to pay any policy benefits. To date, Defendant has still not effectuated a settlement of the claims. Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT IV**
**VIOLATIONS OF CHAPTER 541.060(a)(4)(A) OF THE TEXAS INSURANCE CODE**

22.    Under Section 541.060(a)(4)(A), it is a violation to refuse to affirm or deny coverage within a reasonable time. This provision of the Insurance Code can be violated

negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).  As set forth above in paragraphs 7-12, UPC failed to timely accept Plaintiff's claim for coverage under the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages)  for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT V
### VIOLATIONS OF CHAPTER 541.060(a)(3) OF THE TEXAS INSURANCE CODE

23.     Under Section 541.060(a)(3), it is a violation to fail to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims.

24.     As set forth above in paragraphs 7-12, UPC wholly failed to provide Plaintiff with a *reasonable* explanation for its denial of payment. Further, given that Defendant ignored evidence from the PA and manipulated evidence in a manner to support its denial of payment, its explanation for its denial is not reasonable.   Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT VI
### VIOLATIONS OF CHAPTER 541.060(a)(1) OF THE TEXAS INSURANCE CODE

26.      Under Section 541.060(a)(1), it is a violation to misrepresent one or more material facts and/or policy provisions relating to coverage. The allegations in paragraphs 7-12 above support Plaintiff's claims under Section 541.060(a)(1). Misrepresentations constitute a knowing/intentional violation of this Section.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

## COUNT VII
## VIOLATIONS OF CHAPTER 542.055 OF THE TEXAS INSURANCE CODE

27.      As alleged in paragraphs 7-12 above, UPC failed to meet its obligations under the Texas Insurance Code Chapter 542.055 because it failed to timely acknowledge Plaintiff's claims, begin a reasonable investigation of Plaintiff's claims, and request all information reasonably necessary to investigate Plaintiff's claims within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC also failed to timely pay the claim.

28.      Texas' Chapter 542 Prompt Payment of Claims Act is a strict liability standard statute.[3] The statute requires only liability under the policy and a failure to comply with the timing requirements of the Act. There is no question that the Policy covers hail and wind damage; however, after years of delay, no payment has been issued. Defendant clearly failed to comply with the time requirements of the statute.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages

---

[3] *Agredano v. UPC Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020)

and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT VIII
### VIOLATIONS OF CHAPTER 542.056 OF THE TEXAS INSURANCE CODE

28.    Under Section 542.056, the insurer must notify the claimant in writing that it accepts or rejects the claim within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC failed to accept or deny Plaintiff's full and entire claims within the statutorily mandated time of receiving all necessary information as alleged above. These actions by UPC alleged in paragraphs 7-12 above constitute violations of Chapter 542.056 of the Texas Insurance Code.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT IX
### VIOLATIONS OF CHAPTER 542.057 OF THE TEXAS INSURANCE CODE

29.    It is a violation of Section 542.057 for a carrier to fail to timely pay a claim. As described above in paragraphs 7-12, UPC did not promptly pay undisputed claim benefits it knew were owed. As well, to date, Defendant has still failed to pay covered benefits as alleged above.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of

such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT X
### VIOLATIONS OF CHAPTER 542.058 OF THE TEXAS INSURANCE CODE

30.    It is a violation of Section 542.058 if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, a carrier delays payment of the claim for a period exceeding for more than 60 days. UPC has had Plaintiff's determination of the damages caused by hail and windstorm since early 2022. To date, Defendant has payed nothing on Plaintiff's claims. Thus, Defendant has violated Section 542.058 by delaying payment of claims beyond 60 days.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

### COUNT XI
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

31.    From and after the time Plaintiff's claim was presented to UPC, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment.

32.    UPC's liability was reasonably clear from its first inspection of the Property. Defendant inspected these damages and yet delayed in paying even the policy benefits. To date, Defendant has still not effectuated a settlement of the claims.

33.    Further, UPC's failure, as described in paragraphs 6-8 above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory damages, including all forms of loss resulting from the Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Defendant owed, and exemplary damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with interest and costs.

## CAUSES OF ACTION AGAINST DEFENDANT CULPEPPER

**A.    NONCOMPLIANCE WITH TEXAS INSURANCE CODE**

34.    Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, Culpepper was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Culpepper and his agents constitute one or more violations of the Texas Insurance Code. More specifically, Culpepper has, among other violations, violated the following provisions of the Code:

1.  Insurance Code § 542.003(b)(5).

2.  Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim;

- refusing to affirm or deny coverage within a reasonable time;

- refusing to conduct a reasonable investigation;

- hiring biased experts;

- ignoring damage known to be covered by the Policy; and/or

- conducting an outcome-oriented investigation in order to provide UPC with a basis to underpay the claim.

35.    The foregoing paragraphs are incorporated herein. UPC assigned the loss and the claim to Culpepper. Culpepper was at all pertinent times the agent of UPC, through both actual and apparent authority. The acts, representations and omissions of Culpepper are also attributed to UPC.

36.    Culpepper was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's loss, including determining the cause of and then quantifying the damage to the exterior and interior of Plaintiff's Property. Culpepper was also tasked with conducting a thorough and reasonable investigation to ensure a proper scope of damages. Rather than conducting such an inspection, Culpepper failed and refused to even look at all of the covered damages to Plaintiff's Property. Culpepper was provided an engineer report, photos, weather data and other evidence of the widespread hail and wind damage to Plaintiff's Property, but he ignored them. On information and belief, Culpepper actually photographed much of the damage identified by Plaintiff's engineer and PA but redacted his actual findings from his photo arrays in an attempt to support the denial of the claim. There is no legitimate basis for Culpepper to hide his findings (and the dates of his photos) unless he is purposefully concealing the obvious damages to

Plaintiff's Property.

37.     Further, Culpepper had the underwriting report for Plaintiff's Property completed just about five months before the storm that caused the damages; yet, Culpepper wrongfully reported to UPC that the Plaintiff's roofs were damaged by severe wear and tear and deterioration – neither of which was reported in the underwriting report that UPC used to promulgate the coverage for Plaintiff's Property. On information and belief, Culpepper initially dismissed the claim as finding no hail or wind damage after actually photographing hail and wind damage in October 2021. Culpepper's photo array, even with the redacted descriptions, clearly show hail and wind damage. Then, when confronted with the evidence from the PA, Culpepper wrote an estimate in March of 2022 again reporting to UPC no "storm" damage to Plaintiff's Property.

38.     Thereafter, despite multiple requests for a reinspection and requests for photos, UPC and Culpepper refused. Clearly, Culpepper made misrepresentations to Plaintiff, did not conduct a thorough investigation of the claim, and his "estimate" is a misrepresentation about the damages.

39.     Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, Culpepper failed and refused to properly adjust the claim. Culpepper failed to properly inspect the Property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff and/or their agents, failed to timely evaluate the claim, failed to timely estimate the claim, and failed to timely and properly report to UPC and make recommendations to UPC to address all the covered damages. Culpepper's failure to present all of the covered damages to UPC contributed to Plaintiff's claim being underpaid.

40.     Plaintiff provided information regarding the loss and the claim to Culpepper. Plaintiff allowed him full and complete access to the Property. Plaintiff provided sufficient information when requested by Culpepper so he could fairly and reasonably adjust and evaluate the loss. Plaintiff made inquiries regarding the status of the loss and payment, but Culpepper failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.

41.     As the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about the "prompt, fair, and equitable settlement" of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based. [4] As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Culpepper's conduct caused a failure to effectuate a prompt, reasonable settlement of the claim. Moreover, one or more of the foregoing acts or omissions were committed "knowingly" entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY

42.     Plaintiff re-alleges the foregoing paragraphs. The Defendants conspired to underpay Plaintiff's claim. UPC assigned Culpepper to investigate Plaintiff's claim, and the Defendants set out to intentionally conduct an outcome-oriented investigation in order to avoid paying for all of the damages to Plaintiff's Property covered by the Policy. The Defendants' conspiracy was a proximate cause of Plaintiff's damages.

---

[4] *See Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 U.S. Dist. LEXIS 70033, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) ("Adjusters play a role in the investigation, estimation, and settlement of insurance claims.")

## KNOWLEDGE

43.    Each of the acts described above paragraphs 34-41, together and singularly, was done "knowingly" by Culpepper as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

44.    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

45.    For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claims, together with attorney's fees.

46.    For noncompliance with the Texas Insurance Code Chapter 541, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

47.    For noncompliance with the Texas Insurance Code Chapter 542, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claims, as well as 10% interest calculated per annum, on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

48.    For breach of the Texas common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

49.    For Civil Conspiracy, Defendants are jointly and severally liable for the damages to Plaintiff.

50.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

## ADDITIONAL PLEADINGS

51.    In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

52.    The clear and unambiguous language of the policy provides coverage for damage to the Property caused by losses made the basis of Plaintiff's claims, including the cost of access to fix the damages;

53.    Because of Defendant's material breach of the policy, Plaintiff was excused from performing on the contract following Defendant's breach.

54.    In the alternative, any other construction of the language of the policy is void as against public policy;

55.    Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

56.    Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

57.    In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

58.     In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

59.     In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein. Plaintiff further requests that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court. Pursuant to the statutory requirement, Plaintiff pleads that the damages will be more than $1,000,000. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against UPC, to which Plaintiff may be justly entitled.

Respectfully submitted,

LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone: (210) 775-1424
Electronic Mail: shannon@lp-lawfirm.com

BY: _____
        SHANNON E. LOYD
        State Bar No. 24045706

        ATTORNEY FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

# Exhibit A



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

| Policy Period | | Term | Policy Inception Date |
|---|---|---|---|
| From: 01/24/2021    12:01 am Local Time*    To: 01/24/2022    12:01 am Local Time* | | 12 months | 01/24/2021 |

*At the Named Insured Mailing Address shown below.

**BROKER**          5434342                  **NAMED INSURED**
AMSUISSE INC                                 TANGLEGROVE TH CONDO ASSOC
830 S  MASON RD                              C/O GARNER PROPERTY MNGMNT
STE  A 1                                     5845 LYNBROOK
KATY, TX 77450                               HOUSTON, TX 77057
(800) 485-0229

### COMMON POLICY CONDITIONS

In return for the payment of the premium and fees, and subject to all the terms of this Policy,
We agree with You to provide the insurance as stated in this Policy.

**This Policy is comprised of the following Forms and Endorsements:**

| | | | |
|---|---|---|---|
| JR TXNOTICE 07 20 | N 42 TIN 07 20 | JR JACKET 05 20 | JR SCOL 50(b) (05 20) |
| ICAT 50 SOV (10 10) | CP 00 17 10 12 | CP 00 50 10 12 | CP 00 90 07 88 |
| CP 01 47 11 00 | CP 02 02 12 19 | CP 04 05 09 17 | CP 04 31 04 02 |
| CP 10 30 09 17 | CP 10 32 08 08 | CP 12 72 12 98 | CP 14 10 06 95 |
| ICAT SCOL 125 (11 11) | ICAT SCOL 130 (12 11) | ICAT SCOL 136 (05 11) | ICAT SCOL 140 (12 11) |
| ICAT SCOL 141 (12 11) | ICAT SCOL 143 (05 11) | ICAT SCOL 200 (09 15) | ICAT SCOL 220 (07 09) |
| ICAT SCOL 221 (05 20) | ICAT SCOL 230 (07 09) | ICAT SCOL 232 (07 09) | ICAT SCOL 233 (07 09) |
| ICAT SCOL 234 (07 09) | JR SCOL 238 05 20 | ICAT SCOL 241 (10 19) | JR SCOL 242 TX (05 20) |
| ICAT SCOL 425 (09 15) | ICAT SCOL 602(c) (11 20) | ICAT SCOL 603 (04 08) | ICAT NMA2920 (01 20) |
| ICAT TRIA-3 (01 15) | IL 00 03 08 02 | IL 00 17 11 98 | IL 09 35 07 02 |
| IL P 001 01 04 | JR 424 10 18 | JR SOS 05 20 | |

**See Schedule A attached to this Declarations Page for Coverages, Deductibles and Limits of Insurance.**

### TO FILE A CLAIM 24 HOURS/DAY, PLEASE FAX TO 1-800-380-5053 OR CALL 1-888-256-3378

Your Annual Premium and Fees are:

| | | |
|---|---|---|
| Annual Premium | $ | 153,024.00 |
| Premium for Terrorism Coverage as it relates to an otherwise covered cause of loss | | Not Selected |
| Inspection Fee | $ | 450.00 |
| Policy Fee | $ | 265.00 |
| Total | $ | 153,739.00 |

THIS DECLARATIONS PAGE TOGETHER WITH THE SPECIAL CAUSE OF LOSS
COMMERCIAL PROPERTY POLICY FORM CP 10 30 10 12 AND ENDORSEMENTS,
IF ANY, ATTACHED HERETO COMPLETE THIS CONTRACT OF INSURANCE.

Issued on <January 28, 2021>



| Policy Number | **SPECIAL CAUSE OF LOSS POLICY** | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | **DECLARATIONS PAGE** | 01/24/2021 |

## Schedule A

### Section 1:  Property or Interest Covered

| | |
|---|---|
| Building | Included |
| Business Personal Property | Not Included |
| Business Income with Extra Expense including Rental Value | Not Included |
| Additional Property Coverage | Included |
| Fountain View (Pool) | Included |
| Lynbrook (Pool) | Included |
| Pool Areas & Other – Iron Fencing | Included |
| Brick Fencing | Included |
| Wooden Fencing | Included |
| Vehicle Carports | Included |

| **Optional Coverages and Coinsurance** | |
|---|---|
| Replacement Cost (Building, Personal Property, "Stock") | Yes, Including "Stock" (if Personal Property is covered) |
| Coinsurance | Waived |

### Optional/Additional Coverages or Causes of Loss

| | |
|---|---|
| Accounts Receivable | $100,000 |
| Blanket Limits | Not Included |
| Claims Preparation Fees (aka Professional Fees) | $50,000 |
| Condo All-In Endorsement | Not Included |
| Debris Removal | 25% of loss within limit, up to additional $50,000 per location in addition to limit. |
| Earthquake | Not Included |
| Electronic Data | $100,000 |
| Equipment Breakdown | Excluded |
| Extended Period of Indemnity | 90 days |
| Extra Expense | $50,000 |
| Fire Department Service Charge | $25,000 |
| Fire Extinguishing Recharge | $10,000 |
| Increased Cost of Construction building | Less of $10,000 or 5% of the Limit of Insurance applicable to that building |
| Limited Coverage for Fungus, Wet Rot, Dry Rot and Bacteria | $25,000 Annual Aggregate, 30 day limit on BI/EE (if applicable). Policy Specifies Limited Causes of |
| Lock Replacement | $7,500 |
| Monthly Limit of Indemnity | N/A |
| Newly Acquired BPP | $100,000 |
| Newly Acquired Building | $250,000 |
| Non-Owned detached trailers | $5,000 |
| Outdoor Property | $25,000 (max $5,000 per tree or shrub) |

| | |
|---|---|
| Outdoor Signs (non-scheduled) | $25,000 |
| Ordinance or Law Coverage A | Included |
| Ordinance or Law Coverage B & C | Full A, B & C limited to 5% |
| Personal Effects | $25,000 |
| Pollutant Cleanup and Removal | $25,000 |
| Preservation of Property | Included |
| Property in Transit | $25,000 |
| Property off Premises | $25,000 |
| Sewer Backup | $50,000 |
| Valuable Papers | $100,000 |
| Wind Driven Rain | Not Included |



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

### Section 2: Our Limit of Insurance – Limits of Liability

The Limit of Liability or Amount of Insurance shown in the Declarations, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined.  Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.  This policy will not pay more than the limit of insurance listed below in any one occurrence, whether from a single or multiple covered Cause(s) of Loss.

1. Limit of Liability, Any One Occurrence:          1.  $32,954,774

### Section 3:  Deductibles

| | | |
|---|---|---|
| As respects Named Storm: | 3% | Per Occurrence, By Building |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| | | |
|---|---|---|
| Minimum Deductible, as respects Named Storm: | $25,000 | Per Occurrence, By Policy |

This policy includes a minimum deductible equal to the amount listed for the peril listed.

| | | |
|---|---|---|
| As respects All Other Wind and Hail: | $50,000 | Per Occurrence, By Policy |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| | | |
|---|---|---|
| As respects All Other Perils: | $10,000 | Per Occurrence, By Policy |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR NAMED STORM OR WIND/HAIL LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU. THE ENCLOSED EXAMPLE ILLUSTRATES HOW THE DEDUCTIBLE MIGHT AFFECT YOU.**

**STATEMENT OF VALUES**

| Total Stated Values Under Policy | | | Building(s) | Business Personal Property | Tenant Improvement and Betterments | Business Income and Extra Expense | Additional Property Coverage | Total Values | Distance to Coast (mi.) | Flood Zone |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Lines of Coverage** | | | | | |
| **Tanglegrove** | | | 31,333,875 | - | - | - | 1,620,899 | 32,954,774 | | |
| Loc # | Bldg # | # of Bldgs | Description | | | | | | | |
| 1 | 1 | 1 | 1110 FOUNTAIN VIEW | 1,352,475 | - | - | - | | 1,352,475 | 23.72 | X |
| 1 | 2 | 1 | 1132 FOUNTAIN VIEW | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 3 | 1 | 1134 FOUNTAIN VIWE | 1,224,900 | - | - | - | | 1,224,900 | 23.72 | X |
| 1 | 4 | 1 | 1228 FOUNTAIN VIEW | 684,000 | - | - | - | | 684,000 | 23.72 | X |
| 1 | 5 | 1 | 1238 FOUNTAIN VIEW | 678,075 | - | - | - | | 678,075 | 23.72 | X |
| 1 | 6 | 1 | 1248 FOUNTAIN VIEW | 1,348,950 | - | - | - | | 1,348,950 | 23.72 | X |
| 1 | 7 | 1 | 5912 VALLEY FORGE | 544,575 | - | - | - | | 544,575 | 23.72 | X |
| 1 | 8 | 1 | 5902 VALLEY FORGE | 699,225 | - | - | - | | 699,225 | 23.72 | X |
| 1 | 9 | 1 | 1202 FOUNTAIN VIEW | 1,216,725 | - | - | - | | 1,216,725 | 23.72 | X |
| 1 | 10 | 1 | 1144 FOUNTAIN VIEW | 552,075 | - | - | - | | 552,075 | 23.72 | X |
| 1 | 11 | 1 | 5911 SUGAR HILL | 558,300 | - | - | - | | 558,300 | 23.72 | X |
| 1 | 12 | 1 | 5901 SUGAR HILL | 682,650 | - | - | - | | 682,650 | 23.72 | X |
| 1 | 13 | 1 | 5885 SUGAR HILL | 1,135,875 | - | - | - | | 1,135,875 | 23.72 | X |
| 1 | 14 | 1 | 1115 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 15 | 1 | 5871 SUGAR HILL | 964,425 | - | - | - | | 964,425 | 23.72 | X |
| 1 | 16 | 1 | 5840 LYNBROOK | 1,060,425 | - | - | - | | 1,060,425 | 23.72 | X |
| 1 | 17 | 1 | 5816 LYNBROOK | 796,950 | - | - | - | | 796,950 | 23.72 | X |
| 1 | 18 | 1 | 5833 SUGAR HILL | 878,475 | - | - | - | | 878,475 | 23.72 | X |
| 1 | 19 | 1 | 5857 SUGAR HILL | 971,475 | - | - | - | | 971,475 | 23.72 | X |
| 1 | 20 | 1 | 5845 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 21 | 1 | 5853 SUGAR HILL | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 22 | 1 | 5847 LYNBROOK | 115,350 | - | - | - | | 115,350 | 23.72 | X |
| 1 | 23 | 1 | 5847 LYNBROOK | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 24 | 1 | 1203 FOUNTAIN VIEW | 1,078,425 | - | - | - | | 1,078,425 | 23.72 | X |
| 1 | 25 | 1 | 5815 LYNBROOK | 809,250 | - | - | - | | 809,250 | 23.72 | X |
| 1 | 26 | 1 | 1221 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 27 | 1 | 5862 VALLEY FORGE | 951,900 | - | - | - | | 951,900 | 23.72 | X |
| 1 | 28 | 1 | 5876 VALLEY FORGE | 1,086,375 | - | - | - | | 1,086,375 | 23.72 | X |

| 1 | 29 | 1 | 5858 VALLEY FORGE | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 30 | 1 | 5848 VALLEY FORGE | 665,550 | - | - | - | | 665,550 | 23.72 | X |
| 1 | 31 | 1 | 5842 VALLEY FORGE | 391,650 | - | - | - | | 391,650 | 23.72 | X |
| 1 | 32 | 1 | 5828 VALLEY FORGE | 932,850 | - | - | - | | 932,850 | 23.72 | X |
| 1 | 33 | 1 | 5802 VALLEY FORGE | 1,099,725 | - | - | - | | 1,099,725 | 23.72 | X |
| 1 | 34 | 1 | 5818 VALLEY FORGE | 669,600 | - | - | - | | 669,600 | 23.72 | X |
| 1 | 35 | 1 | 5801 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 36 | 1 | 5802 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 37 | 1 | 5825 SUGAR HILL | 580,050 | - | - | - | | 580,050 | 23.72 | X |
| 1 | 38 | 1 | 5817 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 39 | 1 | 5801 SUGAR HILL | 1,098,675 | - | - | - | | 1,098,675 | 23.72 | X |
| | | APC1 | Fountain View (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC2 | Lynbrook (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC3 | Pool Areas & Other - Iron Fencing | | | | | 20,000 | 20,000 | | |
| | | APC4 | Brick Fencing | | | | | 160,000 | 160,000 | | |
| | | APC5 | Wooden Fencing | | | | | 50,000 | 50,000 | | |
| | | APC6 | Vehicle Carports | | | | | 1,290,899 | 1,290,899 | | |

1/9/2023 1:53 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 71609914
By: Monica Jackson
Filed: 1/9/2023 1:53 PM

CAUSE NO. 2022-81096

| | |
|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION§ | IN THE DISTRICT COURT |
| § | |
| V. § | 61st JUDICIAL DISTRICT |
| § | |
| JOURNEY INSURANCE COMPANY AND § | |
| STANLEY GLENN CULPEPPER § | HARRIS COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, TANGLEGROVE TH CONDO ASSOCIATION, files this First Amended

Original Petition against JOURNEY INSURANCE COMPANY (referred to herein as "UPC") and

STANLEY GLENN CULPEPPER (referred to herein as "Culpepper") and in support thereof

would show as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends for discovery to be conducted under Level 3 of Rule 190 of the Texas

Rules of Civil Procedure. This case involves complex issues and will require extensive discovery.

Therefore, Plaintiff will ask the Court to order that discovery be conducted in accordance with a

discovery control plan tailored to the particular circumstances of this suit.

## PARTIES AND SERVICE

2.      Plaintiff is doing business in Harris County, Texas.

3.      UPC is in the business of insurance in the State of Texas. The insurance business

done by UPC in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's
  application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

4.      Defendant, **Journey Insurance Company**, may be served at (CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 (per the Policy)) by serving the Texas Department of Insurance:

> Cassie Brown
> Commissioner of Insurance
> Texas Department of Insurance
> 333 Guadalupe
> Austin, Texas 78701

by certified mail, return receipt requested.  **Service is requested at this time.**

5.      Defendant, **Stanley Glenn Culpepper**, is a Texas resident and may be served at his business address at 2005 Camelot Drive, Grapevine, Texas 76051 by certified mail, return receipt requested.

## JURISDICTION AND VENUE

6.      Venue is appropriate in Harris County, Texas because all or part of the conduct giving rise to the causes of action were committed in Harris County, Texas and Plaintiff and property which is the subject of this suit are located in Harris County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## BACKGROUND FACTS

7.      Plaintiff is the owner of an Insurance Policy (hereinafter referred to as "the Policy"), which was issued by UPC. Plaintiff owns the insured Property which is located in Houston, Texas 77057 and listed specifically in Exhibit A (hereinafter collectively referred to as "the Property"). UPC sold the Policy insuring the Property to Plaintiff.

8.      UPC conducted an initial inspection of Plaintiff's Property in connection with promulgating the Policy and charged Plaintiff $450.00 for the inspection. Plaintiff's premium totaled over $150,000.00. The inspection sufficed such that UPC accepted coverage of the Property and Plaintiff's premium payment.

9.      During the terms of said Policy, Plaintiff's Property sustained covered losses when a hail/windstorm damaged the Property, and Plaintiff timely reported same to UPC pursuant to the terms of the Policy. Plaintiff asked that UPC cover the cost of repairs to the Property pursuant to the Policy. UPC engaged Culpepper to adjust the claim and investigate the damages. Culpepper failed to conduct a full, fair and reasonable investigation of Plaintiff's covered damages. In fact, as discussed below, Culpepper prepared an estimate which vastly under-scoped the damage done to Plaintiff's Property. UPC and Culpepper have kept and have in their possession a claim file which details the Plaintiff's claim and their investigation, adjustment and subsequent underpayment of the claim.

10.     After UPC denied any coverage and payment, Plaintiff hired a public adjuster ("PA") in an attempt to get its claim paid and avoid litigation. The PA requested UPC's reports, photos and other information in an effort to determine if the parties could come to an agreement about the damages to Plaintiff's property, but UPC refused to provide all of the requested information and documents, including photos and inspection reports, claiming they are "work product."

11.     Thereafter, UPC hired two engineers from Colorado to "inspect" for hail and wind damage. On information and belief, UPC hired these engineers despite Texas having hundreds of qualified engineers who are experienced with hail/wind damages because it knew they would provide opinions that supported UPC's initial denial of the claim. In fact, that is what they did.

UPC's engineer reports were not prepared in good faith, and UPC did not reasonably rely on unbiased experts. Instead, it chose experts it knew would support the denial. These engineers admitted, thus UPC knew, that they did not utilize any weather data to come to their opinions even though the size of hail and speed of wind is always a factor in determining damage to building materials. Furthermore, these engineers admitted, thus UPC knew, that they ignored any other reports of others in coming to their opinions. Thus, they improperly failed to consider all of the evidence in coming to their opinions. This was clearly an outcome-oriented investigation which was wholly unreasonable, and UPC knew it but relied on these experts anyway.

12.     Plaintiff's PA provide UPC a 600+ page report complete with weather data, expert reports, including a Texas engineer's opinions, and photographic evidence proving that Plaintiff's Property had suffered hail and wind damage during the Policy period. However, UPC and Culpepper ignored the documents and photos and refused to consider their veracity. The PA also requested that UPC and Culpepper provide the basis for ignoring the Texas engineer's report, weather data and other information provided to them, but no response was given other than Defendants would rely on their out-of-state engineers.

13.     As detailed in the paragraphs below, UPC and Culpepper failed to fully investigate and adjust all damages associated with the loss, and UPC wrongfully denied Plaintiff's claim for full repairs to the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, UPC delayed and continues to delay in the payment for all of the covered damages to the Property.

## COUNT I
### BREACH OF CONTRACT FOR FAILURE TO INVESTIGATE AND AFFORD COVERAGE

14.     Plaintiff was entitled to benefits under the Policy for the losses described herein, and UPC was obligated to pay the Plaintiff's claims for the subject losses. UPC failed to perform

its contractual duty to adequately compensate Plaintiff under the terms of its Policy as detailed by numerous violations outlined in paragraphs 7-12. UPC refused to pay the full proceeds of the Policy after delaying and conducting an outcome-oriented investigation, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery under the Policy have been carried out and accomplished by Plaintiff. All conditions precedent to filing this lawsuit have been carried out and accomplished by Plaintiff or there was insufficient time before limitations would expire.

15.    Plaintiff is covered under the Policy and renewal Policy for all claims asserted against UPC. UPC's failure and/or refusal, as described above, to pay Plaintiff adequate policy benefits as it is obligated to do under the terms of the Policy in question, and under the law, constitutes a breach of the insurance contract with Plaintiff.

16.    As a result of UPC's breach of contract, Plaintiff was damaged financially. Plaintiff has incurred and will continue to incur substantial attorneys' fees, court costs, claim expenses and other expenses in the bringing of this action. UPC is obligated to pay all claims, litigation costs, attorney fees, consequential damages and any judgment or settlement money for Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory, incidental and consequential damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs. For the prosecution and collection of these claims, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

## COUNT II
## VIOLATIONS OF CHAPTER 541.060(a)(7) OF THE TEXAS INSURANCE CODE

17.    Under Section 541.060(a)(7), it is a violation if a carrier refuses to pay a claim without conducting a reasonable investigation with respect to the claim. This provision of the Insurance Code can be violated negligently or intentionally – it is typically within the purview of the jury to decide which. *See* TEX. INS. CODE Sec. 541.152(b) (on a finding by the trier of fact that the defendant knowingly committed the act complained of the trier of fact may award an amount not to exceed three times the amount of actual damages.) Violations of Chapter 541 follow a "producing" causation burden of proof, not "proximate" causation. Further, if the jury finds that the policy entitles the insured to receive policy benefits and that the insurer's statutory violation resulted in the insured not receiving those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 494 (Tex. 2018). The Fifth Circuit and lower federal courts have held that adjusters' direct actions are the most relevant factors in determining insurance code liability, and this holds true irrespective of whether such individual is actually employed by the insurer or merely acting as an independent contractor.[1]

18.    As set forth and detailed above in paragraphs 7-12, UPC's conduct constitutes violations of Section 541.060(a)(7) for failure to conduct a reasonable investigaton of Plaintiff's claims. Texas law specifically recognizes that conducting an outcome-oriented investigation and/or relying on biased experts can be evidence of bad faith.[2]

19.    As a result of UPC's violations of Section 541.060(a)(7) of the Texas Insurance Code, Plaintiff has been denied its rightful recovery under the Policy, and Plaintiff has been

---

[1] *See, e.g., Garza v. Geovera*, No. 13-CV-525, 2014 WL 66830, at *2 (S.D. Tex. Jan 18, 2014); *Rocha v. Geovera Specialty Insurance Co*., No. 13-CV-0589, 2014 WL 68648, at *2 (S.D. Tex. Jan. 8, 2014); see also *Gasch v. Hartford Indem. Co*., 491 F.3d, 278, 282 (5th Cir. 2007).
[2] *See, e.g., UPC v. Simmons,* 963 S.W.2d 42 (Tex. 1998); *UPC Lloyds v. Nicolau,*951 S.W.2d 444 (Tex. 1997)

required to retain the undersigned counsel to prosecute this action in order to recover the proceeds of the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT III**
**VIOLATIONS OF CHAPTER 541.060(a)(2) OF THE TEXAS INSURANCE CODE**

20.    Under Section 541.060(a)(2), it is a violation for a carrier to fail to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when its liability has become reasonably clear. Whether liability was reasonably clear is also typically within the purview of the jury to decide. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).

21.    UPC's conduct as set forth in paragraphs 7-12 above constitutes conduct that also violates Section 541.060(a)(2). Defendant's liability was reasonably clear from its first inspection of the Property. UPC inspected these obvious damages and yet refused to pay any policy benefits. To date, Defendant has still not effectuated a settlement of the claims. Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT IV**

**VIOLATIONS OF CHAPTER 541.060(a)(4)(A) OF THE TEXAS INSURANCE CODE**

22.     Under Section 541.060(a)(4)(A), it is a violation to refuse to affirm or deny coverage within a reasonable time. This provision of the Insurance Code can be violated negligently or intentionally. *See* TEX. INS. CODE Sec. 541.152(b).  As set forth above in paragraphs 7-12, UPC failed to timely accept Plaintiff's claim for coverage under the Policy.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages)  for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT V**

**VIOLATIONS OF CHAPTER 541.060(a)(3) OF THE TEXAS INSURANCE CODE**

23.     Under Section 541.060(a)(3), it is a violation to fail to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims.

24.     As set forth above in paragraphs 7-12, UPC wholly failed to provide Plaintiff with a *reasonable* explanation for its denial of payment. Further, given that Defendant ignored evidence from the PA and manipulated evidence in a manner to support its denial of payment, its explanation for its denial is not reasonable.   Because it knows its duties under the Texas Insurance Code, this conduct also constitutes knowing/intentional conduct.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest

and costs.

## COUNT VI
### VIOLATIONS OF CHAPTER 541.060(a)(1) OF THE TEXAS INSURANCE CODE

26.     Under Section 541.060(a)(1), it is a violation to misrepresent one or more material facts and/or policy provisions relating to coverage. The allegations in paragraphs 7-12 above support Plaintiff's claims under Section 541.060(a)(1). Misrepresentations constitute a knowing/intentional violation of this Section.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual, incidental and consequential damages and treble damages (three times the actual damages) for knowing/intentional conduct pursuant to the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

## COUNT VII
### VIOLATIONS OF CHAPTER 542.055 OF THE TEXAS INSURANCE CODE

27.     As alleged in paragraphs 7-12 above, UPC failed to meet its obligations under the Texas Insurance Code Chapter 542.055 because it failed to timely acknowledge Plaintiff's claims, begin a reasonable investigation of Plaintiff's claims, and request all information reasonably necessary to investigate Plaintiff's claims within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC also failed to timely pay the claim.

28.     Texas' Chapter 542 Prompt Payment of Claims Act is a strict liability standard statute.[3] The statute requires only liability under the policy and a failure to comply with the timing requirements of the Act. There is no question that the Policy covers hail and wind damage;

---

[3] *Agredano v. UPC Lloyds*, 975 F.3d 504, 507 (5th Cir. 2020)

however, after years of delay, no payment has been issued. Defendant clearly failed to comply with the time requirements of the statute.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT VIII**
**VIOLATIONS OF CHAPTER 542.056 OF THE TEXAS INSURANCE CODE**

28.    Under Section 542.056, the insurer must notify the claimant in writing that it accepts or rejects the claim within the statutorily mandated time of receiving notice of Plaintiff's claims. UPC failed to accept or deny Plaintiff's full and entire claims within the statutorily mandated time of receiving all necessary information as alleged above. These actions by UPC alleged in paragraphs 7-12 above constitute violations of Chapter 542.056 of the Texas Insurance Code.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT IX**
**VIOLATIONS OF CHAPTER 542.057 OF THE TEXAS INSURANCE CODE**

29.    It is a violation of Section 542.057 for a carrier to fail to timely pay a claim. As described above in paragraphs 7-12, UPC did not promptly pay undisputed claim benefits it knew were owed. As well, to date, Defendant has still failed to pay covered benefits as alleged above.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT X**
**VIOLATIONS OF CHAPTER 542.058 OF THE TEXAS INSURANCE CODE**

30.    It is a violation of Section 542.058 if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, a carrier delays payment of the claim for a period exceeding for more than 60 days. UPC has had Plaintiff's determination of the damages caused by hail and windstorm since early 2022. To date, Defendant has payed nothing on Plaintiff's claims. Thus, Defendant has violated Section 542.058 by delaying payment of claims beyond 60 days.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for actual damages and prompt payment penalties at the rate of 10% interest calculated per annum on the amount of such actual damages pursuant to the Texas Insurance Code Chapter 542 in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with attorneys' fees, interest and costs.

**COUNT XI**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

31.     From and after the time Plaintiff's claim was presented to UPC, its liability to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, it has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment.

32.     UPC's liability was reasonably clear from its first inspection of the Property. Defendant inspected these damages and yet delayed in paying even the policy benefits. To date, Defendant has still not effectuated a settlement of the claims.

33.     Further, UPC's failure, as described in paragraphs 6-8 above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although at that time it knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

WHEREFORE, Plaintiff demands judgment against Defendant UPC for compensatory damages, including all forms of loss resulting from the Defendant's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount Defendant owed, and exemplary damages in an amount in excess of the jurisdictional limits of this Court to be determined by a jury, along with interest and costs.

## CAUSES OF ACTION AGAINST DEFENDANT CULPEPPER

**A.     NONCOMPLIANCE WITH TEXAS INSURANCE CODE**

34.     Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, Culpepper was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Culpepper and his agents constitute one or more violations of the Texas Insurance Code. More specifically, Culpepper has, among other violations, violated the following provisions of the Code:

1. Insurance Code § 542.003(b)(5).

2. Insurance Code chapter 541, section 541.060 by, among other things:

- misrepresenting one or more material facts and/or policy provisions relating to coverage;

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claim;

- refusing to affirm or deny coverage within a reasonable time;

- refusing to conduct a reasonable investigation;

- hiring biased experts;

- ignoring damage known to be covered by the Policy; and/or

- conducting an outcome-oriented investigation in order to provide UPC with a basis to underpay the claim.

35.    The foregoing paragraphs are incorporated herein. UPC assigned the loss and the claim to Culpepper. Culpepper was at all pertinent times the agent of UPC, through both actual and apparent authority. The acts, representations and omissions of Culpepper are also attributed to UPC.

36.    Culpepper was tasked with the responsibility of conducting a thorough and reasonable investigation of Plaintiff's loss, including determining the cause of and then quantifying the damage to the exterior and interior of Plaintiff's Property. Culpepper was also tasked with conducting a thorough and reasonable investigation to ensure a proper scope of damages. Rather than conducting such an inspection, Culpepper failed and refused to even look at all of the covered damages to Plaintiff's Property. Culpepper was provided an engineer report, photos, weather data and other evidence of the widespread hail and wind damage to Plaintiff's Property, but he ignored

them. On information and belief, Culpepper actually photographed much of the damage identified by Plaintiff's engineer and PA but redacted his actual findings from his photo arrays in an attempt to support the denial of the claim. There is no legitimate basis for Culpepper to hide his findings (and the dates of his photos) unless he is purposefully concealing the obvious damages to Plaintiff's Property.

37.    Further, Culpepper had the underwriting report for Plaintiff's Property completed just about five months before the storm that caused the damages; yet, Culpepper wrongfully reported to UPC that the Plaintiff's roofs were damaged by severe wear and tear and deterioration – neither of which was reported in the underwriting report that UPC used to promulgate the coverage for Plaintiff's Property. On information and belief, Culpepper initially dismissed the claim as finding no hail or wind damage after actually photographing hail and wind damage in October 2021. Culpepper's photo array, even with the redacted descriptions, clearly show hail and wind damage. Then, when confronted with the evidence from the PA, Culpepper wrote an estimate in March of 2022 again reporting to UPC no "storm" damage to Plaintiff's Property.

38.    Thereafter, despite multiple requests for a reinspection and requests for photos, UPC and Culpepper refused. Clearly, Culpepper made misrepresentations to Plaintiff, did not conduct a thorough investigation of the claim, and his "estimate" is a misrepresentation about the damages.

39.    Despite having been assigned the claim, and despite being given authority and instructions to inspect, adjust and evaluate the claim, Culpepper failed and refused to properly adjust the claim. Culpepper failed to properly inspect the Property and the damages, failed to request information, failed to adequately investigate the claim, failed to respond to requests for information from the Plaintiff and/or their agents, failed to timely evaluate the claim, failed to

timely estimate the claim, and failed to timely and properly report to UPC and make recommendations to UPC to address all the covered damages. Culpepper's failure to present all of the covered damages to UPC contributed to Plaintiff's claim being underpaid.

40.    Plaintiff provided information regarding the loss and the claim to Culpepper. Plaintiff allowed him full and complete access to the Property. Plaintiff provided sufficient information when requested by Culpepper so he could fairly and reasonably adjust and evaluate the loss. Plaintiff made inquiries regarding the status of the loss and payment, but Culpepper failed and refused to respond to the inquiries and failed to properly adjust the claim and the loss.

41.    As the persons primarily responsible for investigating and evaluating insurance claims, insurance adjusters unquestionably have the ability to affect or bring about the "prompt, fair, and equitable settlement" of claims, because it is upon their investigation that the insurance company's settlement of a claim is generally based. [4] As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages. Culpepper's conduct caused a failure to effectuate a prompt, reasonable settlement of the claim. Moreover, one or more of the foregoing acts or omissions were committed "knowingly" entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

**CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY**

42.    Plaintiff re-alleges the foregoing paragraphs. The Defendants conspired to underpay Plaintiff's claim. UPC assigned Culpepper to investigate Plaintiff's claim, and the Defendants set out to intentionally conduct an outcome-oriented investigation in order to avoid

---

[4] *See Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 U.S. Dist. LEXIS 70033, 2013 WL 2149589, at *5 (N.D. Tex. May 17, 2013) ("Adjusters play a role in the investigation, estimation, and settlement of insurance claims.")

paying for all of the damages to Plaintiff's Property covered by the Policy. The Defendants' conspiracy was a proximate cause of Plaintiff's damages.

## KNOWLEDGE

43.     Each of the acts described above paragraphs 34-41, together and singularly, was done "knowingly" by Culpepper as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

44.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the proximate and producing causes of the damages sustained by Plaintiff.

45.     For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claims, together with attorney's fees.

46.     For noncompliance with the Texas Insurance Code Chapter 541, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, consequential damages not covered by Plaintiff's Policy and attorney's fees.  For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages. TEX. INS. CODE §541.152.

47.     For noncompliance with the Texas Insurance Code Chapter 542, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claims, as well as 10% interest calculated per annum, on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

48.     For breach of the Texas common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach

of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and exemplary damages.

49.    For Civil Conspiracy, Defendants are jointly and severally liable for the damages to Plaintiff.

50.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals.

## ADDITIONAL PLEADINGS

51.    In addition, as to any exclusion, condition, or defense pled by Defendant, Plaintiff would show that:

52.    The clear and unambiguous language of the policy provides coverage for damage to the Property caused by losses made the basis of Plaintiff's claims, including the cost of access to fix the damages;

53.    Because of Defendant's material breach of the policy, Plaintiff was excused from performing on the contract following Defendant's breach.

54.    In the alternative, any other construction of the language of the policy is void as against public policy;

55.    Any other construction and its use by the Defendant violate the Texas Insurance Code section 541 et. seq. and is void as against public policy;

56.    Any other construction is otherwise void as against public policy, illegal, and violates state law and administrative rule and regulation.

57.     In the alternative, should the Court find any ambiguity in the policy, the rules of construction of such policies mandate the construction and interpretation urged by Plaintiff;

58.     In the alternative, Defendant is judicially, administratively, or equitably estopped from denying Plaintiff's construction of the policy coverage at issue;

59.     In the alternative, to the extent that the wording of such policy does not reflect the true intent of all parties thereto, Plaintiff pleads the doctrine of mutual mistake requiring reformation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein. Plaintiff further requests that, on final hearing, Plaintiff has judgment against Defendant for an amount, deemed to be just and fair by the jury, which will be a sum within the jurisdictional limits of this Court. Pursuant to the statutory requirement, Plaintiff pleads that the damages will be more than $1,000,000. Plaintiff further pleads for costs of suit; for interest on the judgment; for pre-judgment interest; and for such other and further relief, in law or in equity, either general or special, including the non-monetary relief of declaratory judgment against UPC, to which Plaintiff may be justly entitled.

Respectfully submitted,

LOYD & POLLOM, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
Telephone: (210) 775-1424
Electronic Mail: shannon@lp-lawfirm.com

BY: _____
       SHANNON E. LOYD
       State Bar No. 24045706

ATTORNEY FOR PLAINTIFF

**PLAINTIFF REQUESTS A TRIAL BY JURY**

# Exhibit B

**7019 2970 0001 3507 5455**

P-2

CAUSE NO.  202281096

RECEIPT NO.  986101                  75.00       CTM
          **********                TR # 74097330

PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION          In The    61st
              vs.                                     Judicial District Court
DEFENDANT: JOURNEY INSURANCE COMPANY                 of Harris County, Texas
                                                     61ST DISTRICT COURT
                                                     Houston, TX

                        CITATION (CERTIFIED)
THE STATE OF TEXAS
County of Harris

TO: JOURNEY INSURANCE COMPANY MAY BE SERVED BY SERVING THE TEXAS
    DEPARTMENT OF INSURANCE COMMISSIONER OF INSURANCE CASSIE BROWN
    333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO CT CORPORATION SYSTEM

    1999 BRYAN STREET SUITE 900   DALLAS TX 75201

    Attached is a certified copy of PLAINTIFFS FIRST AMENDED ORIGINAL PETITION


This instrument was filed on the 9th day of January, 2023, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.
TO OFFICER SERVING:
    This citation was issued on 10th day of January, 2023, under my hand and
seal of said Court.


Issued at request of:
LOYD, SHANNON ELIZABETH                      MARILYN BURGESS, District Clerk
12703  SPECTRUM DRIVE, SUITE 201             Harris County, Texas
SAN ANTONIO, TX  78249                       201 Caroline, Houston, Texas 77002
Tel: (210) 775-1424                          (P.O. Box 4651, Houston, Texas 77210)
Bar No.: 24045706                            Generated By: JACKSON, MONICA  I8V//12187756

                        CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFFS FIRST AMENDED ORIGINAL PETITION
to the following addressee at address:

_____      ADDRESS

                                       Service was executed in accordance with Rule 106
_____         (2) TRCP, upon the Defendant as evidenced by the
(a) ADDRESSEE                             return receipt incorporated herein and attached
                                          hereto at
_____
                                       on _____ day of _____, _____
                                       by U.S. Postal delivery to_____
                                       _____

                                       This citation was not executed for the following
                                       reason: _____
                                       _____

                                       MARILYN BURGESS, District Clerk
                                       Harris County, TEXAS

                                       By _____, Deputy


N.INT.CITM.P                  *74097330*      RECORDER'S MEMORANDUM
                                              This instrument is of poor quality
                                                  at the time of imaging.

**7019 2970 0001 3507 5455** 

CAUSE NO.  202281096

RECEIPT NO.  986101                     75.00        CTM

\*\*\*\*\*\*\*\*\*\*                          TR # 74097330

| | |
|---|---|
| PLAINTIFF: TANGLEGROVE TH CONDO ASSOCIATION<br>vs.<br>DEFENDANT: JOURNEY INSURANCE COMPANY | In The    61st<br>Judicial District Court<br>of Harris County, Texas<br>61ST DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: JOURNEY INSURANCE COMPANY MAY BE SERVED BY SERVING THE TEXAS
    DEPARTMENT OF INSURANCE COMMISSIONER OF INSURANCE CASSIE BROWN
    333 GUADALUPE AUSTIN TEXAS 78701
    FORWARD TO CT CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900    DALLAS  TX  75201

    Attached is a certified copy of <u>PLAINTIFFS FIRST AMENDED ORIGINAL PETITION</u>

This instrument was filed on the <u>9th day of January, 2023</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 10th day of January, 2023, under my hand and
seal of said Court.

<u>Issued at request of:</u>
LOYD, SHANNON ELIZABETH
12703  SPECTRUM DRIVE, SUITE 201
SAN ANTONIO, TX  78249
Tel: (210) 775-1424
<u>Bar No.</u>: 24045706



MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: JACKSON, MONICA  I8V//12187756

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFFS FIRST AMENDED ORIGINAL PETITION
to the following addressee at address:

_____        _____
                                         ADDRESS

_____        Service was executed in accordance with Rule 106
(a) ADDRESSEE                              (2) TRCP, upon the Defendant as evidenced by the
                                             return receipt incorporated herein and attached
_____            hereto at

                                         _____
                                         on _____ day of _____, _____
                                         by U.S. Postal delivery to _____
                                         _____

                                         This citation was not executed for the following
                                         reason: _____
                                         _____

                                         MARILYN BURGESS, District Clerk
                                         Harris County, TEXAS

                                         By _____, Deputy

N.INT.CITM.P                          **\*74097330\***



01-12-23

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete Items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X      ☐ Agent<br>     ☐ Addressee<br><br>B. Received by *(Printed Name)*    C. Date of Delivery |

JOURNEY INSURANCE COMPANY
C/O CASSIE BROWN, INSUR. COMMISSION
333 GUADALUPE
AUSTIN TX 78701

2022-81096 61ST DISTRICT COURT

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No



TEXAS DEPT OF INSURANCE
SERVICE CENTER
JAN 17 2023
RECEIVED

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 4264 8121 8156 28

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
(over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

7015 2970 0001 3507 5455

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt



USPS TRACKING #

9590 9402 4264 8121 8156 28

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States
Postal Service**

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2023 FEB -2 AM 8: 13

BY_____
MAIL FAX

• Sender: Please print your name, address, and ZIP+4® in this box•

**MARILYN BURGESS
HARRIS COUNTY DISTRICT CLERK
P.O. BOX 4651
HOUSTON, TEXAS 77210-4651**

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**EXHIBIT A - Page 118 of 320**

# Exhibit C

CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION§ | | IN THE DISTRICT COURT |
| | § | |
| V. | § | 61st JUDICIAL DISTRICT |
| | § | |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

## <u>AFFIDAVIT OF PLAINTIFF'S LIQUIDATED DAMAGES</u>

Before me, the undersigned notary, on this day personally appeared Shannon E. Loyd, a person whose identity is known to me. After I administered an oath to her, upon her oath she said:

1. "Plaintiff had an Insurance Policy ("Policy") with Defendant covering its property. *See* Exhibit 1. During the terms of said Policy, Plaintiff sustained covered losses when a hail/wind storm damaged Plaintiff's property, and Plaintiff timely reported same to Defendant Journey Insurance Company ("UPC") pursuant to the terms of the Policy. Plaintiff asked that UPC cover the cost of the loss with regard to the hail/wind storm pursuant to the Policy, but UPC conducted an outcome-oriented investigation and under-scoped Plaintiff's damages in order to allow UPC to avoid full payment on the claim.

2. Attached to this affidavit is the estimate Plaintiff received for the work to be completed to make the reasonable and necessary repairs to the property due to the covered hail and wind damage, but UPC has refused to fully pay in the amount of $3,613,007.80. *See* Exhibit 2. All of the attached documents were made in the regular course of business; it was the regular course of business for an employee or representative of the business with personal knowledge of the act, event or condition to make the memoranda or records or to transmit information to be included in them, and they were made at or near the time of the act, event or condition or reasonably soon thereafter.

3. UPC has breached its contract with Plaintiff. For breach of contract, Plaintiff is entitled to regain the benefit of the bargain, which is the amount of the claim, together with attorney's fees (calculated in Affidavit for Attorney's fees). The amount of the claim is **$3,613,007.80**. This amount is calculated based on the estimate received to repair Plaintiff's property. *See* Exhibit 2.

4. Because of UPC's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorneys and law firm who are representing it with respect to these causes of action. Accordingly, Plaintiff also incurred costs of court totaling **$588.00** and attorneys' fees totaling **$30,250.00** detailed in my attorneys' affidavit, attached as Exhibit 3.

1

5.  Plaintiff is also entitled to penalties under Chapter 542 of the Texas Insurance Code. According to section §542.056(a), a rejection or acceptance of the claim is the insurer's acknowledgment that it had all the information it needed from the claimant to determine whether the claimant was entitled to benefits under the policy. To prevail under a claim for damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim. *See* § 542.060(a); *Progressive Cty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam). UPC is liable pursuant to Plaintiff's default judgment. Further, UPC sent Plaintiff its denial of the claim on October 14, 2021. *See* Exhibit 4. Plaintiff's Exhibit 2 proves that amount that UPC failed to pay timely pursuant to the statute.

6.  Pursuant to UPC's violation of Chapter 542, Plaintiff is entitled to **$491,962.98** in penalties for UPC's untimely payment of the claim. This amount is calculated as follows:  $3,613,007.80 x 10% = 361,300.78/365 = $989.87 x 497 days (October 14, 2021 to February 23, 2023) = $491,962.98.

7.  In sum, Plaintiff is entitled to liquidated damages in the amount of **$4,135,808.78**. This amount is based upon the actual damages of $3,613,007.80, penalties under Chapter 542 of $491,962.98, attorneys' fees of $30,250.00 and court cost of $588.00.

8.  Further affiant sayeth not."

SHANNON E. LOYD

STATE OF WASHINGTON §
                                       §
PIERCE COUNTY              §

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 23rd day of February, 2023.

Notary Public, State of Washington

Lance Loyd
Printed Name of Notary Public

Commission Expires: 12-29-25

2

# Exhibit 1

# TEXAS IMPORTANT NOTICES

## TEXAS FLOOD INSURANCE DISCLOSURE NOTICE

"Flood Insurance: You may also need to consider the purchase of flood insurance. Your insurance policy does not include coverage for damage resulting from a flood even if hurricane winds and rain caused the flood to occur. Without separate flood insurance coverage, you may have uncovered losses caused by a flood. Please discuss the need to purchase separate flood insurance coverage with your insurance agent or insurance company, or visit www.floodsmart.gov."

## TEXAS PERIOD TO FILE A CLAIM OR BRING
## LEGAL ACTION AGAINST US NOTICE –
## WINDSTORM OR HAIL – CATASTROPHE AREA

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), **the provisions of the policy (including its endorsements) shall prevail.**

Carefully read your policy, including the endorsements attached to your policy.

In accordance with Texas Insurance Code Section 2301.010(f), we are notifying you that:

1. With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim; and

2. Any legal action brought against us under the policy for loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, must be brought within the earlier of the following:

   a. Two years and one day from the date we accept or reject the claim; or

   b. Three years and one day from the date of the loss or damage that is the subject of the claim.

# Have a complaint or need help?

If you have a problem with a claim or your premium, call your insurance company or HMO first. If you can't work out the issue, the Texas Department of Insurance may be able to help.

Even if you file a complaint with the Texas Department of Insurance, you should also file a complaint or appeal through your insurance company or HMO. If you don't, you may lose your right to appeal.

**Journey Insurance Company**
To get information or file a complaint with your insurance company or HMO:

**Call: Client Experience Center at 1-866-515-4428**

**Toll-free: 1-866-515-4428**

**Online:** https://www.upcinsurance.com/contact-us?url=general-inquiries

**Email:** cec@upcinsurance.com

**Mail:** P.O. Box 1011, St. Petersburg, FL  33731-1011

**The Texas Department of Insurance**
To get help with an insurance question or file a complaint with the state:

**Call with a question: 1-800-252-3439**

**File a complaint:** www.tdi.texas.gov

**Email:** ConsumerProtection@tdi.texas.gov

**Mail:** MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091

# ¿Tiene una queja o necesita ayuda?

Si tiene un problema con una reclamación o con su prima de seguro, llame primero a su compañía de seguros o HMO. Si no puede resolver el problema, es posible que el Departamento de Seguros de Texas (Texas Department of Insurance, por su nombre en inglés) pueda ayudar.

Aun si usted presenta una queja ante el Departamento de Seguros de Texas, también debe presentar una queja a través del proceso de quejas o de apelaciones de su compañía de seguros o HMO. Si no lo hace, podría perder su derecho para apelar.

**Journey Insurance Company**

Para obtener información o para presentar una queja ante su compañía de seguros o HMO:

**Llame a: Servicio al Cliente al 1-866-515-4428**

**Teléfono gratuito: 1-866-515-4428**

**En línea:** https://www.upcinsurance.com/contact-us?url=general-inquiries

**Correo electrónico:** cec@upcinsurance.com

**Dirección postal:** P.O. Box 1011, St. Petersburg, FL  33731-1011

**El Departamento de Seguros de Texas**

Para obtener ayuda con una pregunta relacionada con los seguros o para presentar una queja ante el estado:

**Llame con sus preguntas al:** 1-800-252-3439

**Presente una queja en:** www.tdi.texas.gov

**Correo electrónico:** ConsumerProtection@tdi.texas.gov

**Dirección postal:** MC 111-1A, P.O. Box 149091, Austin, TX 78714-9091



## COMMERCIAL PROPERTY INSURANCE POLICY JACKET

| PRODUCER AND MAILING ADDRESS | NAMED INSURED AND MAILING ADDRESS |
|---|---|
| AMSUISSE INC<br>830 S  MASON RD<br>STE  A 1<br>KATY, TX 77450<br>(800) 485-0229 | TANGLEGROVE TH CONDO ASSOC<br>C/O GARNER PROPERTY MNGMNT<br>5845 LYNBROOK<br>HOUSTON, TX 77057 |

**Policy Number: 42-6590000083-U-00**

Policy Period:      From: <u>01/24/2021</u>*   to: <u>01/24/2022</u>*
*12:01 A.M. Local Time at the Named Insured's Mailing Address

| | |
|---|---|
| Total Premium: | $154,163.00 |
| TRIA Premium: | Not Purchased |
| Insurer(s) Inspection Fee: | $450.00 |
| Insurer(s) Policy Fee: | $265.00 |
| Total: | $154,878.00 |

**IN RETURN FOR THE PAYMENT OF PREMIUM AND FEES, AND SUBJECT TO ALL OF THE TERMS AND CONDITIONS OF THIS POLICY, THE UNDERWRITING INSURERS LISTED WITHIN THIS POLICY AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

This insurance policy is issued by International Catastrophe Insurance Managers, LLC ("ICAT"), on behalf of the insurer identified within the policy and in accordance with the limited authorization granted to ICAT as Correspondent / Program Administrator for such insurers.  ICAT is not an insurer under this policy and is not liable to indemnify the insured under the terms of this policy.

Any inquiries regarding this policy should be addressed to ICAT at the following address:
> International Catastrophe Insurance Managers, LLC
> 385 Interlocken Crescent
> Suite 1100
> Broomfield, CO 80021

## GENERAL PROVISIONS

1. **Correspondent / Program Administrator Not Insurer.**  ICAT is the Correspondent / Program Administrator issuing this insurance policy.  ICAT is not an insurer of the insurance described herein and neither is nor shall be liable for any loss or claim whatsoever.

2. **Insurer(s) Policy and Inspection Fees.**  All Policy and Inspection Fees charged under this policy and identified on this Commercial Property Insurance Policy Jacket or in the Declarations Page are fully earned as of the policy inception date and are not refundable.

3. **Cancellation.**  If this insurance policy or any part of the insurance provided under this policy is cancelled after the inception date of the policy, earned premium must be paid for the time the insurance has been in force.  Cancellation and premium earnings shall be as provided in the policy and as may be modified by endorsement issued by ICAT, including endorsements which specify minimum earned premium.  You should read this policy carefully to determine how premium is earned before you decide to cancel this policy.

4. **Assignment.**  The insurance described herein shall not be assigned either in whole or in part without the written consent of ICAT.

5. **Attached Conditions Incorporated.**  The insurance described in this Commercial Property Insurance Policy Jacket as well as in the policy to which it is attached is subject to all provisions, conditions, and warranties set forth herein, attached, or endorsed, all of which are to be considered incorporated herein as further descriptive of the insurance.


**JOURNEY INSURANCE**
A UPC Insurance Company

| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | **DECLARATIONS PAGE** | 01/24/2021 |

| Policy Period | | Term | Policy Inception Date |
|---|---|---|---|
| From: 01/24/2021   12:01 am Local Time*   To: 01/24/2022   12:01 am Local Time* | | 12 months | 01/24/2021 |

*At the Named Insured Mailing Address shown below.

| **BROKER** | 5434342 | **NAMED INSURED** |
|---|---|---|
| AMSUISSE INC | | TANGLEGROVE TH CONDO ASSOC |
| 830 S  MASON RD | | C/O GARNER PROPERTY MNGMNT |
| STE  A 1 | | 5845 LYNBROOK |
| KATY, TX 77450 | | HOUSTON, TX 77057 |
| (800) 485-0229 | | |

**COMMON POLICY CONDITIONS**

In return for the payment of the premium and fees, and subject to all the terms of this Policy,
We agree with You to provide the insurance as stated in this Policy.

**This Policy is comprised of the following Forms and Endorsements:**

| | | | |
|---|---|---|---|
| JR TXNOTICE 07 20 | N 42 TIN 07 20 | JR JACKET 05 20 | JR SCOL 50(b) (05 20) |
| ICAT 50 SOV (10 10) | CP 00 17 10 12 | CP 00 50 10 12 | CP 00 90 07 88 |
| CP 01 47 11 00 | CP 02 02 12 19 | CP 04 05 09 17 | CP 04 31 04 02 |
| CP 10 30 09 17 | CP 10 32 08 08 | CP 12 72 12 98 | CP 14 10 06 95 |
| ICAT SCOL 125 (11 11) | ICAT SCOL 130 (12 11) | ICAT SCOL 136 (05 11) | ICAT SCOL 140 (12 11) |
| ICAT SCOL 141 (12 11) | ICAT SCOL 143 (05 11) | ICAT SCOL 200 (09 15) | ICAT SCOL 220 (07 09) |
| ICAT SCOL 221 (05 20) | ICAT SCOL 230 (07 09) | ICAT SCOL 232 (07 09) | ICAT SCOL 233 (07 09) |
| ICAT SCOL 234 (07 09) | JR SCOL 238 05 20 | ICAT SCOL 241 (10 19) | JR SCOL 242 TX (05 20) |
| ICAT SCOL 425 (09 15) | ICAT SCOL 602(c) (11 20) | ICAT SCOL 603 (04 08) | ICAT NMA2920 (01 20) |
| ICAT TRIA-3 (01 15) | IL 00 03 08 02 | IL 00 17 11 98 | IL 09 35 07 02 |
| IL P 001 01 04 | JR 424 10 18 | JR SOS 05 20 | |

**See Schedule A attached to this Declarations Page for Coverages, Deductibles and Limits of Insurance.**

**TO FILE A CLAIM 24 HOURS/DAY, PLEASE FAX TO 1-800-380-5053 OR CALL 1-888-256-3378**

Your Annual Premium and Fees are:

| | | |
|---|---|---|
| Annual Premium | $ | 153,024.00 |
| Premium for Terrorism Coverage as it relates to an otherwise covered cause of loss | | Not Selected |
| Inspection Fee | $ | 450.00 |
| Policy Fee | $ | 265.00 |
| Total | $ | 153,739.00 |

THIS DECLARATIONS PAGE TOGETHER WITH THE SPECIAL CAUSE OF LOSS
COMMERCIAL PROPERTY POLICY FORM CP 10 30 10 12 AND ENDORSEMENTS,
IF ANY, ATTACHED HERETO COMPLETE THIS CONTRACT OF INSURANCE.

Issued on <January 28, 2021>



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | **DECLARATIONS PAGE** | 01/24/2021 |

### Schedule A

### Section 1:  Property or Interest Covered

| | |
|---|---|
| Building | Included |
| Business Personal Property | Not Included |
| Business Income with Extra Expense including Rental Value | Not Included |
| Additional Property Coverage | Included |
| Fountain View (Pool) | Included |
| Lynbrook (Pool) | Included |
| Pool Areas & Other – Iron Fencing | Included |
| Brick Fencing | Included |
| Wooden Fencing | Included |
| Vehicle Carports | Included |

| **Optional Coverages and Coinsurance** | |
|---|---|
| Replacement Cost (Building, Personal Property, "Stock") | Yes, Including "Stock" (if Personal Property is covered) |
| Coinsurance | Waived |

### Optional/Additional Coverages or Causes of Loss

| | |
|---|---|
| Accounts Receivable | $100,000 |
| Blanket Limits | Not Included |
| Claims Preparation Fees (aka Professional Fees) | $50,000 |
| Condo All-In Endorsement | Not Included |
| Debris Removal | 25% of loss within limit, up to additional $50,000 per location in addition to limit. |
| Earthquake | Not Included |
| Electronic Data | $100,000 |
| Equipment Breakdown | Excluded |
| Extended Period of Indemnity | 90 days |
| Extra Expense | $50,000 |
| Fire Department Service Charge | $25,000 |
| Fire Extinguishing Recharge | $10,000 |
| Increased Cost of Construction building | Less of $10,000 or 5% of the Limit of Insurance applicable to that building |
| Limited Coverage for Fungus, Wet Rot, Dry Rot and Bacteria | $25,000 Annual Aggregate, 30 day limit on BI/EE (if applicable). Policy Specifies Limited Causes of |
| Lock Replacement | $7,500 |
| Monthly Limit of Indemnity | N/A |
| Newly Acquired BPP | $100,000 |
| Newly Acquired Building | $250,000 |
| Non-Owned detached trailers | $5,000 |
| Outdoor Property | $25,000 (max $5,000 per tree or shrub) |

| | |
|---|---|
| Outdoor Signs (non-scheduled) | $25,000 |
| Ordinance or Law Coverage A | Included |
| Ordinance or Law Coverage B & C | Full A, B & C limited to 5% |
| Personal Effects | $25,000 |
| Pollutant Cleanup and Removal | $25,000 |
| Preservation of Property | Included |
| Property in Transit | $25,000 |
| Property off Premises | $25,000 |
| Sewer Backup | $50,000 |
| Valuable Papers | $100,000 |
| Wind Driven Rain | Not Included |



| Policy Number | SPECIAL CAUSE OF LOSS POLICY | JR SCOL 50(b) (05 20) |
|---|---|---|
| 42-6590000083-U-00 | DECLARATIONS PAGE | 01/24/2021 |

## Section 2: Our Limit of Insurance – Limits of Liability

The Limit of Liability or Amount of Insurance shown in the Declarations, or endorsed onto this policy, is the total limit of the Company's liability applicable to each occurrence, as hereafter defined.  Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall the liability of the Company exceed this limit or amount irrespective of the number of locations involved.  This policy will not pay more than the limit of insurance listed below in any one occurrence, whether from a single or multiple covered Cause(s) of Loss.

1.  Limit of Liability, Any One Occurrence:       1.  $32,954,774

## Section 3:  Deductibles

| | | |
|---|---|---|
| As respects Named Storm: | 3% | Per Occurrence, By Building |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| | | |
|---|---|---|
| Minimum Deductible, as respects Named Storm: | $25,000 | Per Occurrence, By Policy |

This policy includes a minimum deductible equal to the amount listed for the peril listed.

| | | |
|---|---|---|
| As respects All Other Wind and Hail: | $50,000 | Per Occurrence, By Policy |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

| | | |
|---|---|---|
| As respects All Other Perils: | $10,000 | Per Occurrence, By Policy |

In the application of the deductible for the peril and the amount listed above please refer to the deductible forms which are part of this policy form, all of which may be subject to any minimum or maximum deductible listed below.

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR NAMED STORM OR WIND/HAIL LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU. THE ENCLOSED EXAMPLE ILLUSTRATES HOW THE DEDUCTIBLE MIGHT AFFECT YOU.**

STATEMENT OF VALUES

| Total Stated Values Under Policy | | | | Lines of Coverage | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Building(s) | Business Personal Property | Tenant Improvement and Betterments | Business Income and Extra Expense | Additional Property Coverage | Total Values | Distance to Coast (mi.) | Flood Zone |
| **Tanglegrove** | | | | 31,333,875 | - | - | - | 1,620,899 | 32,954,774 | | |
| Loc # | Bldg # | # of Bldgs | Description | | | | | | | | |
| 1 | 1 | 1 | 1110 FOUNTAIN VIEW | 1,352,475 | - | - | - | | 1,352,475 | 23.72 | X |
| 1 | 2 | 1 | 1132 FOUNTAIN VIEW | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 3 | 1 | 1134 FOUNTAIN VIWE | 1,224,900 | - | - | - | | 1,224,900 | 23.72 | X |
| 1 | 4 | 1 | 1228 FOUNTAIN VIEW | 684,000 | - | - | - | | 684,000 | 23.72 | X |
| 1 | 5 | 1 | 1238 FOUNTAIN VIEW | 678,075 | - | - | - | | 678,075 | 23.72 | X |
| 1 | 6 | 1 | 1248 FOUNTAIN VIEW | 1,348,950 | - | - | - | | 1,348,950 | 23.72 | X |
| 1 | 7 | 1 | 5912 VALLEY FORGE | 544,575 | - | - | - | | 544,575 | 23.72 | X |
| 1 | 8 | 1 | 5902 VALLEY FORGE | 699,225 | - | - | - | | 699,225 | 23.72 | X |
| 1 | 9 | 1 | 1202 FOUNTAIN VIEW | 1,216,725 | - | - | - | | 1,216,725 | 23.72 | X |
| 1 | 10 | 1 | 1144 FOUNTAIN VIEW | 552,075 | - | - | - | | 552,075 | 23.72 | X |
| 1 | 11 | 1 | 5911 SUGAR HILL | 558,300 | - | - | - | | 558,300 | 23.72 | X |
| 1 | 12 | 1 | 5901 SUGAR HILL | 682,650 | - | - | - | | 682,650 | 23.72 | X |
| 1 | 13 | 1 | 5885 SUGAR HILL | 1,135,875 | - | - | - | | 1,135,875 | 23.72 | X |
| 1 | 14 | 1 | 1115 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 15 | 1 | 5871 SUGAR HILL | 964,425 | - | - | - | | 964,425 | 23.72 | X |
| 1 | 16 | 1 | 5840 LYNBROOK | 1,060,425 | - | - | - | | 1,060,425 | 23.72 | X |
| 1 | 17 | 1 | 5816 LYNBROOK | 796,950 | - | - | - | | 796,950 | 23.72 | X |
| 1 | 18 | 1 | 5833 SUGAR HILL | 878,475 | - | - | - | | 878,475 | 23.72 | X |
| 1 | 19 | 1 | 5857 SUGAR HILL | 971,475 | - | - | - | | 971,475 | 23.72 | X |
| 1 | 20 | 1 | 5845 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 21 | 1 | 5853 SUGAR HILL | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 22 | 1 | 5847 LYNBROOK | 115,350 | - | - | - | | 115,350 | 23.72 | X |
| 1 | 23 | 1 | 5847 LYNBROOK | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 24 | 1 | 1203 FOUNTAIN VIEW | 1,078,425 | - | - | - | | 1,078,425 | 23.72 | X |
| 1 | 25 | 1 | 5815 LYNBROOK | 809,250 | - | - | - | | 809,250 | 23.72 | X |
| 1 | 26 | 1 | 1221 FOUNTAIN VIEW | 972,975 | - | - | - | | 972,975 | 23.72 | X |
| 1 | 27 | 1 | 5862 VALLEY FORGE | 951,900 | - | - | - | | 951,900 | 23.72 | X |
| 1 | 28 | 1 | 5876 VALLEY FORGE | 1,086,375 | - | - | - | | 1,086,375 | 23.72 | X |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 29 | 1 | 5858 VALLEY FORGE | 314,100 | - | - | - | | 314,100 | 23.72 | X |
| 1 | 30 | 1 | 5848 VALLEY FORGE | 665,550 | - | - | - | | 665,550 | 23.72 | X |
| 1 | 31 | 1 | 5842 VALLEY FORGE | 391,650 | - | - | - | | 391,650 | 23.72 | X |
| 1 | 32 | 1 | 5828 VALLEY FORGE | 932,850 | - | - | - | | 932,850 | 23.72 | X |
| 1 | 33 | 1 | 5802 VALLEY FORGE | 1,099,725 | - | - | - | | 1,099,725 | 23.72 | X |
| 1 | 34 | 1 | 5818 VALLEY FORGE | 669,600 | - | - | - | | 669,600 | 23.72 | X |
| 1 | 35 | 1 | 5801 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 36 | 1 | 5802 LYNBROOK | 985,275 | - | - | - | | 985,275 | 23.72 | X |
| 1 | 37 | 1 | 5825 SUGAR HILL | 580,050 | - | - | - | | 580,050 | 23.72 | X |
| 1 | 38 | 1 | 5817 SUGAR HILL | 548,700 | - | - | - | | 548,700 | 23.72 | X |
| 1 | 39 | 1 | 5801 SUGAR HILL | 1,098,675 | - | - | - | | 1,098,675 | 23.72 | X |
| | | APC1 | Fountain View (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC2 | Lynbrook (Pool) | | | | | 50,000 | 50,000 | | |
| | | APC3 | Pool Areas & Other - Iron Fencing | | | | | 20,000 | 20,000 | | |
| | | APC4 | Brick Fencing | | | | | 160,000 | 160,000 | | |
| | | APC5 | Wooden Fencing | | | | | 50,000 | 50,000 | | |
| | | APC6 | Vehicle Carports | | | | | 1,290,899 | 1,290,899 | | |

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, outside of individual units, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

**(6)** Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

**(a)** Fixtures, improvements and alterations that are a part of the building or structure; and

**(b)** Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

**b. Your Business Personal Property** located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

**(1)** Personal property owned by you or owned indivisibly by all unit-owners;

**(2)** Your interest in the labor, materials or services furnished or arranged by you on personal property of others; and

**(3)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

   **(1)** Grain, hay, straw or other crops; or

   **(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

   **a. Debris Removal**

   **(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

   **(2)** Debris Removal does not apply to costs to:

      **(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

      **(b)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

      **(c)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

      **(d)** Remove deposits of mud or earth from the grounds of the described premises;

      **(e)** Extract "pollutants" from land or water; or

      **(f)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

   **(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

   **(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

   **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

   **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---:|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---:|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 = 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

You may extend the insurance that applies to Building to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the described premises.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−      250
$ 59,850   Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Unit-owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary and not to contribute with such other insurance.

**7. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**8. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b.** and **c.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** Glass at the cost of replacement with safety-glazing material if required by law.

**9. Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence; or

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit-owners, and the property covered under Paragraph **A.1.a.(6)** of this Coverage Form, are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

# EXTRA EXPENSE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **D.** Definitions.

## A. Coverage

We will pay the actual and necessary Extra Expense you sustain due to direct physical loss of or damage to property at premises which are described in the Declarations and for which an Extra Expense Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**a.** The portion of the building which you rent, lease or occupy;

**b.** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**c.** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 1. Extra Expense

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property. Coverage pertains to expenses (other than the expense to repair or replace property) which are incurred to:

**a.** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**b.** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

### 2. Covered Causes Of Loss, Exclusions And Limitations

See applicable Causes Of Loss form as shown in the Declarations.

### 3. Additional Limitation – Interruption Of Computer Operations

**a.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**c.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

## 4. Additional Coverages

### a. Alterations And New Buildings

We will pay for the actual and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

### b. Civil Authority

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end four consecutive weeks after the date of that action.

### c. Interruption Of Computer Operations

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation, Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation, Interruption Of Computer Operations does not apply based on Paragraph **A.3.c.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss sustained as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss in a subsequent policy year(s), all loss is deemed to be sustained in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**5. Coverage Extension**

You may extend the insurance provided by this Coverage Part as follows:

**NEWLY ACQUIRED LOCATIONS**

**a.** You may extend your Extra Expense Coverage to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay for loss under this Extension is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire the property; or

**(3)** You notify us of how you want this coverage to apply to that location.

We will charge you additional premium from the date you acquire the property.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings; or

**2.** Civil Authority.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties If You Incur Extra Expense**

    **a.** You must see that the following are done if you incur Extra Expense:

        **(1)** Notify the police if a law may have been broken.

        **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

        **(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

        **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

        **(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

        Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

        **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

        **(7)** Cooperate with us in the investigation or settlement of the claim.

        **(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

    **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Limits On Loss Payment**

    We will not pay more for Extra Expense than the percentages shown in the Declarations times the Limit of Insurance.

    When the "period of restoration" is:

    **a.** 30 days or less, the first percentage applies.

    **b.** 60 days or less, but more than 30 days, the second percentage applies.

    **c.** More than 60 days, the third percentage applies.

**Example**

| | |
|---|---|
| The Limit of Insurance is: | $ 100,000 |
| The percentages shown in the Declarations are: | 40% – 80% – 100% |
| The "period of restoration" is: | 45 days |
| The amount of Extra Expenses incurred is: | $ 90,000 |

We will not pay more than $100,000 times 80% (the percentage applicable for a "period of restoration" of 31–60 days), or $80,000. The remaining $10,000 is not covered.

**4. Loss Determination**

    **a.** The amount of Extra Expense will be determined based on:

        **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

            **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

            **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

        **(2)** Necessary expenses that reduce the Extra Expense otherwise incurred.

    **b.** We will reduce the amount of your Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

    **c.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**5. Loss Payment**

We will pay for any loss within 30 days after we receive the proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We reach agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Definitions**

**1.** "Operations" means your business activities occurring at the described premises.

**2.** "Period of restoration" means the period of time that:

**a.** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**3.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**4.** "Suspension" means the slowdown or cessation of your business activities.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
CP 01 47 11 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES –
# CONDOMINIUM ADDITIONAL PROVISIONS

This endorsement modifies insurance provided under the following:

CONDOMINIUM ASSOCIATION COVERAGE FORM

**A.** The following Condition is added to the **Additional Conditions:**

   **3. Act Or Omission**

   No act or omission by any unit-owner will void this policy or be a condition to recovery under this policy. But this Condition does not apply to unit-owners acting within the scope of their authority on behalf of the Association.

**B.** The **Waiver Of Rights Of Recovery** Loss Condition is replaced by the following:

**Waiver of Rights of Recovery**

We waive our rights to recover payment against:

   **1.** Any unit-owner described in the Declarations including the developer, and members of his or her household;

   **2.** The Association; and

   **3.** Members of the board of directors for acts or omissions within the scope of their duties for you.

But we reserve our rights to recover from the developer damages for which he or she may be held liable in his or her capacity as a developer.

**C.** Paragraph **b.** of the **Mortgageholders** Additional Condition is replaced by the following:

   **b.** If the condominium is terminated, we will pay for covered loss of, or damage to, buildings or structures to each mortgageholder shown on the Declarations in their order of precedence, as interests may appear.

   In all other respects, we will pay for loss to buildings or structures to you or the insurance trustee designated for that purpose, in accordance with the Loss Payment Loss Condition contained in this Coverage Part.

**D.** Paragraphs **f.** and **g.** of **Mortgageholders** Additional Condition are replaced by the following:

   **f.** If we cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

   If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

   **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 30 days before the expiration or anniversary date of this policy.

EXHIBIT A - Page 155 of 320

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** Paragraphs **2., 3.,** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2.a.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we may cancel this policy by mailing or delivering written notice of cancellation, at least 30 days before the effective date of cancellation, to:

  **(1)** The first Named Insured; and

  **(2)** Each unit-owner to whom we issued a certificate or memorandum of insurance.

  If we cancel this policy, we will, at the request of the Named Insured, provide a written statement of the reason or reasons for such cancellation.

**b.** If the policy covers a risk other than the risk described in Paragraph **2.a.,** then we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

**c.** If this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

  **(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

  **(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

    **(a)** Fraud in obtaining coverage;

    **(b)** Failure to pay premiums when due;

    **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

    **(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

    **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will also mail or deliver notice of cancellation to each unit-owner to whom we issued a certificate or memorandum of insurance, to each last mailing address known to us.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. However, the cancellation will be effective even if we have not made or offered a refund. The notice of cancellation will state that unearned paid premium, if not tendered, will be refunded on demand.

**B.** The following condition is added and applies unless Paragraph **D.** applies:

**Nonrenewal**

1. In compliance with Texas law, we will not refuse to renew this policy solely because the policyholder is an elected official.

2. This paragraph, **2.,** applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, not later than the 60th day before the expiration date. If notice is mailed or delivered later than the 60th day before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's rate.

3. If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then:

   **a.** We will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to the first Named Insured and to each unit-owner to whom we issued a certificate or memorandum of insurance.

   **b.** We will mail or deliver such notice to each last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C. Cancellation – One- And Two-Family Dwellings And Governmental Property**

The following applies to all policies that provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one and two-family dwellings:

1. Paragraph **A.5.** above is replaced by the following:

   If this policy is cancelled, we will send the first Named Insured any premium refund due. The cancellation will be effective even if we have not made or offered a refund.

   The refund will be pro rata if:

   **a.** We cancel this policy; or

   **b.** The first Named Insured cancels this policy because:

      **(1)** We refused to provide additional coverage which the first Named Insured requested under the policy; or

      **(2)** We reduced or restricted coverage under the policy without the consent of the first Named Insured.

   The refund may be less than pro rata if the first Named Insured cancels this policy for a reason other than those listed in **b.(1)** and **b.(2)** above.

2. The following provisions are added to the **Cancellation** Common Policy Condition:

   **a.** If this policy has been in effect for less than 90 days and is not a renewal of a policy we issued, we may cancel coverage for any reason.

   **b.** If this policy has been in effect for 90 days or more or is a renewal of a policy we issued, we may cancel coverage only for the following reasons:

      **(1)** If the first Named Insured does not pay the premium or any portion of the premium when due;

**(2)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

**(3)** If the Named Insured submits a fraudulent claim; or

**(4)** If there is an increase in the hazard covered by this policy that is within the control of the Named Insured and would produce an increase in the premium rate of this policy.

**c.** If such coverage is cancelled, we will, at the request of the Named Insured, provide a written statement of the reason or reasons for such cancellation.

**d.** In compliance with Texas law, we will not cancel such coverage solely because the policyholder is an elected official.

**D.** The following condition is added:

**Nonrenewal – One- And Two-Family Dwellings And Governmental Property**

**1.** If we elect not to renew coverage on one- and two-family dwellings or on governmental units, we will mail or deliver written notice of nonrenewal to the first Named Insured and any mortgageholder shown in the Declarations, at least 30 days before the expiration date. Proof of mailing will be sufficient proof of notice.

We will, at the request of the Named Insured, provide a written statement of the reason or reasons for such nonrenewal.

If we fail to give the first Named Insured proper notice of our refusal to renew, the first Named Insured may require us to renew the policy.

**2.** We may elect not to renew such coverage for any reason, subject to the exceptions and limitations in Paragraphs **3.** and **4.** below.

**3.** We will not refuse to renew coverage:

**a.** Solely because the policyholder is an elected official; or

**b.** Because of claims for losses resulting from natural causes.

**4. Claims That Do Not Result From Natural Causes**

**a.** If we have previously notified you as provided in **b.** below, we may refuse to renew coverage if the Named Insured has filed under this policy, in any three-year period, three or more claims that do not result from natural causes.

**b.** If the Named Insured has filed two such claims in a period of less than three years, we may notify the first Named Insured in writing that, if the Named Insured files a third such claim during the three year period, we may refuse to renew coverage.

**c.** A claim does not include a claim that is filed but is not paid or payable under the policy.

# ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Building Number/ Premises Number | Coverage A | Coverage B Limit Of Insurance | Coverage C Limit Of Insurance | Coverages B And C Combined Limit Of Insurance |
|---|---|---|---|---|
| ALL   **/** ALL | [X] | $ | $ | 5%                    * |
| / | [ ] | $ | $ | $                    * |
| / | [ ] | $ | $ | $                    * |

| Post-Loss Ordinance Or Law Option:   Yes [ ]   No [X] |
|---|

*Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** and **C**, or if one of these Coverages is not applicable.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement applies with respect to an ordinance or law that regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises, subject to the following:

**1.** The requirements of the ordinance or law are in force at the time of loss. But if the Post-Loss Ordinance Or Law Option is indicated in the Schedule as being applicable, then Paragraph **B.2.** applies instead of this Paragraph **B.1.**

**2.** The requirements of the ordinance or law are in force at the time of loss; or the ordinance or law is promulgated or revised after the loss but prior to commencement of reconstruction or repair and provided that such ordinance or law requires compliance as a condition precedent to obtaining a building permit or certificate of occupancy.

**3.** Coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**4.** Coverage under this endorsement applies only if:

**a.** The building sustains only direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

However, there is no coverage under this endorsement if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, even if the building has also sustained covered direct physical damage.

**5.** If coverage applies under this endorsement based on the terms of Paragraph **B.4.b.**, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

(Paragraph **F.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**6.** We will not pay under this endorsement for:

**a.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**b.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**7.** We will not pay under this endorsement for any loss in value or any cost incurred due to an ordinance or law that you were required to comply with before the time of the current loss, even in the absence of building damage, if you failed to comply.

**C. Coverage**

**1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. Coverage **A** does not increase the Limit of Insurance.

**2. Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

**3. Coverage C – Increased Cost Of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of that building; and/or

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

**(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with Paragraph **C.3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in Paragraph **C.3.a.:**

**(1)** The cost of excavations, grading, backfilling and filling;

**(2)** Foundation of the building;

**(3)** Pilings; and

**(4)** Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this provision, **3.b.**

**D. Loss Payment**

**1.** All following loss payment provisions, **D.2.** through **D.5.,** are subject to the apportionment procedures set forth in Paragraph **B.5.** of this endorsement.

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**a.** If the Replacement Cost Coverage Option applies and such building is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

**(1)** The amount you would actually spend to repair, rebuild or reconstruct such building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**b.** If the Replacement Cost Coverage Option applies and such building is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

**(1)** The actual cash value of such building at the time of loss; or

**(2)** The Limit Of Insurance applicable to such building as shown in the Declarations or addressed elsewhere in this policy. (If this policy is endorsed to cover Earthquake and/or Flood as a Covered Cause of Loss, the Limit of Insurance applicable to the building in the event of damage by such Covered Cause of Loss may be lower than the Limit of Insurance that otherwise would apply.)

**3.** Unless Paragraph **D.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

**a.** The amount you actually spend to demolish and clear the site of the described premises; or

**b.** The applicable Limit Of Insurance shown for Coverage **B** in the Schedule.

**4.** Unless Paragraph **D.5.** applies, loss payment under Coverage **C** – Increased Cost Of Construction Coverage will be determined as follows:

    **a.** We will not pay under Coverage **C:**

        **(1)** Until the building is actually repaired or replaced, at the same or another premises; and

        **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)** The increased cost of construction at the same premises; or

        **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule.

    **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

        **(1)** The increased cost of construction at the new premises; or

        **(2)** The applicable Limit Of Insurance shown for Coverage **C** in the Schedule.

**5.** If a Combined Limit Of Insurance is shown for Coverages **B** and **C** in the Schedule, Paragraphs **D.3.** and **D.4.** do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit Of Insurance shown for Coverages **B** and **C** in the Schedule. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

    **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

    **b.** With respect to the Increased Cost of Construction:

        **(1)** We will not pay for the increased cost of construction:

            **(a)** Until the building is actually repaired or replaced, at the same or another premises; and

            **(b)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

        **(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

        **(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**E.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**F.** Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Paragraph **B.5.**).

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

**Step 1:** Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 \div 100,000 = .30$

**Step 2:** Apply that proportion to the Ordinance or Law loss.

$60,000 \times .30 = 18,000$

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**G.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

# CHANGES – FUNGUS, WET ROT, DRY ROT AND BACTERIA

This endorsement modifies insurance provided under the following:

> CAUSES OF LOSS – BASIC FORM
> CAUSES OF LOSS – BROAD FORM
> CAUSES OF LOSS – SPECIAL FORM

**SCHEDULE\***

| |
|---|
| **Revised Limit**    $   <u>See Declarations</u> |
| **Separate Premises Or Locations Option**    **YES** ☐    **NO** ☑ |
| If YES, describe the separate premises or locations: |
| **Business Income/Extra Expense – Revised number of days**   <u>See Declarations</u> |

| |
|---|
| \*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**A.** In the Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria, the amount of $15,000 is deleted and replaced by the amount indicated in the Schedule.

**B.** If the Schedule indicates that the Separate Premises Or Locations Option applies, then the amount of coverage ($15,000, unless a higher amount is shown in the Schedule) is made applicable to separate premises or locations as described in the Schedule. For each premises or location so described, the amount of coverage is an annual aggregate limit, subject to the terms set forth in Paragraph **3.** of the Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria.

**C.** The coverage provided under this endorsement does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

**D.** Under the Limited Coverage For Fungus, Wet Rot, Dry Rot And Bacteria, in the section applicable to Business Income and/or Extra Expense coverage, the number of days (30 days) in both paragraphs is deleted and replaced by the number of days indicated in the Schedule.

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h.** **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the building or structure; or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

    This exclusion:

    **(1)** Applies whether or not an act occurs during your normal hours of operation;

    **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

    **(1)** An abrupt falling down or caving in;

    **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

    But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

    **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

    **(b)** To collapse caused by one or more of the following:

        **(i)** The "specified causes of loss";

        **(ii)** Breakage of building glass;

        **(iii)** Weight of rain that collects on a roof; or

        **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   **b.** Awnings, gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Fences;

   **f.** Piers, wharves and docks;

   **g.** Beach or diving platforms or appurtenances;

   **h.** Retaining walls; and

   **i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

   **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

   **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

   **b.** The personal property which collapses is inside a building; and

   **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

   **a.** A "specified cause of loss" other than fire or lightning; or

   **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)** The cost of filling sinkholes; or

        **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

        **(1)** Personal property in the open; or

        **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means:

        **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

        **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion in Paragraph **B.** replaces the **Water** Exclusion in this Coverage Part or Policy.

**B. Water**

**1.** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** Mudslide or mudflow;

**3.** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**4.** Water under the ground surface pressing on, or flowing or seeping through:

**a.** Foundations, walls, floors or paved surfaces;

**b.** Basements, whether paved or not; or

**c.** Doors, windows or other openings; or

**5.** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **1.** through **5.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

# TEXAS CHANGES – JOINT OR DISPUTED LOSS AGREEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** This endorsement is intended to facilitate payment of insurance proceeds when:

**1.** Both a boiler and machinery policy and this commercial property policy are in effect;

**2.** Damage occurs to Covered Property that is insured by the boiler and machinery policy and this commercial property policy; and

**3.** There is disagreement between the insurers as to whether there is coverage or as to the amount of the loss to be paid, if any, by each insurer under its own policies.

**B.** This endorsement does not apply if:

**1.** Both the boiler and machinery insurer(s) and we do not admit to any liability; and

**2.** Neither the boiler and machinery insurer(s) nor we contend that coverage applies under the other insurer's policy.

**C.** The provisions of this endorsement apply only if all of the following requirements are met:

**1.** The boiler and machinery policy carried by the named insured, insuring the Covered Property, contains a similar provision at the time of the loss or damage, with substantially the same requirements, procedures and conditions as contained in this endorsement;

**2.** The damage to the Covered Property was caused by a loss for which:

**a.** Both the boiler and machinery insurer(s) and we admit to some liability for payment under the respective policies; or

**b.** Either:

**(1)** The boiler and machinery insurer(s) does not admit to any liability for payment, while we contend that:

**(a)** All liability exists under the boiler and machinery policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy;

**(2)** We do not admit to any liability for payment, while the boiler and machinery insurer(s) contends that:

**(a)** All liability exists under this commercial property policy; or

**(b)** Some liability exists under both the boiler and machinery policy and this commercial property policy; or

**(3)** Both the boiler and machinery insurer(s) and we:

**(a)** Do not admit to any liability for payment; and

**(b)** Contend that some or all liability exists under the other insurer's policy; and

**3.** The total amount of the loss is agreed to by you, the boiler and machinery insurer(s) and us.

**D.** If the requirements listed in Paragraph **C.** above are satisfied, we and the boiler and machinery insurer(s) will make payments to the extent, and in the manner, described as follows:

**1.** We will pay, after your written request, the entire amount of loss that we have agreed as being covered, if any, by this commercial property policy and one-half (1/2) the amount of the loss that is in disagreement.

**2.** The boiler and machinery insurer(s) will pay, after your written request, the entire amount of loss that they have agreed as being covered, if any, by the boiler and machinery policy and one-half (1/2) the amount of loss that is in disagreement.

**3.** Payments by the insurers of the amounts that are in disagreement, as described in Paragraphs **1.** and **2.,** do not alter, waive or surrender any rights of any insurer against any other with regard to the portion of the loss for which each insurer is liable. Notwithstanding any disagreement between the insurers, the insured will be paid the entire amount of the loss the insurers have agreed to cover within the time period specified in the law.

**4.** The amount in disagreement to be paid by us under this endorsement shall not exceed the amount payable under the equivalent Loss Agreement(s) of the boiler and machinery policy.

**5.** The amount to be paid under this endorsement shall not exceed the amount we would have paid had no boiler and machinery policy been in effect at the time of loss. In no event will we pay more than the applicable Limit of Insurance shown in the Declarations.

**6.** Acceptance by you of sums paid under this endorsement does not alter, waive or surrender any other rights against us.

**E. Arbitration**

**1.** If any of the circumstances described in Paragraphs **C.2.a.** and **C.2.b.** exist, then the boiler and machinery insurer(s) and we agree to submit our differences to arbitration within 90 days after payment of the loss under the terms of this endorsement.

**2.** You agree to cooperate with any arbitration procedures. There will be three arbitrators: one will be appointed by us, and another will be appointed by the boiler and machinery insurer(s). The two arbitrators will select a third arbitrator. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. A decision agreed to by two of the three arbitrators will be binding on both parties. Judgment on any award can be entered in any court that has jurisdiction.

**3.** If we and the boiler and machinery insurers agree to submit to arbitration as described in **E.1.** above, the insured will incur no delay in receiving payment in the manner specified in Paragraph **D.**

**4.** Arbitration expenses will be apportioned between insurers on the same basis that the ultimate loss is apportioned.

**F. Final Settlement Between Insurers**

The insurer(s) found responsible for the greater percentage of the ultimate loss must return the excess contribution to the other insurer(s).

# ADDITIONAL COVERED PROPERTY

This endorsement modifies insurance provided under the following:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM
    CONDOMINIUM ASSOCIATION COVERAGE FORM
    CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
    STANDARD PROPERTY POLICY

The following is withdrawn from PROPERTY NOT COVERED and added to COVERED PROPERTY:

**SCHEDULE\***

| Prem. No. | Bldg. No. | Paragraph Reference | Description of Property | Type of Property Coverage (Enter BUILDING or PERSONAL PROPERTY) |
|---|---|---|---|---|
| All | All | | Fountain View (Pool) | Additional Personal Property |
| All | All | | Lynbrook (Pool) | Additional Personal Property |
| All | All | | Pool Areas & Other – Iron Fencing | Additional Personal Property |
| All | All | | Brick Fencing | Additional Personal Property |
| All | All | | Wooden Fencing | Additional Personal Property |
| All | All | | Vehicle Carports | Additional Personal Property |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

# COVERAGE EXTENSIONS PREREQUISITE WAIVED

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10
CONDOMINIUM ASSOCIATION COVERAGE FORM CP 00 17

**A.  Coverage Extensions Prerequisite Waived.**

We hereby waive the requirement that a Coinsurance percentage of 80% or more be shown in the Declarations in order for you to extend the insurance provided by this Coverage Part to include the **Coverage Extensions** identified in the above-listed Coverage Forms.

Subject to all other terms and conditions of this policy and Coverage Part, these **Coverage Extensions** shall be available under this Coverage Part even if a Coinsurance percentage less than 80% is shown in the Declarations or in the event we waive the Additional Condition, Coinsurance.

## SEWER, DRAIN AND SUMP BACK-UP, OR OVERFLOW
## CAUSE OF LOSS EXTENSION

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies the Commercial Property Coverage Part.

I.  If either the Flood Coverage Endorsement (ICAT SCOL 128) or the Excess NFIP Flood Coverage Endorsement (ICAT SCOL 129) is attached to this policy, then such Endorsement is modified as follows:

   a.  Paragraph **B** (**Additional Covered Cause of Loss**) has the following subparagraph **4.** added to provide coverage for sewer, drain, and sump back-up or overflow:

      **4.**  Flood shall include loss or damage from water that backs up or overflows from a sewer, drain, or sump.

   b.  Paragraph **C.** (**Exclusions, Limitations And Related Provisions**), subparagraph **5.**, subparagraph **f.** is deleted.

II.  If neither the Flood Coverage Endorsement (ICAT SCOL 128) nor the Excess NFIP Flood Coverage Endorsement is attached to this policy, then the Water Exclusion Endorsement (CP 10 32) is modified to provide coverage for sewer, drain, and sump back-up or overflow:

   a.  Paragraph **B**. (**Water**) subparagraph **3.** is deleted.

III.  <u>Limits of Insurance</u>.  The most we will pay for loss or damage under this Cause of Loss Extension in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or elsewhere in the policy.

IV.  <u>Deductible</u>.  We will not pay for loss or damage under this Cause of Loss Extension in any one occurrence until the amount of the adjusted loss or damage exceeds the amount of the Deductible applicable to the coverage for fire (shown as "All Other Peril" or "All Other Causes of Loss") stated in the Declarations or otherwise identified in the policy.  We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

# LOCK REPLACEMENT ADDITIONAL COVERAGE

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10
CONDOMINIUM ASSOCIATION COVERAGE FORM CP 00 17

**A. Coverage**

   **1.** Section **A.4. Additional Coverages** has the following Additional Coverage added:

     **a.** We will pay the cost to repair or replace locks at a Covered Building due to "theft" or loss to keys.

     **b. Limits Of Insurance**

       The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or otherwise identified in the policy.  The Limit of Insurance for this Lock Replacement Additional Coverage is a sublimit of the Limit of Insurance applicable to your Business Personal Property and the addition of this Lock Replacement Additional Coverage does not increase or decrease our total Limit of Insurance.

     **c. Deductible**

       We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limit of Insurance exceeds the amount of the Deductible applicable to this Lock Replacement Additional Coverage shown in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or otherwise identified in the policy.  We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

     **d. Definitions**

       The following is added to Section **H.**, **Definitions**:

        "Theft" means the unlawful taking of property to the deprivation of the insured.

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F** – Definitions.

**A. Coverage**

   **1.** We will pay:

      **a.** All amounts due from your customers that you are unable to collect;

      **b.** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

      **c.** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

      **d.** Other reasonable expenses that you incur to reestablish your records of accounts receivable;

   that result from Covered Causes of Loss to your records of accounts receivable.

   **2. Property Not Covered**

   The following listing of Property Not Covered is in addition to any other listing of Property Not Covered as stated in any other Coverage Form attached to this policy. Coverage does not apply to:

      **a.** Records of accounts receivable in storage away from the "premises" shown in the Declarations; or

      **b.** Contraband, or property in the course of illegal transportation or trade.

   **3. Covered Causes Of Loss**

   Covered Causes of Loss with regard to the coverage provided under this Accounts Receivable Coverage Form means Direct Physical Loss Or Damage caused by or resulting from one of the Covered Causes of Loss as specified in the Causes of Loss Form shown in the Declarations and attached to this policy as limited by the exclusions contained in this policy.

   **4. Coverage Extension**

   **Removal**

If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of loss or damage, we will pay for loss or damage while they are:

      **a.** At a safe place away from your "premises"; or

      **b.** Being taken to and returned from that place.

This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

**B. Exclusions**

   **1.** The following exclusions apply in addition to any other exclusions in this policy. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

      **a.** Dishonest or criminal act committed by:

         **(1)** A manager or a member if you are a limited liability company;

         **(2)** Anyone else with an interest in the property, or their employees or authorized representatives; or

         **(3)** Anyone else to whom the property is entrusted for any purpose.

      This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

      This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

      **b.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

      This exclusion applies only to the extent of the wrongful giving, taking or withholding.

      **c.** Bookkeeping, accounting or billing errors or omissions.

      **d.** Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

**(1)** Programming errors or faulty machine instructions;

**(2)** Faulty installation or maintenance of data processing equipment or component parts;

**(3)** An occurrence that took place more than 100 feet from your "premises"; or

**(4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct loss or damage caused by lightning.

**2.** We will not pay for loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or otherwise identified in the policy.

**D. Deductible**

We will not pay for loss or damage under this Coverage Form in any one occurrence until the amount of the adjusted loss or damage exceeds the amount of the Deductible applicable to the coverage for fire (shown as "All Other Peril" or "All Other Causes of Loss") stated in the Declarations or otherwise identified in the policy. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**E. Additional Conditions**

The following conditions apply to the coverage provided under this Accounts Receivable Coverage Form in addition to the Common Policy Conditions:

**1. Determination Of Receivables**

**a.** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage, the following method will be used:

**(1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

**(2)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

**b.** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**(1)** The amount of the accounts for which there is no loss or damage;

**(2)** The amount of the accounts that you are able to reestablish or collect;

**(3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**(4)** All unearned interest and service charges.

**2. Recoveries**

You will pay us the amount of all recoveries you receive for loss or damage paid by us. But any recoveries in excess of the amount we have paid belong to you.

**3. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

We will not pay the full amount of any loss if the value of all accounts receivable, except those in transit, at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for Coverage Applicable At All Locations.

Instead, we will determine the most we will pay using the following steps:

**a.** Multiply the value of all accounts receivable, except those in transit, at the time of loss by the Coinsurance percentage;

**b.** Divide the Limit of Insurance for Coverage Applicable At All Locations by the figure determined in Step **a.**; and

**c.** Multiply the total amount of loss by the figure determined in Step **b.**

We will pay the amount determined in Step **c.** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

This condition will not apply to records of accounts receivable in transit, interest charges, excess collection expenses or expenses to reestablish your records of accounts receivable.

**4.   Protection Of Records**

Whenever you are not open for business, and except while you are actually using the records, you must keep all records of accounts receivable in reasonably safe receptacles.

**F.  Definitions**

"Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

# VALUABLE PAPERS AND RECORDS COVERAGE FORM

If either the Building and Personal Property Coverage Form (CP 00 10) or the Condominium Association Coverage Form (CP 00 17) is attached to and part of this policy, the following section is deleted: Section **A.** (Coverage), Item **5.** (Coverage Extensions), Sub-item **c.** (Valuable Papers and Records (Other Than Electronic Data).

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F** – Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property from any Covered Cause of Loss.

1. Covered Property, as used in this coverage form, means "valuable papers and records" that are your property or property of others in your care, custody or control.

2. **Property Not Covered**

    The following listing of Property Not Covered is in addition to any other listing of Property Not Covered as stated in any other Coverage Form attached to this policy. Covered Property does not include:

    a. "Valuable papers and records" which exist as electronic data. Electronic data has the meaning described under Property Not Covered — Electronic Data in the Building and Personal Property Coverage Form (CP 00 10) or the Condominium Association Coverage Form (CP 00 17)

    b. Property that cannot be replaced with other property of like kind and quality;

    c. Property held as samples or for delivery after sale;

    d. Property in storage away from the "premises" shown in the Declarations; or

    e. Contraband, or property in the course of illegal transportation or trade.

3. **Covered Causes Of Loss**

    Covered Causes of Loss with regard to the coverage provided under this Valuable Papers and Records Coverage Form means Direct Physical Loss Or Damage to Covered Property caused by or resulting from one of the Covered Causes of Loss as specified in the Causes of Loss Form shown in the Declarations and attached to this policy as limited by the exclusions contained in this policy.

4. **Coverage Extensions**

    a. **Removal**

        If you give us written notice within 10 days of removal of your "valuable papers and records" because of imminent danger of loss or damage, we will pay for loss or damage while it is:

        (1) At a safe place away from your "premises"; or

        (2) Being taken to and returned from that place.

        This Coverage Extension is included within the Limits of Insurance applicable to the "premises" from which the Covered Property is removed.

## B. Exclusions

1. The following exclusions apply in addition to any other exclusions in this policy. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    a. Dishonest or criminal act committed by:

        (1) A manager or a member if you are a limited liability company;

        (2) Anyone else with an interest in the property, or their employees or authorized representatives; or

        (3) Anyone else to whom the property is entrusted for any purpose.

        This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

        This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**b.** Errors or omissions in processing or copying.

But if errors or omissions in processing or copying result in fire or explosion, we will pay for the direct loss or damage caused by that fire or explosion if the fire or explosion would be covered under this coverage form.

**c.** Electrical or magnetic injury, disturbance or erasure of electronic recordings.

But we will pay for direct loss or damage caused by lightning.

**d.** Any quality in the property that causes it to damage or destroy itself, gradual deterioration; insects, vermin or rodents.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or otherwise identified in the policy.

**D. Deductible**

We will not pay for loss or damage under this Coverage Form in any one occurrence until the amount of the adjusted loss or damage exceeds the amount of the Deductible applicable to the coverage for fire (shown as "All Other Peril" or "All Other Causes of Loss") stated in the Declarations or otherwise identified in the policy. We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**E. Additional Conditions**

The following conditions apply in addition to the coverage provided under this Valuable Papers and Records Coverage Form in addition to the Common Policy Conditions:

**1. Valuation**

**a. Specifically Declared Items**

The value of each item of property that is specifically declared and described in the Declarations, Schedule A, the Statement of Values (ICAT 50 SOV), or otherwise identified in the policy is the applicable Limit of Insurance shown in the Declarations for that item.

**b.** If the values are not specifically declared, then the value of each item of property will be determined as of the time of loss or damage and will be the lesser of the following amounts:

(1.) The actual cash value of the property;

(2.) The cost of reasonably restoring that property to its condition immediately before loss or damage; or

(3.) The cost of replacing that property with substantially identical property.

**2. Recoveries**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. If so, your loss or damage will be readjusted based on the amount you received for the property recovered, with allowance for recovery expenses incurred.

**3. Protection Of Records**

Whenever you are not open for business, and except while you are actually using the property, you must keep all "valuable papers and records" in reasonably safe receptacles.

**F. Definitions**

**1.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

But "valuable papers and records" does not mean "money" or "securities", converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

**2.** "Premises" means that interior portion of the building at the address shown in the Declarations that you occupy for your business.

**3.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**4.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "money".

# FIRE EXTINGUISHER SYSTEMS RECHARGE EXPENSE ADDITIONAL COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10
CONDOMINIUM ASSOCIATION COVERAGE FORM CP 00 17

**A.** Section **A.4. Additional Coverages** has the following Additional Coverage added:

    **1. Fire Extinguisher Systems Recharge Expense.**

        **a.** We will pay:

            **(1)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of a Covered Building; and

            **(2)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

        **b. Limitation.** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

        **c. Limit of Insurance.** Our Limit of Insurance for this Fire Extinguisher Systems Recharge Expense Additional Coverage is a sublimit of our Limit of Insurance and is included in and part of our Limit of Insurance as shown in the Declarations Page. The most we will pay under this endorsement for loss or damage in any one occurrence is the amount shown in the Declarations Page, Schedule A, or the Statement of Values (ICAT 50 SOV) for the Fire Extinguisher Systems Recharge Expense Additional Coverage Limit. This Coverage Extension does not increase our Limit of Insurance as stated in the Declarations Page.

        **d. Deductible.** A deductible does not apply to this Fire Extinguisher Systems Recharge Expense Additional Coverage. We will pay the amount of the adjusted loss or damage up to the applicable Limit of Insurance.

# OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following forms.
COMMERCIAL PROPERTY COVERAGE PART

1.  The Limit of Liability or Limit of Insurance shown in the Declarations, or endorsed onto this policy, is the total limit of our liability applicable to each occurrence, as hereafter defined.  The Limit of Liability or Limit of Insurance may be reduced based on the application of any aggregate limits in this policy, including, but not limited to, any aggregate limits that apply for a particular coverage or Cause of Loss.  Notwithstanding any other terms and conditions of this policy to the contrary, in no event shall our liability exceed this limit or amount irrespective of the number of locations involved.

    The term "occurrence" shall mean any one loss, disaster, casualty or series of losses, disasters or casualties arising out of one event.  When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, riot, riot attending a strike, civil commotion, vandalism or malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.  When filing proof of loss, the Insured may elect the moment at which the 72-hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the Covered Property occurs.

    When the term applies to loss or losses from the perils of earthquake or volcanic eruption, one event shall be construed to be all losses arising during a continuous period of 168 hours.  When filing proof of loss, the Insured may elect the moment at which the 168-hour period shall be deemed to have commenced, which shall not be earlier than when the first loss to the Covered Property occurs.

2.  The premium for this policy is based upon the Total Insured Value and Limit of Insurance shown in the Declarations or the Stated Values shown in the Statement of Values (ICAT 50 SOV) attached to this policy or on file with us.  In the event of loss hereunder, our liability, subject to the terms of paragraph 1. above, shall be limited to the least of the following:

    a.  The actual amount of loss adjusted in accordance with the applicable Coverage Form, Valuation Loss Condition, or Replacement Cost Optional Coverage, less any applicable deductible(s); or

    b.  The total stated value for each scheduled item of property involved, as shown in Schedule A of the Declarations or in the latest Statement of Values (ICAT 50 SOV) on file with the Company, less any applicable deductible(s); or

    c.  The Limit of Liability or Limit of Insurance shown in the Declarations or endorsed onto this policy.

# ADDITIONS UNDER CONSTRUCTION CHANGES AND LIMITATIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement limits and modifies insurance provided under the following forms:
BUILDING AND PERSONAL PROPERTY COVERAGE FORM (CP 00 10)
CONDOMINIUM ASSOCIATION COVERAGE FORM (CP 00 17)

The following is added to this policy:

**Additions Under Construction Changes and Limitations**

I.  Coverage provided for any additions under construction pursuant to **A.1.a.(5)(a)** is limited to the earlier of the first 30 consecutive days after construction of the addition commences or the expiration of this policy. At our discretion, we may, but are not obligated to, continue such coverage beyond the first 30 consecutive days after construction of the addition commences if you report the construction to us within the first 60 consecutive days after construction of the addition commences.

With respect to insurance on any additions under construction, coverage will end when any of the following first occurs:

(a) this policy expires;

(b) 30 days expire after you begin construction on the addition that would qualify as covered property; or

(c) you report values to us.

We will charge you additional premium for values reported from the date you begin construction of the addition that would qualify as covered property.

The most we will pay for loss or damage for additions under construction is $250,000 at each building.

II. If a Coinsurance percentage is shown in the Declarations pursuant to **F.1**, any additions under construction covered pursuant to **A.1.a.(5)(a)** will not be included as part of the value of Covered Property used in the calculation of the minimum amount of insurance required to meet the Coinsurance requirement if the loss occurs during the first 30 consecutive days after construction of the addition commences.

All other terms and conditions of this policy remain.

# ADDITIONAL PROPERTY NOT COVERED

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10
CONDOMINIUM ASSOCIATION COVERAGE FORM CP 00 17

**A. Machinery and Equipment in the Open Exclusion – Form CP 00 10 only**

1. Paragraph **A.1.b.(2)** is superseded and replaced by the following thereby removing coverage for machinery and equipment in the open (or in a vehicle) within 100 feet of the described premises:

    **(2)** Machinery and equipment, but only machinery or equipment located in or on the building described in the Declarations and except for any machinery or equipment specifically listed in the Declarations or Statement of Values (ICAT 50 SOV).

**B. Land, Water, and Air Exclusion**

1. Paragraph **A.2.h.** is superseded and replaced by the following thereby excluding coverage for land, water, and/or air:

    **h.** Land (including but not limited to land on which Covered Property is located), water, air, growing crops or lawns, howsoever and wherever located, or any interest or right therein.

**C. Additional Property added to Property Not Covered**

1. **Additional Property**, as defined in Paragraph **E.** of this Endorsement below, is added to **Property Not Covered**.  Notwithstanding any provision to the contrary in this policy, **Additional Property** is covered under this policy only:

    **a.** as provided under the **Additional Coverage – Unscheduled Additional Property** as explained in Paragraph **D.** of this Endorsement below; or

    **b.** if specifically scheduled as Covered Property on the policy.

**D. Additional Coverage – Unscheduled Additional Property**

1. Paragraph **A.4.**, **Additional Coverages**, has the following Additional Coverage added:

    **a. Additional Coverage – Unscheduled Additional Property.**  We will pay for sudden, fortuitous, direct physical loss or damage to **Additional Property** caused by a Covered Cause of Loss under this policy and subject to all other terms, conditions, and limitations contained in this policy, including those in the Causes of Loss Form attached to and part of this policy.  Under this Additional Coverage, **Additional Property** has the meaning described in Paragraph **E.** of this Endorsement below.  This **Additional Coverage – Unscheduled Additional Property** applies in addition to and separately from the coverage provided for any property specifically scheduled under Additional Property Coverage in the Declarations or Statement of Values (ICAT 50 SOV).

    **b. Limit of Insurance.**  The most we will pay for loss or damage in any one occurrence for this **Additional Coverage – Unscheduled Additional Property** is $10,000, unless a higher limit is shown in the Declarations.  The Limit of Insurance for this **Additional Coverage – Unscheduled Additional Property** is a sublimit of the Limit of Insurance that applies to this policy.  The addition of this **Additional Coverage – Unscheduled Additional Property** to the policy does not increase or decrease our total Limit of Insurance.

    **c. Deductible.**  The Deductible applicable to this **Additional Coverage – Unscheduled Additional Property** is $2,500, unless a different amount is shown in the Declarations.  If the adjusted amount of loss or damage (hereinafter referred to as loss) is less than or equal to the Deductible, we will not pay for that loss.  If the adjusted amount of loss exceeds the Deductible, we will subtract the Deductible from the adjusted amount of loss and we will pay the resulting amount or the Limit of Insurance, whichever is less.  Notwithstanding any provision in this policy to the contrary, the above-stated Deductible amount will apply to each occurrence of loss covered under this **Additional Coverage – Unscheduled Additional Property**.

    **EXAMPLE #1:  Loss only to Unscheduled Additional Property (loss above applicable deductible)**

The policy covers an apartment building with a $5,000,000 Limit of Insurance applicable to the Building Coverage and no property scheduled under Additional Property Coverage. The policy deductible applicable to loss caused by fire is $5,000. The deductible applicable to the **Additional Coverage – Unscheduled Additional Property** is $2,500. A fire damages a gazebo, shed, hot tub, and a fence that was set apart from the covered building by clear space, causing $14,000 in loss.

Result: We will pay $10,000 under this **Additional Coverage – Unscheduled Additional Property** because the Limit of Insurance for this Additional Coverage ($10,000) is less than the amount of loss minus the Deductible ($14,000 - $2,500 = $11,500). Note that the applicable Deductible is $2,500 and that the policy's $5,000 deductible for loss caused by fire does not apply.

**EXAMPLE #2: Loss only to Unscheduled Additional Property (loss below applicable deductible)**

The policy covers an apartment building with a $5,000,000 Limit of Insurance applicable to the Building Coverage and no property scheduled under Additional Property Coverage. The policy deductible applicable to loss caused by fire is $5,000. The deductible applicable to the **Additional Coverage – Unscheduled Additional Property** is $2,500. A fire partially damages a fence that was set apart from the covered building by clear space. Repairs to the fence cost $2,000.

Result: No payment is due under the policy as follows:

| Loss to Unscheduled Additional Property | |
|---|---|
| $2,000 - $2,500 deductible = | No Payment |

**EXAMPLE #3: Loss to Scheduled Additional Property Coverage and to Unscheduled Additional Property**

The policy covers an apartment building with a $5,000,000 Limit of Insurance applicable to the Building Coverage and a fence is scheduled in the Declarations under Additional Property Coverage with a Limit of Insurance of $7,500. The policy deductible applicable to loss caused by fire is $5,000. The deductible applicable to the **Additional Coverage – Unscheduled Additional Property** is $2,500. A fire completely destroys a gazebo, shed, hot tub, and the scheduled fence. The loss to the gazebo, shed, and hot tub is $12,000. There is no damage to the apartment building.

Result: We will pay $12,000 as follows:

| Loss to Scheduled Fence | |
|---|---|
| $7,500 - $5,000 deductible = | $2,500 |
| **Loss to Unscheduled Additional Property** | |
| $12,000 - $2,500 deductible = | $9,500 |
| **Total amount of Loss Payable:** | $12,000 |

**EXAMPLE #4: Loss to Building and to Unscheduled Additional Property**

The policy covers an apartment building with a $5,000,000 Limit of Insurance applicable to the Building Coverage and no property scheduled under Additional Property Coverage. The deductible applicable to loss caused by hurricane is 3%. The deductible applicable to the **Additional Coverage – Unscheduled Additional Property** is $2,500. The wind from a hurricane causes $30,000 in loss to the roof of the apartment building and completely destroys a shed valued at $7,500.

Result: We will pay $5,000 as follows:

| Loss to Building | |
|---|---|
| $30,000 - $150,000 deductible = | No Payment |
| **Loss to Unscheduled Additional Property** | |
| $7,500 - $2,500 deductible = | $5,000 |
| **Total amount of Loss Payable:** | $5,000 |

## E. Definition

**1. Additional Property** means:

   **a.** Machinery and equipment in the open, including gas pumps.

   **b.** Contractor's equipment, including trailers used to transport such equipment.

   **c.** Buildings or structures in the course of construction, including materials and supplies, except additions to or alterations and repairs on or within the existing walls of existing buildings or structures as provided pursuant to **A.1.a.(5)**.

   **d.** Power transmission and/or feeder lines.

   **e.** Fences, property-line walls, gates, latticework, and trellises, whether attached to a covered building or not.

   **f.** Walkways, boardwalks, catwalks, trestles, dams, and tunnels (all whether for pedestrians or vehicles).

   **g.** Seawalls.

   **h.** Pools (whether in the ground or above the ground and including spas, hot tubs and jacuzzis) located outdoors, ponds, lakes, waterfalls or fountains.

   **i.** Signs not attached to a covered building unless held for sale as Business Personal Property.

   **j.** Awnings, canopies, and carports not attached to a covered building or structure, including any structure or covering over gas pumps or pools.

   **k.** Light poles (including fixtures attached to such light poles) and street signs not attached to a covered building or structure.

   **l.** Lanai or any other similar structure not attached to a covered building and abutting, enclosing, or partially enclosing a pool.

   **m.** Greenhouses, shade houses, hot houses, and glass houses.

   **n.** Other buildings and structures at a Covered Location set apart from the covered building by clear space and not specifically described and included as Covered Property in the Declarations or Statement of Values (ICAT 50 SOV). This includes structures connected to a covered building by only a fence, utility line or similar connection.

All other terms and conditions of this policy remain unchanged.

# ALUMINUM WIRING EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following form:
CAUSES OF LOSS - SPECIAL FORM (CP 10 30)

The following **Aluminum Wiring Exclusion** is added to this policy:

**Aluminum Wiring Exclusion**

We will not pay for any loss or damage caused by or resulting directly or indirectly from a malfunction of aluminum distribution wiring.

All other terms and conditions of this policy remain.

# ASBESTOS AND SICK BUILDING EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following form:
CAUSES OF LOSS - SPECIAL FORM (CP 10 30)

The following **Asbestos and Sick Building Exclusion** is added to this policy:

## Asbestos and Sick Building Exclusion

We will not pay for loss or damage caused by or resulting directly or indirectly from any of the following:

**A.** Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from:

**(1)** The removal, encapsulation, covering, or any manner of control or abatement from any goods, products, or structure of asbestos, dioxin, or polychlorinated biphenyls;

**(2)** The demolition, increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos, dioxins, or polychlorinated biphenyls;

**(3)** Any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Named Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified;

**(4)** The presence of asbestos in any building or structure whether covered or not covered by this Policy.

**B.** Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from ventilation, heating, air conditioning, or sick building condition(s). Sick building condition(s) as used herein means a building(s) or structure(s) with actual or alleged conditions which create or may create an environment which is, or is suspected to be, unhealthy in any way to any person or other living thing.

All other terms and conditions of this policy remain.

# PRIOR LOSS EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following form:
CAUSES OF LOSS - SPECIAL FORM (CP 10 30)

The following **Prior Loss Exclusion** is added to this policy:

**Prior Loss Exclusion**

We will not pay for any loss or damage that occurred prior to the effective date of this policy, including any continuation, change or resumption of such loss or damage during the Policy Period.  In the event the effective date of this Policy is prior to the date coverage was requested to be bound, this Policy will not pay for any loss or damage occurring between the effective date of this Policy and the date coverage was requested to be bound.

All other terms and conditions of this policy remain.

# SEEPAGE AND POLLUTION EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following form:
CAUSES OF LOSS - SPECIAL FORM (CP 10 30)

I.    The following replaces **B.2.I**.:

**I.    Seepage and Pollution Exclusion**

**(1)**    Notwithstanding any provision to the contrary within the policy of which this endorsement forms part (or within any other endorsement which forms part of this policy), this policy does not insure:

**(a)**    any loss, damage, cost or expense, or

**(b)**    any increase in insured loss, damage, cost or expense, or

**(c)**    any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

**(2)**    The term "any kind of seepage or any kind of pollution and/or contamination" as used herein includes (but is not limited to):

**(a)**    seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

**(b)**    the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

All other terms and conditions of this policy remain.

# NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL HAZARDS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
ASSET COVERAGE PART
PREFERRED ASSET COVERAGE PART
BUILDERS RISK COVERAGE
COMMERCIAL OUTPUT PROGRAM
DIFFERENCE IN CONDITIONS PROGRAM
SPECIAL CAUSE OF LOSS POLICY

**I.**   Regardless of any other cause or event that contributes concurrently or in any sequence to loss, damage, cost, or expense, we will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused by, results from, is exacerbated by or otherwise impacted by, either directly or indirectly and whether threatened or actual, any of the following:

**1)** **Nuclear Hazard** – including, but not limited to, nuclear reaction, nuclear detonation (including electro-magnetic pulse caused by nuclear detonation), nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

**2)** **Biological Hazard –** including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing or causing damage, physical distress, illness, or disease.  However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy;

**3)** **Chemical Hazard** – including, but not limited to, any chemical agent, material, product or substance;

**4)** **Radioactive Hazard** – including, but not limited to, any magnetic, electromagnetic, optical, solar, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.  For purposes of this exclusion, magnetic or electromagnetic radiation or energy includes, but is not limited to, the following:

**(a)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(b)** Pulse of electromagnetic energy; or

**(c)** Electromagnetic waves or microwaves.

**II.**   Only if and to the extent required by state law, the following exception to the exclusion in paragraph **I. 1)** applies:

If a hazard excluded under paragraph **I. 1)** results in fire, we will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property.  Such coverage for fire applies only to direct loss or damage by fire to Covered Property. This coverage does not apply to insurance provided under Business Income, Rental Value or Extra Expense coverage forms or endorsements that apply to those coverage forms.

All other terms and conditions of this policy remain unchanged.

# CYBER EVENT EXCLUSION

This endorsement modifies insurance provided under the following:

BUILDERS RISK COVERAGE
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL PROPERTY DEDUCTIBLE BUY BACK POLICY
DIFFERENCE IN CONDITIONS PROGRAM
EXCESS FOLLOWING FORM POLICY
NAMED PERIL COMMERCIAL PROPERTY POLICY
SPECIAL CAUSE OF LOSS POLICY

I.  <u>Cyber Event Exclusion</u>.  We will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused by, results from, is exacerbated by or otherwise impacted by, either directly or indirectly and whether threatened or actual, any of the following.  Such loss, damage, costs and expenses are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

A.  **Computer Virus or Software** – Including but not limited to any software, program, instructions, code or data that:

1.  Infiltrates and disrupts computer operations;

2.  Accesses, acquires, collects, gathers, transmits, alters or damages instructions, information or data, including but not limited to personally identifiable information or other personal data, confidential information or "electronic data";

3.  Gains access to "computer systems"; or

4.  Affects the operation or functionality of "computer systems", "computer networks" or "electronic data".

Computer virus or software also includes but is not limited to any computer code, worm, logic bomb, smurf attack, malware, Trojan horse, spyware, rootkits, ransomware, adware, keyloggers, rogue security software, destructive program, or malicious browsers, whether or not self-propagating.

B.  **Cyber Attack** – Including but not limited to any attack on or vandalism of "computer systems", "computer networks" or "electronic data", including but not limited to a "denial-of-service attack".

C.  **Cyber Extortion** – Including but not limited to a threat or series of threats made to:

1.  Prevent access of authorized users to "computer systems", "computer networks" or "electronic data";

2.  Introduce any computer virus or software as described on I.A. above into "computer systems", "computer networks" or "electronic data";

3.  Conduct a cyber attack as described in I.B. above;

4.  Gain access that otherwise would be unauthorized to "computer systems", "computer networks" or "electronic data"; or

5.  Release, disclose, misuse, alter or destroy instructions, information or data, including but not limited to personally identifiable information or other personal data, confidential information or "electronic data".

Cyber extortion also includes any illegal demand for payment, including but not limited to payment in money or cryptocurrency, to unlock any computer, "computer systems" or "computer network", or to not do, undo or mitigate I.C.1., I.C.2, I.C.3., I.C.4. or I.C.5. above.  However, a threat to do any of the above that is not accompanied by a demand for payment also is considered to be cyber extortion.

D. **Cyber Risk** – Including but not limited to any risk where loss or damage is cyber-related, arising from either malicious acts, such as cyber attack as explained in I.B above or infection of systems with malicious code, or non-malicious acts, such as loss of data or accidental acts or omissions, involving either tangible or intangible property.

II.  Exceptions.  The following exceptions to the exclusion in Paragraph I. apply:

A. To the extent that any part of the exclusion in Paragraph I. conflicts with an Additional Coverage, Coverage Extension or sublimited coverage specifically and affirmatively granted to you by us elsewhere under this Coverage Part or Policy, that part of the exclusion does not apply.  The preceding reference to an Additional Coverage, Coverage Extension and sublimited coverage does not mean that any of these have been included with this Policy.  Additional Coverages, Coverage Extensions, or sublimited coverages are provided under this Coverage Part or Policy only as stated in and documented by one of the Coverage Forms or Endorsements included with this Coverage Part or Policy.

B. Only if and to the extent required by state law, if fire is a Covered Cause of Loss under this Coverage Part or Policy and a hazard excluded under Paragraph I. above results in fire, we will pay for the loss, damage, cost or expense caused by that fire, subject to all applicable policy provisions including any applicable Deductible and Limit of Insurance provisions.  Coverage for fire provided under this exception does not apply to insurance provided under Business Income, Rental Value or Extra Expense Coverage Forms or endorsements that apply to those Coverage Forms.

III.  Definitions.  The following definitions are added with respect to the provisions of this endorsement:

A. "Computer systems" means Information Technology (IT), data processing, industrial process control and communication systems, as well as any other item or element of hardware or associated software, including but not limited to IT infrastructure, software or equipment used for the purpose of creating, accessing, processing, protecting, monitoring, storing, backing up, retrieving, displaying or transmitting data.  "Computer systems" also includes but is not limited to IT and mobile devices such as mobile phones, tablet devices, laptops, external drives, CD-ROMs, DVD-ROMs, magnetic tapes, magnetic disks or USB sticks that process, record, transmit or store data, as well as network equipment and associated input and output devices.

B. "Computer network" means a group of "computer systems" and other computing hardware devices or network facilities connected by a form of communication technology, including but not limited to those connected to or by the internet, any intranet and virtual private networks (VPNs), allowing the networked computing devices to, among other things, exchange data.

C. "Denial-of-service attack" means any attack leading to a total or partial deprivation, disruption or unavailability of "computer systems" or "computer networks" temporarily or permanently, such that they are non-functional in whole or in part, or otherwise unavailable to anticipated users of such "computer systems" or "computer networks".  The term "denial-of-service attack" includes but is not limited to a distributed attack in which multiple compromised systems are used to deluge or overload "computer systems" or "computer networks" with an incoming stream or requests or data, volumetric and application-specific attacks, and attacks targeting specific "computer systems", entities or individuals.

D. "Electronic data" means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software that are used with electronically controlled equipment.  The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions that direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

All other terms and conditions of this policy remain unchanged.

# TEXAS CHANGES INCLUDING APPRAISAL

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

Other words and phrases that appear in quotation marks have special meaning. Refer to the **Definitions** section.

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part is replaced by the term Policy.

**B. Legal Action Against Us**

  **1.** The **Legal Action Against Us** Commercial Property Condition is replaced by the following, except as provided in **B.2.** below:

    **Legal Action Against Us**

    **a.** Except as provided in Paragraph **b.,** no one may bring a legal action against us under this Coverage Part unless:

      **(1)** There has been full compliance with all of the terms of this Coverage Part;

      **(2)** The parties have participated in Appraisal as outlined in the **Appraisal** Condition; and

      **(3)** The action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

    **b.** With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

      **(1)** There has been full compliance with all the terms of this Coverage Part;

      **(2)** The parties have participated in Appraisal as outlined in the **Appraisal** Condition; and

      **(3)** The action is brought within the earlier of the following:

        **(a)** Two years and one day from the date we accept or reject the claim; or

        **(b)** Three years and one day from the date of the loss or damage that is the subject of the claim.

  **2.** Paragraph **B.1.** above does not apply to the Legal Action Against Us Loss Condition in the Legal Liability Coverage Form **CP 00 40.**

**C. Appraisal**

  **1.** Except as provided in **C.2.** below, the **Appraisal** Loss Condition in the:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM;
    BUILDERS RISK COVERAGE FORM;
    CONDOMINIUM ASSOCIATION COVERAGE FORM;
    CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM;
    EXTRA EXPENSE COVERAGE FORM;
    LEASEHOLD INTEREST COVERAGE FORM;
    TOBACCO SALES WAREHOUSES COVERAGE FORM; and
    STANDARD PROPERTY POLICY

    is replaced by the following:

    **Appraisal**

    If the Named Insured or the Named Insured's agents, representatives, including any public adjusters engaged on behalf of the Named Insured, or the Named Insured's "assignees", and we fail to agree on the amount of the loss, including the amount to repair or replace each item of damaged Covered Property and the actual cash value and/or replacement cost of each item of damaged Covered Property, any party may demand an appraisal of the loss in writing for disputes greater than $500.

    A request for appraisal must be in writing and include a description of each item of damaged Covered Property in dispute and the extent of the damage to each item of damaged Covered Property, amount to repair or replace each item of damaged Covered Property, the actual cash value and replacement cost of each item of damaged Covered Property, and a disclosure of any referral fees that are, in any way, associated with the claim.

The appraisal process shall only consider covered damages, including work performed by "assignees", associated with the claim for which a settlement has not been reached, regardless of whether invoices have been submitted or not.

Each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. An impartial appraiser must be unbiased, disinterested, and unswayed by personal interest, not favoring one side more than another. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, the Named Insured or the Named Insured's agents, representatives, including any public adjusters engaged on behalf of the Named Insured, or the Named Insured's "assignees" or we may request that the choice be made by a judge of a court of record in the County where the premises described in the Declarations is located. The appraisers will separately set the amount of the loss, including a description of each item of damaged Covered Property in dispute and the extent of the damage to each item of damaged Covered Property, amount to repair or replace each item of damaged Covered Property, the actual cash value and replacement cost of each item of damaged Covered Property, and a disclosure of any referral fees that are, in any way, associated with the claim.

If the appraisers submit a written and itemized report of an agreement to us that includes a description of each item of damaged Covered Property in dispute and the extent of the damage to each item of damaged Covered Property, amount to repair or replace each item of damaged Covered Property, the actual cash value and replacement cost of each item of damaged Covered Property, and a disclosure of any referral fees that are, in any way, associated with the claim, the amount agreed upon will be the amount of the loss.

If the appraisers fail to agree, they will submit their itemized differences, including a description of each item of damaged Covered Property in dispute and the extent of the damage to each item of damaged Covered Property, amount to repair or replace each item of damaged Covered Property, the actual cash value and replacement cost of each item of damaged Covered Property, and a disclosure of any referral fees that are, in any way, associated with the claim, to the umpire. A decision agreed to by any two will set the amount of the loss.

Within 45 days of the initial written request for appraisal, the appraisal process shall be concluded and an itemized appraisal award, including a description of each item of damaged Covered Property in dispute and the extent of the damage to each item of damaged Covered Property, amount to repair or replace each item of damaged Covered Property, the actual cash value and replacement cost of each item of damaged Covered Property, and a disclosure of any referral fees that are, in any way, associated with the claim, shall be executed and delivered to all parties.

If the appraisal is not concluded within 45 days of the initial written request for appraisal, either:

The appraisal process ceases and there is no appraisal award; or

The parties may agree in writing to extend the appraisal process for a specified period of time.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

For the purposes of this provision, a description of a set of items will satisfy the requirement to provide "a description of each item of damage Covered Property", only if the total actual cash value of the set of items is $100 or less.

In connection with the appraisal proceeding, neither the appraisers nor the umpire shall have authority to decide questions of law, nor shall they attempt to resolve any issue of insurance coverage, policy exclusions, compliance with the policy terms and conditions, or any issues concerning the Limits of Insurance available under the Policy, and any such attempts to decide such questions or issues shall be of no force and effect.

At any time after the request for appraisal, we shall retain our right to:

**1.** Demand compliance with all applicable Duties in the Event of Loss as described in this Policy;

**2.** Require completion of any of the Duties in the Event of Loss, or any other policy condition, prior to continuance of the appraisal proceeding; and

**3.** Deny the claim.

If there is an appraisal, you will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition.

**2.** The **Appraisal** Condition in the:

> BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM; and BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

is replaced by the following:

**Appraisal**

If the Named Insured or the Named Insured's agents, representatives, including any public adjusters engaged on behalf of the Named Insured and we fail to agree on the amount of Net Income and operating expenses or the amount of loss, any party may demand an appraisal of the loss in writing for disputes greater than $500.

Each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. An impartial appraiser must be unbiased, disinterested, and unswayed by personal interest, not favoring one side more than another. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, the Named Insured or the Named Insured's agents, representatives, including any public adjusters engaged on behalf of the Named Insured or we may request that the choice be made by a judge of a court of record in the County where the premises described in the Declarations is located.

The appraisers will separately set the amount of Net Income and operating expenses and the amount of loss, including disclosures of any referral fees that are, in any way, associated with the claim. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed upon by any two parties will be the amount of the loss.

In connection with the appraisal proceeding, neither the appraisers nor the umpire shall have authority to decide questions of law, nor shall they attempt to resolve any issue of insurance coverage, policy exclusions, compliance with the policy terms and conditions, or any issues concerning the Limits of Insurance available under the Policy, and any such attempts to decide such questions or issues shall be of no force and effect.

At any time after the request for appraisal, we shall retain our right to:

**1.** Demand compliance with all applicable Duties in the Event of Loss as described in this Policy;

**2.** Require completion of any of the Duties in the Event of Loss, or any other policy condition, prior to continuance of the appraisal proceeding; and

**3.** Deny the claim.

If there is an appraisal, you will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition.

**D.** Under the **Duties In The Event Of Loss Or Damage** Loss Condition:

**a.** Paragraph **a.(2)** is replaced by the following:

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved. However, with respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with us not later than one year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

**b.** The provision requiring signed, sworn proof of loss is replaced by the following:

> Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**E.** Under the Loss Payment Condition, the provisions pertaining to notice of our intentions and the time period for payment of claims are deleted and replaced by the following:

**1. Claims Handling**

**a.** Within 15 days after we receive written notice of claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(2)** Begin any investigation of the claim; and

**(3)** Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b.(1)** through **b.(4)** above, within:

**(1)** 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

**(2)** 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**2.** We will pay for covered loss or damage within five business days after:

**a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Coverage Part, we will make payment within five business days after the date you have complied with such terms.

The following paragraphs are added:

**3. Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **E.1.** and **E.2.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

**a.** Is declared a disaster under the Texas Disaster Act of 1975; or

**b.** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term "business day", as used in the Loss Payment Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**F.** The following is added to the **Valuation** Loss Condition:

**Chapter 862 – Subsection 862.053. Policy A Liquidated Demand.** A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. This subsection does not apply to personal property.

**G.** Paragraphs **d.** and **f.** of the **Mortgageholders** Additional Condition are replaced by the following:

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**H.** The following is added to Paragraph **D.1.** in the **Duties In The Event Of Accident, Claim Or Suit** Loss Condition in the Legal Liability Coverage Form:

We will notify the first Named Insured in writing of:

**1.** An initial offer to settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

**2.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

I. **Definitions**

**1.** "Assignee" means a person who is assigned post-loss benefits through an assignment agreement.

**2.** "Assignment Agreement" means any instrument by which post-loss benefits under a residential property insurance policy or commercial property insurance policy are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property.

# DEDUCTIBLE ENDORSEMENT FORM 425

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement defines how your Deductible(s) are calculated under the following Coverage Forms as may be applicable:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

I. <u>Deductible.</u>  We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible defined in this Endorsement. We will then pay the amount of loss or damage in excess of the stated Deductible up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition — Need for Adequate Insurance, or Additional Condition — Need for Full Reports.

II. <u>Covered Cause of Loss.</u>  Your deductible will be applied against all loss or damage covered under this policy (unless such loss or damage is specifically excluded from application of a deductible) caused by a Covered Cause of Loss (as hereinafter defined or as defined in a separate Endorsement attached to this policy).  A Covered Cause of Loss under this policy shall mean that the particular Cause of Loss is insured under this policy, which shall be documented in the Causes of Loss — Special Form (CP 10 30) or by the attachment of one or more Endorsement Form(s) adding such coverage to this policy. The Declarations Page, Schedule A identifies one or more Covered Causes of Loss under this policy, the dollar amount or percentage deductible for each Covered Cause of Loss, and the manner in which the deductible shall be applied against loss or damage.

Causes of Loss which may be covered under this policy and which may have a separate deductible include, but are not limited to, the following:

- windstorm or hail (including Named Windstorm and Named Hurricane)
- Named Windstorm (which includes Named Hurricane)
- Named Hurricane
- Water Damage
- All Other Peril or All Other Causes of Loss

The identification of the foregoing Causes of Loss does not mean that the Cause of Loss is a Covered Cause of Loss under this policy.  A Cause of Loss is a Covered Cause of Loss under this policy only if it is insured under this policy, which would be documented in the Causes of Loss — Special Form or by the attachment of one or more Endorsement Form(s) adding such coverage to this policy.

III. <u>Deductible Amount.</u> The amount of your deductible may be different for different Covered Causes of Loss under this policy.  These differences shall be identified on the Declarations Page, Schedule A.  If you are insured for loss or damage caused by windstorm or hail, the amount of your deductible may differ for loss or damage caused by Named Hurricane, Named Windstorm, and windstorm or hail.

Notwithstanding anything to the contrary herein, if you purchased a Named Windstorm or Named Hurricane Deductible, your deductible shall be applied exclusively and on a primary basis if loss or damage is caused by a

Named Windstorm or a Named Hurricane.

Although the Covered Cause of Loss insured against may include multiple Covered Causes of Loss (i.e., windstorm or hail coverage includes coverage for Named Hurricane), the Declarations Page, Schedule A may indicate different deductibles for these associated Covered Causes of Loss. For example, if your Declarations Page, Schedule A indicates separate deductibles for Named Hurricane and windstorm or hail, the Named Hurricane Deductible applies to loss or damage resulting from a Named Hurricane, and the Windstorm or Hail Deductible applies to all other loss or damage caused by windstorm or hail. In the event that two or more Covered Causes of Loss apply to an occurrence of loss or damage and two or more of the Covered Causes of Loss have different deductibles shown in the Declarations, only the highest deductible shall apply.

IV. The amount of your deductible is determined as follows:

a. Fixed Dollar Deductible. Your deductible equals a fixed dollar amount if the deductible is identified as a fixed dollar amount on the Declarations Page, Schedule A for the Covered Cause of Loss.

b. Percentage Deductible – Line of Coverage. If the deductible is expressed as a percentage in Schedule A for a Covered Cause of Loss, and the percentage deductible is applied by Line of Coverage, then that deductible amount shall be determined by multiplying the percentage which applies for the Covered Cause of Loss by the stated value at each building or structure for each Line of Coverage identified in the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy. The deductible amount for loss or damage to Business Personal Property shall be determined by multiplying the percentage which

applies for the Covered Cause of Loss by the stated values for such Business Personal Property identified in the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy.

c. Percentage Deductible – Building. If the deductible is expressed as a percentage and applied by Building in Schedule A for a Covered Cause of Loss, then that deductible amount shall be determined by multiplying the percentage which applies for the Covered Cause of Loss by the sum of the stated values for each Building identified in the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy.

d. Percentage Deductible – Location. If the deductible is expressed as a percentage and applied by Location in Schedule A for a Covered Cause of Loss, then that deductible amount shall be determined by multiplying the percentage which applies for the Covered Cause of Loss by the sum of the stated values for each Covered Location identified in the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy.

e. Percentage Deductible – Policy. If the deductible is expressed as a percentage and applied by Policy in the Declarations Page, Schedule A for a Covered Cause of Loss, then that deductible amount shall be determined by multiplying the percentage which applies for the Covered Cause of Loss by the sum of the stated values under the policy identified in the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy.

f. Minimum Deductible. Notwithstanding anything to the contrary contained herein, a Covered Cause of Loss may be subject to a Minimum Deductible.

V. <u>Deductible Application</u>. Your deductible will be applied to loss or damage to Covered Property by Policy, Location, Building, or Line of Coverage, subject to our Limit of Insurance. Your deductible will be applied as identified in the Declarations Page, Schedule A.

    a. <u>Policy Application</u>. If your deductible for a particular Covered Cause of Loss is applied by Policy, your deductible will be applied to the sum of all loss or damages to Covered Property under this policy directly resulting from a Covered Cause of Loss.

    b. <u>Location Application</u>. If your deductible for a particular Covered Cause of Loss is applied by Location, your deductible will be applied to the sum of all loss or damages to Covered Property at each Covered Location resulting from a Covered Cause of Loss. If two or more Covered Locations are insured under this policy, then the deductible will be applied separately at each Covered Location against the sum of all loss or damages incurred at each Covered Location resulting from a Covered Cause of Loss.

    c. <u>Building Application</u>. If your deductible for a particular Covered Cause of Loss is applied by Building, your deductible will be applied to the sum of all loss or damages to Covered Property at each Building or structure resulting from a Covered Cause of Loss. If two or more buildings or structures are insured under the policy, then the applicable deductible will be applied separately at each Building or structure against the sum of all loss or damages incurred at each Building or structure resulting from a Covered Cause of Loss.

    d. <u>Line of Coverage Application</u>.

i. As respects loss or damage to Covered Property (as defined in either the Building and Personal Property Coverage Form or the Condominium Association Coverage Form) excluding Business Personal Property (also as defined in either the Building and Personal Property Coverage Form or the Condominium Association Coverage Form):

    1. The applicable deductible will be applied separately to all Covered Property excluding Business Personal Property building and structure losses from all other Covered Property losses; and

    2. If two or more buildings or structures are Covered Property, then the applicable deductible will be applied separately to each such building or structure.

ii. As respects loss or damage to Business Personal Property:

    1. The applicable deductible will be applied to Business Personal Property losses separately from All Other Covered Property Losses; and

    2. If Business Personal Property is located in two or more buildings or structures, then the applicable deductible will be applied separately to such Business Personal Property located in each such separate building or structure as shown in the Declarations Page, Schedule A and/or the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy; and

3. The applicable deductible for losses to all Business Personal Property will be applied to the sum of all Business Personal Property losses in each building or structure as shown in the Declarations Page, Schedule A and/or the Statement of Values (ICAT 50 SOV) or otherwise identified in the policy.

iii. As respects loss, damage or expense to Covered Property insured under Business Income and Extra Expense (pursuant to the Business Income (And Extra Expense) Coverage Form and/or the Extra Expense Coverage Form and hereinafter referred to as Business Income and Extra Expense):

1. The applicable deductible will be applied separately to all Business Income and Extra Expense losses and applied at either the building or Covered Location level as shown in the Declarations Page, Schedule A; and

2. If Business Income and Extra Expense Coverage is applicable to two or more buildings or structures, then the applicable deductible will be applied separately to Business Income and Extra Expense losses from all other Covered Property Losses and applied at either each building or Covered Location as shown in the Declarations Page, Schedule A.

iv. As respects loss or damage to Covered Property under the Increased Cost of Construction Additional Coverage (as defined in either the Building and Personal Property Coverage Form or the Condominium Association Coverage Form), the coverage provisions of this Additional Coverage shall not be activated or available to you unless and until the deductible provisions applicable to Covered Property have been satisfied and a claim payment is due to you.

VI. <u>Frequency of Deductible Application During the Policy Period.</u> The Deductible applicable to any loss or damage to Covered Property will be applied separately to each such occurrence of loss or damage during the Policy Period.

VII. Named Windstorm as used herein is defined as a storm system that has been declared to be a hurricane or tropical storm by the National Hurricane Center of the National Weather Service which affects Covered Property. The duration of the Named Windstorm shall be from the moment a tropical storm or hurricane watch or warning is issued by the National Hurricane Center and continuing for the time period during which the tropical storm or hurricane watch or warning is in effect, ending 72 hours following the termination of the last tropical storm or hurricane watch or warning issued by the National Hurricane Center for such storm system.

VIII. Named Hurricane as used herein is defined as a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service which affects Covered Property. The duration of the Named Hurricane shall be from the moment a hurricane watch or warning is issued by the National Hurricane Center and continuing for the time period during which the hurricane watch or warning is in effect, ending 72 hours following the termination of the last hurricane watch or warning issued by the National Hurricane Center for such storm system.

IX. <u>Water Damage Deductible</u>. In the event that the Declarations Page indicates a

separate Water Damage Deductible, that Deductible shall apply to covered fortuitous loss or damage to Covered Property caused directly or indirectly by water, freeze, wetness, accidental discharge, seepage, or excessive moisture resulting from a Covered Cause of Loss under this policy. For example, the Water Damage Deductible applies, but is not limited, to loss or damage to Covered Property that occurs when a pipe freezes resulting in the cracking of the pipe and water leaks from the pipe after it thaws, but does not apply to loss or damage to Covered Property caused by the intentional spraying of a fire hose to extinguish a fire. Instead, the All Other Peril or All Other Causes of Loss Deductible would apply to loss or damage caused by the intentional spraying of a fire hose to extinguish a fire. Notwithstanding the foregoing, if the water, freeze, wetness, accidental discharge, seepage, or excessive moisture is the result of, or contributed to in any way by, windstorm or hail, Named Windstorm, Named Hurricane, Earthquake, or Earthquake Sprinkler Leakage and that Cause of Loss has a higher Deductible shown in the Declarations, then that higher Deductible shall apply to any loss or damage to Covered Property.

All other terms and conditions of this policy remain.

# EARNED PREMIUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THIS ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following forms.
COMMERCIAL PROPERTY COVERAGE PART

If this Policy is cancelled, we will refund any unearned premium due subject to the following exceptions:

1. If we cancel, the refund will be prorated based upon the number of days remaining until the end of the Policy Period.

2. If you cancel, the premium refund will be equal to the pro rata unearned premium as of the effective date of cancellation subject to a minimum earned premium of 25% of the annual premium.

3. If this Policy has been extended beyond the end of the Policy Period and the Policy is cancelled at any time during such extended Policy Period, there will be no premium refund.

# ELECTRONIC DATE RECOGNITION EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ THE ENDORSEMENT CAREFULLY.**

**A.** Notwithstanding any provision to the contrary within this Policy or within any Endorsement which forms part of this Policy, this Policy does not insure any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

**1.** the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

**2.** any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This Endorsement applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**The above-listed changes do not increase or decrease the Policy Limit of Insurance.**

All other terms and conditions of this Policy remain the same.

# TERRORISM EXCLUSION

Notwithstanding any provision to the contrary within this policy or any endorsement attached thereto, it is agreed that this policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this Endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This Endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If we determine that by reason of this exclusion, any loss, damage, cost or expense is not covered by this policy, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this Endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

(NMA2920 08/10/2001)

# TRIA COVERAGE DECLINATION

This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Program" as provided for and created by the "U.S. Terrorism Risk Insurance Act of 2002" as amended.

It is hereby noted that we have made available coverage for "insured losses" directly or indirectly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended ("TRIA") and you have declined or not confirmed to purchase this coverage.

This policy therefore affords no coverage for losses directly or indirectly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

The terms "act of terrorism" and "insured loss(es)" shall have the meanings as provided for in TRIA.

All other terms, conditions, insured coverage and exclusions of this policy, including applicable limits and deductibles, remain unchanged and apply in full force and effect to the coverage provided by this policy.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYEE THEFT AND FORGERY POLICY
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
GOVERNMENT CRIME AND COVERAGE FORM
GOVERNMENT CRIME POLICY
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

**1.** We have the right to:

**a.** Make inspections and surveys at any time;

**b.** Give you reports on the conditions we find; and

**c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

      **a.** Any of the following, whether belonging to any insured or to others:

         **(1)** Computer hardware, including micro-processors;

         **(2)** Computer application software;

         **(3)** Computer operating systems and related software;

         **(4)** Computer networks;

         **(5)** Microprocessors (computer chips) not part of any computer system; or

         **(6)** Any other computerized or electronic equipment or components; or

      **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

      due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

      **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

      **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# PRIVACY NOTICE

Protecting the privacy and confidentiality of information about our customers is very important to us.  While information is the cornerstone of our ability to provide superior insurance products, our most important asset is our customers' trust.  Accordingly, we limit the collection and use of customer information to the minimum we require in delivering superior products and services.  This Privacy Notice includes examples of the types of nonpublic personal information we collect and the kinds of companies with whom we may share such information.  **You do not need to do anything in response to this notice.  This notice is merely to inform you about how we safeguard your information.**

## Information We Collect

We know that you expect us to conduct and process your business in a manner that is both accurate and efficient.  To do so, we gather nonpublic personal information about you, as permitted by law, that is pertinent to the underwriting or claims investigation process, such as:

- your name, address, telephone number, social security number, age, and employer;
- prior insurance coverage, claims history, premiums, and payment history;
- information from consumer reporting agencies, public records, and data collection agencies;
- data from consumer electronic devices in relation to the underwriting or claims investigation process.

## Information We May Disclose

In general, we do not disclose any nonpublic personal information about our customers or former customers to anyone, except for information that we may be required by law to disclose.  We may however, disclose nonpublic personal information to third-parties who provide customer service or other administrative services for your account.   We may also disclose your nonpublic personal information to companies that provide marketing services on our behalf or to other companies whom with we have joint marketing agreements, as permitted by law.

Additionally, we may also disclose nonpublic personal information to affiliates, which may include, auditors, attorneys, Certified Public Accountants, investment companies, underwriters, and others who perform business or professional services to our company. We require all third-party service providers to keep your information confidential and protected, and to maintain safeguards which comply with all applicable regulatory standards to guard your nonpublic personal information against unauthorized disclosure.

Finally, we may disclose information in response to requests from law enforcement or other governmental agencies or state insurance regulatory authorities. We are required by law to honor these requests.

## Security of Your Information

To safeguard your nonpublic personal information, we limit access to our customers' nonpublic personal information to only those employees who need access to the information to perform their job functions.  Additionally, we insist that the third-parties that perform services for us limit access to your personal information to authorized employees and agents, and maintain appropriate administrative, physical, electronic and procedural safeguards. Additionally, these third parties are under contractual obligations of confidentiality to us and are not permitted to use your data for any other purposes than the services they are performing for us.

**Personal Information Accessibility and Correction**

If you are a resident of Connecticut, Georgia, New Jersey, or North Carolina, you have the right to access and correct the personal information that we have collected from or about you. Please contact us and we will make necessary changes. If the information was provided to us by a third party (such as a credit rating agency) we will provide you with the third party's contact information. If you do not live in one of the aforementioned states, we will always take reasonable steps to verify the accuracy of your personal information in our records.

**Changes to this Privacy Notice**

We reserve the right to modify this Privacy Notice at any time. If we make material changes, we will provide a revised Privacy Notice. If we modify this Privacy Notice such that the use of your personally identifiable information is different from what was stated in our Privacy Notice at the time your data was collected, we will notify you. You will be able to opt out of any new uses of your previously disclosed information. Your information will be used in accordance with the Privacy Notice in effect when your information was collected.

**The UPC Website**

Our website also has a privacy notice, which can be found on our website via the following link. https://www.upcinsurance.com/privacy/. Always be aware of the risks when transmitting nonpublic personal information over the internet.

Our Privacy Notice applies to the following affiliates in the UPC Insurance® family of companies:
- United Insurance Holdings Corp.
- Family Security Holdings, LLC
- AmCo Holding Company
- United Property & Casualty Insurance Company
- American Coastal Insurance Company, Inc.
- Family Security Insurance Company, Inc.
- Interboro Insurance Company
- Journey Insurance Company
- United Insurance Management, L.C.
- Skyway Reinsurance Services, LLC
- Skyway Claims Services, LLC
- BlueLine Cayman Holdings
- UPC Re

This Privacy Notice was last revised on October 23, 2018.

UPC Insurance appreciates the trust placed in us by our customers and will continue to work to protect the privacy of our customers and Keep the Promise®.

# SERVICE OF PROCESS ENDORSEMENT AND SIGNATURE PAGE

When a cause of action arises in any of the states listed below, service of process applies as shown below for that state.

As used in this endorsement, "the Company" shall mean Journey Insurance Company.

**SOUTH CAROLINA Service of Process Clause**

The Company hereby designates the Director of Insurance of the State of South Carolina as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.

**TEXAS Service of Process Clause**

The Company hereby designates the Commissioner of Insurance of the State of Texas as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201 as the person to whom the Commissioner shall mail mail process.

All other terms and conditions of this policy remain unchanged.

IN WITNESS

**Journey Insurance Company**

800 SECOND AVENUE SOUTH
DEPARTMENT: LEGAL
800 2ND AVENUE SOUTH
ST. PETERSBURG, FLORIDA 33701
PHONE: (727) 895-7737

IN WITNESS WHEREOF, Journey Insurance Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.  All other provisions remain unchanged.

John Forney
President

Brad S. Kalter
Secretary

# Exhibit 2

 RIVERSTONE
BUILDING & CONSULTING

| | | | |
|---|---|---|---|
| Insured: | Tanglegrove Townhouse Condo Assoc. | | |
| Property: | 5845 Lynbrook Drive | | |
| | Houston , TX 77057 | | |

| | | | |
|---|---|---|---|
| Claim Rep.: | Carl Johnson | Business: | (512) 844-8707 |
| Business: | 13 Sea Shell Shores | E-mail: | carl@riverstonebc.com |
| | Rockport, TX 78382 | | |

| | | | |
|---|---|---|---|
| Estimator: | Carl Johnson | Business: | (512) 844-8707 |
| Business: | 13 Sea Shell Shores | E-mail: | carl@riverstonebc.com |
| | Rockport, TX 78382 | | |

**Claim Number:** 21TX00129848          **Policy Number:** 4-6590000083-U-00          **Type of Loss:** hail and wind damage

| | | | |
|---|---|---|---|
| Date of Loss: | 8/16/2021 12:00 PM | Date Received: | |
| Date Inspected: | 9/13/2022 12:00 PM | Date Entered: | 10/4/2022 12:00 PM |

| | |
|---|---|
| Price List: | TXHO8X_OCT22 |
| | Restoration/Service/Remodel |
| Estimate: | TANGLEGROVE_CONDO_ AS |



**RIVERSTONE**
BUILDING & CONSULTING

**TANGLEGROVE_CONDO_AS**

**Roof A**

**Roof A**

---

### Roof1



| | | |
|---|---|---|
| 11833.25 Surface Area | | 118.33 Number of Squares |
| 1182.55 Total Perimeter Length | | 208.50 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Remove Laminated - comp. shingle rfg. - w/out felt | 118.33 SQ | 67.86 | 0.00 | 1,605.98 | 9,635.85 | (0.00) | 9,635.85 |
| 2. Laminated - comp. shingle rfg. - w/out felt | 130.33 SQ | 259.91 | 1,409.94 | 7,056.80 | 42,340.81 | (0.00) | 42,340.81 |
| 3. Roofing felt - 30 lb. | 118.33 SQ | 39.13 | 117.93 | 949.64 | 5,697.82 | (0.00) | 5,697.82 |
| 4. Asphalt starter - universal starter course | 1,182.55 LF | 2.01 | 50.73 | 485.52 | 2,913.18 | (0.00) | 2,913.18 |
| 5. R&R Hip / Ridge cap - composition shingles | 208.50 LF | 7.48 | 22.19 | 316.36 | 1,898.13 | (0.00) | 1,898.13 |
| 6. R&R Drip edge | 1,182.55 LF | 3.21 | 107.32 | 780.66 | 4,683.97 | (0.00) | 4,683.97 |
| 7. R&R Gutter / downspout - aluminum - up to 5" | 458.00 LF | 9.32 | 179.10 | 889.54 | 5,337.20 | (0.00) | 5,337.20 |
| 8. R&R Gutter guard/screen | 390.00 LF | 3.93 | 37.32 | 314.00 | 1,884.02 | (0.00) | 1,884.02 |
| 9. R&R Valley metal | 17.69 LF | 6.54 | 2.96 | 23.74 | 142.40 | (0.00) | 142.40 |
| 10. Step flashing | 55.00 LF | 10.23 | 7.35 | 114.02 | 684.02 | (0.00) | 684.02 |
| 11. R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 12. R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 13. R&R Exhaust cap - through roof - 6" to 8" | 12.00 EA | 110.15 | 44.20 | 273.20 | 1,639.20 | (0.00) | 1,639.20 |
| 14. R&R Furnace vent - rain cap and storm collar, 6" | 6.00 EA | 87.45 | 15.50 | 108.04 | 648.24 | (0.00) | 648.24 |
| 15. R&R Roof vent - turtle type - Metal | 3.00 EA | 79.45 | 5.70 | 48.80 | 292.85 | (0.00) | 292.85 |
| 16. R&R Furnace vent - rain cap and storm collar, 8" | 18.00 EA | 94.40 | 56.82 | 351.20 | 2,107.22 | (0.00) | 2,107.22 |
| 17. R&R Flashing - pipe jack - lead | 14.00 EA | 89.27 | 53.80 | 260.72 | 1,564.30 | (0.00) | 1,564.30 |
| 18. Prime & paint roof vent | 53.00 EA | 34.45 | 29.65 | 371.12 | 2,226.62 | (0.00) | 2,226.62 |
| 19. Remove Additional charge for high roof (2 stories or greater) | 118.33 SQ | 6.51 | 0.00 | 154.06 | 924.39 | (0.00) | 924.39 |
| 20. Additional charge for high roof (2 stories or greater) | 118.33 SQ | 21.03 | 0.00 | 497.70 | 2,986.18 | (0.00) | 2,986.18 |
| 21. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,182.55 SF | 0.77 | 0.00 | 182.12 | 1,092.68 | (0.00) | 1,092.68 |
| 22. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 23. Job-site cargo/storage container - 20' long - per month | 1.00 MO | 87.83 | 7.25 | 19.02 | 114.10 | (0.00) | 114.10 |

TANGLEGROVE_CONDO_AS

10/10/2022                                    Page: 2

 **RIVERSTONE**
BUILDING & CONSULTING

**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 24. Job-site cargo container - comp. pick up/del. (each way) 16'-40' | 2.00 EA | 99.40 | 16.40 | 43.04 | 258.24 | (0.00) | 258.24 |
| **Totals: Roof1** | | | 2,229.84 | 16,605.96 | 99,635.48 | 0.00 | 99,635.48 |
| **Total: Roof A** | | | 2,229.84 | 16,605.96 | 99,635.48 | 0.00 | 99,635.48 |
| **Total: Roof A** | | | 2,229.84 | 16,605.96 | 99,635.48 | 0.00 | 99,635.48 |

### Roof B

### Roof B

#### Roof1



| | |
|---|---|
| 13512.97 Surface Area | 135.13 Number of Squares |
| 1570.72 Total Perimeter Length | 488.25 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 25. Remove Laminated - comp. shingle rfg. - w/out felt | 135.12 SQ | 67.86 | 0.00 | 1,833.84 | 11,003.08 | (0.00) | 11,003.08 |
| 26. Laminated - comp. shingle rfg. - w/out felt | 148.67 SQ | 259.91 | 1,608.35 | 8,049.84 | 48,299.01 | (0.00) | 48,299.01 |
| 27. Roofing felt - 30 lb. | 135.12 SQ | 39.13 | 134.66 | 1,084.40 | 6,506.31 | (0.00) | 6,506.31 |
| 28. Asphalt starter - universal starter course | 1,570.72 LF | 2.01 | 67.38 | 644.92 | 3,869.45 | (0.00) | 3,869.45 |
| 29. R&R Hip / Ridge cap - composition shingles | 488.25 LF | 7.48 | 51.96 | 740.82 | 4,444.89 | (0.00) | 4,444.89 |
| 30. R&R Continuous ridge vent - shingle-over style | 439.42 LF | 10.87 | 150.45 | 985.40 | 5,912.35 | (0.00) | 5,912.35 |
| 31. R&R Drip edge | 1,570.72 LF | 3.21 | 142.54 | 1,036.90 | 6,221.46 | (0.00) | 6,221.46 |
| 32. R&R Chimney flashing - large (32" x 60") | 1.00 EA | 593.02 | 10.89 | 120.78 | 724.69 | (0.00) | 724.69 |
| 33. R&R Gutter / downspout - aluminum - up to 5" | 400.00 LF | 9.32 | 156.42 | 776.88 | 4,661.30 | (0.00) | 4,661.30 |
| 34. R&R Valley metal | 283.39 LF | 6.54 | 47.46 | 380.16 | 2,280.99 | (0.00) | 2,280.99 |
| 35. Step flashing | 55.00 LF | 10.23 | 7.35 | 114.02 | 684.02 | (0.00) | 684.02 |
| 36. R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 37.  R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 38.  R&R Exhaust cap - through roof - 6" to 8" | 6.00 EA | 110.15 | 22.10 | 136.60 | 819.60 | (0.00) | 819.60 |
| 39.  R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 40.  R&R Furnace vent - rain cap and storm collar, 8" | 29.00 EA | 94.40 | 91.54 | 565.82 | 3,394.96 | (0.00) | 3,394.96 |
| 41.  R&R Flashing - pipe jack - lead | 6.00 EA | 89.27 | 23.06 | 111.74 | 670.42 | (0.00) | 670.42 |
| 42.  Prime & paint roof vent | 43.00 EA | 34.45 | 24.05 | 301.10 | 1,806.50 | (0.00) | 1,806.50 |
| 43.  Remove Additional charge for high roof (2 stories or greater) | 135.13 SQ | 6.51 | 0.00 | 175.94 | 1,055.64 | (0.00) | 1,055.64 |
| 44.  Additional charge for high roof (2 stories or greater) | 135.13 SQ | 21.03 | 0.00 | 568.36 | 3,410.14 | (0.00) | 3,410.14 |
| 45.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,570.72 SF | 0.77 | 0.00 | 241.90 | 1,451.35 | (0.00) | 1,451.35 |
| 46.  Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 47.  Two ladders with jacks and plank (per day) | 7.00 DA | 109.66 | 0.00 | 153.52 | 921.14 | (0.00) | 921.14 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Roof1** | | | 2,601.39 | 19,728.46 | 118,370.40 | 0.00 | 118,370.40 |
| **Total:  Roof B** | | | 2,601.39 | 19,728.46 | 118,370.40 | 0.00 | 118,370.40 |
| **Total:  Roof B** | | | 2,601.39 | 19,728.46 | 118,370.40 | 0.00 | 118,370.40 |

**Roof C**

**Roof C**



**Roof1**

| 4776.25 | Surface Area | 47.76 | Number of Squares |
|---|---|---|---|
| 567.06 | Total Perimeter Length | 76.81 | Total Ridge Length |
| 135.29 | Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 48.  Remove Laminated - comp. shingle rfg. - w/out felt | 48.00 SQ | 67.86 | 0.00 | 651.46 | 3,908.74 | (0.00) | 3,908.74 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 49.  Laminated - comp. shingle rfg. - w/out felt | 53.00 SQ | 259.91 | 573.37 | 2,869.72 | 17,218.32 | (0.00) | 17,218.32 |
| 50.  Roofing felt - 30 lb. | 48.00 SQ | 39.13 | 47.84 | 385.20 | 2,311.28 | (0.00) | 2,311.28 |
| 51.  Asphalt starter - universal starter course | 567.06 LF | 2.01 | 24.33 | 232.82 | 1,396.94 | (0.00) | 1,396.94 |
| 52.  R&R Hip / Ridge cap - composition shingles | 76.81 LF | 7.48 | 8.17 | 116.56 | 699.27 | (0.00) | 699.27 |
| 53.  R&R Continuous ridge vent - shingle-over style | 69.13 LF | 10.87 | 23.67 | 155.04 | 930.16 | (0.00) | 930.16 |
| 54.  R&R Drip edge | 567.06 LF | 3.21 | 51.46 | 374.36 | 2,246.08 | (0.00) | 2,246.08 |
| 55.  R&R Chimney flashing - average (32" x 36") | 2.00 EA | 448.20 | 15.34 | 182.34 | 1,094.08 | (0.00) | 1,094.08 |
| 56.  R&R Valley metal | 58.12 LF | 6.54 | 9.73 | 77.98 | 467.82 | (0.00) | 467.82 |
| 57.  Step flashing | 55.00 LF | 10.23 | 7.35 | 114.02 | 684.02 | (0.00) | 684.02 |
| 58.  R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 59.  R&R Furnace vent - rain cap and storm collar, 8" | 8.00 EA | 94.40 | 25.25 | 156.10 | 936.55 | (0.00) | 936.55 |
| 60.  R&R Flashing - pipe jack - lead | 1.00 EA | 89.27 | 3.84 | 18.62 | 111.73 | (0.00) | 111.73 |
| 61.  Prime & paint roof vent | 9.00 EA | 34.45 | 5.03 | 63.02 | 378.10 | (0.00) | 378.10 |
| 62.  Remove Additional charge for high roof (2 stories or greater) | 47.76 SQ | 6.51 | 0.00 | 62.18 | 373.10 | (0.00) | 373.10 |
| 63.  Additional charge for high roof (2 stories or greater) | 47.76 SQ | 21.03 | 0.00 | 200.88 | 1,205.27 | (0.00) | 1,205.27 |
| 64.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 567.06 SF | 0.77 | 0.00 | 87.32 | 523.96 | (0.00) | 523.96 |
| 65.  Telehandler/forklift and operator | 24.00 HR | 120.38 | 0.00 | 577.82 | 3,466.94 | (0.00) | 3,466.94 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 66.  Two ladders with jacks and plank (per day) | 3.00 DA | 109.66 | 0.00 | 65.80 | 394.78 | (0.00) | 394.78 |
| **Totals:  Roof1** | | | **799.69** | **6,459.48** | **38,756.59** | **0.00** | **38,756.59** |



**Roof3**

| | 533.69  Surface Area | | | 5.34  Number of Squares | | | |
|---|---|---|---|---|---|---|---|
| | 74.67  Total Perimeter Length | | | | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|

TANGLEGROVE_CONDO_AS


RIVERSTONE
BUILDING & CONSULTING

**CONTINUED - Roof3**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 67. R&R Modified bitumen roof | 5.34 SQ | 435.89 | 47.75 | 475.10 | 2,850.51 | (0.00) | 2,850.51 |
| 68. Roofing felt - synthetic underlayment | 5.34 SQ | 45.28 | 8.03 | 49.96 | 299.79 | (0.00) | 299.79 |
| 69. R&R Drip edge | 74.67 LF | 3.21 | 6.78 | 49.30 | 295.77 | (0.00) | 295.77 |
| 70. R&R Gutter / downspout - aluminum - up to 5" | 90.00 LF | 9.32 | 35.19 | 174.80 | 1,048.79 | (0.00) | 1,048.79 |
| 71. Remove Additional charge for high roof (2 stories or greater) | 5.34 SQ | 6.51 | 0.00 | 6.96 | 41.72 | (0.00) | 41.72 |
| 72. Additional charge for high roof (2 stories or greater) | 5.34 SQ | 21.03 | 0.00 | 22.46 | 134.76 | (0.00) | 134.76 |
| 73. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals: Roof3** | | | 97.75 | 874.88 | 5,249.16 | 0.00 | 5,249.16 |
| **Total: Roof C** | | | 897.44 | 7,334.36 | 44,005.75 | 0.00 | 44,005.75 |
| **Total: Roof C** | | | 897.44 | 7,334.36 | 44,005.75 | 0.00 | 44,005.75 |

**Roof D**

**Roof D**

**Roof1**



| | | | |
|---|---|---|---|
| 8491.56 | Surface Area | 84.92 | Number of Squares |
| 1266.19 | Total Perimeter Length | 252.65 | Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 74. Remove Laminated - comp. shingle rfg. - w/out felt | 84.91 SQ | 67.86 | 0.00 | 1,152.40 | 6,914.39 | (0.00) | 6,914.39 |
| 75. Laminated - comp. shingle rfg. - w/out felt | 93.67 SQ | 259.91 | 1,013.34 | 5,071.82 | 30,430.93 | (0.00) | 30,430.93 |
| 76. Roofing felt - 30 lb. | 84.91 SQ | 39.13 | 84.62 | 681.42 | 4,088.57 | (0.00) | 4,088.57 |
| 77. Asphalt starter - universal starter course | 1,266.19 LF | 2.01 | 54.32 | 519.86 | 3,119.22 | (0.00) | 3,119.22 |
| 78. R&R Hip / Ridge cap - composition shingles | 252.65 LF | 7.48 | 26.89 | 383.34 | 2,300.05 | (0.00) | 2,300.05 |
| 79. R&R Continuous ridge vent - shingle-over style | 227.39 LF | 10.87 | 77.85 | 509.92 | 3,059.50 | (0.00) | 3,059.50 |

EXHIBIT A - Page 227 of 320



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 80. R&R Drip edge | 1,266.19 LF | 3.21 | 114.91 | 835.86 | 5,015.24 | (0.00) | 5,015.24 |
| 81. R&R Gutter / downspout - aluminum - up to 5" | 225.00 LF | 9.32 | 87.99 | 437.00 | 2,621.99 | (0.00) | 2,621.99 |
| 82. Step flashing | 100.00 LF | 10.23 | 13.37 | 207.28 | 1,243.65 | (0.00) | 1,243.65 |
| 83. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 448.20 | 30.69 | 364.70 | 2,188.19 | (0.00) | 2,188.19 |
| 84. R&R Valley metal | 66.11 LF | 6.54 | 11.07 | 88.70 | 532.13 | (0.00) | 532.13 |
| 85. R&R Exhaust cap - through roof - 6" to 8" | 1.00 EA | 110.15 | 3.68 | 22.78 | 136.61 | (0.00) | 136.61 |
| 86. R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 87. R&R Furnace vent - rain cap and storm collar, 8" | 12.00 EA | 94.40 | 37.88 | 234.14 | 1,404.82 | (0.00) | 1,404.82 |
| 88. R&R Flashing - pipe jack - lead | 6.00 EA | 89.27 | 23.06 | 111.74 | 670.42 | (0.00) | 670.42 |
| 89. Prime & paint roof vent | 21.00 EA | 34.45 | 11.75 | 147.06 | 882.26 | (0.00) | 882.26 |
| 90. Remove Additional charge for high roof (2 stories or greater) | 84.91 SQ | 6.51 | 0.00 | 110.56 | 663.32 | (0.00) | 663.32 |
| 91. Additional charge for high roof (2 stories or greater) | 84.91 SQ | 21.03 | 0.00 | 357.14 | 2,142.80 | (0.00) | 2,142.80 |
| 92. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,266.19 SF | 0.77 | 0.00 | 195.00 | 1,169.97 | (0.00) | 1,169.97 |
| 93. Telehandler/forklift and operator | 32.00 HR | 120.38 | 0.00 | 770.44 | 4,622.60 | (0.00) | 4,622.60 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 94. Two ladders with jacks and plank (per day) | 4.00 DA | 109.66 | 0.00 | 87.72 | 526.36 | (0.00) | 526.36 |
| **Totals: Roof1** | | | 1,596.59 | 12,324.90 | 73,949.11 | 0.00 | 73,949.11 |
| **Total: Roof D** | | | 1,596.59 | 12,324.90 | 73,949.11 | 0.00 | 73,949.11 |
| **Total: Roof D** | | | 1,596.59 | 12,324.90 | 73,949.11 | 0.00 | 73,949.11 |

**Roof E**

**Roof E**

**R** RIVERSTONE
BUILDING & CONSULTING

---

### Roof1



| | |
|---|---|
| 16225.38 Surface Area | 162.25 Number of Squares |
| 2101.25 Total Perimeter Length | 479.47 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 95. Remove Laminated - comp. shingle rfg. - w/out felt | 163.00 SQ | 67.86 | 0.00 | 2,212.24 | 13,273.42 | (0.00) | 13,273.42 |
| 96. Laminated - comp. shingle rfg. - w/out felt | 179.33 SQ | 259.91 | 1,940.03 | 9,709.94 | 58,259.63 | (0.00) | 58,259.63 |
| 97. Roofing felt - 30 lb. | 163.00 SQ | 39.13 | 162.45 | 1,308.14 | 7,848.78 | (0.00) | 7,848.78 |
| 98. Asphalt starter - universal starter course | 2,101.25 LF | 2.01 | 90.14 | 862.72 | 5,176.37 | (0.00) | 5,176.37 |
| 99. R&R Hip / Ridge cap - composition shingles | 479.47 LF | 7.48 | 51.03 | 727.50 | 4,364.96 | (0.00) | 4,364.96 |
| 100. R&R Continuous ridge vent - shingle-over style | 431.53 LF | 10.87 | 147.75 | 967.70 | 5,806.18 | (0.00) | 5,806.18 |
| 101. R&R Drip edge | 2,101.25 LF | 3.21 | 190.69 | 1,387.14 | 8,322.84 | (0.00) | 8,322.84 |
| 102. R&R Gutter / downspout - aluminum - up to 5" | 400.00 LF | 9.32 | 156.42 | 776.88 | 4,661.30 | (0.00) | 4,661.30 |
| 103. R&R Valley metal | 185.23 LF | 6.54 | 31.02 | 248.48 | 1,490.91 | (0.00) | 1,490.91 |
| 104. R&R Chimney flashing - large (32" x 60") | 8.00 EA | 593.02 | 87.11 | 966.26 | 5,797.53 | (0.00) | 5,797.53 |
| 105. Step flashing | 70.00 LF | 10.23 | 9.36 | 145.10 | 870.56 | (0.00) | 870.56 |
| 106. R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 107. R&R Flashing - pipe jack - lead | 11.00 EA | 89.27 | 42.27 | 204.86 | 1,229.10 | (0.00) | 1,229.10 |
| 108. R&R Exhaust cap - through roof - 6" to 8" | 8.00 EA | 110.15 | 29.47 | 182.14 | 1,092.81 | (0.00) | 1,092.81 |
| 109. R&R Furnace vent - rain cap and storm collar, 6" | 4.00 EA | 87.45 | 10.33 | 72.02 | 432.15 | (0.00) | 432.15 |
| 110. R&R Furnace vent - rain cap and storm collar, 8" | 21.00 EA | 94.40 | 66.29 | 409.74 | 2,458.43 | (0.00) | 2,458.43 |
| 111. R&R Roof vent - turtle type - Metal | 3.00 EA | 79.45 | 5.70 | 48.80 | 292.85 | (0.00) | 292.85 |
| 112. R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 113. Prime & paint roof vent | 48.00 EA | 34.45 | 26.85 | 336.10 | 2,016.55 | (0.00) | 2,016.55 |
| 114. Remove Additional charge for high roof (2 stories or greater) | 162.25 SQ | 6.51 | 0.00 | 211.26 | 1,267.51 | (0.00) | 1,267.51 |
| 115. Additional charge for high roof (2 stories or greater) | 162.25 SQ | 21.03 | 0.00 | 682.42 | 4,094.54 | (0.00) | 4,094.54 |
| 116. Install Tarp - all-purpose poly - per sq ft (labor and material) | 2,101.25 SF | 0.77 | 0.00 | 323.60 | 1,941.56 | (0.00) | 1,941.56 |
| 117. Telehandler/forklift and operator | 64.00 HR | 120.38 | 0.00 | 1,540.86 | 9,245.18 | (0.00) | 9,245.18 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 118. Two ladders with jacks and plank (per day) | 8.00 DA | 109.66 | 0.00 | 175.46 | 1,052.74 | (0.00) | 1,052.74 |

---

TANGLEGROVE_CONDO_AS



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | **3,057.90** | **23,598.24** | **141,589.16** | **0.00** | **141,589.16** |



### Roof5

| | |
|---|---|
| 674.83 Surface Area | 6.75 Number of Squares |
| 104.68 Total Perimeter Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 119. R&R Modified bitumen roof | 6.75 SQ | 435.89 | 60.35 | 600.52 | 3,603.13 | (0.00) | 3,603.13 |
| 120. Roofing felt - synthetic underlayment | 6.75 SQ | 45.28 | 10.15 | 63.16 | 378.95 | (0.00) | 378.95 |
| 121. R&R Drip edge | 104.68 LF | 3.21 | 9.50 | 69.10 | 414.62 | (0.00) | 414.62 |
| 122. R&R Gutter / downspout - aluminum - up to 5" | 90.00 LF | 9.32 | 35.19 | 174.80 | 1,048.79 | (0.00) | 1,048.79 |
| 123. Remove Additional charge for high roof (2 stories or greater) | 6.75 SQ | 6.51 | 0.00 | 8.78 | 52.72 | (0.00) | 52.72 |
| 124. Additional charge for high roof (2 stories or greater) | 6.75 SQ | 21.03 | 0.00 | 28.40 | 170.35 | (0.00) | 170.35 |
| 125. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof5** | | | **115.19** | **1,041.06** | **6,246.38** | **0.00** | **6,246.38** |



### Roof4

| | |
|---|---|
| 266.91 Surface Area | 2.67 Number of Squares |
| 70.42 Total Perimeter Length | |
| 23.02 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 126. R&R Modified bitumen roof | 1.33 SQ | 435.89 | 11.89 | 118.32 | 709.95 | (0.00) | 709.95 |
| 127. Roofing felt - synthetic underlayment | 1.33 SQ | 45.28 | 2.00 | 12.44 | 74.66 | (0.00) | 74.66 |
| 128. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |

**EXHIBIT A - Page 230 of 320**



**CONTINUED - Roof4**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof4** | | | 13.89 | 178.92 | 1,073.53 | 0.00 | 1,073.53 |
| **Total: Roof E** | | | 3,186.98 | 24,818.22 | 148,909.07 | 0.00 | 148,909.07 |
| **Total: Roof E** | | | 3,186.98 | 24,818.22 | 148,909.07 | 0.00 | 148,909.07 |

**Roof F**

**Roof F**



**Roof1**

| 10392.80 Surface Area | 103.93 Number of Squares |
|---|---|
| 1421.46 Total Perimeter Length | 280.79 Total Ridge Length |
| 103.82 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 129. Remove Laminated - comp. shingle rfg. - w/out felt | 100.30 SQ | 67.86 | 0.00 | 1,361.28 | 8,167.64 | (0.00) | 8,167.64 |
| 130. Laminated - comp. shingle rfg. - w/out felt | 110.33 SQ | 259.91 | 1,193.57 | 5,973.90 | 35,843.34 | (0.00) | 35,843.34 |
| 131. Roofing felt - 30 lb. | 100.30 SQ | 39.13 | 99.96 | 804.94 | 4,829.64 | (0.00) | 4,829.64 |
| 132. Asphalt starter - universal starter course | 1,421.46 LF | 2.01 | 60.98 | 583.62 | 3,501.73 | (0.00) | 3,501.73 |
| 133. R&R Hip / Ridge cap - composition shingles | 280.79 LF | 7.48 | 29.88 | 426.04 | 2,556.23 | (0.00) | 2,556.23 |
| 134. R&R Continuous ridge vent - shingle-over style | 252.71 LF | 10.87 | 86.52 | 566.68 | 3,400.16 | (0.00) | 3,400.16 |
| 135. R&R Drip edge | 1,421.46 LF | 3.21 | 129.00 | 938.38 | 5,630.27 | (0.00) | 5,630.27 |
| 136. R&R Chimney flashing - large (32" x 60") | 4.00 EA | 593.02 | 43.55 | 483.14 | 2,898.77 | (0.00) | 2,898.77 |
| 137. R&R Gutter / downspout - aluminum - up to 5" | 400.00 LF | 9.32 | 156.42 | 776.88 | 4,661.30 | (0.00) | 4,661.30 |
| 138. R&R Valley metal | 184.04 LF | 6.54 | 30.82 | 246.88 | 1,481.32 | (0.00) | 1,481.32 |
| 139. Step flashing | 70.00 LF | 10.23 | 9.36 | 145.10 | 870.56 | (0.00) | 870.56 |
| 140. R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 141. R&R Flashing - pipe jack - lead | 6.00 EA | 89.27 | 23.06 | 111.74 | 670.42 | (0.00) | 670.42 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 142. R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 143. R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 144. R&R Furnace vent - rain cap and storm collar, 8" | 21.00 EA | 94.40 | 66.29 | 409.74 | 2,458.43 | (0.00) | 2,458.43 |
| 145. R&R Roof vent - turbine type | 2.00 EA | 146.49 | 13.36 | 61.26 | 367.60 | (0.00) | 367.60 |
| 146. Prime & paint roof vent | 33.00 EA | 34.45 | 18.46 | 231.08 | 1,386.39 | (0.00) | 1,386.39 |
| 147. Remove Additional charge for high roof (2 stories or greater) | 100.30 SQ | 6.51 | 0.00 | 130.60 | 783.55 | (0.00) | 783.55 |
| 148. Additional charge for high roof (2 stories or greater) | 100.30 SQ | 21.03 | 0.00 | 421.86 | 2,531.17 | (0.00) | 2,531.17 |
| 149. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,421.46 SF | 0.77 | 0.00 | 218.90 | 1,313.42 | (0.00) | 1,313.42 |
| 150. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 151. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 1,978.08 | 15,114.52 | 90,686.89 | 0.00 | 90,686.89 |



## Roof9

573.19  Surface Area              5.73  Number of Squares
96.59  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 152. R&R Modified bitumen roof | 5.73 SQ | 435.89 | 51.23 | 509.78 | 3,058.66 | (0.00) | 3,058.66 |
| 153. Roofing felt - synthetic underlayment | 5.73 SQ | 45.28 | 8.62 | 53.62 | 321.69 | (0.00) | 321.69 |
| 154. R&R Drip edge | 96.59 LF | 3.21 | 8.77 | 63.78 | 382.60 | (0.00) | 382.60 |
| 155. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 156. Remove Additional charge for high roof (2 stories or greater) | 5.73 SQ | 6.51 | 0.00 | 7.46 | 44.76 | (0.00) | 44.76 |
| 157. Additional charge for high roof (2 stories or greater) | 5.73 SQ | 21.03 | 0.00 | 24.10 | 144.60 | (0.00) | 144.60 |
| 158. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |



**CONTINUED - Roof9**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof9** | | | 86.22 | 842.44 | 5,054.53 | 0.00 | 5,054.53 |



### Roof13

| | | | |
|---|---|---|---|
| 630.00 | Surface Area | 6.30 | Number of Squares |
| 102.00 | Total Perimeter Length | | |
| 0.37 | Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 159. R&R Modified bitumen roof | 6.30 SQ | 435.89 | 56.33 | 560.48 | 3,362.91 | (0.00) | 3,362.91 |
| 160. Roofing felt - synthetic underlayment | 6.30 SQ | 45.28 | 9.48 | 58.96 | 353.70 | (0.00) | 353.70 |
| 161. R&R Drip edge | 102.00 LF | 3.21 | 9.26 | 67.34 | 404.02 | (0.00) | 404.02 |
| 162. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 163. Remove Additional charge for high roof (2 stories or greater) | 6.30 SQ | 6.51 | 0.00 | 8.20 | 49.21 | (0.00) | 49.21 |
| 164. Additional charge for high roof (2 stories or greater) | 6.30 SQ | 21.03 | 0.00 | 26.50 | 158.99 | (0.00) | 158.99 |
| 165. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof13** | | | 92.67 | 905.18 | 5,431.05 | 0.00 | 5,431.05 |



### Roof18

| | | | |
|---|---|---|---|
| 573.19 | Surface Area | 5.73 | Number of Squares |
| 96.59 | Total Perimeter Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 166. R&R Modified bitumen roof | 5.73 SQ | 435.89 | 51.23 | 509.78 | 3,058.66 | (0.00) | 3,058.66 |
| 167. Roofing felt - synthetic underlayment | 5.73 SQ | 45.28 | 8.62 | 53.62 | 321.69 | (0.00) | 321.69 |

TANGLEGROVE_CONDO_AS



### CONTINUED - Roof18

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 168. R&R Drip edge | 48.30 LF | 3.21 | 4.38 | 31.88 | 191.30 | (0.00) | 191.30 |
| 169. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 170. Remove Additional charge for high roof (2 stories or greater) | 5.73 SQ | 6.51 | 0.00 | 7.46 | 44.76 | (0.00) | 44.76 |
| 171. Additional charge for high roof (2 stories or greater) | 5.73 SQ | 21.03 | 0.00 | 24.10 | 144.60 | (0.00) | 144.60 |
| 172. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals: Roof18** | | | **81.83** | **810.54** | **4,863.23** | **0.00** | **4,863.23** |
| **Total: Roof F** | | | **2,238.80** | **17,672.68** | **106,035.70** | **0.00** | **106,035.70** |
| **Total: Roof F** | | | **2,238.80** | **17,672.68** | **106,035.70** | **0.00** | **106,035.70** |

### Roof G
### Roof G

#### Roof1



| | |
|---|---|
| 9516.17 Surface Area | 95.16 Number of Squares |
| 1280.39 Total Perimeter Length | 133.00 Total Ridge Length |
| 118.21 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 173. Remove Laminated - comp. shingle rfg. - w/out felt | 90.00 SQ | 67.86 | 0.00 | 1,221.48 | 7,328.88 | (0.00) | 7,328.88 |
| 174. Laminated - comp. shingle rfg. - w/out felt | 99.00 SQ | 259.91 | 1,071.00 | 5,360.42 | 32,162.51 | (0.00) | 32,162.51 |
| 175. Roofing felt - 30 lb. | 90.00 SQ | 39.13 | 89.69 | 722.28 | 4,333.67 | (0.00) | 4,333.67 |
| 176. Asphalt starter - universal starter course | 1,280.39 LF | 2.01 | 54.93 | 525.70 | 3,154.21 | (0.00) | 3,154.21 |
| 177. R&R Hip / Ridge cap - composition shingles | 133.00 LF | 7.48 | 14.15 | 201.82 | 1,210.81 | (0.00) | 1,210.81 |
| 178. R&R Continuous ridge vent - shingle-over style | 119.70 LF | 10.87 | 40.98 | 268.44 | 1,610.56 | (0.00) | 1,610.56 |
| 179. R&R Drip edge | 1,280.39 LF | 3.21 | 116.20 | 845.26 | 5,071.51 | (0.00) | 5,071.51 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 180. R&R Gutter / downspout - aluminum - up to 5" | 225.00 LF | 9.32 | 87.99 | 437.00 | 2,621.99 | (0.00) | 2,621.99 |
| 181. Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 182. R&R Valley metal | 52.32 LF | 6.54 | 8.76 | 70.20 | 421.13 | (0.00) | 421.13 |
| 183. R&R Chimney flashing - average (32" x 36") | 6.00 EA | 448.20 | 46.03 | 547.04 | 3,282.27 | (0.00) | 3,282.27 |
| 184. R&R Flashing - pipe jack - lead | 8.00 EA | 89.27 | 30.74 | 148.98 | 893.88 | (0.00) | 893.88 |
| 185. R&R Exhaust cap - through roof - 6" to 8" | 7.00 EA | 110.15 | 25.79 | 159.38 | 956.22 | (0.00) | 956.22 |
| 186. R&R Furnace vent - rain cap and storm collar, 6" | 4.00 EA | 87.45 | 10.33 | 72.02 | 432.15 | (0.00) | 432.15 |
| 187. R&R Furnace vent - rain cap and storm collar, 8" | 16.00 EA | 94.40 | 50.50 | 312.18 | 1,873.08 | (0.00) | 1,873.08 |
| 188. R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 189. Prime & paint roof vent | 36.00 EA | 34.45 | 20.14 | 252.06 | 1,512.40 | (0.00) | 1,512.40 |
| 190. Remove Additional charge for high roof (2 stories or greater) | 90.00 SQ | 6.51 | 0.00 | 117.18 | 703.08 | (0.00) | 703.08 |
| 191. Additional charge for high roof (2 stories or greater) | 90.00 SQ | 21.03 | 0.00 | 378.54 | 2,271.24 | (0.00) | 2,271.24 |
| 192. Remove Additional charge for steep roof greater than 12/12 slope | 13.00 SQ | 33.59 | 0.00 | 87.34 | 524.01 | (0.00) | 524.01 |
| 193. Additional charge for steep roof greater than 12/12 slope | 13.00 SQ | 94.65 | 0.00 | 246.10 | 1,476.55 | (0.00) | 1,476.55 |
| 194. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,280.39 SF | 0.77 | 0.00 | 197.18 | 1,183.08 | (0.00) | 1,183.08 |
| 195. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 196. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |

| Totals: Roof1 | | | 1,690.62 | 13,533.04 | 81,197.80 | 0.00 | 81,197.80 |
|---|---|---|---|---|---|---|---|



### Roof6

| | | |
|---|---|---|
| 1362.67 Surface Area | | 13.63 Number of Squares |
| 154.65 Total Perimeter Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|

TANGLEGROVE_CONDO_AS

 RIVERSTONE
BUILDING & CONSULTING

**CONTINUED - Roof6**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 197. R&R Modified bitumen roof | 13.63 SQ | 435.89 | 121.87 | 1,212.62 | 7,275.67 | (0.00) | 7,275.67 |
| 198. Roofing felt - synthetic underlayment | 13.63 SQ | 45.28 | 20.50 | 127.54 | 765.21 | (0.00) | 765.21 |
| 199. R&R Drip edge | 154.65 LF | 3.21 | 14.03 | 102.08 | 612.54 | (0.00) | 612.54 |
| 200. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 201. Telehandler/forklift and operator | 8.00 HR | 120.38 | 0.00 | 192.60 | 1,155.64 | (0.00) | 1,155.64 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof6** | | | **174.00** | **1,722.24** | **10,333.46** | **0.00** | **10,333.46** |



### Roof11

63.93  Surface Area               0.64  Number of Squares
31.98  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 202. R&R Modified bitumen roof | 0.64 SQ | 435.89 | 5.72 | 56.94 | 341.63 | (0.00) | 341.63 |
| 203. Roofing felt - synthetic underlayment | 0.64 SQ | 45.28 | 0.96 | 6.00 | 35.94 | (0.00) | 35.94 |
| 204. R&R Drip edge | 31.98 LF | 3.21 | 2.90 | 21.10 | 126.65 | (0.00) | 126.65 |
| 205. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 206. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof11** | | | **27.18** | **219.60** | **1,317.54** | **0.00** | **1,317.54** |
| **Total:  Roof G** | | | **1,891.80** | **15,474.88** | **92,848.80** | **0.00** | **92,848.80** |
| **Total:  Roof G** | | | **1,891.80** | **15,474.88** | **92,848.80** | **0.00** | **92,848.80** |

**Roof H**

**Roof H**



## Roof1



| | |
|---|---|
| 11273.44  Surface Area | 112.73  Number of Squares |
| 1183.82  Total Perimeter Length | 189.00  Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 207.  Remove Laminated - comp. shingle rfg. - w/out felt | 112.73 SQ | 67.86 | 0.00 | 1,529.98 | 9,179.84 | (0.00) | 9,179.84 |
| 208.  Laminated - comp. shingle rfg. - w/out felt | 124.33 SQ | 259.91 | 1,345.03 | 6,731.92 | 40,391.56 | (0.00) | 40,391.56 |
| 209.  Roofing felt - 30 lb. | 112.73 SQ | 39.13 | 112.35 | 904.70 | 5,428.17 | (0.00) | 5,428.17 |
| 210.  Asphalt starter - universal starter course | 1,183.82 LF | 2.01 | 50.79 | 486.06 | 2,916.33 | (0.00) | 2,916.33 |
| 211.  R&R Hip / Ridge cap - composition shingles | 189.00 LF | 7.48 | 20.11 | 286.76 | 1,720.59 | (0.00) | 1,720.59 |
| 212.  R&R Continuous ridge vent - shingle-over style | 170.10 LF | 10.87 | 58.24 | 381.44 | 2,288.66 | (0.00) | 2,288.66 |
| 213.  R&R Drip edge | 1,183.82 LF | 3.21 | 107.43 | 781.50 | 4,689.00 | (0.00) | 4,689.00 |
| 214.  R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 215.  Step flashing | 150.00 LF | 10.23 | 20.05 | 310.92 | 1,865.47 | (0.00) | 1,865.47 |
| 216.  R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 217.  R&R Flashing - pipe jack - lead | 10.00 EA | 89.27 | 38.43 | 186.22 | 1,117.35 | (0.00) | 1,117.35 |
| 218.  R&R Exhaust cap - through roof - 6" to 8" | 5.00 EA | 110.15 | 18.42 | 113.84 | 683.01 | (0.00) | 683.01 |
| 219.  R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 220.  R&R Furnace vent - rain cap and storm collar, 8" | 17.00 EA | 94.40 | 53.66 | 331.70 | 1,990.16 | (0.00) | 1,990.16 |
| 221.  Prime & paint roof vent | 34.00 EA | 34.45 | 19.02 | 238.06 | 1,428.38 | (0.00) | 1,428.38 |
| 222.  Remove Additional charge for high roof (2 stories or greater) | 112.73 SQ | 6.51 | 0.00 | 146.78 | 880.65 | (0.00) | 880.65 |
| 223.  Additional charge for high roof (2 stories or greater) | 112.73 SQ | 21.03 | 0.00 | 474.14 | 2,844.85 | (0.00) | 2,844.85 |
| 224.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,183.82 SF | 0.77 | 0.00 | 182.30 | 1,093.84 | (0.00) | 1,093.84 |
| 225.  Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 226.  Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals:  Roof1** | | | 2,039.27 | 15,727.58 | 94,365.36 | 0.00 | 94,365.36 |
| **Total:  Roof H** | | | 2,039.27 | 15,727.58 | 94,365.36 | 0.00 | 94,365.36 |
| **Total:  Roof H** | | | 2,039.27 | 15,727.58 | 94,365.36 | 0.00 | 94,365.36 |

 **RIVERSTONE** BUILDING & CONSULTING

Roof I

Roof I

### Roof1



| | |
|---|---|
| 11273.44 Surface Area | 112.73 Number of Squares |
| 1183.82 Total Perimeter Length | 189.00 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 227. Remove Laminated - comp. shingle rfg. - w/out felt | 112.73 SQ | 67.86 | 0.00 | 1,529.98 | 9,179.84 | (0.00) | 9,179.84 |
| 228. Laminated - comp. shingle rfg. - w/out felt | 124.33 SQ | 259.91 | 1,345.03 | 6,731.92 | 40,391.56 | (0.00) | 40,391.56 |
| 229. Roofing felt - 30 lb. | 112.73 SQ | 39.13 | 112.35 | 904.70 | 5,428.17 | (0.00) | 5,428.17 |
| 230. Asphalt starter - universal starter course | 1,183.82 LF | 2.01 | 50.79 | 486.06 | 2,916.33 | (0.00) | 2,916.33 |
| 231. R&R Hip / Ridge cap - composition shingles | 189.00 LF | 7.48 | 20.11 | 286.76 | 1,720.59 | (0.00) | 1,720.59 |
| 232. R&R Continuous ridge vent - shingle-over style | 170.10 LF | 9.15 | 49.12 | 321.10 | 1,926.64 | (0.00) | 1,926.64 |
| 233. R&R Drip edge | 1,183.82 LF | 2.89 | 107.43 | 705.72 | 4,234.39 | (0.00) | 4,234.39 |
| 234. R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 8.45 | 115.21 | 614.54 | 3,687.25 | (0.00) | 3,687.25 |
| 235. Step flashing | 150.00 LF | 8.59 | 19.06 | 261.52 | 1,569.08 | (0.00) | 1,569.08 |
| 236. R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 237. R&R Flashing - pipe jack - lead | 10.00 EA | 89.27 | 38.43 | 186.22 | 1,117.35 | (0.00) | 1,117.35 |
| 238. R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |
| 239. R&R Furnace vent - rain cap and storm collar, 8" | 30.00 EA | 94.40 | 94.69 | 585.34 | 3,512.03 | (0.00) | 3,512.03 |
| 240. Prime & paint roof vent | 46.00 EA | 34.45 | 25.73 | 322.08 | 1,932.51 | (0.00) | 1,932.51 |
| 241. Remove Additional charge for high roof (2 stories or greater) | 112.73 SQ | 6.51 | 0.00 | 146.78 | 880.65 | (0.00) | 880.65 |
| 242. Additional charge for high roof (2 stories or greater) | 112.73 SQ | 21.03 | 0.00 | 474.14 | 2,844.85 | (0.00) | 2,844.85 |
| 243. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,183.82 SF | 0.77 | 0.00 | 182.30 | 1,093.84 | (0.00) | 1,093.84 |
| 244. Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 245. Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 2,042.70 | 15,732.92 | 94,397.64 | 0.00 | 94,397.64 |
| **Total: Roof I** | | | 2,042.70 | 15,732.92 | 94,397.64 | 0.00 | 94,397.64 |
| **Total: Roof I** | | | 2,042.70 | 15,732.92 | 94,397.64 | 0.00 | 94,397.64 |

TANGLEGROVE_CONDO_AS



**Roof J**

**Roof J**

### Roof1



| | |
|---|---|
| 11833.25 Surface Area | 118.33 Number of Squares |
| 1182.55 Total Perimeter Length | 208.50 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 246. Remove Laminated - comp. shingle rfg. - w/out felt | 118.33 SQ | 67.86 | 0.00 | 1,605.98 | 9,635.85 | (0.00) | 9,635.85 |
| 247. Laminated - comp. shingle rfg. - w/out felt | 130.33 SQ | 259.91 | 1,409.94 | 7,056.80 | 42,340.81 | (0.00) | 42,340.81 |
| 248. Roofing felt - 30 lb. | 118.33 SQ | 39.13 | 117.93 | 949.64 | 5,697.82 | (0.00) | 5,697.82 |
| 249. Asphalt starter - universal starter course | 1,182.55 LF | 2.01 | 50.73 | 485.52 | 2,913.18 | (0.00) | 2,913.18 |
| 250. R&R Hip / Ridge cap - composition shingles | 208.50 LF | 7.48 | 22.19 | 316.36 | 1,898.13 | (0.00) | 1,898.13 |
| 251. R&R Continuous ridge vent - shingle-over style | 187.65 LF | 10.87 | 64.25 | 420.82 | 2,524.83 | (0.00) | 2,524.83 |
| 252. R&R Drip edge | 1,182.55 LF | 3.21 | 107.32 | 780.66 | 4,683.97 | (0.00) | 4,683.97 |
| 253. R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 254. Step flashing | 150.00 LF | 10.23 | 20.05 | 310.92 | 1,865.47 | (0.00) | 1,865.47 |
| 255. R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 256. R&R Valley metal | 17.69 LF | 6.54 | 2.96 | 23.74 | 142.40 | (0.00) | 142.40 |
| 257. R&R Flashing - pipe jack - lead | 13.00 EA | 89.27 | 49.96 | 242.10 | 1,452.57 | (0.00) | 1,452.57 |
| 258. R&R Exhaust cap - through roof - 6" to 8" | 4.00 EA | 110.15 | 14.73 | 91.06 | 546.39 | (0.00) | 546.39 |
| 259. R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 260. R&R Furnace vent - rain cap and storm collar, 8" | 22.00 EA | 94.40 | 69.44 | 429.24 | 2,575.48 | (0.00) | 2,575.48 |
| 261. Prime & paint roof vent | 41.00 EA | 34.45 | 22.93 | 287.08 | 1,722.46 | (0.00) | 1,722.46 |
| 262. Remove Additional charge for high roof (2 stories or greater) | 118.33 SQ | 6.51 | 0.00 | 154.06 | 924.39 | (0.00) | 924.39 |
| 263. Additional charge for high roof (2 stories or greater) | 118.33 SQ | 21.03 | 0.00 | 497.70 | 2,986.18 | (0.00) | 2,986.18 |
| 264. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,182.55 SF | 0.77 | 0.00 | 182.12 | 1,092.68 | (0.00) | 1,092.68 |
| 265. Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 266. Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |
| | | | | | | | |
| **Totals: Roof1** | | | **2,155.84** | **16,566.24** | **99,397.16** | **0.00** | **99,397.16** |

TANGLEGROVE_CONDO_AS



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Roof J** | | 2,155.84 | 16,566.24 | 99,397.16 | 0.00 | 99,397.16 |
| **Total: Roof J** | | 2,155.84 | 16,566.24 | 99,397.16 | 0.00 | 99,397.16 |

## Roof K
## Roof K



### Roof1

| | |
|---|---|
| 10368.32 Surface Area | 103.68 Number of Squares |
| 1317.41 Total Perimeter Length | 158.50 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 267. Remove Laminated - comp. shingle rfg. - w/ felt | 103.68 SQ | 67.86 | 0.00 | 1,407.14 | 8,442.86 | (0.00) | 8,442.86 |
| 268. Laminated - comp. shingle rfg. - w/out felt | 114.33 SQ | 259.91 | 1,236.85 | 6,190.48 | 37,142.84 | (0.00) | 37,142.84 |
| 269. Roofing felt - 30 lb. | 103.68 SQ | 39.13 | 103.33 | 832.06 | 4,992.39 | (0.00) | 4,992.39 |
| 270. Asphalt starter - universal starter course | 1,317.41 LF | 2.01 | 56.52 | 540.90 | 3,245.41 | (0.00) | 3,245.41 |
| 271. R&R Hip / Ridge cap - composition shingles | 158.50 LF | 7.48 | 16.87 | 240.50 | 1,442.95 | (0.00) | 1,442.95 |
| 272. R&R Continuous ridge vent - shingle-over style | 142.65 LF | 10.87 | 48.84 | 319.90 | 1,919.35 | (0.00) | 1,919.35 |
| 273. R&R Drip edge | 1,317.41 LF | 3.21 | 119.55 | 869.70 | 5,218.14 | (0.00) | 5,218.14 |
| 274. R&R Gutter / downspout - aluminum - up to 5" | 240.00 LF | 9.32 | 93.85 | 466.14 | 2,796.79 | (0.00) | 2,796.79 |
| 275. Step flashing | 100.00 LF | 10.23 | 13.37 | 207.28 | 1,243.65 | (0.00) | 1,243.65 |
| 276. R&R Chimney flashing - average (32" x 36") | 6.00 EA | 448.20 | 46.03 | 547.04 | 3,282.27 | (0.00) | 3,282.27 |
| 277. R&R Flashing - pipe jack - lead | 9.00 EA | 89.27 | 34.59 | 167.60 | 1,005.62 | (0.00) | 1,005.62 |
| 278. R&R Exhaust cap - through roof - 6" to 8" | 4.00 EA | 110.15 | 14.73 | 91.06 | 546.39 | (0.00) | 546.39 |
| 279. R&R Furnace vent - rain cap and storm collar, 6" | 6.00 EA | 87.45 | 15.50 | 108.04 | 648.24 | (0.00) | 648.24 |
| 280. R&R Furnace vent - rain cap and storm collar, 8" | 13.00 EA | 94.40 | 41.03 | 253.64 | 1,521.87 | (0.00) | 1,521.87 |
| 281. Prime & paint roof vent | 30.00 EA | 34.45 | 16.78 | 210.06 | 1,260.34 | (0.00) | 1,260.34 |
| 282. Remove Additional charge for high roof (2 stories or greater) | 103.68 SQ | 6.51 | 0.00 | 135.00 | 809.96 | (0.00) | 809.96 |
| 283. Additional charge for high roof (2 stories or greater) | 103.68 SQ | 21.03 | 0.00 | 436.08 | 2,616.47 | (0.00) | 2,616.47 |
| 284. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,317.41 SF | 0.77 | 0.00 | 202.88 | 1,217.29 | (0.00) | 1,217.29 |
| 285. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 286.  Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals:  Roof1** | | | 1,857.84 | 14,298.20 | 85,789.03 | 0.00 | 85,789.03 |
| **Total:  Roof K** | | | 1,857.84 | 14,298.20 | 85,789.03 | 0.00 | 85,789.03 |
| **Total:  Roof K** | | | 1,857.84 | 14,298.20 | 85,789.03 | 0.00 | 85,789.03 |

**Roof L**

**Roof L**



**Roof1**

| 6733.45 Surface Area | | 67.33 Number of Squares |
|---|---|---|
| 973.99 Total Perimeter Length | | 213.98 Total Ridge Length |
| 0.11 Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 287.  Remove Laminated - comp. shingle rfg. - w/out felt | 67.33 SQ | 67.86 | 0.00 | 913.80 | 5,482.81 | (0.00) | 5,482.81 |
| 288.  Laminated - comp. shingle rfg. - w/out felt | 74.33 SQ | 259.91 | 804.12 | 4,024.64 | 24,147.87 | (0.00) | 24,147.87 |
| 289.  Roofing felt - 30 lb. | 67.33 SQ | 39.13 | 67.10 | 540.34 | 3,242.06 | (0.00) | 3,242.06 |
| 290.  R&R Hip / Ridge cap - composition shingles | 213.98 LF | 7.48 | 22.77 | 324.68 | 1,948.02 | (0.00) | 1,948.02 |
| 291.  R&R Continuous ridge vent - shingle-over style | 192.58 LF | 10.87 | 65.93 | 431.86 | 2,591.13 | (0.00) | 2,591.13 |
| 292.  R&R Drip edge | 973.99 LF | 3.21 | 88.39 | 642.98 | 3,857.88 | (0.00) | 3,857.88 |
| 293.  R&R Gutter / downspout - aluminum - up to 5" | 275.00 LF | 9.32 | 107.54 | 534.10 | 3,204.64 | (0.00) | 3,204.64 |
| 294.  Step flashing | 160.00 LF | 10.23 | 21.38 | 331.64 | 1,989.82 | (0.00) | 1,989.82 |
| 295.  R&R Chimney flashing - average (32" x 36") | 4.00 EA | 448.20 | 30.69 | 364.70 | 2,188.19 | (0.00) | 2,188.19 |
| 296.  R&R Valley metal | 63.20 LF | 6.54 | 10.58 | 84.78 | 508.68 | (0.00) | 508.68 |
| 297.  R&R Flashing - pipe jack - lead | 5.00 EA | 89.27 | 19.21 | 93.12 | 558.68 | (0.00) | 558.68 |
| 298.  R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 299.  R&R Furnace vent - rain cap and storm collar, 6" | 3.00 EA | 87.45 | 7.75 | 54.04 | 324.14 | (0.00) | 324.14 |
| 300.  R&R Furnace vent - rain cap and storm collar, 8" | 10.00 EA | 94.40 | 31.56 | 195.12 | 1,170.68 | (0.00) | 1,170.68 |
| 301.  R&R Roof vent - turbine type | 2.00 EA | 146.49 | 13.36 | 61.26 | 367.60 | (0.00) | 367.60 |
| 302.  Prime & paint roof vent | 22.00 EA | 34.45 | 12.31 | 154.04 | 924.25 | (0.00) | 924.25 |
| 303.  Digital satellite system - Detach & reset | 1.00 EA | 41.47 | 0.00 | 8.30 | 49.77 | (0.00) | 49.77 |
| 304.  Digital satellite system - alignment and calibration only | 1.00 EA | 124.41 | 0.00 | 24.88 | 149.29 | (0.00) | 149.29 |
| 305.  Remove Additional charge for high roof (2 stories or greater) | 67.33 SQ | 6.51 | 0.00 | 87.66 | 525.98 | (0.00) | 525.98 |
| 306.  Additional charge for high roof (2 stories or greater) | 67.33 SQ | 21.03 | 0.00 | 283.20 | 1,699.15 | (0.00) | 1,699.15 |
| 307.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 973.99 SF | 0.77 | 0.00 | 150.00 | 899.97 | (0.00) | 899.97 |
| 308.  Telehandler/forklift and operator | 32.00 HR | 120.38 | 0.00 | 770.44 | 4,622.60 | (0.00) | 4,622.60 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 309.  Two ladders with jacks and plank (per day) | 4.00 DA | 109.66 | 0.00 | 87.72 | 526.36 | (0.00) | 526.36 |
| **Totals:  Roof1** | | | **1,310.06** | **10,208.84** | **61,252.78** | **0.00** | **61,252.78** |
| **Total:  Roof L** | | | **1,310.06** | **10,208.84** | **61,252.78** | **0.00** | **61,252.78** |
| **Total:  Roof L** | | | **1,310.06** | **10,208.84** | **61,252.78** | **0.00** | **61,252.78** |

**Roof M**

**Roof M**



**Roof1**

| 10775.03 Surface Area | 107.75 Number of Squares |
|---|---|
| 1238.40 Total Perimeter Length | 180.00 Total Ridge Length |
| 13.67 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 310.  Remove Laminated - comp. shingle rfg. - w/out felt | 107.75 SQ | 67.86 | 0.00 | 1,462.38 | 8,774.30 | (0.00) | 8,774.30 |

TANGLEGROVE_CONDO_AS

10/10/2022        Page: 21



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 311.  Laminated - comp. shingle rfg. - w/out felt | 118.67 SQ | 259.91 | 1,283.80 | 6,425.46 | 38,552.78 | (0.00) | 38,552.78 |
| 312.  Roofing felt - 30 lb. | 107.75 SQ | 39.13 | 107.38 | 864.74 | 5,188.38 | (0.00) | 5,188.38 |
| 313.  Asphalt starter - universal starter course | 1,238.40 LF | 2.01 | 53.13 | 508.46 | 3,050.77 | (0.00) | 3,050.77 |
| 314.  R&R Hip / Ridge cap - composition shingles | 180.00 LF | 7.48 | 19.16 | 273.12 | 1,638.68 | (0.00) | 1,638.68 |
| 315.  R&R Continuous ridge vent - shingle-over style | 162.00 LF | 10.87 | 55.46 | 363.30 | 2,179.70 | (0.00) | 2,179.70 |
| 316.  R&R Drip edge | 1,238.40 LF | 3.21 | 112.38 | 817.52 | 4,905.16 | (0.00) | 4,905.16 |
| 317.  R&R Gutter / downspout - aluminum - up to 5" | 240.00 LF | 9.32 | 93.85 | 466.14 | 2,796.79 | (0.00) | 2,796.79 |
| 318.  Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 319.  R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 320.  R&R Flashing - pipe jack - lead | 15.00 EA | 89.27 | 57.64 | 279.34 | 1,676.03 | (0.00) | 1,676.03 |
| 321.  R&R Exhaust cap - through roof - 6" to 8" | 6.00 EA | 110.15 | 22.10 | 136.60 | 819.60 | (0.00) | 819.60 |
| 322.  R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 323.  R&R Furnace vent - rain cap and storm collar, 8" | 18.00 EA | 94.40 | 56.82 | 351.20 | 2,107.22 | (0.00) | 2,107.22 |
| 324.  Prime & paint roof vent | 41.00 EA | 34.45 | 22.93 | 287.08 | 1,722.46 | (0.00) | 1,722.46 |
| 325.  Remove Additional charge for high roof (2 stories or greater) | 107.75 SQ | 6.51 | 0.00 | 140.30 | 841.75 | (0.00) | 841.75 |
| 326.  Additional charge for high roof (2 stories or greater) | 107.75 SQ | 21.03 | 0.00 | 453.20 | 2,719.18 | (0.00) | 2,719.18 |
| 327.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,238.40 SF | 0.77 | 0.00 | 190.72 | 1,144.29 | (0.00) | 1,144.29 |
| 328.  Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 329.  Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |
| **Totals:  Roof1** | | | **1,960.23** | **15,240.14** | **91,440.50** | **0.00** | **91,440.50** |
| **Total:  Roof M** | | | **1,960.23** | **15,240.14** | **91,440.50** | **0.00** | **91,440.50** |
| **Total:  Roof M** | | | **1,960.23** | **15,240.14** | **91,440.50** | **0.00** | **91,440.50** |

**Roof N**

**Roof N**

TANGLEGROVE_CONDO_AS

**R** RIVERSTONE
BUILDING & CONSULTING



**Roof1**

| | |
|---|---|
| 12053.53  Surface Area | 120.54  Number of Squares |
| 1510.82  Total Perimeter Length | 160.00  Total Ridge Length |
| 78.81  Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 330.  Remove Laminated - comp. shingle rfg. - w/out felt | 129.96 SQ | 67.86 | 0.00 | 1,763.82 | 10,582.91 | (0.00) | 10,582.91 |
| 331.  Laminated - comp. shingle rfg. - w/out felt | 143.00 SQ | 259.91 | 1,547.01 | 7,742.82 | 46,456.96 | (0.00) | 46,456.96 |
| 332.  Roofing felt - 30 lb. | 129.96 SQ | 39.13 | 129.52 | 1,042.96 | 6,257.81 | (0.00) | 6,257.81 |
| 333.  Asphalt starter - universal starter course | 1,510.82 LF | 2.01 | 64.81 | 620.32 | 3,721.88 | (0.00) | 3,721.88 |
| 334.  R&R Hip / Ridge cap - composition shingles | 160.00 LF | 7.48 | 17.03 | 242.76 | 1,456.59 | (0.00) | 1,456.59 |
| 335.  R&R Continuous ridge vent - shingle-over style | 144.00 LF | 10.87 | 49.30 | 322.92 | 1,937.50 | (0.00) | 1,937.50 |
| 336.  R&R Drip edge | 1,510.82 LF | 3.21 | 137.11 | 997.36 | 5,984.21 | (0.00) | 5,984.21 |
| 337.  R&R Gutter / downspout - aluminum - up to 5" | 240.00 LF | 9.32 | 93.85 | 466.14 | 2,796.79 | (0.00) | 2,796.79 |
| 338.  Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 339.  R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 340.  R&R Valley metal | 5.00 LF | 6.54 | 0.84 | 6.70 | 40.24 | (0.00) | 40.24 |
| 341.  R&R Flashing - pipe jack - lead | 17.00 EA | 89.27 | 65.33 | 316.58 | 1,899.50 | (0.00) | 1,899.50 |
| 342.  R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 343.  R&R Furnace vent - rain cap and storm collar, 6" | 4.00 EA | 87.45 | 10.33 | 72.02 | 432.15 | (0.00) | 432.15 |
| 344.  R&R Furnace vent - rain cap and storm collar, 8" | 17.00 EA | 94.40 | 53.66 | 331.70 | 1,990.16 | (0.00) | 1,990.16 |
| 345.  R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 346.  Prime & paint roof vent | 41.00 EA | 34.45 | 22.93 | 287.08 | 1,722.46 | (0.00) | 1,722.46 |
| 347.  Digital satellite system - Detach & reset | 1.00 EA | 41.47 | 0.00 | 8.30 | 49.77 | (0.00) | 49.77 |
| 348.  Digital satellite system - alignment and calibration only | 1.00 EA | 124.41 | 0.00 | 24.88 | 149.29 | (0.00) | 149.29 |
| 349.  R&R Power attic vent cover only - metal | 1.00 EA | 108.87 | 2.51 | 22.28 | 133.66 | (0.00) | 133.66 |
| 350.  Remove Additional charge for high roof (2 stories or greater) | 129.96 SQ | 6.51 | 0.00 | 169.20 | 1,015.24 | (0.00) | 1,015.24 |
| 351.  Additional charge for high roof (2 stories or greater) | 129.96 SQ | 21.03 | 0.00 | 546.62 | 3,279.68 | (0.00) | 3,279.68 |
| 352.  Remove Additional charge for steep roof greater than 12/12 slope | 35.00 SQ | 33.59 | 0.00 | 235.14 | 1,410.79 | (0.00) | 1,410.79 |
| 353.  Additional charge for steep roof greater than 12/12 slope | 35.00 SQ | 94.65 | 0.00 | 662.56 | 3,975.31 | (0.00) | 3,975.31 |


**RIVERSTONE**
BUILDING & CONSULTING

**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 354.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,510.82 SF | 0.77 | 0.00 | 232.66 | 1,395.99 | (0.00) | 1,395.99 |
| 355.  Telehandler/forklift and operator | 56.00 HR | 120.38 | 0.00 | 1,348.26 | 8,089.54 | (0.00) | 8,089.54 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 356.  Two ladders with jacks and plank (per day) | 7.00 DA | 109.66 | 0.00 | 153.52 | 921.14 | (0.00) | 921.14 |
| **Totals:  Roof1** | | | 2,278.69 | 18,590.10 | 111,540.47 | 0.00 | 111,540.47 |

**Roof8**



943.07  Surface Area        9.43  Number of Squares
142.93  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 357.  R&R Modified bitumen roof | 9.43 SQ | 435.89 | 84.32 | 838.96 | 5,033.72 | (0.00) | 5,033.72 |
| 358.  Roofing felt - synthetic underlayment | 9.43 SQ | 45.28 | 14.18 | 88.24 | 529.41 | (0.00) | 529.41 |
| 359.  R&R Drip edge | 142.93 LF | 3.21 | 12.97 | 94.36 | 566.13 | (0.00) | 566.13 |
| 360.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 361.  Remove Additional charge for high roof (2 stories or greater) | 9.43 SQ | 6.51 | 0.00 | 12.28 | 73.67 | (0.00) | 73.67 |
| 362.  Additional charge for high roof (2 stories or greater) | 9.43 SQ | 21.03 | 0.00 | 39.66 | 237.97 | (0.00) | 237.97 |
| 363.  Telehandler/forklift and operator | 8.00 HR | 120.38 | 0.00 | 192.60 | 1,155.64 | (0.00) | 1,155.64 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof8** | | | 129.07 | 1,353.50 | 8,120.94 | 0.00 | 8,120.94 |
| **Total:  Roof N** | | | 2,407.76 | 19,943.60 | 119,661.41 | 0.00 | 119,661.41 |
| **Total:  Roof N** | | | 2,407.76 | 19,943.60 | 119,661.41 | 0.00 | 119,661.41 |

**Clubhouse Roof**

**Clubhouse Roof**



**RIVERSTONE**
BUILDING & CONSULTING

### Roof1

| | | | |
|---|---|---|---|
| 1908.74 | Surface Area | 19.09 | Number of Squares |
| 193.48 | Total Perimeter Length | 73.46 | Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 364. Remove Laminated - comp. shingle rfg. - w/out felt | 19.08 SQ | 67.86 | 0.00 | 258.96 | 1,553.73 | (0.00) | 1,553.73 |
| 365. Laminated - comp. shingle rfg. - w/out felt | 21.00 SQ | 259.91 | 227.18 | 1,137.06 | 6,822.35 | (0.00) | 6,822.35 |
| 366. Roofing felt - 30 lb. | 19.08 SQ | 39.13 | 19.02 | 153.12 | 918.74 | (0.00) | 918.74 |
| 367. Asphalt starter - universal starter course | 193.48 LF | 2.01 | 8.30 | 79.44 | 476.63 | (0.00) | 476.63 |
| 368. R&R Hip / Ridge cap - composition shingles | 73.46 LF | 7.48 | 7.82 | 111.46 | 668.76 | (0.00) | 668.76 |
| 369. R&R Continuous ridge vent - shingle-over style | 66.11 LF | 10.87 | 22.63 | 148.26 | 889.50 | (0.00) | 889.50 |
| 370. R&R Drip edge | 193.48 LF | 3.21 | 17.56 | 127.72 | 766.35 | (0.00) | 766.35 |
| 371. R&R Gutter / downspout - aluminum - up to 5" | 218.00 LF | 9.32 | 85.25 | 423.42 | 2,540.43 | (0.00) | 2,540.43 |
| 372. R&R Valley metal | 39.68 LF | 6.54 | 6.65 | 53.24 | 319.40 | (0.00) | 319.40 |
| 373. R&R Flashing - pipe jack - lead | 1.00 EA | 89.27 | 3.84 | 18.62 | 111.73 | (0.00) | 111.73 |
| 374. R&R Exhaust cap - through roof - 6" to 8" | 1.00 EA | 110.15 | 3.68 | 22.78 | 136.61 | (0.00) | 136.61 |
| 375. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 376. R&R Furnace vent - rain cap and storm collar, 8" | 4.00 EA | 94.40 | 12.63 | 78.04 | 468.27 | (0.00) | 468.27 |
| 377. Prime & paint roof vent | 7.00 EA | 34.45 | 3.92 | 49.02 | 294.09 | (0.00) | 294.09 |
| 378. Remove Additional charge for high roof (2 stories or greater) | 67.33 SQ | 6.51 | 0.00 | 87.66 | 525.98 | (0.00) | 525.98 |
| 379. Additional charge for high roof (2 stories or greater) | 67.33 SQ | 21.03 | 0.00 | 283.20 | 1,699.15 | (0.00) | 1,699.15 |
| 380. Install Tarp - all-purpose poly - per sq ft (labor and material) | 193.48 SF | 0.77 | 0.00 | 29.80 | 178.78 | (0.00) | 178.78 |
| 381. Telehandler/forklift and operator | 8.00 HR | 120.38 | 0.00 | 192.60 | 1,155.64 | (0.00) | 1,155.64 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 382. Two ladders with jacks and plank (per day) | 1.00 DA | 109.66 | 0.00 | 21.94 | 131.60 | (0.00) | 131.60 |

| **Totals: Roof1** | | | 421.06 | 3,294.36 | 19,765.79 | 0.00 | 19,765.79 |
|---|---|---|---|---|---|---|---|

| **Total: Clubhouse Roof** | | | 421.06 | 3,294.36 | 19,765.79 | 0.00 | 19,765.79 |
|---|---|---|---|---|---|---|---|

| **Total: Clubhouse Roof** | | | 421.06 | 3,294.36 | 19,765.79 | 0.00 | 19,765.79 |
|---|---|---|---|---|---|---|---|

**EXHIBIT A - Page 246 of 320**


RIVERSTONE
BUILDING & CONSULTING

**Roof P**

**Roof P**



**Roof1**

| | | | |
|---|---|---|---|
| 6733.45 | Surface Area | 67.33 | Number of Squares |
| 973.99 | Total Perimeter Length | 213.98 | Total Ridge Length |
| 0.11 | Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 383. Remove Laminated - comp. shingle rfg. - w/out felt | 67.33 SQ | 67.86 | 0.00 | 913.80 | 5,482.81 | (0.00) | 5,482.81 |
| 384. Laminated - comp. shingle rfg. - w/out felt | 74.33 SQ | 259.91 | 804.12 | 4,024.64 | 24,147.87 | (0.00) | 24,147.87 |
| 385. Roofing felt - 30 lb. | 67.33 SQ | 39.13 | 67.10 | 540.34 | 3,242.06 | (0.00) | 3,242.06 |
| 386. Asphalt starter - universal starter course | 973.99 LF | 2.01 | 41.78 | 399.90 | 2,399.40 | (0.00) | 2,399.40 |
| 387. R&R Hip / Ridge cap - composition shingles | 213.98 LF | 7.48 | 22.77 | 324.68 | 1,948.02 | (0.00) | 1,948.02 |
| 388. R&R Continuous ridge vent - shingle-over style | 192.58 LF | 10.87 | 65.93 | 431.86 | 2,591.13 | (0.00) | 2,591.13 |
| 389. R&R Drip edge | 973.99 LF | 3.21 | 88.39 | 642.98 | 3,857.88 | (0.00) | 3,857.88 |
| 390. R&R Gutter / downspout - aluminum - up to 5" | 250.00 LF | 9.32 | 97.76 | 485.56 | 2,913.32 | (0.00) | 2,913.32 |
| 391. Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 392. R&R Valley metal | 63.20 LF | 6.54 | 10.58 | 84.78 | 508.68 | (0.00) | 508.68 |
| 393. R&R Chimney flashing - average (32" x 36") | 4.00 EA | 448.20 | 30.69 | 364.70 | 2,188.19 | (0.00) | 2,188.19 |
| 394. R&R Flashing - pipe jack - lead | 4.00 EA | 89.27 | 15.37 | 74.50 | 446.95 | (0.00) | 446.95 |
| 395. R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 396. R&R Furnace vent - rain cap and storm collar, 8" | 12.00 EA | 94.40 | 37.88 | 234.14 | 1,404.82 | (0.00) | 1,404.82 |
| 397. Prime & paint roof vent | 18.00 EA | 34.45 | 10.07 | 126.04 | 756.21 | (0.00) | 756.21 |
| 398. Remove Additional charge for high roof (2 stories or greater) | 67.33 SQ | 6.51 | 0.00 | 87.66 | 525.98 | (0.00) | 525.98 |
| 399. Additional charge for high roof (2 stories or greater) | 67.33 SQ | 21.03 | 0.00 | 283.20 | 1,699.15 | (0.00) | 1,699.15 |
| 400. Install Tarp - all-purpose poly - per sq ft (labor and material) | 973.99 SF | 0.77 | 0.00 | 150.00 | 899.97 | (0.00) | 899.97 |
| 401. Telehandler/forklift and operator | 32.00 HR | 120.38 | 0.00 | 770.44 | 4,622.60 | (0.00) | 4,622.60 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 402. Two ladders with jacks and plank (per day) | 4.00 DA | 109.66 | 0.00 | 87.72 | 526.36 | (0.00) | 526.36 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 1,316.52 | 10,331.58 | 61,989.17 | 0.00 | 61,989.17 |
| **Total: Roof P** | | | 1,316.52 | 10,331.58 | 61,989.17 | 0.00 | 61,989.17 |



**R** RIVERSTONE
BUILDING & CONSULTING

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Roof P** | | 1,316.52 | 10,331.58 | 61,989.17 | | 0.00 | 61,989.17 |

**Roof Q**

**Roof Q**

**Roof1**

| | |
|---|---|
| 13091.04 Surface Area | 130.91 Number of Squares |
| 1593.58 Total Perimeter Length | 218.75 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 403. Remove Laminated - comp. shingle rfg. - w/out felt | 130.91 SQ | 67.86 | 0.00 | 1,776.72 | 10,660.27 | (0.00) | 10,660.27 |
| 404. Laminated - comp. shingle rfg. - w/out felt | 144.33 SQ | 259.91 | 1,561.39 | 7,814.84 | 46,889.04 | (0.00) | 46,889.04 |
| 405. Roofing felt - 30 lb. | 130.91 SQ | 39.13 | 130.46 | 1,050.60 | 6,303.57 | (0.00) | 6,303.57 |
| 406. Asphalt starter - universal starter course | 1,593.58 LF | 2.01 | 68.36 | 654.30 | 3,925.76 | (0.00) | 3,925.76 |
| 407. R&R Hip / Ridge cap - composition shingles | 218.75 LF | 7.48 | 23.28 | 331.92 | 1,991.45 | (0.00) | 1,991.45 |
| 408. R&R Continuous ridge vent - shingle-over style | 196.88 LF | 10.87 | 67.41 | 441.50 | 2,649.00 | (0.00) | 2,649.00 |
| 409. R&R Drip edge | 1,593.58 LF | 3.21 | 144.62 | 1,052.00 | 6,312.01 | (0.00) | 6,312.01 |
| 410. R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 411. Step flashing | 175.00 LF | 10.23 | 23.39 | 362.74 | 2,176.38 | (0.00) | 2,176.38 |
| 412. R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 413. R&R Valley metal | 16.47 LF | 6.54 | 2.76 | 22.12 | 132.60 | (0.00) | 132.60 |
| 414. R&R Flashing - pipe jack - lead | 16.00 EA | 89.27 | 61.49 | 297.96 | 1,787.77 | (0.00) | 1,787.77 |
| 415. R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 416. R&R Furnace vent - rain cap and storm collar, 8" | 29.00 EA | 94.40 | 91.54 | 565.82 | 3,394.96 | (0.00) | 3,394.96 |
| 417. Prime & paint roof vent | 47.00 EA | 34.45 | 26.29 | 329.10 | 1,974.54 | (0.00) | 1,974.54 |
| 418. Remove Additional charge for high roof (2 stories or greater) | 130.91 SQ | 6.51 | 0.00 | 170.44 | 1,022.66 | (0.00) | 1,022.66 |
| 419. Additional charge for high roof (2 stories or greater) | 130.91 SQ | 21.03 | 0.00 | 550.60 | 3,303.64 | (0.00) | 3,303.64 |
| 420. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,593.58 SF | 0.77 | 0.00 | 245.42 | 1,472.48 | (0.00) | 1,472.48 |
| 421. Telehandler/forklift and operator | 56.00 HR | 120.38 | 0.00 | 1,348.26 | 8,089.54 | (0.00) | 8,089.54 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 422. Two ladders with jacks and plank (per day) | 7.00 DA | 109.66 | 0.00 | 153.52 | 921.14 | (0.00) | 921.14 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 2,406.60 | 18,622.58 | 111,735.04 | 0.00 | 111,735.04 |
| **Total: Roof Q** | | | 2,406.60 | 18,622.58 | 111,735.04 | 0.00 | 111,735.04 |
| **Total: Roof Q** | | | 2,406.60 | 18,622.58 | 111,735.04 | 0.00 | 111,735.04 |

### Roof R
### Roof R



**Roof1**

| 8863.60 Surface Area | 88.64 Number of Squares |
|---|---|
| 983.22 Total Perimeter Length | 144.83 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 423. Remove Laminated - comp. shingle rfg. - w/out felt | 88.63 SQ | 67.86 | 0.00 | 1,202.88 | 7,217.31 | (0.00) | 7,217.31 |
| 424. Laminated - comp. shingle rfg. - w/out felt | 97.67 SQ | 259.91 | 1,056.62 | 5,288.40 | 31,730.43 | (0.00) | 31,730.43 |
| 425. Roofing felt - 30 lb. | 88.63 SQ | 39.13 | 88.33 | 711.28 | 4,267.70 | (0.00) | 4,267.70 |
| 426. Asphalt starter - universal starter course | 983.22 LF | 2.01 | 42.18 | 403.70 | 2,422.15 | (0.00) | 2,422.15 |
| 427. R&R Hip / Ridge cap - composition shingles | 144.83 LF | 7.48 | 15.41 | 219.74 | 1,318.47 | (0.00) | 1,318.47 |
| 428. R&R Continuous ridge vent - shingle-over style | 130.35 LF | 10.87 | 44.63 | 292.30 | 1,753.83 | (0.00) | 1,753.83 |
| 429. R&R Drip edge | 983.22 LF | 3.21 | 89.23 | 649.06 | 3,894.43 | (0.00) | 3,894.43 |
| 430. R&R Gutter / downspout - aluminum - up to 5" | 275.00 LF | 9.32 | 107.54 | 534.10 | 3,204.64 | (0.00) | 3,204.64 |
| 431. Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 432. R&R Chimney flashing - average (32" x 36") | 6.00 EA | 448.20 | 46.03 | 547.04 | 3,282.27 | (0.00) | 3,282.27 |
| 433. R&R Valley metal | 0.17 LF | 6.54 | 0.03 | 0.22 | 1.36 | (0.00) | 1.36 |
| 434. R&R Flashing - pipe jack - lead | 8.00 EA | 89.27 | 30.74 | 148.98 | 893.88 | (0.00) | 893.88 |
| 435. R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |
| 436. R&R Furnace vent - rain cap and storm collar, 8" | 22.00 EA | 94.40 | 69.44 | 429.24 | 2,575.48 | (0.00) | 2,575.48 |


RIVERSTONE
BUILDING & CONSULTING

**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 437. Prime & paint roof vent | 33.00 EA | 34.45 | 18.46 | 231.08 | 1,386.39 | (0.00) | 1,386.39 |
| 438. Remove Additional charge for high roof (2 stories or greater) | 88.64 SQ | 6.51 | 0.00 | 115.42 | 692.47 | (0.00) | 692.47 |
| 439. Additional charge for high roof (2 stories or greater) | 88.64 SQ | 21.03 | 0.00 | 372.82 | 2,236.92 | (0.00) | 2,236.92 |
| 440. Install Tarp - all-purpose poly - per sq ft (labor and material) | 983.22 SF | 0.77 | 0.00 | 151.42 | 908.50 | (0.00) | 908.50 |
| 441. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 442. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals: Roof1** | | | **1,636.40** | **12,697.78** | **76,186.79** | **0.00** | **76,186.79** |
| **Total: Roof R** | | | **1,636.40** | **12,697.78** | **76,186.79** | **0.00** | **76,186.79** |
| **Total: Roof R** | | | **1,636.40** | **12,697.78** | **76,186.79** | **0.00** | **76,186.79** |

**Roof S**

**Roof S**

**Roof1**



| | | | |
|---|---|---|---|
| 10448.25 Surface Area | | 104.48 Number of Squares | |
| 1331.73 Total Perimeter Length | | 351.00 Total Ridge Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 443. Remove Laminated - comp. shingle rfg. - w/out felt | 104.48 SQ | 67.86 | 0.00 | 1,418.00 | 8,508.01 | (0.00) | 8,508.01 |
| 444. Laminated - comp. shingle rfg. - w/out felt | 115.00 SQ | 259.91 | 1,244.10 | 6,226.76 | 37,360.51 | (0.00) | 37,360.51 |
| 445. Roofing felt - 30 lb. | 104.48 SQ | 39.13 | 104.12 | 838.48 | 5,030.90 | (0.00) | 5,030.90 |
| 446. Asphalt starter - universal starter course | 1,331.73 LF | 2.01 | 57.13 | 546.78 | 3,280.69 | (0.00) | 3,280.69 |
| 447. R&R Hip / Ridge cap - composition shingles | 351.00 LF | 7.48 | 37.36 | 532.58 | 3,195.42 | (0.00) | 3,195.42 |
| 448. R&R Continuous ridge vent - shingle-over style | 315.90 LF | 10.87 | 108.16 | 708.40 | 4,250.40 | (0.00) | 4,250.40 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 449.  R&R Drip edge | 1,331.73 LF | 3.21 | 120.85 | 879.14 | 5,274.84 | (0.00) | 5,274.84 |
| 450.  R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 451.  Step flashing | 150.00 LF | 10.23 | 20.05 | 310.92 | 1,865.47 | (0.00) | 1,865.47 |
| 452.  R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 453.  R&R Valley metal | 120.75 LF | 6.54 | 20.22 | 161.98 | 971.91 | (0.00) | 971.91 |
| 454.  R&R Flashing - pipe jack - lead | 9.00 EA | 89.27 | 34.59 | 167.60 | 1,005.62 | (0.00) | 1,005.62 |
| 455.  R&R Exhaust cap - through roof - 6" to 8" | 5.00 EA | 110.15 | 18.42 | 113.84 | 683.01 | (0.00) | 683.01 |
| 456.  R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 457.  R&R Furnace vent - rain cap and storm collar, 8" | 16.00 EA | 94.40 | 50.50 | 312.18 | 1,873.08 | (0.00) | 1,873.08 |
| 458.  Prime & paint roof vent | 32.00 EA | 34.45 | 17.90 | 224.06 | 1,344.36 | (0.00) | 1,344.36 |
| 459.  Remove Additional charge for high roof (2 stories or greater) | 104.48 SQ | 6.51 | 0.00 | 136.04 | 816.20 | (0.00) | 816.20 |
| 460.  Additional charge for high roof (2 stories or greater) | 104.48 SQ | 21.03 | 0.00 | 439.44 | 2,636.65 | (0.00) | 2,636.65 |
| 461.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,331.73 SF | 0.77 | 0.00 | 205.08 | 1,230.51 | (0.00) | 1,230.51 |
| 462.  Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 463.  Two ladders with jacks and plank (per day) | 351.00 DA | 109.66 | 0.00 | 7,698.14 | 46,188.80 | (0.00) | 46,188.80 |
| **Totals:  Roof1** | | | **2,036.81** | **23,327.66** | **139,965.73** | **0.00** | **139,965.73** |
| **Total:  Roof S** | | | **2,036.81** | **23,327.66** | **139,965.73** | **0.00** | **139,965.73** |
| **Total:  Roof S** | | | **2,036.81** | **23,327.66** | **139,965.73** | **0.00** | **139,965.73** |

**Roof T**

**Roof T**

**R** RIVERSTONE
BUILDING & CONSULTING



**Roof1**

| | |
|---|---|
| 11141.54 Surface Area | 111.42 Number of Squares |
| 1361.03 Total Perimeter Length | 264.59 Total Ridge Length |
| 63.38 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 464. Remove Laminated - comp. shingle rfg. - w/out felt | 115.00 SQ | 67.86 | 0.00 | 1,560.78 | 9,364.68 | (0.00) | 9,364.68 |
| 465. Laminated - comp. shingle rfg. - w/out felt | 126.67 SQ | 259.91 | 1,370.34 | 6,858.62 | 41,151.76 | (0.00) | 41,151.76 |
| 466. Roofing felt - 30 lb. | 115.00 SQ | 39.13 | 114.61 | 922.92 | 5,537.48 | (0.00) | 5,537.48 |
| 467. Asphalt starter - universal starter course | 1,361.03 LF | 2.01 | 58.39 | 558.82 | 3,352.88 | (0.00) | 3,352.88 |
| 468. R&R Hip / Ridge cap - composition shingles | 264.59 LF | 7.48 | 28.16 | 401.46 | 2,408.75 | (0.00) | 2,408.75 |
| 469. R&R Continuous ridge vent - shingle-over style | 238.13 LF | 10.87 | 81.53 | 534.00 | 3,204.01 | (0.00) | 3,204.01 |
| 470. R&R Drip edge | 1,361.03 LF | 3.21 | 123.51 | 898.48 | 5,390.89 | (0.00) | 5,390.89 |
| 471. R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 472. Step flashing | 125.00 LF | 10.23 | 16.71 | 259.10 | 1,554.56 | (0.00) | 1,554.56 |
| 473. R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 474. R&R Valley metal | 93.52 LF | 6.54 | 15.66 | 125.46 | 752.74 | (0.00) | 752.74 |
| 475. R&R Flashing - pipe jack - lead | 17.00 EA | 89.27 | 65.33 | 316.58 | 1,899.50 | (0.00) | 1,899.50 |
| 476. R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 477. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 478. R&R Furnace vent - rain cap and storm collar, 8" | 26.00 EA | 94.40 | 82.07 | 507.30 | 3,043.77 | (0.00) | 3,043.77 |
| 479. R&R Flat roof exhaust vent / cap - gooseneck 8" | 1.00 EA | 92.50 | 2.23 | 18.94 | 113.67 | (0.00) | 113.67 |
| 480. Prime & paint roof vent | 47.00 EA | 34.45 | 26.29 | 329.10 | 1,974.54 | (0.00) | 1,974.54 |
| 481. Remove Additional charge for high roof (2 stories or greater) | 115.00 SQ | 6.51 | 0.00 | 149.74 | 898.39 | (0.00) | 898.39 |
| 482. Additional charge for high roof (2 stories or greater) | 115.00 SQ | 21.03 | 0.00 | 483.70 | 2,902.15 | (0.00) | 2,902.15 |
| 483. Remove Additional charge for steep roof greater than 12/12 slope | 9.00 SQ | 33.59 | 0.00 | 60.46 | 362.77 | (0.00) | 362.77 |
| 484. Additional charge for steep roof greater than 12/12 slope | 9.00 SQ | 94.65 | 0.00 | 170.38 | 1,022.23 | (0.00) | 1,022.23 |
| 485. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,361.03 SF | 0.77 | 0.00 | 209.60 | 1,257.59 | (0.00) | 1,257.59 |
| 486. Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 487. Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Roof1** | | | **2,185.35** | **17,034.24** | **102,205.03** | **0.00** | **102,205.03** |

### Roof9



924.96  Surface Area          9.25  Number of Squares
139.58  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 488.  R&R Modified bitumen roof | 9.25 SQ | 435.89 | 82.71 | 822.92 | 4,937.61 | (0.00) | 4,937.61 |
| 489.  Roofing felt - synthetic underlayment | 9.25 SQ | 45.28 | 13.91 | 86.54 | 519.29 | (0.00) | 519.29 |
| 490.  R&R Drip edge | 139.58 LF | 3.21 | 12.67 | 92.14 | 552.86 | (0.00) | 552.86 |
| 491.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 492.  Remove Additional charge for high roof (2 stories or greater) | 9.25 SQ | 6.51 | 0.00 | 12.04 | 72.26 | (0.00) | 72.26 |
| 493.  Additional charge for high roof (2 stories or greater) | 9.25 SQ | 21.03 | 0.00 | 38.90 | 233.43 | (0.00) | 233.43 |
| 494.  Telehandler/forklift and operator | 8.00 HR | 120.38 | 0.00 | 192.60 | 1,155.64 | (0.00) | 1,155.64 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof9** | | | **126.89** | **1,332.54** | **7,995.49** | **0.00** | **7,995.49** |
| **Total:  Roof T** | | | **2,312.24** | **18,366.78** | **110,200.52** | **0.00** | **110,200.52** |
| **Total:  Roof T** | | | **2,312.24** | **18,366.78** | **110,200.52** | **0.00** | **110,200.52** |

### Roof U

### Roof U



## Roof1



| | | |
|---|---|---|
| 8771.02 | Surface Area | 87.71 | Number of Squares |
| 965.43 | Total Perimeter Length | 160.33 | Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 495.  Remove Laminated - comp. shingle rfg. - w/out felt | 87.71 SQ | 67.86 | 0.00 | 1,190.40 | 7,142.40 | (0.00) | 7,142.40 |
| 496.  Laminated - comp. shingle rfg. - w/out felt | 96.67 SQ | 259.91 | 1,045.80 | 5,234.26 | 31,405.56 | (0.00) | 31,405.56 |
| 497.  Roofing felt - 30 lb. | 87.71 SQ | 39.13 | 87.41 | 703.90 | 4,223.40 | (0.00) | 4,223.40 |
| 498.  Asphalt starter - universal starter course | 965.43 LF | 2.01 | 41.42 | 396.38 | 2,378.31 | (0.00) | 2,378.31 |
| 499.  R&R Hip / Ridge cap - composition shingles | 160.33 LF | 7.48 | 17.06 | 243.28 | 1,459.60 | (0.00) | 1,459.60 |
| 500.  R&R Continuous ridge vent - shingle-over style | 144.30 LF | 10.87 | 49.41 | 323.60 | 1,941.55 | (0.00) | 1,941.55 |
| 501.  R&R Drip edge | 965.43 LF | 3.21 | 87.61 | 637.32 | 3,823.96 | (0.00) | 3,823.96 |
| 502.  R&R Gutter / downspout - aluminum - up to 5" | 330.00 LF | 9.32 | 129.05 | 640.94 | 3,845.59 | (0.00) | 3,845.59 |
| 503.  Step flashing | 150.00 LF | 10.23 | 20.05 | 310.92 | 1,865.47 | (0.00) | 1,865.47 |
| 504.  R&R Valley metal | 12.78 LF | 6.54 | 2.14 | 17.14 | 102.86 | (0.00) | 102.86 |
| 505.  R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 506.  Digital satellite system - Detach & reset | 1.00 EA | 41.47 | 0.00 | 8.30 | 49.77 | (0.00) | 49.77 |
| 507.  Digital satellite system - alignment and calibration only | 1.00 EA | 124.41 | 0.00 | 24.88 | 149.29 | (0.00) | 149.29 |
| 508.  R&R Flashing - pipe jack - lead | 13.00 EA | 89.27 | 49.96 | 242.10 | 1,452.57 | (0.00) | 1,452.57 |
| 509.  R&R Exhaust cap - through roof - 6" to 8" | 9.00 EA | 110.15 | 33.15 | 204.90 | 1,229.40 | (0.00) | 1,229.40 |
| 510.  R&R Furnace vent - rain cap and storm collar, 8" | 20.00 EA | 94.40 | 63.13 | 390.22 | 2,341.35 | (0.00) | 2,341.35 |
| 511.  Prime & paint roof vent | 42.00 EA | 34.45 | 23.49 | 294.08 | 1,764.47 | (0.00) | 1,764.47 |
| 512.  Remove Additional charge for high roof (2 stories or greater) | 87.71 SQ | 6.51 | 0.00 | 114.20 | 685.19 | (0.00) | 685.19 |
| 513.  Additional charge for high roof (2 stories or greater) | 87.71 SQ | 21.03 | 0.00 | 368.90 | 2,213.44 | (0.00) | 2,213.44 |
| 514.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 965.43 SF | 0.77 | 0.00 | 148.68 | 892.06 | (0.00) | 892.06 |
| 515.  Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 516.  Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals:  Roof1** | | | **1,703.38** | **13,205.32** | **79,231.76** | **0.00** | **79,231.76** |
| **Total:  Roof U** | | | **1,703.38** | **13,205.32** | **79,231.76** | **0.00** | **79,231.76** |

TANGLEGROVE_CONDO_AS



| Total: Roof U | | 1,703.38 | 13,205.32 | 79,231.76 | 0.00 | 79,231.76 |
|---|---|---|---|---|---|---|

### Roof V

### Roof V

#### Roof1



| 10376.98 Surface Area | 103.77 Number of Squares |
|---|---|
| 1000.74 Total Perimeter Length | 176.00 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 517. Remove Laminated - comp. shingle rfg. - w/out felt | 103.76 SQ | 67.86 | 0.00 | 1,408.24 | 8,449.39 | (0.00) | 8,449.39 |
| 518. Laminated - comp. shingle rfg. - w/out felt | 114.33 SQ | 259.91 | 1,236.85 | 6,190.48 | 37,142.84 | (0.00) | 37,142.84 |
| 519. Roofing felt - 30 lb. | 103.76 SQ | 39.13 | 103.41 | 832.70 | 4,996.24 | (0.00) | 4,996.24 |
| 520. Asphalt starter - universal starter course | 1,000.74 LF | 2.01 | 42.93 | 410.88 | 2,465.30 | (0.00) | 2,465.30 |
| 521. R&R Hip / Ridge cap - composition shingles | 176.00 LF | 7.48 | 18.73 | 267.04 | 1,602.25 | (0.00) | 1,602.25 |
| 522. R&R Continuous ridge vent - shingle-over style | 158.40 LF | 10.87 | 54.23 | 355.20 | 2,131.24 | (0.00) | 2,131.24 |
| 523. R&R Drip edge | 1,000.74 LF | 3.21 | 90.82 | 660.64 | 3,963.83 | (0.00) | 3,963.83 |
| 524. R&R Gutter / downspout - aluminum - up to 5" | 330.00 LF | 9.32 | 129.05 | 640.94 | 3,845.59 | (0.00) | 3,845.59 |
| 525. Step flashing | 175.00 LF | 10.23 | 23.39 | 362.74 | 2,176.38 | (0.00) | 2,176.38 |
| 526. R&R Chimney flashing - average (32" x 36") | 7.00 EA | 448.20 | 53.70 | 638.22 | 3,829.32 | (0.00) | 3,829.32 |
| 527. R&R Flashing - pipe jack - lead | 17.00 EA | 89.27 | 65.33 | 316.58 | 1,899.50 | (0.00) | 1,899.50 |
| 528. R&R Exhaust cap - through roof - 6" to 8" | 5.00 EA | 110.15 | 18.42 | 113.84 | 683.01 | (0.00) | 683.01 |
| 529. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 530. R&R Furnace vent - rain cap and storm collar, 8" | 24.00 EA | 94.40 | 75.75 | 468.28 | 2,809.63 | (0.00) | 2,809.63 |
| 531. Prime & paint roof vent | 47.00 EA | 34.45 | 26.29 | 329.10 | 1,974.54 | (0.00) | 1,974.54 |
| 532. Remove Additional charge for high roof (2 stories or greater) | 103.76 SQ | 6.51 | 0.00 | 135.10 | 810.58 | (0.00) | 810.58 |
| 533. Additional charge for high roof (2 stories or greater) | 103.76 SQ | 21.03 | 0.00 | 436.42 | 2,618.49 | (0.00) | 2,618.49 |
| 534. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,000.74 SF | 0.77 | 0.00 | 154.12 | 924.69 | (0.00) | 924.69 |
| 535. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 536.  Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals:  Roof1** | | | 1,941.48 | 14,811.24 | 88,867.07 | 0.00 | 88,867.07 |
| **Total:  Roof V** | | | 1,941.48 | 14,811.24 | 88,867.07 | 0.00 | 88,867.07 |
| **Total:  Roof V** | | | 1,941.48 | 14,811.24 | 88,867.07 | 0.00 | 88,867.07 |

**Roof W**

**Roof W**



**Roof1**

| | | |
|---|---|---|
| 2658.18  Surface Area | | 26.58  Number of Squares |
| 529.77  Total Perimeter Length | | 121.11  Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 537.  Remove Laminated - comp. shingle rfg. - w/out felt | 26.58 SQ | 67.86 | 0.00 | 360.74 | 2,164.46 | (0.00) | 2,164.46 |
| 538.  Laminated - comp. shingle rfg. - w/out felt | 29.33 SQ | 259.91 | 317.30 | 1,588.10 | 9,528.56 | (0.00) | 9,528.56 |
| 539.  Roofing felt - 30 lb. | 26.58 SQ | 39.13 | 26.49 | 213.32 | 1,279.89 | (0.00) | 1,279.89 |
| 540.  Asphalt starter - universal starter course | 529.77 LF | 2.01 | 22.73 | 217.50 | 1,305.07 | (0.00) | 1,305.07 |
| 541.  R&R Hip / Ridge cap - composition shingles | 121.11 LF | 7.48 | 12.89 | 183.76 | 1,102.55 | (0.00) | 1,102.55 |
| 542.  R&R Continuous ridge vent - shingle-over style | 109.00 LF | 10.87 | 37.32 | 244.44 | 1,466.59 | (0.00) | 1,466.59 |
| 543.  R&R Drip edge | 529.77 LF | 3.21 | 48.08 | 349.74 | 2,098.39 | (0.00) | 2,098.39 |
| 544.  R&R Gutter / downspout - aluminum - up to 5" | 250.00 LF | 9.32 | 97.76 | 485.56 | 2,913.32 | (0.00) | 2,913.32 |
| 545.  Step flashing | 80.00 LF | 10.23 | 10.69 | 165.82 | 994.91 | (0.00) | 994.91 |
| 546.  R&R Valley metal | 49.99 LF | 6.54 | 8.37 | 67.06 | 402.36 | (0.00) | 402.36 |
| 547.  R&R Chimney flashing - average (32" x 36") | 2.00 EA | 448.20 | 15.34 | 182.34 | 1,094.08 | (0.00) | 1,094.08 |
| 548.  R&R Flashing - pipe jack - lead | 1.00 EA | 89.27 | 3.84 | 18.62 | 111.73 | (0.00) | 111.73 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 549.  R&R Exhaust cap - through roof - 6" to 8" | 1.00 EA | 110.15 | 3.68 | 22.78 | 136.61 | (0.00) | 136.61 |
| 550.  R&R Furnace vent - rain cap and storm collar, 8" | 6.00 EA | 94.40 | 18.94 | 117.06 | 702.40 | (0.00) | 702.40 |
| 551.  R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 552.  Prime & paint roof vent | 9.00 EA | 34.45 | 5.03 | 63.02 | 378.10 | (0.00) | 378.10 |
| 553.  Remove Additional charge for high roof (2 stories or greater) | 26.58 SQ | 6.51 | 0.00 | 34.60 | 207.64 | (0.00) | 207.64 |
| 554.  Additional charge for high roof (2 stories or greater) | 26.58 SQ | 21.03 | 0.00 | 111.80 | 670.78 | (0.00) | 670.78 |
| 555.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 529.77 SF | 0.77 | 0.00 | 81.58 | 489.50 | (0.00) | 489.50 |
| 556.  Telehandler/forklift and operator | 16.00 HR | 120.38 | 0.00 | 385.22 | 2,311.30 | (0.00) | 2,311.30 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 557.  Two ladders with jacks and plank (per day) | 2.00 DA | 109.66 | 0.00 | 43.86 | 263.18 | (0.00) | 263.18 |
| **Totals:  Roof1** | | | **635.14** | **4,967.56** | **29,805.23** | **0.00** | **29,805.23** |
| **Total:  Roof W** | | | **635.14** | **4,967.56** | **29,805.23** | **0.00** | **29,805.23** |
| **Total:  Roof W** | | | **635.14** | **4,967.56** | **29,805.23** | **0.00** | **29,805.23** |

**Roof X**

**Roof X**



**Roof1**

| 7186.08  Surface Area | 71.86  Number of Squares |
|---|---|
| 1087.50  Total Perimeter Length | 133.20  Total Ridge Length |
| 142.56  Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 558.  Remove Laminated - comp. shingle rfg (per SHINGLE) | 27.00 EA | 7.35 | 0.00 | 39.70 | 238.15 | (0.00) | 238.15 |
| 559.  Laminated - comp. shingle rfg (per SHINGLE) | 27.00 EA | 17.43 | 6.26 | 95.38 | 572.25 | (0.00) | 572.25 |
| 560.  R&R Exhaust cap - through roof - 6" to 8" | 1.00 EA | 110.15 | 3.68 | 22.78 | 136.61 | (0.00) | 136.61 |

TANGLEGROVE_CONDO_AS



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 561.  Remove Additional charge for high roof (2 stories or greater) | 0.50 SQ | 6.51 | 0.00 | 0.66 | 3.92 | (0.00) | 3.92 |
| 562.  Additional charge for high roof (2 stories or greater) | 0.50 SQ | 21.03 | 0.00 | 2.10 | 12.62 | (0.00) | 12.62 |
| 563.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,087.50 SF | 0.77 | 0.00 | 167.48 | 1,004.86 | (0.00) | 1,004.86 |
| 564.  Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof1** | | | 9.94 | 376.26 | 2,257.33 | 0.00 | 2,257.33 |



**Roof6**

682.73  Surface Area               6.83  Number of Squares
107.31  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 565.  R&R Modified bitumen roof | 6.83 SQ | 435.89 | 61.07 | 607.66 | 3,645.86 | (0.00) | 3,645.86 |
| 566.  Roofing felt - synthetic underlayment | 6.83 SQ | 45.28 | 10.27 | 63.92 | 383.45 | (0.00) | 383.45 |
| 567.  R&R Drip edge | 107.31 LF | 3.21 | 9.74 | 70.84 | 425.05 | (0.00) | 425.05 |
| 568.  Detach & Reset Gutter / downspout - aluminum - up to 5" | 45.00 LF | 4.62 | 0.00 | 41.58 | 249.48 | (0.00) | 249.48 |
| 569.  Remove Additional charge for high roof (2 stories or greater) | 6.83 SQ | 6.51 | 0.00 | 8.90 | 53.36 | (0.00) | 53.36 |
| 570.  Additional charge for high roof (2 stories or greater) | 6.83 SQ | 21.03 | 0.00 | 28.72 | 172.35 | (0.00) | 172.35 |
| 571.  Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof6** | | | 81.08 | 917.92 | 5,507.37 | 0.00 | 5,507.37 |

**EXHIBIT A - Page 258 of 320**

**R** RIVERSTONE
BUILDING & CONSULTING



### Roof11

| 511.44 | Surface Area | | 5.11 | Number of Squares |
| 67.77 | Total Perimeter Length | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 572. R&R Modified bitumen roof | 5.11 SQ | 435.89 | 45.69 | 454.64 | 2,727.73 | (0.00) | 2,727.73 |
| 573. Roofing felt - synthetic underlayment | 5.11 SQ | 45.28 | 7.69 | 47.82 | 286.89 | (0.00) | 286.89 |
| 574. R&R Drip edge | 67.77 LF | 3.21 | 6.15 | 44.76 | 268.46 | (0.00) | 268.46 |
| 575. Detach & Reset Gutter / downspout - aluminum - up to 5" | 45.00 LF | 4.62 | 0.00 | 41.58 | 249.48 | (0.00) | 249.48 |
| 576. Remove Additional charge for high roof (2 stories or greater) | 5.11 SQ | 6.51 | 0.00 | 6.66 | 39.93 | (0.00) | 39.93 |
| 577. Additional charge for high roof (2 stories or greater) | 5.11 SQ | 21.03 | 0.00 | 21.50 | 128.96 | (0.00) | 128.96 |
| 578. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof11** | | | **59.53** | **713.26** | **4,279.27** | **0.00** | **4,279.27** |



### Roof12

| 250.87 | Surface Area | | 2.51 | Number of Squares |
| 64.96 | Total Perimeter Length | | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 579. R&R Modified bitumen roof | 2.51 SQ | 435.89 | 22.44 | 223.28 | 1,339.80 | (0.00) | 1,339.80 |
| 580. Roofing felt - synthetic underlayment | 2.51 SQ | 45.28 | 3.78 | 23.50 | 140.93 | (0.00) | 140.93 |
| 581. R&R Drip edge | 64.96 LF | 3.21 | 5.90 | 42.88 | 257.30 | (0.00) | 257.30 |
| 582. Detach & Reset Gutter / downspout - aluminum - up to 5" | 45.00 LF | 4.62 | 0.00 | 41.58 | 249.48 | (0.00) | 249.48 |
| 583. Remove Additional charge for high roof (2 stories or greater) | 2.51 SQ | 6.51 | 0.00 | 3.26 | 19.60 | (0.00) | 19.60 |
| 584. Additional charge for high roof (2 stories or greater) | 2.51 SQ | 21.03 | 0.00 | 10.56 | 63.35 | (0.00) | 63.35 |
| 585. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof12** | | | **32.12** | **393.22** | **2,359.38** | **0.00** | **2,359.38** |



RIVERSTONE
BUILDING & CONSULTING

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Roof X** | | | 182.67 | 2,400.66 | 14,403.35 | 0.00 | 14,403.35 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total: Roof X** | | | 182.67 | 2,400.66 | 14,403.35 | 0.00 | 14,403.35 |

### Roof Y

### Roof Y

#### Roof1



15153.41  Surface Area
1748.83  Total Perimeter Length

151.53  Number of Squares
415.77  Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 586. Remove Laminated - comp. shingle rfg. - w/out felt | 156.05 SQ | 67.86 | 0.00 | 2,117.92 | 12,707.47 | (0.00) | 12,707.47 |
| 587. Laminated - comp. shingle rfg. - w/out felt | 179.67 SQ | 259.91 | 1,943.71 | 9,728.34 | 58,370.08 | (0.00) | 58,370.08 |
| 588. Roofing felt - 30 lb. | 156.05 SQ | 39.13 | 155.52 | 1,252.34 | 7,514.10 | (0.00) | 7,514.10 |
| 589. Asphalt starter - universal starter course | 1,748.83 LF | 2.01 | 75.02 | 718.04 | 4,308.21 | (0.00) | 4,308.21 |
| 590. R&R Hip / Ridge cap - composition shingles | 415.77 LF | 7.48 | 44.25 | 630.86 | 3,785.07 | (0.00) | 3,785.07 |
| 591. R&R Continuous ridge vent - shingle-over style | 374.19 LF | 10.87 | 128.11 | 839.12 | 5,034.68 | (0.00) | 5,034.68 |
| 592. R&R Drip edge | 1,748.83 LF | 3.21 | 158.71 | 1,154.48 | 6,926.93 | (0.00) | 6,926.93 |
| 593. R&R Gutter / downspout - aluminum - up to 5" | 400.00 LF | 9.32 | 156.42 | 776.88 | 4,661.30 | (0.00) | 4,661.30 |
| 594. Step flashing | 175.00 LF | 10.23 | 23.39 | 362.74 | 2,176.38 | (0.00) | 2,176.38 |
| 595. R&R Valley metal | 226.17 LF | 6.54 | 37.88 | 303.40 | 1,820.43 | (0.00) | 1,820.43 |
| 596. R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 597. Digital satellite system - Detach & reset | 1.00 EA | 41.47 | 0.00 | 8.30 | 49.77 | (0.00) | 49.77 |
| 598. Digital satellite system - alignment and calibration only | 1.00 EA | 124.41 | 0.00 | 24.88 | 149.29 | (0.00) | 149.29 |
| 599. R&R Flashing - pipe jack - lead | 10.00 EA | 89.27 | 38.43 | 186.22 | 1,117.35 | (0.00) | 1,117.35 |
| 600. R&R Exhaust cap - through roof - 6" to 8" | 7.00 EA | 110.15 | 25.79 | 159.38 | 956.22 | (0.00) | 956.22 |
| 601. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 602. R&R Furnace vent - rain cap and storm collar, 8" | 21.00 EA | 94.40 | 66.29 | 409.74 | 2,458.43 | (0.00) | 2,458.43 |
| 603. R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 604. Prime & paint roof vent | 40.00 EA | 34.45 | 22.37 | 280.08 | 1,680.45 | (0.00) | 1,680.45 |
| 605. Remove Additional charge for high roof (2 stories or greater) | 156.05 SQ | 6.51 | 0.00 | 203.18 | 1,219.07 | (0.00) | 1,219.07 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 606. Additional charge for high roof (2 stories or greater) | 156.05 SQ | 21.03 | 0.00 | 656.34 | 3,938.07 | (0.00) | 3,938.07 |
| 607. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,748.83 SF | 0.77 | 0.00 | 269.32 | 1,615.92 | (0.00) | 1,615.92 |
| 608. Telehandler/forklift and operator | 64.00 HR | 120.38 | 0.00 | 1,540.86 | 9,245.18 | (0.00) | 9,245.18 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 609. Two ladders with jacks and plank (per day) | 13.00 DA | 109.66 | 0.00 | 285.12 | 1,710.70 | (0.00) | 1,710.70 |
| **Totals: Roof1** | | | **2,946.52** | **22,685.60** | **136,113.33** | **0.00** | **136,113.33** |



**Roof4**

| | | |
|---|---|---|
| 451.84 Surface Area | 4.52 Number of Squares | |
| 126.15 Total Perimeter Length | 22.00 Total Ridge Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 610. R&R Modified bitumen roof | 2.26 SQ | 435.89 | 20.21 | 201.06 | 1,206.38 | (0.00) | 1,206.38 |
| 611. Roofing felt - synthetic underlayment | 2.26 SQ | 45.28 | 3.40 | 21.14 | 126.87 | (0.00) | 126.87 |
| 612. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof4** | | | **23.61** | **270.36** | **1,622.17** | **0.00** | **1,622.17** |
| **Total: Roof Y** | | | **2,970.13** | **22,955.96** | **137,735.50** | **0.00** | **137,735.50** |
| **Total: Roof Y** | | | **2,970.13** | **22,955.96** | **137,735.50** | **0.00** | **137,735.50** |

**Roof Z**

**Roof Z**





**Roof1**

| | |
|---|---|
| 11946.84  Surface Area | 119.47  Number of Squares |
| 1592.67  Total Perimeter Length | 354.99  Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 613.  Remove Laminated - comp. shingle rfg. - w/out felt | 119.46 SQ | 67.86 | 0.00 | 1,621.32 | 9,727.88 | (0.00) | 9,727.88 |
| 614.  Laminated - comp. shingle rfg. - w/out felt | 131.67 SQ | 259.91 | 1,424.44 | 7,129.36 | 42,776.15 | (0.00) | 42,776.15 |
| 615.  Roofing felt - 30 lb. | 119.46 SQ | 39.13 | 119.05 | 958.72 | 5,752.24 | (0.00) | 5,752.24 |
| 616.  Asphalt starter - universal starter course | 1,592.67 LF | 2.01 | 68.33 | 653.92 | 3,923.52 | (0.00) | 3,923.52 |
| 617.  R&R Hip / Ridge cap - composition shingles | 354.99 LF | 7.48 | 37.78 | 538.64 | 3,231.74 | (0.00) | 3,231.74 |
| 618.  R&R Continuous ridge vent - shingle-over style | 354.99 LF | 10.87 | 121.54 | 796.06 | 4,776.34 | (0.00) | 4,776.34 |
| 619.  R&R Drip edge | 1,592.67 LF | 3.21 | 144.54 | 1,051.40 | 6,308.41 | (0.00) | 6,308.41 |
| 620.  R&R Gutter / downspout - aluminum - up to 5" | 275.00 LF | 9.32 | 107.54 | 534.10 | 3,204.64 | (0.00) | 3,204.64 |
| 621.  Step flashing | 150.00 LF | 10.23 | 20.05 | 310.92 | 1,865.47 | (0.00) | 1,865.47 |
| 622.  R&R Valley metal | 143.33 LF | 6.54 | 24.00 | 192.28 | 1,153.66 | (0.00) | 1,153.66 |
| 623.  R&R Chimney flashing - average (32" x 36") | 5.00 EA | 448.20 | 38.36 | 455.90 | 2,735.26 | (0.00) | 2,735.26 |
| 624.  R&R Flashing - pipe jack - lead | 7.00 EA | 89.27 | 26.90 | 130.36 | 782.15 | (0.00) | 782.15 |
| 625.  R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 626.  R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 627.  R&R Furnace vent - rain cap and storm collar, 8" | 16.00 EA | 94.40 | 50.50 | 312.18 | 1,873.08 | (0.00) | 1,873.08 |
| 628.  Prime & paint roof vent | 26.00 EA | 34.45 | 14.54 | 182.04 | 1,092.28 | (0.00) | 1,092.28 |
| 629.  Remove Additional charge for high roof (2 stories or greater) | 119.46 SQ | 6.51 | 0.00 | 155.54 | 933.22 | (0.00) | 933.22 |
| 630.  Additional charge for high roof (2 stories or greater) | 119.46 SQ | 21.03 | 0.00 | 502.44 | 3,014.68 | (0.00) | 3,014.68 |
| 631.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,592.67 SF | 0.77 | 0.00 | 245.28 | 1,471.64 | (0.00) | 1,471.64 |
| 632.  Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 633.  Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |

| | | | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Roof1** | | | 2,207.52 | 17,121.26 | 102,727.06 | 0.00 | 102,727.06 |
| **Total:  Roof Z** | | | 2,207.52 | 17,121.26 | 102,727.06 | 0.00 | 102,727.06 |
| **Total:  Roof Z** | | | 2,207.52 | 17,121.26 | 102,727.06 | 0.00 | 102,727.06 |



**Roof AA**

**Roof AA**



**Roof1**

| | | |
|---|---|---|
| 11383.85 Surface Area | | 113.84 Number of Squares |
| 1310.72 Total Perimeter Length | | 200.00 Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 634. Remove Laminated - comp. shingle rfg. - w/out felt | 113.83 SQ | 67.86 | 0.00 | 1,544.90 | 9,269.40 | (0.00) | 9,269.40 |
| 635. Laminated - comp. shingle rfg. - w/out felt | 125.33 SQ | 259.91 | 1,355.85 | 6,786.08 | 40,716.45 | (0.00) | 40,716.45 |
| 636. Roofing felt - 30 lb. | 113.83 SQ | 39.13 | 113.44 | 913.52 | 5,481.13 | (0.00) | 5,481.13 |
| 637. Asphalt starter - universal starter course | 1,310.72 LF | 2.01 | 56.23 | 538.16 | 3,228.94 | (0.00) | 3,228.94 |
| 638. R&R Hip / Ridge cap - composition shingles | 200.00 LF | 7.48 | 21.29 | 303.46 | 1,820.75 | (0.00) | 1,820.75 |
| 639. R&R Continuous ridge vent - shingle-over style | 180.00 LF | 10.87 | 61.63 | 403.64 | 2,421.87 | (0.00) | 2,421.87 |
| 640. R&R Drip edge | 1,310.72 LF | 3.21 | 118.95 | 865.28 | 5,191.65 | (0.00) | 5,191.65 |
| 641. R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.87 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 642. Step flashing | 70.00 LF | 10.23 | 9.36 | 145.10 | 870.56 | (0.00) | 870.56 |
| 643. R&R Counterflashing - Apron flashing | 30.00 LF | 11.23 | 4.31 | 68.24 | 409.45 | (0.00) | 409.45 |
| 644. R&R Chimney flashing - average (32" x 36") | 8.00 EA | 448.20 | 61.37 | 729.40 | 4,376.37 | (0.00) | 4,376.37 |
| 645. R&R Skylight - reflective tube - 10" | 2.00 EA | 643.38 | 46.04 | 266.56 | 1,599.36 | (0.00) | 1,599.36 |
| 646. R&R Flashing - pipe jack - lead | 14.00 EA | 89.27 | 53.80 | 260.72 | 1,564.30 | (0.00) | 1,564.30 |
| 647. R&R Furnace vent - rain cap and storm collar, 8" | 37.00 EA | 94.40 | 116.79 | 721.92 | 4,331.51 | (0.00) | 4,331.51 |
| 648. Prime & paint roof vent | 51.00 EA | 34.45 | 28.53 | 357.10 | 2,142.58 | (0.00) | 2,142.58 |
| 649. Remove Additional charge for high roof (2 stories or greater) | 113.84 SQ | 6.51 | 0.00 | 148.22 | 889.32 | (0.00) | 889.32 |
| 650. Additional charge for high roof (2 stories or greater) | 113.84 SQ | 21.03 | 0.00 | 478.82 | 2,872.88 | (0.00) | 2,872.88 |
| 651. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,310.72 SF | 0.77 | 0.00 | 201.86 | 1,211.11 | (0.00) | 1,211.11 |
| 652. Telehandler/forklift and operator | 48.00 HR | 120.38 | 0.00 | 1,155.64 | 6,933.88 | (0.00) | 6,933.88 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 653. Two ladders with jacks and plank (per day) | 6.00 DA | 109.66 | 0.00 | 131.60 | 789.56 | (0.00) | 789.56 |

| Totals: Roof1 | | | 2,184.46 | 16,700.00 | 100,199.72 | 0.00 | 100,199.72 |
|---|---|---|---|---|---|---|---|

| Total: Roof AA | | | 2,184.46 | 16,700.00 | 100,199.72 | 0.00 | 100,199.72 |
|---|---|---|---|---|---|---|---|



| Total:  Roof AA | | 2,184.46 | 16,700.00 | 100,199.72 | 0.00 | 100,199.72 |

### Roof BB
### Roof BB

#### Roof1

| | 7598.24  Surface Area | | 75.98  Number of Squares |
| --- | --- | --- | --- |
| | 879.39  Total Perimeter Length | | 129.25  Total Ridge Length |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 654.  Remove Laminated - comp. shingle rfg. - w/out felt | 75.98 SQ | 67.86 | 0.00 | 1,031.20 | 6,187.20 | (0.00) | 6,187.20 |
| 655.  Laminated - comp. shingle rfg. - w/out felt | 83.67 SQ | 259.91 | 905.16 | 4,530.38 | 27,182.21 | (0.00) | 27,182.21 |
| 656.  Roofing felt - 30 lb. | 75.98 SQ | 39.13 | 75.72 | 609.76 | 3,658.58 | (0.00) | 3,658.58 |
| 657.  Asphalt starter - universal starter course | 879.39 LF | 2.01 | 37.73 | 361.06 | 2,166.36 | (0.00) | 2,166.36 |
| 658.  R&R Hip / Ridge cap - composition shingles | 129.25 LF | 7.48 | 13.76 | 196.12 | 1,176.67 | (0.00) | 1,176.67 |
| 659.  R&R Continuous ridge vent - shingle-over style | 116.33 LF | 10.87 | 39.83 | 260.86 | 1,565.19 | (0.00) | 1,565.19 |
| 660.  R&R Drip edge | 879.39 LF | 3.21 | 79.80 | 580.54 | 3,483.18 | (0.00) | 3,483.18 |
| 661.  R&R Gutter / downspout - aluminum - up to 5" | 200.00 LF | 9.32 | 78.21 | 388.44 | 2,330.65 | (0.00) | 2,330.65 |
| 662.  Step flashing | 60.00 LF | 10.23 | 8.02 | 124.36 | 746.18 | (0.00) | 746.18 |
| 663.  R&R Chimney flashing - average (32" x 36") | 5.00 EA | 448.20 | 38.36 | 455.90 | 2,735.26 | (0.00) | 2,735.26 |
| 664.  R&R Flashing - pipe jack - lead | 11.00 EA | 89.27 | 42.27 | 204.86 | 1,229.10 | (0.00) | 1,229.10 |
| 665.  R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 666.  R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 667.  R&R Furnace vent - rain cap and storm collar, 8" | 15.00 EA | 94.40 | 47.35 | 292.68 | 1,756.03 | (0.00) | 1,756.03 |
| 668.  Prime & paint roof vent | 30.00 EA | 34.45 | 16.78 | 210.06 | 1,260.34 | (0.00) | 1,260.34 |
| 669.  Remove Additional charge for high roof (2 stories or greater) | 75.98 SQ | 6.51 | 0.00 | 98.92 | 593.55 | (0.00) | 593.55 |
| 670.  Additional charge for high roof (2 stories or greater) | 75.98 SQ | 21.03 | 0.00 | 319.58 | 1,917.44 | (0.00) | 1,917.44 |
| 671.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 879.39 SF | 0.77 | 0.00 | 135.42 | 812.55 | (0.00) | 812.55 |
| 672.  Telehandler/forklift and operator | 32.00 HR | 120.38 | 0.00 | 770.44 | 4,622.60 | (0.00) | 4,622.60 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 673.  Two ladders with jacks and plank (per day) | 4.00 DA | 109.66 | 0.00 | 87.72 | 526.36 | (0.00) | 526.36 |



## CONTINUED - Roof1

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 1,395.53 | 10,739.86 | 64,438.75 | 0.00 | 64,438.75 |
| **Total: Roof BB** | | | 1,395.53 | 10,739.86 | 64,438.75 | 0.00 | 64,438.75 |
| **Total: Roof BB** | | | 1,395.53 | 10,739.86 | 64,438.75 | 0.00 | 64,438.75 |

### Roof CC

### Roof CC



#### Roof1

| | | |
|---|---|---|
| 7546.77 Surface Area | | 75.47 Number of Squares |
| 772.52 Total Perimeter Length | | 113.00 Total Ridge Length |
| 14.74 Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 674. Roofing Repair - Minimum Charge - Labor and Material | 1.00 EA | 582.19 | 3.78 | 117.20 | 703.17 | (0.00) | 703.17 |
| 675. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 676. Two ladders with jacks and plank (per day) | 0.25 DA | 109.66 | 0.00 | 5.48 | 32.90 | (0.00) | 32.90 |
| **Totals: Roof1** | | | 3.78 | 170.84 | 1,024.99 | 0.00 | 1,024.99 |
| **Total: Roof CC** | | | 3.78 | 170.84 | 1,024.99 | 0.00 | 1,024.99 |
| **Total: Roof CC** | | | 3.78 | 170.84 | 1,024.99 | 0.00 | 1,024.99 |

### Roof DD

### Roof DD

 RIVERSTONE
BUILDING & CONSULTING



### Roof1

| | |
|---|---|
| 13087.22 Surface Area | 130.87 Number of Squares |
| 1874.26 Total Perimeter Length | 207.82 Total Ridge Length |
| 92.46 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 677. Remove Laminated - comp. shingle rfg. - w/out felt | 131.00 SQ | 67.86 | 0.00 | 1,777.94 | 10,667.60 | (0.00) | 10,667.60 |
| 678. Laminated - comp. shingle rfg. - w/out felt | 144.33 SQ | 259.91 | 1,561.39 | 7,814.84 | 46,889.04 | (0.00) | 46,889.04 |
| 679. Roofing felt - 30 lb. | 131.00 SQ | 39.13 | 130.55 | 1,051.32 | 6,307.90 | (0.00) | 6,307.90 |
| 680. Asphalt starter - universal starter course | 1,874.26 LF | 2.01 | 80.41 | 769.54 | 4,617.21 | (0.00) | 4,617.21 |
| 681. R&R Hip / Ridge cap - composition shingles | 207.82 LF | 7.48 | 22.12 | 315.32 | 1,891.93 | (0.00) | 1,891.93 |
| 682. R&R Continuous ridge vent - shingle-over style | 187.03 LF | 10.87 | 64.03 | 419.40 | 2,516.44 | (0.00) | 2,516.44 |
| 683. R&R Drip edge | 1,874.26 LF | 3.21 | 170.09 | 1,237.30 | 7,423.77 | (0.00) | 7,423.77 |
| 684. R&R Gutter / downspout - aluminum - up to 5" | 225.00 LF | 9.32 | 87.99 | 437.00 | 2,621.99 | (0.00) | 2,621.99 |
| 685. Step flashing | 250.00 LF | 10.23 | 33.41 | 518.18 | 3,109.09 | (0.00) | 3,109.09 |
| 686. R&R Valley metal | 76.75 LF | 6.54 | 12.85 | 102.98 | 617.78 | (0.00) | 617.78 |
| 687. R&R Chimney flashing - average (32" x 36") | 10.00 EA | 448.20 | 76.72 | 911.74 | 5,470.46 | (0.00) | 5,470.46 |
| 688. R&R Flashing - pipe jack - lead | 17.00 EA | 89.27 | 65.33 | 316.58 | 1,899.50 | (0.00) | 1,899.50 |
| 689. R&R Exhaust cap - through roof - 6" to 8" | 7.00 EA | 110.15 | 25.79 | 159.38 | 956.22 | (0.00) | 956.22 |
| 690. R&R Furnace vent - rain cap and storm collar, 6" | 7.00 EA | 87.45 | 18.08 | 126.06 | 756.29 | (0.00) | 756.29 |
| 691. R&R Furnace vent - rain cap and storm collar, 8" | 23.00 EA | 94.40 | 72.60 | 448.76 | 2,692.56 | (0.00) | 2,692.56 |
| 692. R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 693. Prime & paint roof vent | 55.00 EA | 34.45 | 30.76 | 385.12 | 2,310.63 | (0.00) | 2,310.63 |
| 694. Remove Additional charge for high roof (2 stories or greater) | 131.00 SQ | 6.51 | 0.00 | 170.56 | 1,023.37 | (0.00) | 1,023.37 |
| 695. Additional charge for high roof (2 stories or greater) | 131.00 SQ | 21.03 | 0.00 | 550.98 | 3,305.91 | (0.00) | 3,305.91 |
| 696. Remove Additional charge for steep roof greater than 12/12 slope | 13.00 SQ | 33.59 | 0.00 | 87.34 | 524.01 | (0.00) | 524.01 |
| 697. Additional charge for steep roof greater than 12/12 slope | 13.00 SQ | 94.65 | 0.00 | 246.10 | 1,476.55 | (0.00) | 1,476.55 |
| 698. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,874.26 SF | 0.77 | 0.00 | 288.64 | 1,731.82 | (0.00) | 1,731.82 |
| 699. Telehandler/forklift and operator | 56.00 HR | 120.38 | 0.00 | 1,348.26 | 8,089.54 | (0.00) | 8,089.54 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 700. Two ladders with jacks and plank (per day) | 7.00 DA | 109.66 | 0.00 | 153.52 | 921.14 | (0.00) | 921.14 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 2,458.80 | 19,667.50 | 118,004.56 | 0.00 | 118,004.56 |



**Roof12**

1122.85  Surface Area       11.23  Number of Squares
152.29  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 701. R&R Modified bitumen roof | 11.23 SQ | 435.89 | 100.41 | 999.08 | 5,994.54 | (0.00) | 5,994.54 |
| 702. Roofing felt - synthetic underlayment | 11.23 SQ | 45.28 | 16.89 | 105.08 | 630.46 | (0.00) | 630.46 |
| 703. R&R Drip edge | 152.29 LF | 3.21 | 13.82 | 100.52 | 603.19 | (0.00) | 603.19 |
| 704. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 705. Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof12** | | | 148.72 | 1,388.38 | 8,330.41 | 0.00 | 8,330.41 |



**Roof13**

151.78  Surface Area       1.52  Number of Squares
49.29  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 706. R&R Modified bitumen roof | 1.52 SQ | 435.89 | 13.59 | 135.24 | 811.38 | (0.00) | 811.38 |
| 707. Roofing felt - synthetic underlayment | 1.52 SQ | 45.28 | 2.29 | 14.22 | 85.34 | (0.00) | 85.34 |
| 708. R&R Drip edge | 49.29 LF | 3.21 | 4.47 | 32.54 | 195.23 | (0.00) | 195.23 |
| 709. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 710. Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |



**CONTINUED - Roof13**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals: Roof13** | | | 37.95 | 317.56 | 1,905.27 | 0.00 | 1,905.27 |
| **Total: Roof DD** | | | 2,645.47 | 21,373.44 | 128,240.24 | 0.00 | 128,240.24 |
| **Total: Roof DD** | | | 2,645.47 | 21,373.44 | 128,240.24 | 0.00 | 128,240.24 |

**Roof EE**

**Roof EE**



**Roof1**

8826.58 Surface Area     88.27 Number of Squares
1006.14 Total Perimeter Length     123.00 Total Ridge Length
14.74 Total Hip Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 711.  Remove Laminated - comp. shingle rfg. - w/out felt | 88.26 SQ | 67.86 | 0.00 | 1,197.86 | 7,187.18 | (0.00) | 7,187.18 |
| 712.  Laminated - comp. shingle rfg. - w/out felt | 97.33 SQ | 259.91 | 1,052.94 | 5,269.98 | 31,619.96 | (0.00) | 31,619.96 |
| 713.  Roofing felt - 30 lb. | 88.26 SQ | 39.13 | 87.96 | 708.32 | 4,249.89 | (0.00) | 4,249.89 |
| 714.  Asphalt starter - universal starter course | 1,006.14 LF | 2.01 | 43.16 | 413.10 | 2,478.60 | (0.00) | 2,478.60 |
| 715.  R&R Hip / Ridge cap - composition shingles | 123.00 LF | 7.48 | 13.09 | 186.64 | 1,119.77 | (0.00) | 1,119.77 |
| 716.  R&R Continuous ridge vent - shingle-over style | 110.70 LF | 10.87 | 37.90 | 248.24 | 1,489.45 | (0.00) | 1,489.45 |
| 717.  R&R Drip edge | 1,006.14 LF | 3.21 | 91.31 | 664.20 | 3,985.22 | (0.00) | 3,985.22 |
| 718.  R&R Gutter / downspout - aluminum - up to 5" | 200.00 LF | 9.32 | 78.21 | 388.44 | 2,330.65 | (0.00) | 2,330.65 |
| 719.  Step flashing | 250.00 LF | 10.23 | 33.41 | 518.18 | 3,109.09 | (0.00) | 3,109.09 |
| 720.  R&R Valley metal | 0.17 LF | 6.54 | 0.03 | 0.22 | 1.36 | (0.00) | 1.36 |
| 721.  R&R Chimney flashing - average (32" x 36") | 5.00 EA | 448.20 | 38.36 | 455.90 | 2,735.26 | (0.00) | 2,735.26 |
| 722.  R&R Flashing - pipe jack - lead | 7.00 EA | 89.27 | 26.90 | 130.36 | 782.15 | (0.00) | 782.15 |
| 723.  R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |

TANGLEGROVE_CONDO_AS



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 724. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 725. R&R Furnace vent - rain cap and storm collar, 8" | 16.00 EA | 94.40 | 50.50 | 312.18 | 1,873.08 | (0.00) | 1,873.08 |
| 726. Prime & paint roof vent | 27.00 EA | 34.45 | 15.10 | 189.06 | 1,134.31 | (0.00) | 1,134.31 |
| 727. Remove Additional charge for high roof (2 stories or greater) | 88.26 SQ | 6.51 | 0.00 | 114.92 | 689.49 | (0.00) | 689.49 |
| 728. Additional charge for high roof (2 stories or greater) | 88.26 SQ | 21.03 | 0.00 | 371.22 | 2,227.33 | (0.00) | 2,227.33 |
| 729. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,006.14 SF | 0.77 | 0.00 | 154.94 | 929.67 | (0.00) | 929.67 |
| 730. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 731. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Vinyl Siding** | | | | | | | |
| 732. R&R Siding - vinyl | 72.00 SF | 4.97 | 11.40 | 73.86 | 443.10 | (0.00) | 443.10 |
| 733. R&R Vinyl J trim | 24.00 LF | 4.92 | 1.50 | 23.92 | 143.50 | (0.00) | 143.50 |
| 734. Detach & Reset Fascia - metal - 8" | 12.00 LF | 3.49 | 0.02 | 8.38 | 50.28 | (0.00) | 50.28 |
| **Totals: Roof1** | | | **1,595.42** | **12,588.94** | **75,533.39** | **0.00** | **75,533.39** |
| **Total: Roof EE** | | | **1,595.42** | **12,588.94** | **75,533.39** | **0.00** | **75,533.39** |
| **Total: Roof EE** | | | **1,595.42** | **12,588.94** | **75,533.39** | **0.00** | **75,533.39** |

**Roof FF**

**Roof FF**



**Roof1**

| 8543.45 Surface Area | 85.43 Number of Squares |
|---|---|
| 985.51 Total Perimeter Length | 137.50 Total Ridge Length |
| 14.74 Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 735. Remove Laminated - comp. shingle rfg. - w/out felt | 85.43 SQ | 67.86 | 0.00 | 1,159.46 | 6,956.74 | (0.00) | 6,956.74 |



## CONTINUED - Roof1

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 736. Laminated - comp. shingle rfg. - w/out felt | 94.00 SQ | 259.91 | 1,016.91 | 5,089.68 | 30,538.13 | (0.00) | 30,538.13 |
| 737. Roofing felt - 30 lb. | 85.43 SQ | 39.13 | 85.14 | 685.60 | 4,113.62 | (0.00) | 4,113.62 |
| 738. Asphalt starter - universal starter course | 985.51 LF | 2.01 | 42.28 | 404.64 | 2,427.80 | (0.00) | 2,427.80 |
| 739. R&R Hip / Ridge cap - composition shingles | 137.50 LF | 7.48 | 14.63 | 208.62 | 1,251.75 | (0.00) | 1,251.75 |
| 740. R&R Continuous ridge vent - shingle-over style | 123.75 LF | 10.87 | 42.37 | 277.52 | 1,665.05 | (0.00) | 1,665.05 |
| 741. R&R Drip edge | 985.51 LF | 3.21 | 89.43 | 650.58 | 3,903.50 | (0.00) | 3,903.50 |
| 742. R&R Gutter / downspout - aluminum - up to 5" | 200.00 LF | 9.32 | 78.21 | 388.44 | 2,330.65 | (0.00) | 2,330.65 |
| 743. Step flashing | 250.00 LF | 10.23 | 33.41 | 518.18 | 3,109.09 | (0.00) | 3,109.09 |
| 744. R&R Valley metal | 0.17 LF | 6.54 | 0.03 | 0.22 | 1.36 | (0.00) | 1.36 |
| 745. R&R Chimney flashing - average (32" x 36") | 5.00 EA | 448.20 | 38.36 | 455.90 | 2,735.26 | (0.00) | 2,735.26 |
| 746. R&R Flashing - pipe jack - lead | 8.00 EA | 89.27 | 30.74 | 148.98 | 893.88 | (0.00) | 893.88 |
| 747. R&R Exhaust cap - through roof - 6" to 8" | 2.00 EA | 110.15 | 7.37 | 45.54 | 273.21 | (0.00) | 273.21 |
| 748. R&R Furnace vent - rain cap and storm collar, 6" | 1.00 EA | 87.45 | 2.58 | 18.02 | 108.05 | (0.00) | 108.05 |
| 749. R&R Furnace vent - rain cap and storm collar, 8" | 19.00 EA | 94.40 | 59.97 | 370.72 | 2,224.29 | (0.00) | 2,224.29 |
| 750. Prime & paint roof vent | 30.00 EA | 34.45 | 16.78 | 210.06 | 1,260.34 | (0.00) | 1,260.34 |
| 751. Remove Additional charge for high roof (2 stories or greater) | 85.53 SQ | 6.51 | 0.00 | 111.36 | 668.16 | (0.00) | 668.16 |
| 752. Additional charge for high roof (2 stories or greater) | 85.43 SQ | 21.03 | 0.00 | 359.32 | 2,155.91 | (0.00) | 2,155.91 |
| 753. Install Tarp - all-purpose poly - per sq ft (labor and material) | 985.51 SF | 0.77 | 0.00 | 151.76 | 910.60 | (0.00) | 910.60 |
| 754. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 755. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals: Roof1** | | | 1,558.21 | 12,327.30 | 73,963.59 | 0.00 | 73,963.59 |
| **Total: Roof FF** | | | 1,558.21 | 12,327.30 | 73,963.59 | 0.00 | 73,963.59 |
| **Total: Roof FF** | | | 1,558.21 | 12,327.30 | 73,963.59 | 0.00 | 73,963.59 |

## Roof GG



**R** RIVERSTONE
BUILDING & CONSULTING

**Roof GG**

**Roof1**



18952.39  Surface Area                    189.52  Number of Squares
2294.10  Total Perimeter Length           577.29  Total Ridge Length
28.96  Total Hip Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 756.  Remove Laminated - comp. shingle rfg. - w/out felt | 189.00 SQ | 67.86 | 0.00 | 2,565.10 | 15,390.64 | (0.00) | 15,390.64 |
| 757.  Laminated - comp. shingle rfg. - w/out felt | 208.00 SQ | 259.91 | 2,250.19 | 11,262.30 | 67,573.77 | (0.00) | 67,573.77 |
| 758.  Roofing felt - 30 lb. | 189.00 SQ | 39.13 | 188.36 | 1,516.80 | 9,100.73 | (0.00) | 9,100.73 |
| 759.  Asphalt starter - universal starter course | 2,294.10 LF | 2.01 | 98.42 | 941.90 | 5,651.46 | (0.00) | 5,651.46 |
| 760.  R&R Hip / Ridge cap - composition shingles | 577.29 LF | 7.48 | 61.44 | 875.90 | 5,255.47 | (0.00) | 5,255.47 |
| 761.  R&R Continuous ridge vent - shingle-over style | 519.56 LF | 10.87 | 177.88 | 1,165.10 | 6,990.59 | (0.00) | 6,990.59 |
| 762.  R&R Drip edge | 2,294.10 LF | 3.21 | 208.19 | 1,514.46 | 9,086.71 | (0.00) | 9,086.71 |
| 763.  R&R Gutter / downspout - aluminum - up to 5" | 350.00 LF | 9.32 | 136.67 | 679.78 | 4,078.65 | (0.00) | 4,078.65 |
| 764.  Step flashing | 359.00 LF | 10.23 | 47.98 | 744.12 | 4,464.67 | (0.00) | 4,464.67 |
| 765.  R&R Valley metal | 179.00 LF | 6.54 | 29.98 | 240.14 | 1,440.78 | (0.00) | 1,440.78 |
| 766.  R&R Chimney flashing - average (32" x 36") | 9.00 EA | 448.20 | 69.05 | 820.58 | 4,923.43 | (0.00) | 4,923.43 |
| 767.  R&R Flashing - pipe jack - lead | 14.00 EA | 89.27 | 53.80 | 260.72 | 1,564.30 | (0.00) | 1,564.30 |
| 768.  R&R Exhaust cap - through roof - 6" to 8" | 10.00 EA | 110.15 | 36.84 | 227.66 | 1,366.00 | (0.00) | 1,366.00 |
| 769.  R&R Furnace vent - rain cap and storm collar, 6" | 10.00 EA | 87.45 | 25.83 | 180.06 | 1,080.39 | (0.00) | 1,080.39 |
| 770.  R&R Furnace vent - rain cap and storm collar, 8" | 25.00 EA | 94.40 | 78.91 | 487.78 | 2,926.69 | (0.00) | 2,926.69 |
| 771.  R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 772.  Prime & paint roof vent | 50.00 EA | 34.45 | 27.97 | 350.10 | 2,100.57 | (0.00) | 2,100.57 |
| 773.  Remove Additional charge for high roof (2 stories or greater) | 189.00 SQ | 6.51 | 0.00 | 246.08 | 1,476.47 | (0.00) | 1,476.47 |
| 774.  Additional charge for high roof (2 stories or greater) | 189.00 SQ | 21.03 | 0.00 | 794.94 | 4,769.61 | (0.00) | 4,769.61 |
| 775.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 2,294.10 SF | 0.77 | 0.00 | 353.30 | 2,119.76 | (0.00) | 2,119.76 |
| 776.  Telehandler/forklift and operator | 80.00 HR | 120.38 | 0.00 | 1,926.08 | 11,556.48 | (0.00) | 11,556.48 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 777.  Two ladders with jacks and plank (per day) | 10.00 DA | 109.66 | 0.00 | 219.32 | 1,315.92 | (0.00) | 1,315.92 |
| **Totals:  Roof1** | | | **3,498.39** | **27,402.86** | **164,416.90** | **0.00** | **164,416.90** |



### Roof3



297.03 Surface Area
48.91 Total Perimeter Length

2.97 Number of Squares

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 778. R&R Modified bitumen roof | 2.97 SQ | 435.89 | 26.56 | 264.24 | 1,585.40 | (0.00) | 1,585.40 |
| 779. Roofing felt - synthetic underlayment | 2.97 SQ | 45.28 | 4.47 | 27.80 | 166.75 | (0.00) | 166.75 |
| 780. R&R Drip edge | 48.91 LF | 3.21 | 4.44 | 32.30 | 193.74 | (0.00) | 193.74 |
| 781. R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 782. Telehandler/forklift and operator | 3.00 HR | 120.38 | 0.00 | 72.22 | 433.36 | (0.00) | 433.36 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals: Roof3** | | | **53.07** | **483.96** | **2,903.65** | **0.00** | **2,903.65** |
| **Total: Roof GG** | | | **3,551.46** | **27,886.82** | **167,320.55** | **0.00** | **167,320.55** |
| **Total: Roof GG** | | | **3,551.46** | **27,886.82** | **167,320.55** | **0.00** | **167,320.55** |

### Roof HH

### Roof HH

### Roof1



19195.36 Surface Area
2331.55 Total Perimeter Length
26.67 Total Hip Length

191.95 Number of Squares
577.22 Total Ridge Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **ROOF COVERING** | | | | | | | |
| 783. Remove Laminated - comp. shingle rfg. - w/out felt | 191.95 SQ | 67.86 | 0.00 | 2,605.14 | 15,630.87 | (0.00) | 15,630.87 |
| 784. Laminated - comp. shingle rfg. - w/out felt | 211.33 SQ | 259.91 | 2,286.22 | 11,442.60 | 68,655.60 | (0.00) | 68,655.60 |
| 785. Roofing felt - 30 lb. | 191.95 SQ | 39.13 | 191.30 | 1,540.46 | 9,242.76 | (0.00) | 9,242.76 |
| 786. Asphalt starter - universal starter course | 2,331.55 LF | 2.01 | 100.02 | 957.28 | 5,743.72 | (0.00) | 5,743.72 |
| 787. R&R Hip / Ridge cap - composition shingles | 577.22 LF | 7.48 | 61.43 | 875.80 | 5,254.83 | (0.00) | 5,254.83 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 788. R&R Continuous ridge vent - shingle-over style | 519.50 LF | 10.87 | 177.86 | 1,164.98 | 6,989.81 | (0.00) | 6,989.81 |
| 789. R&R Drip edge | 2,331.55 LF | 3.21 | 211.59 | 1,539.16 | 9,235.03 | (0.00) | 9,235.03 |
| 790. R&R Gutter / downspout - aluminum - up to 5" | 500.00 LF | 9.32 | 195.53 | 971.10 | 5,826.63 | (0.00) | 5,826.63 |
| 791. Step flashing | 60.00 LF | 10.23 | 8.02 | 124.36 | 746.18 | (0.00) | 746.18 |
| 792. R&R Valley metal | 247.88 LF | 6.54 | 41.51 | 332.54 | 1,995.18 | (0.00) | 1,995.18 |
| 793. R&R Chimney flashing - average (32" x 36") | 9.00 EA | 448.20 | 69.05 | 820.58 | 4,923.43 | (0.00) | 4,923.43 |
| 794. R&R Flashing - pipe jack - lead | 14.00 EA | 89.27 | 53.80 | 260.72 | 1,564.30 | (0.00) | 1,564.30 |
| 795. R&R Exhaust cap - through roof - 6" to 8" | 15.00 EA | 110.15 | 55.25 | 341.52 | 2,049.02 | (0.00) | 2,049.02 |
| 796. R&R Furnace vent - rain cap and storm collar, 6" | 2.00 EA | 87.45 | 5.17 | 36.02 | 216.09 | (0.00) | 216.09 |
| 797. R&R Furnace vent - rain cap and storm collar, 8" | 29.00 EA | 94.40 | 91.54 | 565.82 | 3,394.96 | (0.00) | 3,394.96 |
| 798. R&R Roof vent - turbine type | 2.00 EA | 146.49 | 13.36 | 61.26 | 367.60 | (0.00) | 367.60 |
| 799. Prime & paint roof vent | 62.00 EA | 34.45 | 34.68 | 434.12 | 2,604.70 | (0.00) | 2,604.70 |
| 800. Remove Additional charge for high roof (2 stories or greater) | 191.95 SQ | 6.51 | 0.00 | 249.92 | 1,499.51 | (0.00) | 1,499.51 |
| 801. Additional charge for high roof (2 stories or greater) | 191.95 SQ | 21.03 | 0.00 | 807.34 | 4,844.05 | (0.00) | 4,844.05 |
| 802. Install Tarp - all-purpose poly - per sq ft (labor and material) | 2,331.55 SF | 0.77 | 0.00 | 359.06 | 2,154.35 | (0.00) | 2,154.35 |
| 803. Telehandler/forklift and operator | 80.00 HR | 120.38 | 0.00 | 1,926.08 | 11,556.48 | (0.00) | 11,556.48 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 804. Two ladders with jacks and plank (per day) | 10.00 DA | 109.66 | 0.00 | 219.32 | 1,315.92 | (0.00) | 1,315.92 |
| **Totals: Roof1** | | | **3,596.33** | **27,635.18** | **165,811.02** | **0.00** | **165,811.02** |
| **Total: Roof HH** | | | **3,596.33** | **27,635.18** | **165,811.02** | **0.00** | **165,811.02** |
| **Total: Roof HH** | | | **3,596.33** | **27,635.18** | **165,811.02** | **0.00** | **165,811.02** |

**Roof II**

**Roof II**

**R** RIVERSTONE
BUILDING & CONSULTING



**Roof1**

| | |
|---|---|
| 10232.16  Surface Area | 102.32  Number of Squares |
| 1373.13  Total Perimeter Length | 185.75  Total Ridge Length |
| 86.94  Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 805.  Remove Laminated - comp. shingle rfg. - w/out felt | 95.00 SQ | 67.86 | 0.00 | 1,289.34 | 7,736.04 | (0.00) | 7,736.04 |
| 806.  Laminated - comp. shingle rfg. - w/out felt | 104.67 SQ | 259.91 | 1,132.34 | 5,667.42 | 34,004.54 | (0.00) | 34,004.54 |
| 807.  Roofing felt - 30 lb. | 95.00 SQ | 39.13 | 94.68 | 762.42 | 4,574.45 | (0.00) | 4,574.45 |
| 808.  Asphalt starter - universal starter course | 1,373.13 LF | 2.01 | 58.91 | 563.78 | 3,382.68 | (0.00) | 3,382.68 |
| 809.  R&R Hip / Ridge cap - composition shingles | 272.69 LF | 7.48 | 29.02 | 413.76 | 2,482.50 | (0.00) | 2,482.50 |
| 810.  R&R Continuous ridge vent - shingle-over style | 167.18 LF | 10.87 | 57.24 | 374.90 | 2,249.39 | (0.00) | 2,249.39 |
| 811.  R&R Drip edge | 1,373.13 LF | 3.21 | 124.61 | 906.48 | 5,438.83 | (0.00) | 5,438.83 |
| 812.  R&R Gutter / downspout - aluminum - up to 5" | 249.00 LF | 9.32 | 97.37 | 483.62 | 2,901.67 | (0.00) | 2,901.67 |
| 813.  Step flashing | 165.00 LF | 10.23 | 22.05 | 342.02 | 2,052.02 | (0.00) | 2,052.02 |
| 814.  R&R Valley metal | 90.00 LF | 6.54 | 15.07 | 120.74 | 724.41 | (0.00) | 724.41 |
| 815.  R&R Chimney flashing - average (32" x 36") | 4.00 EA | 448.20 | 30.69 | 364.70 | 2,188.19 | (0.00) | 2,188.19 |
| 816.  R&R Flashing - pipe jack - lead | 3.00 EA | 89.27 | 11.53 | 55.86 | 335.20 | (0.00) | 335.20 |
| 817.  R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |
| 818.  R&R Furnace vent - rain cap and storm collar, 6" | 4.00 EA | 87.45 | 10.33 | 72.02 | 432.15 | (0.00) | 432.15 |
| 819.  R&R Furnace vent - rain cap and storm collar, 8" | 18.00 EA | 94.40 | 56.82 | 351.20 | 2,107.22 | (0.00) | 2,107.22 |
| 820.  R&R Roof vent - turbine type | 2.00 EA | 146.49 | 13.36 | 61.26 | 367.60 | (0.00) | 367.60 |
| 821.  Prime & paint roof vent | 30.00 EA | 34.45 | 16.78 | 210.06 | 1,260.34 | (0.00) | 1,260.34 |
| 822.  Remove Additional charge for high roof (2 stories or greater) | 189.00 SQ | 6.51 | 0.00 | 246.08 | 1,476.47 | (0.00) | 1,476.47 |
| 823.  Additional charge for high roof (2 stories or greater) | 189.00 SQ | 21.03 | 0.00 | 794.94 | 4,769.61 | (0.00) | 4,769.61 |
| 824.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,373.13 SF | 0.77 | 0.00 | 211.46 | 1,268.77 | (0.00) | 1,268.77 |
| 825.  Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 826.  Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals:  Roof1** | | | 1,781.85 | 14,433.06 | 86,598.08 | 0.00 | 86,598.08 |



## Roof5



60.65  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 827.  R&R Modified bitumen roof | 7.00 SQ | 435.89 | 62.59 | 622.78 | 3,736.60 | (0.00) | 3,736.60 |
| 828.  Roofing felt - synthetic underlayment | 7.00 SQ | 45.28 | 10.53 | 65.50 | 392.99 | (0.00) | 392.99 |
| 829.  R&R Drip edge | 60.65 LF | 3.21 | 5.50 | 40.04 | 240.23 | (0.00) | 240.23 |
| 830.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 831.  Telehandler/forklift and operator | 8.00 HR | 120.38 | 0.00 | 192.60 | 1,155.64 | (0.00) | 1,155.64 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| Totals:  Roof5 | | | 96.22 | 1,008.32 | 6,049.86 | 0.00 | 6,049.86 |
|---|---|---|---|---|---|---|---|



## Roof7

178.46  Surface Area　　　　　　1.78  Number of Squares
55.70  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 832.  R&R Modified bitumen roof | 1.78 SQ | 435.89 | 15.92 | 158.36 | 950.16 | (0.00) | 950.16 |
| 833.  Roofing felt - synthetic underlayment | 1.78 SQ | 45.28 | 2.68 | 16.66 | 99.94 | (0.00) | 99.94 |
| 834.  R&R Drip edge | 55.70 LF | 3.21 | 5.05 | 36.78 | 220.63 | (0.00) | 220.63 |
| 835.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 836.  Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| Totals:  Roof7 | | | 41.25 | 347.36 | 2,084.05 | 0.00 | 2,084.05 |
|---|---|---|---|---|---|---|---|
| Total:  Roof II | | | 1,919.32 | 15,788.74 | 94,731.99 | 0.00 | 94,731.99 |
| Total:  Roof II | | | 1,919.32 | 15,788.74 | 94,731.99 | 0.00 | 94,731.99 |

**Roof JJ**



**Roof JJ**



**Roof1**

| | 4300.04  Surface Area | 43.00  Number of Squares |
| --- | --- | --- |
| | 631.89  Total Perimeter Length | 81.00  Total Ridge Length |
| | 42.36  Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 837.  Remove Laminated - comp. shingle rfg. - w/out felt | 41.00 SQ | 67.86 | 0.00 | 556.46 | 3,338.72 | (0.00) | 3,338.72 |
| 838.  Laminated - comp. shingle rfg. - w/out felt | 45.33 SQ | 259.91 | 490.39 | 2,454.42 | 14,726.53 | (0.00) | 14,726.53 |
| 839.  Roofing felt - 30 lb. | 41.00 SQ | 39.13 | 40.86 | 329.04 | 1,974.23 | (0.00) | 1,974.23 |
| 840.  Asphalt starter - universal starter course | 631.89 LF | 2.01 | 27.11 | 259.44 | 1,556.65 | (0.00) | 1,556.65 |
| 841.  R&R Hip / Ridge cap - composition shingles | 123.36 LF | 7.48 | 13.13 | 187.16 | 1,123.02 | (0.00) | 1,123.02 |
| 842.  R&R Continuous ridge vent - shingle-over style | 72.90 LF | 10.87 | 24.96 | 163.48 | 980.87 | (0.00) | 980.87 |
| 843.  R&R Drip edge | 631.89 LF | 3.21 | 57.34 | 417.14 | 2,502.84 | (0.00) | 2,502.84 |
| 844.  R&R Gutter / downspout - aluminum - up to 5" | 120.00 LF | 9.32 | 46.93 | 233.06 | 1,398.39 | (0.00) | 1,398.39 |
| 845.  Step flashing | 60.00 LF | 10.23 | 8.02 | 124.36 | 746.18 | (0.00) | 746.18 |
| 846.  R&R Valley metal | 18.94 LF | 6.54 | 3.17 | 25.40 | 152.44 | (0.00) | 152.44 |
| 847.  R&R Chimney flashing - average (32" x 36") | 2.00 EA | 448.20 | 15.34 | 182.34 | 1,094.08 | (0.00) | 1,094.08 |
| 848.  R&R Flashing - pipe jack - lead | 1.00 EA | 89.27 | 3.84 | 18.62 | 111.73 | (0.00) | 111.73 |
| 849.  R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |
| 850.  R&R Furnace vent - rain cap and storm collar, 8" | 5.00 EA | 94.40 | 15.78 | 97.56 | 585.34 | (0.00) | 585.34 |
| 851.  Prime & paint roof vent | 9.00 EA | 34.45 | 5.03 | 63.02 | 378.10 | (0.00) | 378.10 |
| 852.  Remove Additional charge for high roof (2 stories or greater) | 41.00 SQ | 6.51 | 0.00 | 53.38 | 320.29 | (0.00) | 320.29 |
| 853.  Additional charge for high roof (2 stories or greater) | 41.00 SQ | 21.03 | 0.00 | 172.44 | 1,034.67 | (0.00) | 1,034.67 |
| 854.  Remove Additional charge for steep roof greater than 12/12 slope | 4.50 SQ | 33.59 | 0.00 | 30.24 | 181.40 | (0.00) | 181.40 |
| 855.  Additional charge for steep roof greater than 12/12 slope | 4.50 SQ | 94.65 | 0.00 | 85.18 | 511.11 | (0.00) | 511.11 |
| 856.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 631.89 SF | 0.77 | 0.00 | 97.32 | 583.88 | (0.00) | 583.88 |
| 857.  Telehandler/forklift and operator | 16.00 HR | 120.38 | 0.00 | 385.22 | 2,311.30 | (0.00) | 2,311.30 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 858.  Two ladders with jacks and plank (per day) | 2.00 DA | 109.66 | 0.00 | 43.86 | 263.18 | (0.00) | 263.18 |
| **Totals:  Roof1** | | | **762.95** | **6,047.44** | **36,284.75** | **0.00** | **36,284.75** |



## Roof3



246.71  Surface Area                          2.47  Number of Squares
65.12  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 859.  R&R Modified bitumen roof | 2.47 SQ | 435.89 | 22.09 | 219.76 | 1,318.50 | (0.00) | 1,318.50 |
| 860.  Roofing felt - synthetic underlayment | 2.47 SQ | 45.28 | 3.71 | 23.10 | 138.65 | (0.00) | 138.65 |
| 861.  R&R Drip edge | 65.12 LF | 3.21 | 5.91 | 42.98 | 257.93 | (0.00) | 257.93 |
| 862.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 863.  Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof3** | | | **49.31** | **421.40** | **2,528.40** | **0.00** | **2,528.40** |

## Roof4



224.20  Surface Area                          2.24  Number of Squares
61.37  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 864.  R&R Modified bitumen roof | 2.24 SQ | 435.89 | 20.03 | 199.28 | 1,195.70 | (0.00) | 1,195.70 |
| 865.  Roofing felt - synthetic underlayment | 2.24 SQ | 45.28 | 3.37 | 20.96 | 125.76 | (0.00) | 125.76 |
| 866.  R&R Drip edge | 61.37 LF | 3.21 | 5.57 | 40.52 | 243.09 | (0.00) | 243.09 |
| 867.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 868.  Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof4** | | | **46.57** | **396.32** | **2,377.87** | **0.00** | **2,377.87** |
| **Total:  Roof JJ** | | | **858.83** | **6,865.16** | **41,191.02** | **0.00** | **41,191.02** |
| **Total:  Roof JJ** | | | **858.83** | **6,865.16** | **41,191.02** | **0.00** | **41,191.02** |

### Roof KK



## Roof KK

### Roof1



| | | |
|---|---|---|
| 14724.14 | Surface Area | 147.24 Number of Squares |
| 2054.69 | Total Perimeter Length | 236.22 Total Ridge Length |
| 97.04 | Total Hip Length | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 869. Remove Laminated - comp. shingle rfg. - w/out felt | 147.00 SQ | 67.86 | 0.00 | 1,995.08 | 11,970.50 | (0.00) | 11,970.50 |
| 870. Laminated - comp. shingle rfg. - w/out felt | 162.00 SQ | 259.91 | 1,752.55 | 8,771.60 | 52,629.57 | (0.00) | 52,629.57 |
| 871. Roofing felt - 30 lb. | 147.00 SQ | 39.13 | 146.50 | 1,179.72 | 7,078.33 | (0.00) | 7,078.33 |
| 872. Asphalt starter - universal starter course | 2,054.69 LF | 2.01 | 88.15 | 843.62 | 5,061.70 | (0.00) | 5,061.70 |
| 873. R&R Hip / Ridge cap - composition shingles | 333.25 LF | 7.48 | 35.47 | 505.64 | 3,033.82 | (0.00) | 3,033.82 |
| 874. R&R Continuous ridge vent - shingle-over style | 212.59 LF | 10.87 | 72.79 | 476.74 | 2,860.38 | (0.00) | 2,860.38 |
| 875. R&R Drip edge | 2,054.69 LF | 3.21 | 186.46 | 1,356.40 | 8,138.41 | (0.00) | 8,138.41 |
| 876. R&R Gutter / downspout - aluminum - up to 5" | 400.00 LF | 9.32 | 156.42 | 776.88 | 4,661.30 | (0.00) | 4,661.30 |
| 877. Step flashing | 250.00 LF | 10.23 | 33.41 | 518.18 | 3,109.09 | (0.00) | 3,109.09 |
| 878. R&R Valley metal | 90.00 LF | 6.54 | 15.07 | 120.74 | 724.41 | (0.00) | 724.41 |
| 879. R&R Chimney flashing - average (32" x 36") | 10.00 EA | 448.20 | 76.72 | 911.74 | 5,470.46 | (0.00) | 5,470.46 |
| 880. R&R Flashing - pipe jack - lead | 10.00 EA | 89.27 | 38.43 | 186.22 | 1,117.35 | (0.00) | 1,117.35 |
| 881. R&R Exhaust cap - through roof - 6" to 8" | 14.00 EA | 110.15 | 51.57 | 318.74 | 1,912.41 | (0.00) | 1,912.41 |
| 882. R&R Furnace vent - rain cap and storm collar, 6" | 13.00 EA | 87.45 | 33.58 | 234.10 | 1,404.53 | (0.00) | 1,404.53 |
| 883. R&R Furnace vent - rain cap and storm collar, 8" | 14.00 EA | 94.40 | 44.19 | 273.16 | 1,638.95 | (0.00) | 1,638.95 |
| 884. R&R Roof vent - turbine type | 1.00 EA | 146.49 | 6.68 | 30.64 | 183.81 | (0.00) | 183.81 |
| 885. R&R Power attic vent cover only - metal | 2.00 EA | 108.87 | 5.01 | 44.56 | 267.31 | (0.00) | 267.31 |
| 886. Prime & paint roof vent | 54.00 EA | 34.45 | 30.20 | 378.10 | 2,268.60 | (0.00) | 2,268.60 |
| 887. Remove Additional charge for high roof (2 stories or greater) | 147.00 SQ | 6.51 | 0.00 | 191.40 | 1,148.37 | (0.00) | 1,148.37 |
| 888. Additional charge for high roof (2 stories or greater) | 147.00 SQ | 21.03 | 0.00 | 618.28 | 3,709.69 | (0.00) | 3,709.69 |
| 889. Additional charge for steep roof greater than 12/12 slope | 12.00 SQ | 94.65 | 0.00 | 227.16 | 1,362.96 | (0.00) | 1,362.96 |
| 890. Remove Additional charge for steep roof greater than 12/12 slope | 12.00 SQ | 33.59 | 0.00 | 80.62 | 483.70 | (0.00) | 483.70 |
| 891. Install Tarp - all-purpose poly - per sq ft (labor and material) | 2,054.69 SF | 0.77 | 0.00 | 316.42 | 1,898.53 | (0.00) | 1,898.53 |
| 892. Telehandler/forklift and operator | 56.00 HR | 120.38 | 0.00 | 1,348.26 | 8,089.54 | (0.00) | 8,089.54 |

EXHIBIT A - Page 278 of 320



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 893.  Two ladders with jacks and plank (per day) | 13.00 DA | 109.66 | 0.00 | 285.12 | 1,710.70 | (0.00) | 1,710.70 |
| **Totals:  Roof1** | | | **2,773.20** | **21,989.12** | **131,934.42** | **0.00** | **131,934.42** |



**Roof13**

1122.85  Surface Area       11.23  Number of Squares
152.29  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 894.  R&R Modified bitumen roof | 11.23 SQ | 435.89 | 100.41 | 999.08 | 5,994.54 | (0.00) | 5,994.54 |
| 895.  Roofing felt - synthetic underlayment | 11.23 SQ | 45.28 | 16.89 | 105.08 | 630.46 | (0.00) | 630.46 |
| 896.  R&R Drip edge | 152.29 LF | 3.21 | 13.82 | 100.52 | 603.19 | (0.00) | 603.19 |
| 897.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 898.  Telehandler/forklift and operator | 4.00 HR | 120.38 | 0.00 | 96.30 | 577.82 | (0.00) | 577.82 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| **Totals:  Roof13** | | | **148.72** | **1,388.38** | **8,330.41** | **0.00** | **8,330.41** |



**Roof14**

151.78  Surface Area       1.52  Number of Squares
49.29  Total Perimeter Length

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 899.  R&R Modified bitumen roof | 1.52 SQ | 435.89 | 13.59 | 135.24 | 811.38 | (0.00) | 811.38 |
| 900.  Roofing felt - synthetic underlayment | 1.52 SQ | 45.28 | 2.29 | 14.22 | 85.34 | (0.00) | 85.34 |

TANGLEGROVE_CONDO_AS



**CONTINUED - Roof14**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 901.  R&R Drip edge | 49.29 LF | 3.21 | 4.47 | 32.54 | 195.23 | (0.00) | 195.23 |
| 902.  R&R Gutter / downspout - aluminum - up to 5" | 45.00 LF | 9.32 | 17.60 | 87.40 | 524.40 | (0.00) | 524.40 |
| 903.  Telehandler/forklift and operator | 2.00 HR | 120.38 | 0.00 | 48.16 | 288.92 | (0.00) | 288.92 |

**Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Totals:  Roof14** | | | **37.95** | **317.56** | **1,905.27** | **0.00** | **1,905.27** |
| **Total:  Roof KK** | | | **2,959.87** | **23,695.06** | **142,170.10** | **0.00** | **142,170.10** |
| **Total:  Roof KK** | | | **2,959.87** | **23,695.06** | **142,170.10** | **0.00** | **142,170.10** |

**Roof LL**

**Roof LL**

**Roof1**



| | | |
|---|---|---|
| 8826.58  Surface Area | | 88.27  Number of Squares |
| 1006.14  Total Perimeter Length | | 123.00  Total Ridge Length |
| 14.74  Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 904.  Remove Laminated - comp. shingle rfg. - w/out felt | 88.26 SQ | 67.86 | 0.00 | 1,197.86 | 7,187.18 | (0.00) | 7,187.18 |
| 905.  Laminated - comp. shingle rfg. - w/out felt | 97.33 SQ | 259.91 | 1,052.94 | 5,269.98 | 31,619.96 | (0.00) | 31,619.96 |
| 906.  Roofing felt - 30 lb. | 88.26 SQ | 39.13 | 87.96 | 708.32 | 4,249.89 | (0.00) | 4,249.89 |
| 907.  Asphalt starter - universal starter course | 1,006.14 LF | 2.01 | 43.16 | 413.10 | 2,478.60 | (0.00) | 2,478.60 |
| 908.  R&R Hip / Ridge cap - composition shingles | 123.00 LF | 7.48 | 13.09 | 186.64 | 1,119.77 | (0.00) | 1,119.77 |
| 909.  R&R Continuous ridge vent - shingle-over style | 110.70 LF | 10.87 | 37.90 | 248.24 | 1,489.45 | (0.00) | 1,489.45 |
| 910.  R&R Drip edge | 1,006.14 LF | 3.21 | 91.31 | 664.20 | 3,985.22 | (0.00) | 3,985.22 |
| 911.  R&R Gutter / downspout - aluminum - up to 5" | 200.00 LF | 9.32 | 78.21 | 388.44 | 2,330.65 | (0.00) | 2,330.65 |
| 912.  Step flashing | 250.00 LF | 10.23 | 33.41 | 518.18 | 3,109.09 | (0.00) | 3,109.09 |
| 913.  R&R Valley metal | 0.17 LF | 6.54 | 0.03 | 0.22 | 1.36 | (0.00) | 1.36 |



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 914. R&R Chimney flashing - average (32" x 36") | 5.00 EA | 448.20 | 38.36 | 455.90 | 2,735.26 | (0.00) | 2,735.26 |
| 915. R&R Flashing - pipe jack - lead | 7.00 EA | 89.27 | 26.90 | 130.36 | 782.15 | (0.00) | 782.15 |
| 916. R&R Exhaust cap - through roof - 6" to 8" | 5.00 EA | 110.15 | 18.42 | 113.84 | 683.01 | (0.00) | 683.01 |
| 917. R&R Furnace vent - rain cap and storm collar, 6" | 5.00 EA | 87.45 | 12.92 | 90.04 | 540.21 | (0.00) | 540.21 |
| 918. R&R Furnace vent - rain cap and storm collar, 8" | 14.00 EA | 94.40 | 44.19 | 273.16 | 1,638.95 | (0.00) | 1,638.95 |
| 919. Prime & paint roof vent | 31.00 EA | 34.45 | 17.34 | 217.06 | 1,302.35 | (0.00) | 1,302.35 |
| 920. Remove Additional charge for high roof (2 stories or greater) | 88.26 SQ | 6.51 | 0.00 | 114.92 | 689.49 | (0.00) | 689.49 |
| 921. Additional charge for high roof (2 stories or greater) | 88.26 SQ | 21.03 | 0.00 | 371.22 | 2,227.33 | (0.00) | 2,227.33 |
| 922. Install Tarp - all-purpose poly - per sq ft (labor and material) | 1,006.14 SF | 0.77 | 0.00 | 154.94 | 929.67 | (0.00) | 929.67 |
| 923. Telehandler/forklift and operator | 40.00 HR | 120.38 | 0.00 | 963.04 | 5,778.24 | (0.00) | 5,778.24 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 924. Two ladders with jacks and plank (per day) | 5.00 DA | 109.66 | 0.00 | 109.66 | 657.96 | (0.00) | 657.96 |
| **Totals: Roof1** | | | **1,596.14** | **12,589.32** | **75,535.79** | **0.00** | **75,535.79** |
| **Total: Roof LL** | | | **1,596.14** | **12,589.32** | **75,535.79** | **0.00** | **75,535.79** |
| **Total: Roof LL** | | | **1,596.14** | **12,589.32** | **75,535.79** | **0.00** | **75,535.79** |

**Roof MM**

**Roof MM**

**Roof1**



| 6902.08 | Surface Area | 69.02 | Number of Squares |
|---|---|---|---|
| 799.98 | Total Perimeter Length | 127.75 | Total Ridge Length |
| 14.68 | Total Hip Length | | |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 925. Remove Laminated - comp. shingle rfg. - w/out felt | 69.02 SQ | 67.86 | 0.00 | 936.74 | 5,620.44 | (0.00) | 5,620.44 |

TANGLEGROVE_CONDO_AS



**CONTINUED - Roof1**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 926.  Laminated - comp. shingle rfg. - w/out felt | 76.00 SQ | 259.91 | 822.19 | 4,115.08 | 24,690.43 | (0.00) | 24,690.43 |
| 927.  Roofing felt - 30 lb. | 69.02 SQ | 39.13 | 68.79 | 553.92 | 3,323.46 | (0.00) | 3,323.46 |
| 928.  Asphalt starter - universal starter course | 799.98 LF | 2.01 | 34.32 | 328.46 | 1,970.74 | (0.00) | 1,970.74 |
| 929.  R&R Hip / Ridge cap - composition shingles | 142.43 LF | 7.48 | 15.16 | 216.12 | 1,296.66 | (0.00) | 1,296.66 |
| 930.  R&R Continuous ridge vent - shingle-over style | 114.98 LF | 10.87 | 39.37 | 257.86 | 1,547.06 | (0.00) | 1,547.06 |
| 931.  R&R Drip edge | 799.98 LF | 3.21 | 72.60 | 528.10 | 3,168.63 | (0.00) | 3,168.63 |
| 932.  R&R Gutter / downspout - aluminum - up to 5" | 120.00 LF | 9.32 | 46.93 | 233.06 | 1,398.39 | (0.00) | 1,398.39 |
| 933.  Step flashing | 100.00 LF | 10.23 | 13.37 | 207.28 | 1,243.65 | (0.00) | 1,243.65 |
| 934.  R&R Chimney flashing - average (32" x 36") | 4.00 EA | 448.20 | 30.69 | 364.70 | 2,188.19 | (0.00) | 2,188.19 |
| 935.  R&R Flashing - pipe jack - lead | 9.00 EA | 89.27 | 34.59 | 167.60 | 1,005.62 | (0.00) | 1,005.62 |
| 936.  R&R Exhaust cap - through roof - 6" to 8" | 3.00 EA | 110.15 | 11.05 | 68.30 | 409.80 | (0.00) | 409.80 |
| 937.  R&R Furnace vent - rain cap and storm collar, 6" | 4.00 EA | 87.45 | 10.33 | 72.02 | 432.15 | (0.00) | 432.15 |
| 938.  R&R Furnace vent - rain cap and storm collar, 8" | 12.00 EA | 94.40 | 37.88 | 234.14 | 1,404.82 | (0.00) | 1,404.82 |
| 939.  R&R Power attic vent cover only - metal | 1.00 EA | 108.87 | 2.51 | 22.28 | 133.66 | (0.00) | 133.66 |
| 940.  Prime & paint roof vent | 29.00 EA | 34.45 | 16.22 | 203.06 | 1,218.33 | (0.00) | 1,218.33 |
| 941.  Remove Additional charge for high roof (2 stories or greater) | 69.02 SQ | 6.51 | 0.00 | 89.86 | 539.18 | (0.00) | 539.18 |
| 942.  Additional charge for high roof (2 stories or greater) | 69.02 SQ | 21.03 | 0.00 | 290.30 | 1,741.79 | (0.00) | 1,741.79 |
| 943.  Remove Additional charge for steep roof greater than 12/12 slope | 4.50 SQ | 33.59 | 0.00 | 30.24 | 181.40 | (0.00) | 181.40 |
| 944.  Additional charge for steep roof greater than 12/12 slope | 4.50 SQ | 94.65 | 0.00 | 85.18 | 511.11 | (0.00) | 511.11 |
| 945.  Install Tarp - all-purpose poly - per sq ft (labor and material) | 799.98 SF | 0.77 | 0.00 | 123.20 | 739.18 | (0.00) | 739.18 |
| 946.  Telehandler/forklift and operator | 32.00 HR | 120.38 | 0.00 | 770.44 | 4,622.60 | (0.00) | 4,622.60 |
| **Required to safely lift and place roofing material, tools, and other items off of trailer and onto the roof/ladder jacks/platforms.** | | | | | | | |
| 947.  Two ladders with jacks and plank (per day) | 4.00 DA | 109.66 | 0.00 | 87.72 | 526.36 | (0.00) | 526.36 |
| **Totals:  Roof1** | | | **1,256.00** | **9,985.66** | **59,913.65** | **0.00** | **59,913.65** |
| **Total:  Roof MM** | | | **1,256.00** | **9,985.66** | **59,913.65** | **0.00** | **59,913.65** |
| **Total:  Roof MM** | | | **1,256.00** | **9,985.66** | **59,913.65** | **0.00** | **59,913.65** |



### Carport

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 948. Roofing (Bid Item) | 1.00 EA | 1,750.00 | 59.19 | 361.84 | 2,171.03 | (0.00) | 2,171.03 |
| **Per contractor invoice.** | | | | | | | |
| **Totals: Carport** | | | **59.19** | **361.84** | **2,171.03** | **0.00** | **2,171.03** |

### General Conditions

### Debris Removal

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 949. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 21.00 EA | 751.68 | 0.00 | 3,157.06 | 18,942.34 | (0.00) | 18,942.34 |
| Buildings with 8 + units | | | | | | | |
| 950. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 13.00 EA | 652.32 | 0.00 | 1,696.04 | 10,176.20 | (0.00) | 10,176.20 |
| Buildings with 6-8 units | | | | | | | |
| 951. Dumpster load - Approx. 20 yards, 4 tons of debris | 4.00 EA | 578.54 | 0.00 | 462.84 | 2,777.00 | (0.00) | 2,777.00 |
| Units with 5 or less units | | | | | | | |
| 952. General clean - up | 223.00 HR | 47.78 | 1,055.04 | 2,131.02 | 13,841.00 | (0.00) | 13,841.00 |
| **223 days of construction X .5 hours x 2 workers** | | | | | | | |
| **Totals: Debris Removal** | | | **1,055.04** | **7,446.96** | **45,736.54** | **0.00** | **45,736.54** |

### Portage

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 953. Roofing - General Laborer - per hour | 304.00 HR | 44.71 | 0.00 | 2,718.36 | 16,310.20 | (0.00) | 16,310.20 |
| Allowance for workers to transport shingle debris from buildings to dumpster due to accessibility | | | | | | | |
| **Totals: Portage** | | | **0.00** | **2,718.36** | **16,310.20** | **0.00** | **16,310.20** |

### Supervision

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 954. Commercial Supervision / Project Management - per hour | 480.00 HR | 75.71 | 0.00 | 7,268.16 | 43,608.96 | (0.00) | 43,608.96 |
| **10 hours a week x 6 months.** | | | | | | | |



CONTINUED - Supervision

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| **Totals:  Supervision** | | | **0.00** | **7,268.16** | **43,608.96** | **0.00** | **43,608.96** |

### Specialty

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 955.  Delivery charge construction materials* | 1.00 EA | 5,000.00 | 0.00 | 1,000.00 | 6,000.00 | (0.00) | 6,000.00 |
| **Per delivery of materials to jobsite.** | | | | | | | |
| 956.  Material Only Sheathing - plywood - 3/4" CDX | 4,864.00 SF | 1.72 | 690.20 | 1,811.26 | 10,867.54 | (0.00) | 10,867.54 |
| **Four sheets of plywood under the dumpster to protect the driveway. 38 dumpsters.** | | | | | | | |
| 957.  Temporary toilet (per month) | 24.00 MO | 197.07 | 0.00 | 945.94 | 5,675.62 | (0.00) | 5,675.62 |
| **4 toilets @ 6 months.** | | | | | | | |
| 958.  Barricade and warning device - setup and takedown | 40.00 HR | 65.08 | 0.00 | 520.64 | 3,123.84 | (0.00) | 3,123.84 |
| 959.  Traffic cones (per unit, per day) | 2,400.00 DA | 0.83 | 0.00 | 398.40 | 2,390.40 | (0.00) | 2,390.40 |
| **50 traffic cones @223 days.** | | | | | | | |
| 960.  Temporary fencing - 5-8 months (per month) | 7,800.00 LF | 0.98 | 0.00 | 1,528.80 | 9,172.80 | (0.00) | 9,172.80 |
| **200 LF per building @ 38 buildings** | | | | | | | |
| **Totals:  Specialty** | | | **690.20** | **6,205.04** | **37,230.20** | **0.00** | **37,230.20** |

### Permitting

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 961.  Taxes, insurance, permits & fees (Bid Item) | 38.00 EA | 225.00 | 0.00 | 0.00 | 8,550.00 | (0.00) | 8,550.00 |
| **Cost as incurred.** | | | | | | | |
| **Totals:  Permitting** | | | **0.00** | **0.00** | **8,550.00** | **0.00** | **8,550.00** |

### Stoarge

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|



**CONTINUED - Stoarge**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 962. Job-site cargo/storage container - 20' long - per month | 17.00 MO | 87.83 | 123.18 | 323.26 | 1,939.55 | (0.00) | 1,939.55 |
| Allowance for buildings with 5 or less units | | | | | | | |
| 963. Job-site cargo/storage container - 40' long - per month | 31.00 MO | 115.84 | 296.26 | 777.46 | 4,664.76 | (0.00) | 4,664.76 |
| Allowance for buildings with 6 or more units | | | | | | | |
| 964. Job-site cargo container - pick up/del. (each way) 16'-40' | 76.00 EA | 99.40 | 623.24 | 1,635.52 | 9,813.16 | (0.00) | 9,813.16 |
| Allowance to secure materials and tools | | | | | | | |
| **Totals: Stoarge** | | | **1,042.68** | **2,736.24** | **16,417.47** | **0.00** | **16,417.47** |
| **Total: General Conditions** | | | **2,787.92** | **26,374.76** | **167,853.37** | **0.00** | **167,853.37** |

**Labor Minimums Applied**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 965. Framing labor minimum | 1.00 EA | 197.84 | 0.00 | 39.56 | 237.40 | (0.00) | 237.40 |
| **Totals: Labor Minimums Applied** | | | **0.00** | **39.56** | **237.40** | **0.00** | **237.40** |
| **Line Item Totals: TANGLEGROVE_CONDO_AS** | | | **76,154.42** | **608,902.20** | **3,663,007.80** | **0.00** | **3,663,007.80** |

## Grand Total Areas:

| | | | |
|---|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling | |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter | |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter | |
| | | | |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area | |
| 164,412.24 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | | |
| | | | |
| 409,395.87 Surface Area | 4,093.96 Number of Squares | 50,737.61 Total Perimeter Length | |
| 8,687.26 Total Ridge Length | 1,127.43 Total Hip Length | | |



| Coverage | Item Total | % | ACV Total | % |
|---|---:|---:|---:|---:|
| Dwelling | 0.00 | 0.00% | 0.00 | 0.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Building | 3,663,007.80 | 100.00% | 3,663,007.80 | 100.00% |
| Total | 3,663,007.80 | 100.00% | 3,663,007.80 | 100.00% |



## Summary for Building

| | |
|---|---:|
| Line Item Total | 2,977,951.18 |
| Material Sales Tax | 74,033.05 |
| Cleaning Mtl Tax | 0.18 |
| Storage Rental Tax | 1,066.33 |
| Subtotal | 3,053,050.74 |
| Overhead | 304,451.10 |
| Profit | 304,451.10 |
| Cleaning Sales Tax | 1,054.86 |
| **Replacement Cost Value** | **$3,663,007.80** |
| **Net Claim** | **$3,663,007.80** |

_____

Carl Johnson

# Exhibit 3

CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 61st JUDICIAL DISTRICT |
| | § | |
| JOURNEY INSURANCE COMPANY AND | § | |
| STANLEY GLENN CULPEPPER | § | HARRIS COUNTY, TEXAS |

## <u>AFFIDAVIT OF SHANNON E. LOYD</u>

BEFORE ME, a notary public in and for the State of Washington, on this day personally appeared Shannon E. Loyd, known to me to be the person whose name is subscribed below, who being by me duly sworn, upon oath deposes and says:

1.  "My name is Shannon E. Loyd. I am over the age of eighteen, have never been convicted of a felony or crime of moral turpitude and am fully competent in all respects to make this affidavit. I have personal knowledge of the facts set forth herein, and they are true and correct.

2.  I am the co-owner of the Loyd & Pollom, PLLC in San Antonio, Bexar County, Texas. I have been licensed to practice law in Texas since November 2004 and have always been a member in good standing of the State Bar of Texas. I am board certified in consumer and commercial law by the Texas Board of Legal Specialization. I am the attorney representing Tanglegrove TH Condo Association in the above referenced case.

3.  My billing rate is $550 an hour. The total amount of attorneys' fees for our work pursuing this case against Defendant Journey Insurance Company up to the date of this affidavit totals $30,250.00. The Court can take judicial notice that court costs incurred up to the time of payment total $588.00. The fees are based upon 55 hours spent by Ms. Loyd pursuing Plaintiff's case against only Defendant Journey Insurance Company including: meetings with the client, conducting investigation in to case and parties involved, researching coverage, researching causes of action, filing Plaintiff's petition, reviewing correspondence from Defendant, drafting correspondence to Defendant, communicating with Plaintiff's public adjuster and experts, drafting default motion and affidavit for damages and attorneys' fees. Should a hearing be required, Plaintiff's attorneys' fees will increase.

4.  Should Defendant appeal the judgment to the Court of Appeals, the necessary and reasonable attorneys' fees to respond to such appeal would be $20,000.00 based on past appeals Ms. Loyd has handled. In the event of a petition to the Supreme Court of Texas, the necessary and reasonable attorneys' fees to respond would be $20,000.00, and attorneys' fees of $10,000.00 would be necessary and reasonable for full briefing to the Supreme Court of Texas.

5.     Having practiced law in Central, East, West and South Texas since 2004, I am familiar with the range of billing rates for legal services rendered by attorneys possessing my experience, skill, knowledge, reputation, and background. I am also familiar with the customary time expended for the tasks described above. I have personally handled the prosecution of this case since its inception. All the work performed on the file has been necessary and reasonable work for professional representation in the prosecution of this suit against Defendant, Journey Insurance Company.

6.     The fees charged in this case are well within the parameters of the customarily charged fee in Harris County, Texas for similar law matters and for attorneys' with our experience and expertise and are a fair, customary and reasonable fees in this case.

7.     Plaintiffs' counsel respectfully requests the Court take judicial notice of the Court's file in assessing the fees. *See Atascosa County Appraisal Dist. v. Tynrak*, 815 S.W.2d 364 (Tex. App.--San Antonio 1991).

8.     Further affiant sayeth not."

SHANNON E. LOYD

STATE OF WASHINGTON  §
                                          §
PIERCE COUNTY            §

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 23rd day February, 2023.

Notary Public, State of Washington

Commission Expires: _12-29-25_

# Exhibit 4

21TX00129848



10/14/2021

Tanglegrove TH Condo Association
C/O Garner Property Management
5845 Lynbrook
Houston, TX 77057
Sent Via Electronic Mail: sue@riseamg.com

| RE: | Insured/s Name: | Tanglegrove TH Condo Association |
| --- | --- | --- |
| | Claim Number: | 21TX00129848 |
| | Policy Number: | 42-6590000083-U-00 |
| | Date of Loss: | 08/16/2021 |
| | Date Reported: | 09/02/2021 |
| | Cause of Loss: | Hail |
| | Insured Location: | 1110 Fountain View Houston, Texas 77057 |

Dear Tanglegrove TH Condo Association:

This letter is in response to the claim you submitted to Journey Insurance Company ("Journey") on the above-referenced policy for hail damage to your property. The claim was reported on September 2, 2021, with an alleged date of loss of August 16, 2021.

Be advised that we have recently received the inspection report from EMCO, an independent adjusting firm retained to inspect the subject property. The inspecting adjuster observed no hail damage to the roofs or exterior of any building listed on the policy.

Since there was not any damage found or observed at the time our investigation was conducted, there is not any physical loss to your property, we are unable to provide any coverage for this reported loss under this policy at this time.

We would like to thank you for your cooperation throughout the claim process. Your assistance goes a long way in helping us resolve your claim. This letter is not intended to be a full disclosure of all policy coverages, conditions, and exclusions. For a full disclosure, please refer to your policy.

Should you have any additional questions regarding the settlement or have any other information you would like for us to consider regarding this claim, please contact the undersigned at the information shown below.

Sincerely,

Matt Lerer

*Matt Lerer*

Commercial Adjuster
UPC Insurance (NASDAQ: UIHC)
P.O Box 1011
St. Petersburg, FL 33731-1011
mlerer@upcinsurance.com
Office: 727-275-9546

21TX00129848



*Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.*

*If this document contains an excerpt from a Journey Insurance policy ("the Policy") it is provided here for information purposes only. This excerpt is not the official version of the Policy. The official version of the Policy is the policy issued to the insured on the policy effective date.*

*In the event there is inconsistency between this document and the Policy, the Policy shall serve as the official version.*

*All rights and defenses of Journey Insurance and its affiliates (the "Company") are reserved. No act of any Company representative while investigating this claim or defending a lawsuit shall be construed as waiving any Company rights. The Company reserves the right to deny coverage to you or to anyone claiming coverage under this policy. The Company does not, by this letter or otherwise, waive any rights or defenses.*

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alison Kelly on behalf of Shannon Loyd
Bar No. 24045706
alison@theloydlawfirm.com
Envelope ID: 73051329
Status as of 2/23/2023 2:34 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 2/23/2023 2:25:20 PM | SENT |

Filed 23 February 24 P4:59
Marilyn Burgess - District Clerk
Harris County

# CAUSE NO. 2022-81096

| | |
|---|---|
| **TANGLEGROVE TH CONDO ASSOCIATION** | **IN THE DISTRICT COURT** |
| **v.** | **061st JUDICIAL DISTRICT** |
| **JOURNEY INSURANCE COMPANY** | **HARRIS COUNTY, TEXAS** |

## NOTICE OF HEARING

**LOYD, SHANNON ELIZABETH bar number 24045706** has requested a Hearing on the **LAW DAY DOCKET** Docket on the matter of **Plaintiff's Motion for Default Judgment** on **Thursday, March 23, 2023** at **10:00 AM** in the **061st District Court** located at **201 CAROLINE**.

> Docket Type: LAW DAY DOCKET
> Setting Reason: DEFAULT (MOTION FOR) (TRCP 239)
> Date/Time: Thursday, March 23, 2023 10:00 AM
> Approx. Length: 10 minutes

Submitted for LOYD, SHANNON ELIZABETH bar number 24045706
12703 SPECTRUM DRIVE, SUITE 201
SAN ANTONIO, TX  78249-0000
210-775-1424
SHANNON@LP-LAWFIRM.COM

Created By:
LOYD, SHANNON ELIZABETH
SHANNON@LP-LAWFIRM.COM

This request has been **GRANTED**

_____

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**A. Signature**

X     ☐ Agent    ☐ Addressee

**B. Received by** *(Printed Name)*     **C. Date of Delivery**

1. Article Addressed to:

61st *Court*
**Stanley Glen Culpepper**
**2005 Camelot Drive**
**Grapevine, Texas 76051**

$2022-81096$

**9590 9402 4975 9063 9684 88**

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Mail
- ☐ Mail Restricted Delivery

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

2. Article Number *(Transfer from service label)*

7019 0140 0000 5912 9596

PS Form **3811**, July 2015 PSN 7530-02-000-9053    **EXHIBIT A - Page 296 of 320** Domestic Return Receipt



**USPS TRACKING #**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

9590 9402 4975 9063 9684 88

**United States Postal Service**

FILED
MARILYN BURGESS
DISTRICT CLERK
HARRIS COUNTY, TEXAS

2023 MAR -6 AM 9:

• Sender: Please print your name, address, and ZIP+4® in this box•

**MARILYN BURGESS, DISTRICT CLERK**
**HARRIS COUNTY, TEXAS**
**CIVIL INTAKE**
**P.O. BOX 4651**
**HOUSTON, TEXAS 77210**

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

BY:
MAIL PROCESS...

Filed 23 March 07 P3:50
Marilyn Burgess - District Clerk
Harris County

# CAUSE NO. 2022-81096

TANGLEGROVE TH CONDO          IN THE DISTRICT COURT
ASSOCIATION
v.                               061st JUDICIAL DISTRICT

JOURNEY INSURANCE COMPANY      HARRIS COUNTY, TEXAS


# NOTICE TO PASS HEARING

**LOYD, SHANNON ELIZABETH bar number 24045706** has requested that the Hearing scheduled on the **LAW DAY DOCKET** Docket on the matter of **Plaintiff's Motion for Default Judgment** on **Thursday, March 23, 2023** at **10:00 AM** in the **061st District Court** located at **201 CAROLINE** be passed for the following reason:

      hearing is no longer needed


Submitted for LOYD, SHANNON ELIZABETH bar number 24045706
12703 SPECTRUM DRIVE, SUITE 201
SAN ANTONIO, TX  78249-0000
210-775-1424
SHANNON@LP-LAWFIRM.COM

Created By:
LOYD, SHANNON ELIZABETH
SHANNON@LP-LAWFIRM.COM

This request has been **GRANTED**

_____

3/7/2023 9:08 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73401429
By: Tiffany Jefferson
Filed: 3/7/2023 9:08 AM

**TDI** | Texas Department
of Insurance

PO Box 12030 | Austin, TX 78711 | 800-578-4677 | tdi.texas.gov

February 16, 2023

Shannon E. Loyd
Loyd & Pollom, P.L.L.C.
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249

RE: Cause No. 202281096; styled *Tanglegrove TH Condo Association v. Journey Insurance Company and Stanley Glenn Culpepper;* in the 61st Judicial District Court, Harris County, Texas

Greetings:

Enclosed please find a certificate of service and copy of the returned USPS certified mail delivery receipt regarding the above captioned case.

If you have any questions or need further assistance, please contact our office at the number listed below.

Sincerely,

Jonathan Kogut
General Counsel Division
(512) 676-6586

Enclosures

cc:    Harris County District Court
       *E-filed*

**TEXAS DEPARTMENT OF INSURANCE**



**THIS IS TO CERTIFY THAT**

On January 17, 2023, the Commissioner of Insurance of the State of Texas, pursuant to TEX. INS. CODE ANN., Chapter 804, received a citation and Plaintiff's First Amened Original Petition for service on Journey Insurance Company; in Cause No. 202281096; styled *Tanglegrove TH Condo Association v. Journey Insurance Company and Stanley Glenn Culpepper;* in the 61st Judicial District Court, Harris County, Texas.

**THIS IS TO FURTHER CERTIFY THAT** on February 7, 2023, the above captioned documents were forwarded to Journey Insurance Company, 800 2nd Ave S, St Petersburg, FL 33701-4020, by certified mail. Our records indicate that USPS Certified Mail No. 9214 8901 9403 8303 4637 88 was delivered on February 10, 2023.

IN TESTIMONY WHEREOF, WITNESS MY HAND AND SEAL OF OFFICE AT AUSTIN, TEXAS,

THIS __28th__ DAY OF FEBRUARY 2023

CASSIE BROWN
COMMISSIONER OF INSURANCE

BY _____

JUSTIN BEAM, CHIEF CLERK
GENERAL COUNSEL DIVISION



3/9/2023 3:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73522566
By: Tiffany Jefferson
Filed: 3/9/2023 3:42 PM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| **TANGLEGROVE TH CONDO ASSOCIATION** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **JOURNEY INSURANCE COMPANY AND** | § | |
| **STANLEY GLENN CULPEPPER** | § | **61ST JUDICIAL DISTRICT** |

---

### ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Be it remembered that on this day, Plaintiff, **TANGLEGROVE TH CONDO ASSOCIATION'S MOTION FOR DEFAULT JUDGMENT** was considered in the above styled and numbered cause. After considering the briefing, the evidence, and the arguments of counsel, if any, the Court **DENIES** the Plaintiff's Motion for Default Judgment in its entirety.

It is, therefore, ORDERED, ADJUDGED and DECREED that **PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** is **DENIED**.

Signed the _____ day of _____, 2023.

_____
JUDGE PRESIDING

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73522566
Status as of 3/9/2023 3:46 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |

3/9/2023 3:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73522566
By: Tiffany Jefferson
Filed: 3/9/2023 3:42 PM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| **TANGLEGROVE TH CONDO ASSOCIATION** | § § § | **IN THE DISTRICT COURT** |
| **V.** | § § | **HARRIS COUNTY, TEXAS** |
| **JOURNEY INSURANCE COMPANY AND STANLEY GLENN CULPEPPER** | § § | **61ST JUDICIAL DISTRICT** |

---

### DEFENDANT JOURNEY INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, **Journey Insurance Company ("Journey")** in the above-entitled and numbered cause, and files its Response to Plaintiff's Motion for Default Judgment, and would show as follows:

Plaintiff filed its Original Petition on December 14, 2022, naming **Journey Insurance Company** as a Defendant. A citation was issued on December 14, 2022 for service through CT Corporation System. CT Corporation System is not a Registered Agent of **Journey Insurance Company**. **Journey** has no Registered Agent in Texas.

Plaintiff filed a First Amended Petition on January 9, 2023, and on this same date, a citation was issued for service on **Journey** by serving the Texas Department of Insurance Commissioner of Insurance Cassie Brown. **Journey** was served with Plaintiff's First Amended Petition on January 17, 2023.

Plaintiff argues that **Journey's** Answer deadline was February 20, 2023 and that because **Journey** did not file the Answer as of February 23, 2023, the date Plaintiff's Motion for Default Judgment was filed, Plaintiff is entitled to a default judgment against Defendant, **Journey Insurance Company**, on liability and damages.

Defendant, **Journey Insurance Company** filed an Answer on March 8, 2023. Although Defendant **Journey's** Answer was filed after the deadline to file an Answer had passed, the delay was not an intentional disregard for the deadline by Journey. Rather, **Journey Insurance Company** is part of the UPC Insurance Family, and there was uncertainty regarding the impact on Journey Insurance Company due to the Order of Liquidation and Notice of Automatic Stay and Permanent Stay as to United Property and Casualty Insurance Company ("Order") that was recently signed. Immediately upon learning that **Journey Insurance Company** was not impacted by the Order, **Journey** filed its Answer.

Pursuant to Rule 503.1 of the Texas Rules of Civil Procedure, "if a defendant files an answer or otherwise appears in a case before a default judgment is signed by the judge, the judge must not enter a default judgment and the case must be set for trial as described in Rule 503.3." *See*. TEX. R. CIV. P. 503.1.

Defendant **Journey** filed an answer on March 8, 2023. The hearing on Plaintiff's Motion for Default Judgment is scheduled for March 23, 2023 at 10:00 AM, and therefore, no default judgment has been signed by the judge at this time. Therefore, because **Journey** filed an answer in this case before a default judgment is signed, the judge must not enter a default judgment and the case must be set for trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant **Journey Insurance Company** prays that the Plaintiff's Motion for Default Judgment be Denied, and that this case be set for trial.

Respectfully submitted,

**BAIN & BARKLEY**
*A Partnership of Professional Corporations*

BY: _____

Michael "Tate" Barkley
Texas Bar Number: 01750065
Email: tate@bainlaw.net
14090 Southwest Freeway, Suite 450
Sugar Land, Texas 77478
Phone: (281) 980-3100
Fax:    (281) 980-3195
**ATTORNEYS FOR DEFENDANT
JOURNEY INSURANCE COMPANY**

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that a true and correct copy of the foregoing document has been duly served upon all counsel of record in accordance with Texas Rules of Civil Procedure, via the method specified below, on **3/9/2023** to:

***Via Electronic e-file delivery***
Shannon E Loyd
Loyd & Pollom, P.L.L.C
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
*Email:* ***shannon@lp-lawfirm.com***
*Attorneys for Plaintiff*

_____
Michael "Tate" Barkley

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73522566
Status as of 3/9/2023 3:46 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 3:42:11 PM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 3:42:11 PM | SENT |

3/9/2023 10:58 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73500150
By: Tasha Fraser
Filed: 3/9/2023 10:58 AM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| **TANGLEGROVE TH CONDO ASSOCIATION** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **JOURNEY INSURANCE COMPANY AND** | § | |
| **STANLEY GLENN CULPEPPER** | § | **61ST JUDICIAL DISTRICT** |

## NOTICE OF HEARING ON JOURNEY INSURANCE COMPANY'S NOTICE OF ELECTION OF LEGAL RESPONSIBILITY FOR STANLEY CULPEPPER

**PLEASE TAKE NOTICE** that a hearing by submission on **Defendant Journey Insurance Company's Notice of Election of Responsibility of Stanley Culpepper** has been set on Monday**, March 20, 2023, at 8:00AM.**

Respectfully submitted,

**BAIN & BARKLEY**

*A Partnership of Professional Corporations*

BY:

Michael "Tate" Barkley
Texas State Bar Number: 01750065
Email: tate@bainlaw.net
14090 Southwest Freeway, Suite 450
Sugar Land, Texas 77478
Tel:    281-980-3100
Fax:    281-980-3195
**ATTORNEYS FOR DEFENDANT**
**JOURNEY INSURANCE COMPANY**

---

## CERTIFICATE OF SERVICE

---

I hereby certify that a true and correct copy of the foregoing document has been duly served upon all counsel of record via electronic mail, and/or electronic e-file delivery, and/or certified mail, return receipt requested, and/or hand delivery, and/or facsimile on this the 9th day of March 2023.

***Via Electronic e-file delivery***
Shannon E Loyd
Loyd & Pollom, P.L.L.C
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
*Email: **shannon@lp-lawfirm.com***
*Attorneys for Plaintiff*

MICHAEL TATE BARKLEY

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73500150
Status as of 3/9/2023 11:12 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 10:58:15 AM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 10:58:15 AM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 10:58:15 AM | SENT |
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 10:58:15 AM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 10:58:15 AM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 10:58:15 AM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 10:58:15 AM | SENT |

3/9/2023 9:25 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73493326
By: Tasha Fraser
Filed: 3/9/2023 9:25 AM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| JOURNEY INSURANCE COMPANY AND STANLEY GLENN CULPEPPER | § § § | 61ST JUDICIAL DISTRICT |

## ORDER ON DEFENDANT'S NOTICE OF ELECTION OF
## LEGAL RESPONSIBILITY
## FOR STANLEY GLENN CULPEPPER

Be it remembered that on this day, Defendant, **JOURNEY INSURANCE COMPANY'S NOTICE OF ELECTION OF RESPONSIBILITY OF STANLEY GLENN CULPEPPER** was considered. Upon consideration of the motion, the Court is of the opinion that Defendants' request should be granted.

It is, therefore, ORDERED, ADJUDGED and DECREED that **STANLEY GLENN CULPEPPER** is dismissed from this lawsuit with prejudice to refiling same.

Signed the _____ day of _____, 2023.

_____
JUDGE PRESIDING

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73493326
Status as of 3/9/2023 9:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |

3/9/2023 9:25 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73493326
By: Tasha Fraser
Filed: 3/9/2023 9:25 AM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| **TANGLEGROVE TH CONDO** | § | **IN THE DISTRICT COURT** |
| **ASSOCIATION** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **JOURNEY INSURANCE COMPANY AND** | § | |
| **STANLEY GLENN CULPEPPER** | § | **61ST JUDICIAL DISTRICT** |

---

### NOTICE OF ELECTION OF LEGAL RESPONSIBILITY
### FOR STANLEY GLENN CULPEPPER

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, **JOURNEY INSURANCE COMPANY ("JOURNEY")** in the above-entitled and numbered cause, and files its Election of Legal Responsibility for **STANLEY GLENN CULPEPPER** under Section 542A.006 of the Texas Insurance Code ("Election") as follows:

### I. BACKGROUND

Plaintiff filed a claim with **JOURNEY** for windstorm and/or hailstorm damage. The claim was adjusted by one or more individuals at **JOURNEY'S** request, including Defendant, **STANLEY GLENN CULPEPPER**. Plaintiff subsequently filed this action naming **JOURNEY** and **STANLEY GLENN CULPEPPER** as defendants.

For purposes of this Election, **STANLEY GLENN CULPEPPER** was a **JOURNEY** "agent" under Texas Insurance Code section 542A.001, which defines the term "agent" as an employee, agent, representative, or adjuster who performs any act on **JOURNEY'S** behalf. See TEX. INS. CODE 542A.001.

### II. ELECTION OF LEGAL RESPONSIBILITY

Under Section 542A.006(a) of the Texas Insurance Code, **JOURNEY** hereby elects to accept legal responsibility for whatever liability **STANLEY GLENN CULPEPPER** might have

to Plaintiff for **STANLEY GLENN CULPEPPER'S** actions or omissions related to Plaintiff's claims made the subject of this lawsuit.

By this pleading, Plaintiff has been provided written notice of **JOURNEY'S** election of legal responsibility of **STANLEY GLENN CULPEPPER**.

### III. DISMISSAL WITH PREJUDICE IS REQUIRED

As is statutorily mandated under section 542A.006(c) of the Texas Insurance Code and based on **JOURNEY'S** election, this Court "shall dismiss" this action against **STANLEY GLENN CULPEPPER** *with prejudice*. See TEX. INS. CODE 542A.006(c).

**JOURNEY** hereby requests the Court to enter all such documents necessary to effectuate this dismissal with prejudice.

Respectfully submitted,

**BAIN & BARKLEY**
*A Partnership of Professional Corporations*

BY: _____

Michael "Tate" Barkley
Texas Bar Number: 01750065
Email: tate@bainlaw.net
14090 Southwest Freeway, Suite 450
Sugar Land, Texas 77478
Phone: (281) 980-3100
Fax:    (281) 980-3195
**ATTORNEYS FOR DEFENDANT**
**JOURNEY INSURANCE COMPANY**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been duly served upon all counsel of record in accordance with Texas Rules of Civil Procedure, via the method specified below, on **3/9/2023** to:

*__Via Electronic e-file delivery__*
Shannon E Loyd
Loyd & Pollom, P.L.L.C
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
*Email: __shannon@lp-lawfirm.com__*
*Attorneys for Plaintiff*

Michael "Tate" Barkley

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73493326
Status as of 3/9/2023 9:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |

3/9/2023 9:25 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73493326
By: Tasha Fraser
Filed: 3/9/2023 9:25 AM

## CAUSE NO. 2022-81096

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § § § | IN THE DISTRICT COURT |
| V. | § § § | HARRIS COUNTY, TEXAS |
| JOURNEY INSURANCE COMPANY AND STANLEY GLENN CULPEPPER | § § | 61ST JUDICIAL DISTRICT |

### DEFENDANT JOURNEY INSURANCE COMPANY'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, **JOURNEY INSURANCE COMPANY ("DEFENDANT")** in the above-entitled and numbered cause, and reserving the right to file other and further pleadings, exceptions and denials, files this Original Answer to Plaintiff's Original Petition, and without waiving same but still insisting upon the same, would respectfully show unto the Court as follows:

### GENERAL DENIAL

At this time, Defendant asserts a general denial to Plaintiff's Original Petition and all amended and/or supplemental petitions, as authorized by Rule 92, Texas Rules of Civil Procedure, and respectfully requests the Court and jury to require Plaintiff to prove the claims, charges and allegations, by a preponderance of the evidence, as required by the Constitution and the laws of the State of Texas.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing by this suit against Defendant, that the Defendant be discharged, and that the Court grants such other and further relief, both general and special, at law and in equity, to which Defendant may be justly entitled.

Respectfully submitted,

**BAIN & BARKLEY**
*A Partnership of Professional Corporations*

BY: _____

    Michael "Tate" Barkley
    Texas Bar Number: 01750065
    Email: tate@bainlaw.net
    14090 Southwest Freeway, Suite 450
    Sugar Land, Texas 77478
    Phone: (281) 980-3100
    Fax:   (281) 980-3195
    **ATTORNEYS FOR DEFENDANT**
    **JOURNEY INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been duly served upon all counsel of record in accordance with Texas Rules of Civil Procedure, via the method specified below, on **3/9/2023** to:

***Via Electronic e-file delivery***
Shannon E Loyd
Loyd & Pollom, P.L.L.C
12703 Spectrum Drive, Suite 201
San Antonio, Texas 78249
*Email: **shannon@lp-lawfirm.com***
*Attorneys for Plaintiff*

_____
Michael "Tate" Barkley

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michael Barkley on behalf of Michael Barkley
Bar No. 1750065
tate@bainlaw.net
Envelope ID: 73493326
Status as of 3/9/2023 9:43 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Loyd | | shannon@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Alison Kelly | | alison@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| Adela Garcia | | adela@lp-lawfirm.com | 3/9/2023 9:25:26 AM | SENT |
| BeBe Velez | | bebe@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Michael TateBarkley | | tate@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Lisa D'Oliver | | lisa@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |
| Margaret Cambric | | margaret@bainlaw.net | 3/9/2023 9:25:26 AM | SENT |

3/9/2023 9:25 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 73493326
By: Tasha Fraser
Filed: 3/9/2023 9:25 AM

**CAUSE NO. 2022-81096**

| | | |
|---|---|---|
| TANGLEGROVE TH CONDO ASSOCIATION | § § § | IN THE DISTRICT COURT |
| V. | § § | HARRIS COUNTY, TEXAS |
| JOURNEY INSURANCE COMPANY AND STANLEY GLENN CULPEPPER | § § | 61ST JUDICIAL DISTRICT |

*I pg*
*II D*

**ORDER ON DEFENDANT'S NOTICE OF ELECTION OF LEGAL RESPONSIBILITY FOR STANLEY GLENN CULPEPPER**

Be it remembered that on this day, Defendant, **JOURNEY INSURANCE COMPANY'S NOTICE OF ELECTION OF RESPONSIBILITY OF STANLEY GLENN CULPEPPER** was considered. Upon consideration of the motion, the Court is of the opinion that Defendants' request should be granted.

It is, therefore, ORDERED, ADJUDGED and DECREED that **STANLEY GLENN CULPEPPER** is dismissed from this lawsuit with prejudice to refiling same.

Signed the 21 day of ___MARCH___, 2023.

_Frederica Phillips_
JUDGE PRESIDING